RECEIVED

JUN 05 2014

Legal Programs Department

SCANNED at LSP and Emailed
6|5|14 by CM . 620 pages
date      initials  No.

AO 241
(Rev. 10/07)

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: *Eastern* |
|---|---|

Name (under which you were convicted):

*Rigoberto Funes*

Docket or Case No.: **14-1342**

Place of Confinement:

*Louisiana State Penitentiary*

Prisoner No.: 571875 **SECT. A MAG. 4**

| Petitioner (include the name under which you were convicted) | | Respondent (authorized person having custody of petitioner) |
|---|---|---|
| *Rigoberto Funes* | v. | *Burl Cain, Warden* |

The Attorney General of the State of

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   *Twenty-Fourth Judicial District Court*
   *Parish of Jefferson*
   *State of Louisiana*

   (b) Criminal docket or case number (if you know): *08-5641*

2. (a) Date of the judgment of conviction (if you know): *7/29/10*

   (b) Date of sentencing: *8/5/10*

3. Length of sentence: *Life Imprisonment*

4. In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes  ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   *3 Counts of Second Degree Murder*

6. (a) What was your plea? (Check one)

   ☑ (1) Not guilty   ☐ (3) Nolo contendere (no contest)

   ☐ (2) Guilty      ☐ (4) Insanity plea

AO 241
(Rev. 10/07)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.  Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.  If you did appeal, answer the following:

(a) Name of court:  5ᵗʰ Circuit Court of Appeal

(b) Docket or case number (if you know):  11-120

(c) Result:  Denied

(d) Date of result (if you know):  12/28/11

(e) Citation to the case (if you know):  88 So. 3d 470

(f) Grounds raised:

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court:  Louisiana State Supreme Court

(2) Docket or case number (if you know):  2012-290

(3) Result:  Denied

(4) Date of result (if you know):  5/25/12

AO 241
(Rev. 10/07)

(5) Citation to the case (if you know):   90 So.3d 408

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?   ☑ Yes   ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:   24ᵗʰ Judicial District Court

(2) Docket or case number (if you know):   08-5641

(3) Date of filing (if you know):   6/3/13

(4) Nature of the proceeding:   Post Conviction

(5) Grounds raised:

The issues raised are identical to those raised here.

(Please Refer to Memorandum in Support of Habeas Application)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result:   Denied

(8) Date of result (if you know):   January 16, 2014

AO 241
(Rev. 10/07)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):      *Not Applicable*

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes   ☑ No

    (7) Result:      *Not Applicable*

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):      *Not Applicable*

    (4) Nature of the proceeding:

    (5) Grounds raised:

AO 241
(Rev. 10/07)

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

The petitioner was a victim of Systemic Ineffective Assistance by Trial and Appellate Counsel. Evidence, unrefuted is attached hereto.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Application for Post-Conviction Relief

Name and location of the court where the motion or petition was filed:

24th Judicial District Court Parish of Jefferson

Docket or case number (if you know):   08-5641

Date of the court's decision:    1/16/14

Result (attach a copy of the court's opinion or order, if available):    Attached

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:    Same as 12(A)

Name and location of the court where the appeal was filed:

5th Circuit Court of Appeal

Docket or case number (if you know):    14-KH-124

Date of the court's decision:    3/25/14

Result (attach a copy of the court's opinion or order, if available):    Attached
Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 10/07)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result:

(8) Date of result (if you know): *Not Applicable*

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☑ Yes   ☐ No

(2) Second petition: ☐ Yes   ☐ No   } *Not Applicable*

(3) Third petition: ☐ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*Discrimination In the Grand and Petit Jury Pools (Purposeful discriminatory practices against the handicapped, those dependant upon public assistance, African Americans, and other minorities) Systemic Violation of NVRA of 1993 so as to "fix" the Jury Pools*

(b) If you did not exhaust your state remedies on Ground One, explain why:

%AO 241
(Rev. 10/07)

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _Supervisory Rehearing was sought to have the_

_court address/correct its "clearly erroneous" determination that petitioner was untimely. The_

_Court of Appeal did not reconsider its erroneous finding and the matter was presented to the_

_La. Supreme Court for review_

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_Louisiana consistently deprives state habeas petitioner's of access to counsel_
_during their post conviction (state Habeas) proceeding. As such, pursuant the_
_United States Supreme Court holdings in Martinez v. Ryan and Trevino_
_v. Thaler. This has been decreed an extension of the direct appeal_
_process when the issue of "Ineffective Assistance of Counsel has been raised_
_as it was here._

(b) If you did not exhaust your state remedies on Ground Two, explain why: _The exhaustion process is in_
_Continuation, however, in an_
_effort to deprive this Honorable Court_
_of an opportunity to address the merits_
_of this claim the state invoked a_
_a "clearly erroneous" procedural bar._

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

_Because Petitioner was a victim of statewide Systemic Ineffective_
_Assistance of Counsel_

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _Post-Conviction Application_

Name and location of the court where the motion or petition was filed:

_24th Judicial District Court, Parish of Jefferson_

Docket or case number (if you know): _08-5641_

Date of the court's decision: _1/16/14_

AO 241
(Rev. 10/87)

Result (attach a copy of the court's opinion or order, if available):   *Attached*

*Denied*

(3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   *Fifth Circuit Court of Appeal*
*State of La.*

Docket or case number (if you know):   *14-KH-124*

Date of the court's decision:   *3/25/14*

Result (attach a copy of the court's opinion or order, if available):   *Attached*
*Denied*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two

*Same as (e) on page 8 of this form*

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*Right to Fair Trial Violated during Jury Selection*

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)   **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:

*Ineffective Assistance of Trial & Appellate Counsel*

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   *Application for Post Conviction Relief*

Name and location of the court where the motion or petition was filed:

*24th JDC, Parish of Jefferson*

Docket or case number (if you know):   *08-5641*

Date of the court's decision:   *1/16/14*

Result (attach a copy of the court's opinion or order, if available):   *Attached*

*Denied*

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

*Fifth Circuit Court of Appeal
State of Louisiana*

Docket or case number (if you know):   *14-KH-124*

Date of the court's decision:   *3/25/14*

Result (attach a copy of the court's opinion or order, if available):   *Attached*

*Denied*

AO 241
(Rev. 10/07)

Page 11

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Violation of Right to a Fair Trial through failure to
properly instruct or sequestor jurors during recess & breaks.

(b) If you did not exhaust your state remedies on Ground Four, explain why: The exhaustion process is in continuation; however,
in an effort to deprive this court of an
opportunity to address the merits of this
claim the state has in a manner contrary
to the existing record imposed a procedural
bar.

(c)    Direct Appeal of Ground Four:

(1) If you appealed from the judgment of conviction, did you raise this issue?.    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

Victim of Ineffective Assistance (Systemic) of Counsel

(d)    Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Application for Post Conviction Relief

AO 241
(Rev. 10/07)

Page 12

Name and location of the court where the motion or petition was filed:

24ᵗʰ Judicial District Court, Parish of Jefferson

Docket or case number (if you know): 08-5641

Date of the court's decision: 1/16/14

Result (attach a copy of the court's opinion or order, if available): Attached

Denied

(3) Did you receive a hearing on your motion or petition?          ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?       ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Fifth Circuit Court of Appeal for the State of Louisiana

Docket or case number (if you know): 14-KH-124

Date of the court's decision: 3/25/14

Result (attach a copy of the court's opinion or order, if available): Attached

Denied

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)      Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

Same as (e) on page 8 of this form

13.     Please answer these additional questions about the petition you are filing:

(a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?   ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b)     Is there any ground in this petition that has not been presented in some state or federal court? If so,

ground or grounds have not been presented, and state your reasons for not presenting them:

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?        ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

of any court opinion or order, if available.

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?      ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

raised.       *Louisiana Supreme Court, 400 Royal St., Suite 4200, New Orleans, La. 70130-8102*

*Docket # 2014-KH-1027*

*Proceeding type: Supervisory Writ of Review*

*issues raised: Same as those here*

AO 241
(Rev. 10/07)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Paul Flemming → 848 Second Street - Third Floor, Gretna, La. 70053
Cesar Vasquez

(b) At arraignment and plea:

(c) At trial:  Alex Lambert
Cesar Vasquez and Paul Fleming, 848 Second Street - Third Floor, Gretna, La. 70053

(d) At sentencing:  Same as (C)

(e) On appeal:  Louisiana Appellate Project

(f) In any post-conviction proceeding:  No Attorney

(g) On appeal from any ruling against you in a post-conviction proceeding:
No Attorney

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     ☐ Yes     ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?     ☐ Yes     ☐ No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 1007)

There are other issues raised in

petitioner's Memorandum of Law which

would not fit on this Application. petitioner

wishes to maintain those claims as well

as amend this petition with his Miranda Violation

Claim from direct appeal (fully exhausted) and his

Claim of the unconstitutionality of being found guilty

on less than a unanimous jury verdict (also from direct

appeal and fully exhausted.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in
part that:

(1)      A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of
the Constitution or laws of the United States is removed, if the applicant was prevented from
filing by such state action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

AO 241
(Rev. 10/07)

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *That relief be granted on all claims which prove meritorious, that the sentence and conviction be annulled so that petitioner can be relieved from unconstitutional restraint.*

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *June 11, 2014* (month, date, year).

Executed (signed) on *June 11, 2014* (date).

_____*Rigoberto Gumes*_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN THE
U.S. EASTERN DISTRICT
FOR THE STATE OF LOUISIANA


DOCKET NO: _____


**Rigoberto Funes**
*Petitioner*

**VERSUS**

**BURL CAIN, WARDEN
LA. STATE PENITENTIARY**
*Respondent*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**APPLICATION FOR WRIT OF FEDERAL HABEAS CORPUS
WITH MEMORANDUM OF LAW IN SUPPORT AND
REQUEST FOR AN EVIDENTIARY HEARING
AND THE APPOINTMENT OF FEDERAL COUNSEL PURSUANT THE
"CRIMINAL JUSTICE ACT"**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORIGINAL HABEAS BRIEF FILED ON BEHALF OF
Rigoberto Funes – PETITIONER**


**RESPECTFULLY SUBMITTED:**


*Rigoberto Funes*
**Rigoberto Funes #571875
MAIN PRISON, Spruce-2
LA. STATE PENITENTIARY
ANGOLA, LA 70712**

# TABLE OF CONTENTS

MEMORANDUM OF LAW AND ARGUMENT IN SUPPORT OF
    APPLICATION FOR FEDERAL HABEAS CORPUS RELIEF
    AND REQUEST FOR AN EVIDENTIARY HEARING ........................ 1

TIMELINESS OF APPLICATION UNDER STATE AND FEDERAL LAW .............. 1

JURISDICTION ................................................................... 6

STATEMENT OF THE CASE ....................................................... 6

INVOCATION OF THE PROTECTIVE WRIT PROCEDURES SET OUT IN
    **Pace v. Digulielmo, 125 S.Ct. 1807, 544 U.S. 408 (U.S. 2005)** ................... 7

COMPLIANCE WITH LEGISLATIVELY CREATED STATE STATUTE
    VS. COMPLIANCE WITH COURT CREATED RULES ....................... 8

    Art. 922 Finality of Judgement on appeal ................................. 9

    The Official Revision Comment as to section "B" ........................... 10

    Art. 2166. Court of appeal judgement rehearing; finality; stay ................. 10

TRUST IN THE DECISION OF THE SUPREME COURT JUSTICES TO DETERMINE WHETHER
    TO ENTERTAIN AN APPLICATION FOR REHEARING ON A CASE WHICH HAS JUST
    BEEN DECIDED WITH RESPECT TO ARTICLES La.C.Cr.P. Art. 922 & La.C.C.P. Art
    2166 .................................................................... 11

GRANT OR DENIAL OF WRIT ................................................... 11

FAILURE TO TOLL DURING PENDENCY OF REHEARING APPLICATION MADE AVAILABLE
    TO DIRECT APPEAL APPLICANTS IN THE STATE OF LOUISIANA BY ACTION OF
    THE LOUISIANA LEGISLATURE (I.E. La.C.C.Pr. Art 922 & La.C.C.P. Art 2166) .. 13

    Equitable Tolling ...................................................... 14

LAW AND ARGUMENTS ......................................................... 16

PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS
    THAN FORMAL PLEADINGS DRAFTED BY LAWYERS .................... 16

CLAIM #1
    FACTS NOT KNOWN EXCEPTION AS APPLICABLE TO WHAT (FERRAND V.

SCHEDLER) REVEAL THAT WAS PREVIOUS NOT KNOWN TO ACCUSED OR HIS
ATTORNEY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Chart of Initial Applications for Louisiana SNAP (Food Stamp Program)- Fiscal Years
1995-2008 [Source of Possible Qualified Jurors who were discriminated against] . . . . . 18
Chart of Louisiana Medicaid Applicants to Department of Health and Hospitals
(Applications Received furing Fiscal Years 2006-2010)[Source of Possible Qualified
Jurors who were discriminated against] . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Chart Showing Voter Registration Applications from Louisiana Public Assistance
Agencies during 1995-2008 (showing gross under-representation of those with
disabilities, dependence of public assistance, and monorities)[Source of Possible
Qualified Jurors who were discriminated against] . . . . . . . . . . . . . . . . . . . . . . 18

**CLAIM #2**
DEFERRAL OF IAC CLAIM FROM DIRECT APPEAL TO PCR BY COURT JUDGEMENT
CONSTITUTES 'CAUSE' MANDATING COUNSEL BE PROVIDED ON THE CLAIM OF TRIAL
COUNSEL INEFFECTIVENESS AND USES THE EVIDENCE FROM *"An Assessment of Trial
Level Defense Services in Louisiana 40 years after Gideon"* . . . . . . . . . . . . . . . . . . . 22

**CLAIM #3**
PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL WAS VIOLATED
DURING THE SELECTION OF THE JURY? (*BATSON* AND *STRICKLAND* VIOLATIONS)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**CLAIM #4**
TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS TO A FAIR TRIAL
WHEN IT FAILED TO INSTRUCT OR SEQUESTER THE JURY WHEN IT RETIRED
DURING RECESS AND BREAKS DURING TRIAL. . . . . . . . . . . . . . . . . . . . . . . 29

**CLAIM #5**
THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR WHEN HE MADE
ERRONEOUS AND MISLEADING COMMENTS ON THE RESPONSIVE VERDICTS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**CLAIM #6**
WHETHER PROSECUTORIAL MISCONDUCT OCCURRED WHEN THE (1)
PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF THE STATE
WITNESSES AND (2) FAILED TO CORRECT PERJURED TESTIMONY IN VIOLATION
OF PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL? . . . . . . . . . 34

(1) Improper Vouching: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

(2) Perjured Testimony: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CLAIM #7**

COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN COUNSEL FAILED TO SEEK QUASHING OF THE GRAND JURY INDICTMENT ON THE GROUNDS OF VILATION OF THE NATIONAL VOTER REGISTRATION ACT OF 1993.  THE JURY PANEL FOR THE GRAND AND PETIT JURY WERE BOTH QUASHABLE .. "YES.""
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**CLAIM #8**

INEFFECTIVENESS BY NOT SECURING REBUTTAL EXPERTS FOR THE DEFENSE
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

**CLAIM #9**

INDEPENDENT CLAIM OF "GRAND JURY AND TRIAL JURY DISCRIMINATION" THIS IS A "NEW FACT" PREVIOUSLY NOT KNOWN TO PETITIONER AND IT MEETS THE EXCEPTION OF 930.4 and 930.8(A)(1) (THIS CLAIM SHOWS A NEED FOR EXPERTS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

I.     UNLAWFUL AND SYSTEMATIC EXCLUSION OF LOW-INCOME, DISABLED, PUBLIC ASSISTANCE RECIPIENTS, BLACK, OTHER MINORITY JURORS FROM THE JURY VENIRE . . . . . . . . . . . . . . . . . . . . 42

    a)     Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

    b)     The State of Louisiana has deliberately chose to: . . . . . . . . . . . . . . . . . . 44

    c)     The applicable legal standards for fair cross-section and equal protection claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Fair Cross Section Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Equal Protection Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

    d)     Louisiana's decision not to comply with the National Voter Registration Act violated Mr. Funes's right to have a fair cross-section of the community in his jury(ies) venire. (Grand and Petit) . . . . . . . . . . 60

Louisiana's decision not to comply has resulted in unfair and unreasonable representation of the impacted groups in Jefferson Parish venires . . . . . . . . . . . . . . . . . . . . . . . . 61

Chart showing Perspective Black Jurors for Jefferson Parish Louisiana where petitioner was indicted and tried . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

Chart showing Effects of Jefferson Parishes failure to successfully Summons Black Perspective Jurors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

e)    In failing to comply with the NVRA, Louisiana has purposefully discriminated against African-Americans in violation of the Equal Protection Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Louisiana's decision to defy "FEDERAL" law was not race-neutral . . . . . . . . . . . . . . 70

f) Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

**CLAIM #10**
    TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN IT FAILED TO INSTRUCT OR SEQUESTER THE JURY WHEN IT RETIRED DURING RECESS AND BREAKS DURING TRIAL. . . . . . . . . . . . . . . . . . . . . . . . 73

**CLAIM #11**
    CONFLICT OF INTEREST AGAINST THE ENTIRETY OF THE JEFFERSON PARISH INDIGENT DEFENDER BOARD FOR COVERING UP THE FACT THAT THEY WERE WELL AWARE OF THE SYSTEMIC INEFFECTIVE ASSISTANCE BEING PROVIDED FOR THE REASONS SET OUT IN THE **"ASSESSMENT OF TRIAL LEVEL DEFENSE SERVICES IN LOUISIANA 40 YEARS AFTER GIDEON"**
                                                                           76

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

**ROSTER OF APPENDICES**

APPENDIX #1-#20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix pages 1-529

**TABLE OF AUTHORITIES**

**FEDERAL CONSTITUTION**

14th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 29, 32, 42, 44, 46, 56, 59, 70, 73

6th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Eight Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32, 42, 46

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 25, 27, 29, 34, 42, 44, 56, 73, 77

Thirteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States Constitution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 34

**STATE CONSTITUTION**

Artilce I, Sections 2, 3, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27 . . . . . . . . . . . . . . . . . . . . . 42

Article I § 2 of the Louisiana Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

La. Const. 1921, Art. VIII, ss 1(c), 1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

La. Const. Art. I, § 2, 3, 12, 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

La. Const. Art. V § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

La.Const. Art V, § X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Louisiana Constitution of 1898 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Louisiana Constitutions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FEDERAL STATUTES**

28 U.S.C. §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 15

28 U.S.C. § 2244(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. 1973gg et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

42 U.S.C. 1973gg-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

42 U.S.C. 1973gg-4, -5 Section 7 of the NVRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

42 U.S.C. 1973gg-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

42 U.S.C. 1973gg-6(a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

AEDPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 13-15

National Voter's Rights Act of 1993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 18-20, 22, 32, 39, 40, 42-46, 49, 50, 52, 53, 59, 60, 66, 69

Voting Rights Act of 1965 (VRA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

§ 2244(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

## STATE STATUTES & COURT RULES

Art. 2166. Court of appeal judgement rehearing; finality; stay . . . . . . . . . . . . . 10, 11, 13, 15, 16

Art. 922 Finality of Judgement on appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13, 15, 16

Arts. 924-930.8 of the Louisiana Code of Criminal Procedure . . . . . . . . . . . . . . . . . . . . . . . 1

art 930.8(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 42

La.C.C.P. Art. 1915(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

La.C.Cr.P.art. 930.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

La.C.Cr.P. 930.8(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

La.C.Cr.P. Art 408.1(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

La.C.Cr.P. Art. 927(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

La.C.Cr.P. art. 408.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

La.C.Cr.P. art. 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 76

La.C.Cr.P. art. 791 C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 74

La.C.Cr.P. art. 930.3(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La.C.Cr.P. art. 930.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 42

La.C.Cr.P. art. 930.4F . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La.S.Ct.R. XXV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

LSA-C.Cr.P. Art. 797(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

R.S. 14:30.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 1.0 Construction of Rules and Appendices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rule 1.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rule URCA 2-18.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

RuleXXV.  Jury Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**FEDERAL CASES**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cromer v.  State of South  Carolina, 917 F.2d 819, 833 (C.A. 4 1990) . . . . . . . . . . . . . . . . . . . 49

Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985) . . . . . . . . . . . . . . . . 41

Hernandez v.  New York, 500 U.S. 352, 111 S.Ct. 1859, 1872-73 (1991) . . . . . . . . . . . . . . . 71

Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) . . . . . . . . . . . . . . . . 6

Bagley, 105 S.CT. at 3382 n. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

Ballard v.  United States, 329 U.S. 187, 67 S.ct.  261, 91 L.Ed 181 (1946) (exclusion of women)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Batson v. Kentucky, 476 U.S. 79, 106 S.CT. 1712, 90 L.Ed.2d 69 (1986) . . . . . . . . 4, 26, 27, 70

Beck v. Alabama, 447 U.S. 625, 100 S.CT. 2382, 65 L.Ed.2d 392 (1980) . . . . . . . . . . . . . 33, 34

Berger v. Kemp, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987) . . . . . . . . . 79

Berghuis v.  Smith, ---U.S.---, 130 S.Ct.  1382, 1392 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Breedlove v.  Suttles, 302 U.S. 277, 284 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Carey, 536 U.S. at 217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Castaneda v.  Partida, 430 U.S. 482, 494-495 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conley v.  Gibson, 355 U.S. 41, 45-46, 78 S.Ct.  99, 2 L.Ed2d 80 (1957) . . . . . . . . . . . . . . . . 17

Cordova v. Lynaugh, 838 F.2d 764 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Cramer, 461 F.3d 1380 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cuyler v. Sullivan, 466 U.S. 335, 344, 100 S.CT. 1708, 1716, 64 L.Ed.2d 333 (1980) . . . . . 5, 78

Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) . . . . . . . . . . . . . . . 56, 57

Fedler v. Johnson, 204 F.3d 168, 172-72 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ferrand v. Schedler, Case 2:11-cv-00926, Document 1 Filed 4/19/11 . . . . . . . . . . . . . 19, 22, 44

Giglio v. United States, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972) . . . . . . . . . . . . . . 37

Giles v. Maryland, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967) . . . . . . . . . . . . . . . . . . 38

Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942) . . . . . . . . . . . . . . . . 79

Glover v. Cain, 128 F.3d 900 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Gomillion v. Lightfoot, 364 U.S. 339 (1960) (gerrymandering by race) . . . . . . . . . . . . . . . . . 47

Guinn v. United States, 238 U.S. 347 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Haines v Kenner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) . . . . . . . . . . . . . . . . 17, 74

Hale v. United States, 435 F.2d 737 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 607 (1966) . . . . . . . . . . . . . . . . . . . 48

Hernandez v. Texas, 347 U.S. 475, 74 S.ct. 667, 98 L.Ed. 866 (1954) . . . . . . . . . . . . . . . . . . 60

Holloway v. Arkansas, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) . . . . . . 79

Imber v. Pachman, 424 U.S. 409, 96 S.CT. 984, 47 L.Ed.2d 128 (1976) . . . . . . . . . . . . . . . . . 37

Irvin v. Dowd, 366 U.S. 717, 6 L.Ed.2d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 74

Keeble v. United States, 412 U.S. 205, 208, 93 S.CT. 1993, 1995, 36 L.Ed.2d 844 . . . . . . . . . 33

Kirkpatrick v. Whitley, 992 F.2d 491 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Lane v Wilson, 307 U.S. 268 ("procedural hurdles") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Lockhart v. McCree, 476 U.S. 162, 174-175 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Louisiana v. U.S., 380 U.S. at 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Louisiana v. United States, 380 U.S. 145 (1965) (invalidation Louisiana law requiring voters to demonstrate knowledge of federal and state constitutions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Marshall v. United States, 360 U.S. 310, 312, 79 S.CT. 1171, 3 L.Ed.2d 1250 (1959) . . . . 30, 75

Martinez v. Ryan, 566 U.S. ----, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) . . . . . . . . . . 23, 26, 44

McCleskey v. Zant, 499 U.S. 467, 111 S.CT. 1454, 113 L.Ed.2d 517 (1991) . . . . . . . . . . . . . . . 4

McWilliams v. United States, 394 F.2d 41, 44 (8th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . 31

Melancon v. Kaylo, 259 F.3d 401, (C.A. 5 (La.) 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Mooney v. Holohan, 294 U.S. 103, 55 S.CT. 340, 79 L.Ed. 791 (1935) . . . . . . . . . . . . . . . . . 38

Murray v. Carrier, 477 U.S. at 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Myers v. Anderson, 238 U.S. 368 (1915) (grandfather clause) . . . . . . . . . . . . . . . . . . . . . . . . 47

Napue v. Illinois . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Napue v. Illinois, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959) . . . . . . . . . . . . . . 36, 37

Nash v. Illinois, 389 U.S. 906, 88 S.CT. 222 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Nix, 393 at 1237 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pace v. Digulielmo, 125 S.Ct. 1807, 544 U.S. 408 (U.S. 2005) . . . . . . . . . . . . . . . . . . . . . . . 7

Pamplin v. Mason, 364 F.2d 1, 6 (5th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 75

Peters v. Kiff, 407 U.S. 493, 92 S.ct. 2163, 33 L.Ed.2d 83 (1972) (exclusion of African-Americans) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Plessy v. Furguson, 163 U.S. 537, 544 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Powers v. Ohio, 499 U.S. 400 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 73

Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . 14

Regents University of California v. Blake, 438 U.S. 265, 393 . . . . . . . . . . . . . . . . . . . . . . . . 47

Rhines v. Weber, ante, 544 U.S. at278, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005) . . . . . . . 7

Rice v. Cayetano, 528 U.S. 495, 513 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Rogers v. Cain, 2006 U.S. Dist. Lexis 56463, Civil Action No. 05-0400, 2006 WL 2178579 (E.D. June 2, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.CT. 1507, 1522, 16 L.Ed.2d 600 (1966) . . . 30, 74

Smith v. Allwright, 321 U.S. 649 (1944) (white primary in Texas) . . . . . . . . . . . . . . . . . . . . 47

State of South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966) . . . . . . . . . . . . . . . . . . . . 49

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 676 (1984) . . . . 4, 5, 26, 27

Taylor v. Louisiana, 419 U.S. 522, 528, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) . . . . . . . 56, 58, 60

Terry Adams, 345 U.S. 461 (1953)(striking down a white primary) . . . . . . . . . . . . . . . . . . . . 47

Thiel v. Southern Pacific, Co., 328 U.S. 2217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (exclusion of wage-laborers) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58, 60

U.S. v. Cronic, 466 U.S 648, 659, 104 S.Ct. 2039, 80 L.Ed 657 (1984) . . . . . . . . . . . . . . . 26, 78

United States v. Chagra, 735 F.2d 870 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. State of Louisiana et al., No 3:11-CV-00470-JJB-DLD (M.D. La. Jul. 12, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53

United States v. State of Louisiana et al, No. 3:11-CV-00470-JJB-DLD (M.D. Jul. 12, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 46

United States v. Thomas, 362 U.S. 58 (1960) (registration) . . . . . . . . . . . . . . . . . . . . . . . . . 47

United States v. Agurs, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976) . . . . . . 36

United States v. Munoz, 150 F.3d 401, 414 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 35

United States v. Phillips, 664 F.2d 971 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 75

United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980) *cert denied*, 452 U.S. 942, 101 S.CT. 3088, 69 L.Ed.2d 957 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

United States v. Williams, 183 F.3d 458, 462 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Young, 470 U.S. 1, 18-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985) . . . . . . . . . . 36

Washington v. Davis, 426 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Williams v. Cain, 217 F.3d 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Withrow v. Roell, 288 F. 3d 199, 203 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073 (1886) . . . . . . . . . . . . . . . . 59

Ylst v. Nunnemaker, 111 S.CT. 2590, 115 L.Ed.2d 706, 59 USLW 4808 (1991) . . . . . . . . . . . 12

**STATE CASES**
Commonwealth v. Horne, 635 A.2d 1033 (Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

State v. Isaiah Doyle, 05-05262, 24th JDC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Carlin v. Cain, 706 So.2d 968 (La. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lard v. State, 749 So.2d 276, 280-81 (Miss.App.1999) (Irving, J., concurring) (justification tainted by impermissible generalizations regarding racial groups and their enviroment is inherently discriminatory) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

State ex rel, Bernard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

Sate of Louisiana v. Isaiah Doyle, 05-05262, 2th JDC, Parish of Jefferson . . . . . . . . . . . . . . . . 42

Smith v. Gearinger, 888 F.2d 1334 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

State . Lowenfield, 495 So.2d 1245, 1254 (La.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

State ex rel Glover v. State, 660 So.2d 1189 (La. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

State ex rel. Hills v. State, 54 So.3d 1109 (La. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

State ex rel, Bernard v. Criminal District Court, 653 So.2d 1174 (La. 4/28/95) . . . . . . . . . . . . . 4

State of La. v. Orman, 925 So. 2d 761 (La. App. 2 Cir. 3/16/06) . . . . . . . . . . . . . . . . . . . . . . 19

State v. Cage, 337 So.2d 1123, 1124 (la. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

State v. Funes, ____ So.2d ____ (11-KA-120, La.App. 5 Cir. 12/28/11) . . . . . . . . . . . . . . . . . . 6

State v. Broadway, 753 So.2d 801 (La.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

State v. Copeland, 530 So.2d 526 (La. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

State v. Costillo, 448 So.2d 238 (La.App. 1 Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

State v. Divers, 681 So.2d 320 (La. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **40**

State v. Hill, 562 So.2d 12 (La.App. 5 Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31, 76**

State v. Holmes, 619 So.2d 761 (La. App. 4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . **40**

State v. Palmer, 775 So.2d 1231 (La.App. 1 Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . **34**

State v. Parker, 372 So.2d 1037 (La.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **30, 74**

State v. Prudholm, 446 So.2d 729 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

## CONGRESSIONAL RECORDS

139 Cong. Rec. H1823 (daily ed. Apr. 1 1993) (statement of Rep. Flake) . . . . . . . . . . . . . . **52**

139 Cong. Rec. H1823 (daily ed. Apr. 1, 1993)(statement of Rep. Swift) . . . . . . . . . . . . . **51**

139 Cong. Rec. H1828 (daily ed. Apr. 1, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

139 Cong. Rec. H505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

139 Cong. Rec. S2738 (daily ed Mar. 11 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **50**

139 Cong. Rec. S5642 (daily ed. May 6, 1993) (statement of Rep. Ford) . . . . . . . . . . . . . . **51**

145 Cong. Re. 505 (daily Feb. 4, 1993) (statement of Rep. Towns) . . . . . . . . . . . . . . . . . . **51**

H.R. Rep. No. 103-9, at 1 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

H.R. Rep. No. 103-9, at 107 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **50**

R. Wardlaw, Negro Suffrage in Georgia, 1867-1930, p. 34 (Phelps,-Stokes Fellowship Studies, No. 11, 1932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **46**

S.Rep. 103-6 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **52**

## AUTHORITATIVE REFERNCE MATERIAL

ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b), and (f), and 3.8 . . . . . **37**

Abita R. Ellis, "The Cost of the Vote: Poll Taxes, Voter identification Laws, and the Price of Democracy, 86 Denver U.L. Rev. 1023, 1042 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48**

Allan Nevins, "*At the Roots of Democracy*," NY Times (September 16, 1945) . . . . . . . . . . . . **50**

Sommers, S., On Racial Diversity and Group Decision Making: Identifying Multiple Effects of Racial Composition on Jury Deliberations, J. of Personality and Soc. Psychol., 2006, Vol. 90, No. 4, 597-612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

"Assessment of Trial Level Defense Services in Louisiana 40 years after Gideon," . . . . . . . . . 24

"STRENGTHENING FORENSIC SCIENCE," by: the National Academy of Science . . . . . . . 25

IN THE
U.S. EASTERN DISTRICT
FOR THE STATE OF LOUISIANA

Rigoberto Funes #571875                                    DOCKET NO. _____
              *Petitioner*
VERSUS                                                     FILED_____

BURL CAIN, WARDEN                                          _____
LA. STATE PENITENTIARY                                     Deputy Clerk
              *Respondent*

## MEMORANDUM OF LAW AND ARGUMENT IN SUPPORT OF APPLICATION FOR FEDERAL HABEAS CORPUS RELIEF AND REQUEST FOR AN EVIDENTIARY HEARING

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, **Rigoberto Funes**, pro se petitioner who respectively moves this Honorable Court pursuant to *28 U.S.C. §2254* to review his claims herein that will support that his order for his custody was obtained in violation of both the *United States and Louisiana Constitutions*. The issues presented entitles petitioner to habeas corpus relief and/or an evidentiary hearing with the appointment of counsel, where a record will be established to support that petitioner is entitled to the relief sought.

## TIMELINESS OF APPLICATION UNDER STATE AND FEDERAL LAW

The claims raised herein, at the time they were presented to the state court forum fell within the statutory requirements of *Arts. 924-930.8 of the Louisiana Code of Criminal Procedure*, in that, it is within the State's time bar procedure. *Glover v. Cain*, 128 F.3d 900 (5th Cir. 1997). The Court held: Louisiana statute providing that prisoners had to seek Post-conviction relief within two years after judgment of conviction and sentence became final was independent and adequate state procedural rule. Petitioner is in compliance therewith.  Also, petitioner contends that the *AEDPA* requires that he meet the requirement of filing within one (1) year of finality of his state court proceedings, unless,

1

petitioner can establish "cause" for any subsequent default raised by the state or court. The *AEDPA* toling provisions are not jurisdictional and subject to equitable tolling.

The petitioner had the prescribed 365 days in the normal year plus the 90 day period credited before his state conviction becomes final through the opportunity, whether used or not, to proceed to the United States Supreme Court on direct appeal Certiorari. These periods combined result in petitioner being require to file his habeas petition within 455 days of finality in state court.

This petitioner recounts his relevant dates as being:

5/25/12-    Direct Appeal, La. Supreme Court denied Relief Denied

6/03/13-    Post Conviction Filed   ≈ 373 had passed

1/16/14-    Post Conviction Relief Denied

2/14/14-    Supervisory Writ (recorded as filed 2/21/14)

3/25/14-    Fifth Circuit Denied Supervisory Writs

4/14/14-    Rehearing timely filed

4/28/14-    Rehearing rejected

5/09/14-    Supreme Court brief filed

**6/4/14– Habeas filed (submitted to prison official for E-Filing)**

### PROCEDURAL IMPLICATIONS - ROLE OF STATE POST CONVICTION

In theory, those convicted of crimes still have remedies even if their convictions have been affirmed on direct appeal. The writ of habeas corpus, originally preserved by the federal constitution has an analogous counterpart in every state constitution. State post-conviction relief reviews the legal errors that may have occurred at trial and allows for expansion of the record where the original transcript does not reflect potential constitutional error. Indeed, state post-conviction is often the first time a court hears claim of **ineffective assistance of counsel, prosecutorial misconduct, jury**

2

irregularity, or facts discovered subsequent to or after trial that support the petitioner's conviction was obtained in violation of the Constitutions of the United States or Louisiana. Through time and custom, state post-conviction remedies are required to be brought to the state's court attention and exhausted before any federal habeas review will take place.

Before trial, attorneys were appointed from the Jefferson Parishes Indigent Defender Program, and for the purposes of Appeal, Counsels from the Louisiana Appellate Project were appointed. Petitioner contends that both his trial and appellate counsel, provided ineffective assistance of counsel when they failed to investigate and present to the trial court that the State's failure to comply with the *National Voter's Rights Act of 1993* was ultimately having a discriminatory effect upon the Grand Jury used to indict petitioner and his co-defendants as well as the Petit jury composition which would ultimately hear the case against him and his co-defendants. All attorney's involved in this case were ineffective, and flagrantly so, because they routinely failed to lodge individual and articulated objections on behalf of their clients, instead, if one attorney objected, the remaining attorneys would simply state that they adopted the objection but would not articulate any special reasons for their respective client's objection as to individual reasons.

As to the the *NRVA* violation, specifically, the non-compliance with the federal mandate, resulted in minorities being denied the benefit of a lawfully protected duty imposes upon public service employees to aid them in becoming registered voters which would have ultimately enabled them to become eligible Grand and Petit jurors.

The failure of trial counsel to present this issue constituted ineffectiveness becomes deficient counsel allowed a "structural error" to *whisk by* unchallenged. Unchallenged and/or preserved for review, it was not preserved for the direct appeal process which ultimately makes it ripe for review here.

3

Petitioner avers that he is in need of the appointment of counsel and the scheduling of an evidentiary hearing wherein evidence will be produced, in the form of documentary and testimonial evidence, which ultimately supports the finding that petitioner's conviction was obtained in violation of both Constitutions, that of the *United States Constitution* and the *1974 Constitution for the State of Louisiana* and the *National Voter's Rights Act of 1993*.

A review of the constitutional violations cited in the application for post conviction ( violation of *Batson* and forcing the use of all peremptory strikes to be used against some jurors who should have been dismissed for cause) confirms trial counsel's deficient and prejudice actions in representing petitioner and "fall below an objective standard of reasonableness." The claims as presented contain solid, meritorious arguments based on direct controlling precedent and in fundamental fairness must be brought to the court's attention and reviewed on the merits. *United States v. Williams*, 183 F.3d 458, 462 (5th Cir. 1999).

A due diligent effort was made by petitioner to timely obtain the trial transcripts of the jury selection has failed. Consequently, he requests their production pursuant *State ex rel, Bernard*. The production of this transcript would support the issues *Batson* and Peremptory challenge issue, therefore, an objective factor external to the his defense constitute cause that prevented him from raising these claims on direct appeal, which cannot fairly be attributed to him. *McCleskey v. Zant*, 499 U.S. 467, 111 S.CT. 1454, 113 L.Ed.2d 517 (1991) (quoting *Murray*, 477 U.S. at  488) (emphasis supplied).  Counsel may be at fault for not requiring the production of these records on appeal, but counsels lapse cannot be imputed to the petitioner.

A criminal defendant has a constitutional right to receive effective assistance of counsel on at trial and direct appeal is governed by the familiar two part *Strickland* test. Failure of the state courts to reach the merits of the claims presented herein  resulted in prejudicing petitioner's right to

4

seek judicial review of all constitutional violations that rendered his trial fundamentally unfair.

Louisiana law does state that a: [p]etitioner may bring claims of constitutional violations on post conviction relief under the provisions of *La.C.Cr.P. art. 930.3(1)* therefore, *La.C.Cr.P. art. 930.4* is inapplicable. See, *State v. Costillo*, 448 So.2d 238 (La.App. 1 Cir. 1984).

A claim of ineffective assistance of counsel which is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (1984).   Ineffectiveness of trial and appellate counsel is to be assessed by a two-part test as outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 676 (1984).  If  a  procedural default is the result of ineffective assistance of counsel, the *Sixth Amendment* itself requires that responsibility for the default be imputed to the State, which may not conduct trials at which persons who face incarceration must defend themselves without adequate legal assistance." *Murray*, supra, citing *Cuyler v. Sullivan*, 466 U.S. 335, 344, 100 S.CT. 1708, 1716, 64 L.Ed.2d 333 (1980).

If this Court consider any of these claims procedurally defaulted prior to reaching the merits, this Court must find he (petitioner) was denied ineffective assistance of counsel on appeal.  Further, petitioner has also submitted his reasons through this pleading sufficient to warrant the relief requested and the appointment of counsel to help address the claim of ineffective assistance of trial counsel in this first direct-appeal on this particular claim which he was required to raise for further developement in this Application for Post Conviction Relief.  This form of dual pleading direct appeal of the ineffective assistance of trial counsel claim/application for post conviction, when complied with,  is sufficient to comply with the provisions of  *La.C.Cr.P. art. 930.4F*.  Therefore, ineffective assistance on the part of appointed  trial counsel or appointed appellate counsel constitutes external objective factors created by the State. Beyond this, the state is unilaterally responsible for refusing to provide

5

petitioner with the composition of a trial and grand jury composition which comform to the mandates of law federal law. (*NRVA*).  The prior suppression/concealment of this information as it specifically pertains to Jeferson parish and the restriction of access to the means to investigate and present the information resulted   in the state restrict petitioner's ability to raise the related claims in a "supplemental" appellate brief while the case was on partial direct appeal impracticable.

### JURISDICTION

Jurisdiction is proper in this Honorable Court pursuant to *28 U.S.C.§ 2254.*

### STATEMENT OF THE CASE

On January 8, 1998, Rigoberto Funes was charged by Grand Jury Indictment with four (4) counts of second degree murder, violations of statutes (*R.S. 14:30.1*) relative to such.  Count II was dropped and petitioner proceeded to trial on counts I, III, and IV. A twelve member jury found him guilty as charged on the remaining counts..

Petitioner was subsequently sentenced to three (3) consecutive life terms of imprisonment to be served consecutively.  Petitioner's  Motion for Reconsideration of Sentence was denied by the trial court.

On December 28, 2011, the Fifth Circuit Court of Appeal affirmed defendant's convictions, but remanded for resentencing.  *State v.  Funes*, _____ So.2d ___ (11-KA-120, La.App.  5 Cir. 12/28/11).  Defendant timely filed a writ of certiorari in the Louisiana Supreme Court.  The Supreme Court denied relief on May 25, 2012,  (2012-KO-0290).  Petitioner proceeded with his application for Post-Conviction Relief which was denied, thereafter invoking the Supervisory Jurisdiction of the appellate court whom erroneously denied petitioner the benefit of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).  and sanctioned petitioner for not resorting to a practice which is statutorily prohibited by *La.C.C.P. Art. 1915(B)*, these ultra vires were combined and relief

6

denied. Petitioner attempted to have the court correct the "clearly erroneous" determinations in both respects via rehearing, in hopes of avoiding proceeding into the State Supreme Court seeking "discretionary review" of what would be a dual erroneous determination and subject his petition to further affirmance of the erroneous procedural bar by one word denial. Even when petitioner made the aforesaid "good faith" attempt, the Court of Appeals refused further review in total disregard for the CLEARY ESTABLISHED fedral rule (mailbox rule) set forth in *Houston v. Lack*. Petitioner then immediately proceeded to the state supreme court wherein he provided the necessitated exhibits and full explaination of what had occurred in the corts below. Petitioner sought remand and an instructive order to the lower to correct it's "clearly erroneous decision" resulting from its "clearly erroneus determination of the facts" because that had yeilded a decision that was "contrary to clearly established law" as determined by the U.S. Supreme Court. Petitioner did not wish to have the federal court apply the "Look-through doctrine" in to his case so that is mught rely on the erronoes application of a procedural bar. Petitioner's Supervisory Writ of Review seeking correction of that error remains before the La. Supreme Court for resolution.

## INVOCATION OF THE PROTECTIVE WRIT PROCEDURES SET OUT IN
### Pace v. Digulielmo, 125 S.Ct. 1807, 544 U.S. 408 (U.S. 2005)

This petitioner hereby invokes the authority of the United States Supreme Court in the case of *Pace v. Digulielmo*, 125 S.Ct. 1807, 544 U.S. 408 (U.S. 2005), which affords him (if necessary) the opportunity to file which has been described as a "protective" petition in federal Court. Specifically, the court wrote:

> "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceeding until state remedies are exhausted. See *Rhines v. Weber*, ante, 544 U.S. at278, 125 S.Ct. 1528, 1531, 161 L.Ed.2d 440 (2005) A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good Cause" for him to file in

federal court. Ibid. ("[I}f the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in dilatory tactics, "then the district court likely "should stay, rather than dismiss, the mixed petition")

Also, the "protective federal petition" was noted in *Melancon v. Kaylo*, 259 F.3d 401, (C.A. 5 (La.) 2001) "if there is a possibility that the right to federal habeas might be extinguished. Wherefore petitioner prays that this petition will suffice to toll pursuant *§ 2244(d)(2)*

## COMPLIANCE WITH LEGISLATIVELY CREATED STATE STATUTE VS. COMPLIANCE WITH COURT CREATED RULES

In the realm of statutory interpretation, the U.S. Fifth Circuit Court of Appeal has set out its method of review.  In it's 2002, decision it wrote:

> "Statutory interpretation begins, of course, with the plain language of the statute.  When the statute's language ... is plain we must abide by it; we may depart from its meaning only to avoid a result so bizarre that Congress could not have intended it." *Withrow v. Roell, 288 F. 3d 199, 203 (5th Cir. 2002) (internal citation and quotation marks omitted).*

Applicant contends that in seeking an application for rehearing of the erroneous decision of the Louisiana 5th Circuit as to his State-level Application for post-conviction relief, he specifically, relied upon the statutes created by the Louisiana legislature which governed his situation. The statutes provide that if applicant so chooses to utilize "An Application for Rehearing", as long as it is timely filed, the judgement of the court will only become final  "only"after the resolution of this rehearing. The Federal Judiciary has long reasoned that: [federal courts it defer to state court statutes for resolution of cases], this is so because Legislatively Created Statutes take precedence over Court Created Rules.

There are two (2) existing state statutes which remain in effect and were in effect at the time petitioner applied for state court rehearing (at the PCR level before the Fifth Circuit).  These statutes,

8

as referenced below, effectively gave applicant standing to seek rehearing while exercising his rights to invoke the "Supervisory Jurisdiction" of the Court of Appeal.   The fact that this applicant was exercising his rights in seeking  state-level Supervisory Review causes the case to fall within the guidelines of the following statutes.

### Art. 922 Finality of Judgement on appeal

A.  **Within fourteen days of rendition of the judgement of the supreme court or any appellate court, in term time or out, a party may apply to the appropriate court for a rehearing.  The court may act upon the application at any time.**

B. **A judgement rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and no application for rehearing therefor has been made.**

C. **If an application for a rehearing has be made timely, a judgement of the appellate court becomes final when the application is denied.**

D. If an application for a writ of review is timely filed with the supreme court, the judgement of the appellate court from which the writ of review is sought become final when the supreme court denies the writ.

In sections A and B of the aforementioned statute, applicant is awarded fourteen days in which to seek rehearing, and in section b of this article the legislature provided that the only way the decision became final was "when the delay for applying for a rehearing has expired and no application therefore has been made."

Applicant contends that this duly legislated Article provided him with an opportunity to seek rehearing, which he observed, the statute, contrary to the suggestion of the Magistrate, does provide for the tolling of time while the application for rehearing is pending, as Section B of the statute provides that the judgement does not become final unless:

9

"The delay for applying for a rehearing has expired and no application therefor has been made."

The Official Revision Comment as to section "B" provides:

This article is intended to have state-wide application in all courts having criminal jurisdiction.

The second "Duly Legislated Article" which gives applicant standing to file for a rehearing on direct appeal in *La.C.C.P. Art. 2166* wherein it reads:

Art. 2166. Court of appeal judgement rehearing; finality; stay

A.    Within fourteen days of the transmission of the notice of the judgement of the court of appeal, a party may apply to the court of appeal for a rehearing. Within thirty days of the transmission of the notice of the judgement of the court of appeal, a party may apply to the supreme court for a writ of certiorari. The judgement of a court of appeal becomes final and definitive if neither an application to the court of appeal for rehearing nor an application to the supreme court for a writ of certiorari is timely filed.

B    When a party files a timely application to the court of appeal for a rehearing, the time within which any other may apply to the supreme court for a writ of certiorari shall be extended until thirty days of the transmission of the notice of a denial of rehearing.

C.    When a timely application for rehearing has been filed in the court of appeal and the court of appeal denies the application, the judgement becomes final and definitive unless and application for writ of certiorari to the supreme court is filed within thirty days of the transmission of the notice of a denial of rehearing.

There is nothing in the Louisiana Articles cited above which set forth that applicant was without right to pursue a timely applicant for rehearing, nor does either of these articles cause applicants tolling to commence to run against him while the rehearing is pending, in fact, both specifically speak against it.

TRUST IN THE DECISION OF THE SUPREME COURT JUSTICES TO DETERMINE WHETHER TO ENTERTAIN AN APPLICATION FOR REHEARING ON A CASE WHICH HAS

JUST BEEN DECIDED WITH RESPECT TO ARTICLES
La.C.Cr.P. Art. 922 & La.C.C.P. Art 2166.

In the case of *Williams v. Cain*, 217 F.3d 303, the Court extensively reviewed and discussed

the application of State Annotated Articles and the Rules of the La. Supreme Court. It found what

appears below:

> "The district court instead held that because there was no **evidence
> that the Supreme Court had exercised its discretion to consider
> William's untimely application on the merits**, the application was not
> "properly filed" for the purposes of *2244(d)(2)*."...

> "The district court suggested that **if the Louisiana Supreme Court
> had exercised its discretion to consider Williams application on the
> merits, the one-year limitation period would have been tolled while
> that court considered the application**. However, as the district court
> observed, the record disclosed no evidence that the Louisiana Supreme
> Court considered William's claims on the merits, instead of dismissing
> it as untimely.

With attention payed to the underlined above, and the facts of this case as to the subject-matter

application for rehearing in accord with state legislated provisions, one can see that this case in a

better posture than *Williams* to decide the issue of tolling.

In most cases coming before the Judiciary, the case is one which addresses applications for

post conviction relief. This case is different in that the Legislated Articles specifically award

applicants the choice of pursuing a rehearing within fourteen days of judgement, and provides the

requirement that the rehearing be filed timely. Once the rehearing is timely filed, the judgment does

not become final until the rehearing is decided. (*La.C.Cr.P. Art 922 and La.C.C.P. Art 2166*).

### GRANT OR DENIAL OF WRIT

The State is likely to emphatically contend that the tolling period resumed against applicant

on 3/25/14 date of denial before rehearing was timely sought, and later expired because a rehearing

was against a state court rule but authorized by statute. Contrasting such reliance, the state relies on

"rule" petitioner places his reliance on "legislated statute" which "specifically govern the time at which A JUDGEMENT OF THE COURT OF APPEAL BECOMES FINAL."

On first glance one would believe that *Rule URCA 2-18.7*, would have precluded the rehearing which petitioner applied for in the State Fifth Circuit Court of Appeals, however, further delving into the matter and the cited Articles show otherwise. Also, one must be ever mindful of the *Ylst v. Nunnemaker*, 111 S.CT. 2590, 115 L.Ed.2d 706, 59 USLW 4808 (1991)holding which requires a "Clear and Express" reliance of the state's court's invocation of adequate and independent grounds of a state procedural bar in order to circumvent federal review. <u>At the time such invocation may come into play, the important issue of whether Court Rule overrides Duly Legislated Law must be considered</u>.

In addressing this matter we turn to the Louisiana Rules of Court for the purpose of precise and expedited resolution of the controversy at hand.

**Rule 1.0 Construction of Rules and Appendices, which provides:**

> These rules and appendices are intended to govern interaction between the courts, counsel and litigants and to ensure the administration of justice in an efficient and effective manner.

> Local Administrative rules governing internal operating procedures of the courts, on topics not otherwise covered by these rules, may be adopted by en banc order of the court.

> Any local administrative rule shall be made available to the public by filing a copy with the Judicial Council of the Supreme Court and by filing a Copy with the Clerk of Court for the appropriate parish or parishes (Adopted and effective April 1, 2002, effective April 1, 2002.)

> Comments

> *(a)* The Louisiana Supreme Court has constitutional authority to promulgate the Rules *under La. Const. Art. V § 5*. These Rules are intended to supplement the Codes of Civil and Criminal Procedure. **Therefore a conflict between a Rule and Legislation should be resolved by following the legislation.**

12

*(b)* The Appendices are subordinate to the Rules. Therefore, a conflict between a Rule and an Appendix should be resolved by following the Rule. The information in the Appendices was provided by the various judicial districts and may be revised in accordance with the procedure found in *Rule 1.3(c)*

With all due attention and respect given to comment (a), and what sets itself out as a conflict between a state Remedy made available to applicant after the initial Appeals Court decision, the *Rule URCA 2-18.7*, is subordinate to the Legislation set forth in *La.C.Cr.P. Art. 922 and La.C.C.P. Art. 2166*. The legislation *La.C.C.P. Art. 2166* and *La.C.Cr.P. art.922* provided for this habeas applicant to seek rehearing within fourteen days of the judgment of the decision by the Fifth Circuit Court of Appeals. The legislature did not qualify what type of judgement it need be, and surely the legilatures is credited with taking into account the wisdom of its actions. If the Louisiana Legislature wanted to place stipulations on the type of judgements a rehearing could be taken from, surely it would have. The Legislated Articles only recognize the fourteen day time requirement for filing the rehearing and further provides that, if a rehearing is timely filed, the decision of the Court of Appeals does not become final until the Court of Appeal has decided upon a timely filed rehearing. *Id at La.C.Cr.P. Art. 922 and La.C.C.P. Art. 2166*

### FAILURE TO TOLL DURING PENDENCY OF REHEARING APPLICATION MADE AVAILABLE TO DIRECT APPEAL APPLICANTS IN THE STATE OF LOUISIANA BY ACTION OF THE LOUISIANA LEGISLATURE (I.E. La.C.C.Pr. Art 922 & La.C.C.P. Art 2166)

The *AEDPA* requires that a state prisoner seeking federal habeas corpus remedy to file his federal petition within one year of the "conclusion of direct review or the expiration of the time for seeking such review." *28 U.S.C. § 2244(d)(1)(A)*. In Louisiana, under the banner of *Finality of Judgement on Appeal La.C.C.Pr. Art 922 & Court of Appeal judgement;rehearing; finality; stay La.C.C.P. Art 2166*, state prisoner's are afforded an opportunityti invoke the Supervisory Jurisdiction of the Louisiana Courts of Appeal as matter of constitutionally protected right (See

13

*La Const. Art V, § X*) and once invoked finality is determined by duly legislated articles/statutes not rules. Given the aforementioned, applicant contends that he is within the perimeters of the State's Legislated guidelines to pursue a rehearing and further, finality of his the court of appeals decision was not achieved until the rehearing was finalized by decision.

The Supreme Court has interpreted the word "pending" to "cover the time between a lower state court decision and the filing of a notice of appeal to a higher state court." *Carey, 536 U.S. at 217.* "Pending" refers to the continuation of the process, or the time until the process is completed. *Carey, 536 U.S. at 219-20.* The process is not complete until there is no other avenue the prisoner could pursue. Thus, the claim remains pending until the time to seek review expires. In other contexts, whether the inmate files for review does not dictate tolling provisions. For example, the *AEDPA* limitation period does not begin to run until the time in which an inmate could seek certiorari review has expired, regardless of whether the inmate seeks such review. Moreover, , it has been held that where an inmate files an appeal from the denial of a motion for rehearing of the denial of a motion to correct sentence because the motion for rehearing fell within the "category of State post conviction or other collateral review." *Nix*, 393 at 1237 (11th Cir. 2004). It held that, "it was error for the district court to have failed to have tolled the statute of limitations during the time Nix appealed the denial of his motion to correct sentence. See also *Cramer*, 461 F.3d 1380 (11th Cir. 2006).

### Equitable Tolling

Equitable tolling principally applies where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir. 1999) (citing *Rashidi v. American President Lines,* 96 F.3d 124, 128 (5th Cir. 1996). The evidence must show that the applicant, though deterred

14

by matters outside his or her control, was nevertheless diligent in his or her pursuit of *§ 2254* relief.

*Coleman,* 184 F.3d at 403.

In the case of *Rogers v. Cain,* 2006 U.S. Dist. Lexis 56463, Civil Action No. 05-0400, 2006

WL 2178579 (E.D. June 2, 2006), this Honorable Court rationalized that

> "Clearly, in the instant matter, Roger was not diligent in his pursuit of habeas corpus
> relief. His May 2, 2000 application for rehearing before the Louisiana Supreme Court
> was denied on February 9, 2001. At that point, Rogers still had approximately five
> months of his 123 month prescription period remaining. If he had diligently sought
> state post conviction relief, thereby tolling prescription, he could have timely filed a
> habeas corpus petition. Rogers however, waited almost nine months, until November
> 8, 2001, before seeking state post-conviction relief. Such action or, more precisely,
> inaction, can hardly be characterized as diligent."

In the instant case, after applicant followed his reliance upon the finality of judgment set forth

in *Articles 922 of the La. Criminal Code of Procedure* and *Article 2166 of the La. Code of Civil*

*Procedure* which are interrelated, thereafter, he followed all other steps for exhaustion purposes

diligently. Applicant's judgement of denial became final pursuant Art. **922 Finality of Judgement**

**on appeal** and *La. Civil Code of Procedure Art 2166*, on April 28, 2014.

Functioning under the terms set forth in the aforementioned articles, applicant filed what he

contends is a timely application for post conviction relief. The State Court of Appeals rendered its

first decision on March 25, 2014, petitioner's *Art. 922 & 2166* Rehearing was timely filed within the

prescribed fourteen days, and wrongfully decided in a manner contrary to duly legislated statute on

April 28, 2014 Given that the *Criminal Code Article 922 & Civil Code Art. 2166* application tolled

the *AEDPA,* the filing of petitioner's Habeas "Protective" petition to this Honorable Court petitioner's

prescriptive period should not run against him any further. Altogether only 438 days accrued against

petitioner's 455 day *AEDPA* prescriptive period (365 +90= 455). Resolution of state court post-

conviction process lasted from 6/13/13 and remains in progress, but the state erroneously applied a

label of untimeliness to petitioner's writ mailed 2/14/14, the state asserts the filing date a 2/21/14 (the

15

date is was filed by the court. Thereafter, petitioner filed this pleading with this Honorable Federal Habeas Court by May 29, 2014.

If the court elects to reject this contention based upon all that is set forth above, applicant wishes the court to consider something which he has repeatedly apprised the lower courts of. Specifically, applicant hereby asks that the arguments arising before reaching the "Equitable Tolling" portion of this pleading ,the question be answered whether the Duly Legislated Provisions of *La.C.Cr.P. Art. 922 and La.C.C.P. Article 2166* could have misled applicant to believe that he was functioning in accordance with the laws of this state as set forth in unequivocal terms by the Louisiana Legislature.

Instead, petitioner contends that he adhered to and followed the plain language of *La.C.Cr.P. Art. 922 and La.C.C.P. Art 2166.* Petitioner contends that he was not acting out of ignorance of the law, but rather, he acted in accordance with statutory law. The Court may decide, "there was a possible misleading nature of two (2) duly legislated state statutes/articles which directly governed the availability of a rehearing as long as it was timely filed within fourteen (14) days of the Appeals Court Judgement, and such pleading would offset finality until the rehearing was ruled upon.

Such being the case, applicant contends a case such as *Fedler v. Johnson,* 204 F.3d 168, 172-72 (5th Cir. 2000) and this one are not compatible.

Petitioner Funes and his co-defendants were charged with the second degree murder of four persons during a robbery. Original charges were first degree murder, those charges were reduced to second degree murder because the bar owner shot the fifth person. That charge was dropped.

## LAW AND ARGUMENTS

## PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

16

The law, as it is presently exists does not hold a pro se prisoner to the high standards in which attorneys are held to.  Further, the pro se prisoner is to be given the benefit of any favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case.  Most importantly, this is how the United States Supreme Court addressed the issue in *Haines v Kenner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully **pleaded," must be held to "less stringent standards** than formal pleadings drafted by lawyers" and **can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"** Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Under this settled-principle of law, the Honorable State Courts were duty-bound to permit the development of the underlying facts of this case.  Petitioner, **futilly invoked his right to be held to a less stringent standard which provides that his pleading** "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'."  Petitioner contended that this precedent of the United States Supreme Court regard pro se pleadings was binding upon the state courts.

## CLAIM NO. 1
## FACTS NOT KNOWN EXCEPTION AS APPLICABLE TO WHAT (FERRAND V. SCHEDLER) REVEAL THAT WAS PREVIOUS NOT KNOWN TO ACCUSED OR HIS ATTORNEY

As it stands at a State level, 1.) there is no requirement of "due diligence" in seeking facts upon which to file a claim predicated upon *Article 930.4* FACTS NOT KNOWN[1] or 2.) a time

---

[1] State ex rel. Hills v. State, 54 So.3d 1109 (La. 2011)

limitation for meeting the exception.[2]  As written *art.  930.4* is designed to deprive only certain

applicants (those without new facts [*art 930.8(A)(1)*], of the unlimited time period within which to

file an application for post- conviction relief.  Because this is a limited and selective restriction, it

cannot be said  that *art. 930.8(A)(1)* therefore denies those meeting the exception their right of access

to court...).   Consequently, this petitioner does not fall in the catagory of one who failed to raise a

known issue on appeal.

      Also, the Louisiana Supreme Court has made clear that there is no "due diligence requirement

in seeking the facts to be used in meeting an exception to procedural bars.  However, out of abundance

of caution, petitioner did file his application within one year of discovering that: "the Parish of

Jefferson, State of Louisiana, through its public assistance offices has been **violating the *NVRA***

(National Voters Right Act), which in turn **had a direct impact on the composition of plaintiff's**

**petit/trial jury."**

      As explained, the Louisiana Supreme Court, by per curiam decision in *State ex rel.  Hills*,

Supra, found that the First Circuit Court of Appeals erred when it dismissed Hills' application as

untimely based upon the time lapse between his post-conviction discovery of the discrepancy in the

trial transcripts and the filing of his application for post conviction relief.  The Court reasoned:

    "The exception to the [two] year time bar provided by La.C.Cr.P. art.  930.8(A)(1) for
    claims based on facts 'not known to the petitioner or his attorney' imposes no express
    diligence requirement on the inmate and remains subject only to the laches-like
    provisions La.C.Cr.P. 930.8(B)..."

      For the reason given, every justice of the Louisiana Supreme Court  agreeably  held: Hills'

post conviction discovery of the discrepancy in his own trial transcript (a trial in which Hills was in

fact present) met the requirement(s) of the procedural bar exception.  Logically then, plaintiff's post-

---

[2] State ex rel Glover v.  State, 660 So.2d 1189 (La.  1995)

conviction and post-appeal discovery of the violation of the Federal *NVRA* [3] and its impact on the composition of his trial jury meets this exception as well. These are facts which plaintiff had no knowledge of, nor knew the Parish of Jefferson, State of Louisiana to be violating nor was he aware that this violation of the *National Voters Rights Act* was significantly altering the composition of his trial jury, until, he was given notice of the case of *Ferrand v. Schedler*, 2:11-cv-00926-LMA-JCW.

Also, for the convenience of both the Court as well as the Law Clerk's who will be addressing this case, Petitioner, urged before the state court, to no avail, that he firmly meets the exceptions of the procedural bars (failure to object/ failure to file motion to quash, ect.) relied upon by the state. In *State of La. v. Orman*, 925 So. 2d 761 (La. App. 2 Cir. 3/16/06), , pursuant the procedural bar exception *930.8(A)(1)*, Orman raised two claims relating to the states primary witness (Dee Dee Davis). As to Orman's first claim in relation to Davis, the Court found it was procedurally barred because the records revealed that the facts underlying that claim were known to the plaintiff as early as 1998. In addressing solely that issue the court wrote:

> "While [the] holding [*Carlin v. Cain*, 706 So.2d 968 (La. 1998)] relieves an applicant from due diligence in seeking to discover facts that will support an exception to the limitation, it does not relieve the applicant from timely asserting a claim, once the facts supportive of that claim have been discovered."

However, contrasting the decision rendered as to claim one, the court found that Orman's second claim relating to Davis, **was not procedurally barred** *because the facts underlying that*

---

[3] Plaintiff obtained a copy of the Civil Suit filed in *Ferrand v. Schedler*, Case 2:11-cv-00926, Document 1 Filed 4/19/11. See Exhibit "A" (This civil suit is attached hereto and it is 37 pages long, and it has exhibits from Attorney Ronald Wilson ("Notice Letter-2 pages) and another from Attorney Ronald Wilson ( Letter to Secretary Schedler-pages 4 pages). These exhibits are copies of correspondence to Secretary of State, Honorable Tom Schedler.

*claim were filed in the district court within two years of Orman's January 2005 discovery of*
*those facts.* Here the same principle is applicable.

Plaintiff was made aware of the extensive investigation conducted by the NAACP, Project Vote, and Attorney Ronald Wilson of New Orleans, regarding the violating of the *NVRA* in late 2011. This is November of 2012, whereas plaintiff filed this pleading months ago on or about 8/2/2012. In addition hereto, this claim will be further developed below.

This Federal Constitutional Violation challenges the exclusionist practices of state actors who by failing and/or refusing to perform their jobs, caused a direct negative impact on the pool of jurors available to be members of petitioner's trial/petit jury. **The Federal Question that remains here is: "Whether or not this form of jury-fixing" so infects the Due Process and Equal Protection of both petitioner and members of society, until accountability is warranted in the form of ordering a new trial?"**

Having been given the opportunity to directly argue this issue and the State not doing so in its procedural objections waived briefing of the issue. This clears the way for this Honorable Court to declare "null" and "void" the previous trial in this matter based upon the constitutional merit of this claim. To show the court the disparity in the persons who sought public assistance in Louisiana and was entitled to the full protection and operation of the *NRVA*, the following charts are provided and petitioner wishes to be appointed counsel and given access to subpoena power, witnesses, and expert witnesses in order to verify and interpret these graphs for the court. Though the disparities are obvious, plaintiff avers that with the assistance sought, he can meet his burden of proving this claim. The charts are listed and titled below.

20



Initial Applications for Louisiana SNAP

(Food Stamp Program) - Fiscal Year 1995-2008



Louisiana Medicaid Applications to DHH

Applications Received during Fiscal Years 2005-2010



Voter Registration Applications from

La. Public Assistance Agencies during 1995-2008

21

As reflected above, there are gross disparities in the amount of people who sought public assistance versus the amount of voter registration applications available and/or. The failure to implement the *NVRA of 1993*, was pervasive and widespread. At one point, the **Department of Children & Family Services** did not have enough voter registration applications forms available for distribution nor was assistance offered to applicants who may have needed help in completing the forms as required by law.

The United States Department of Agriculture reported high numbers of total participants in the Louisiana food stamp program (SNAP), with approximately 325,000 (1996); 268,000 (1997); 255,000 (1998) and 238,500 (1999) adult citizen participants per year, and 356,000 adult citizens in fiscal year 2009. Compared to the figures on the charts above, the disparity is obvious. Most importantly, the Department of Children & Family Services, has conceded in *Ferrand v. Schedler*, to non-compliance with the *NVRA*, thus, plaintiff has made a relevant showing of a claim which if established, would entitle him to relief. (See *La.C.Cr.P. Art. 927(A)*) Plaintiff furthers that he hereby requests that this Honorable Court takes "Judicial Notice" over all the facts, evidence and pleadings filed in *Ferrand v. Schedler*, 2:11-cv-00926, (U.S. Eastern District of Louisiana 2011),(See Exhibits "A" and "B") as it relates to proving plaintiff's complaints of deprivation of a constitutionally protected right which had a discriminatory (class discrimination) effect upon the composition of his trial/petit jury.

**CLAIM #2**
**DEFERRAL OF IAC CLAIM FROM DIRECT APPEAL TO PCR BY COURT JUDGEMENT CONSTITUTES 'CAUSE' MANDATING COUNSEL BE PROVIDED ON THE CLAIM OF TRIAL COUNSEL INEFFECTIVENESS AND USES THE EVIDENCE FROM "An Assessment of Trial Level Defense Services in Louisiana 40 years after Gideon"**

Plaintiff contends that *Art. 927(A)* in pertinent part provides:

22

> If the application alleges a claim which if established would entitle the petitioner to relief, the court shall order the custodian, through the district attorney in the parish in which the defendant was convicted, **to file any procedural objections he may have, or an answer on the merits if there are no procedural objections within a specified period not in excess of thirty days.**

This provision gives the state [a period not in excess of thirty days] to file procedural objections. The only requirement imposed upon the plaintiff is: "to allege a claim which, if established, would entitle petitioner to relief." Plaintiff, as the petitioner in this proceeding, has met this threshold requirement on every claim presented for review, because each of the claims presented, once established, would entitle him to the relief sought.

In its procedural objection, the state's focus was on whether or not **Martinez v. Ryan**, was applicable to the plaintiff's case and facts. Plaintiff avers that *Martinez* is applicable and that he has an available remedy in this Honorable Court. Because ineffective assistance of counsel claim are routinely deferred from the direct appeal process to post conviction proceedings by judgement of the Circuit Courts of Appeal, within the State of Louisiana. This same issue was subsequently raised before the La. Supreme Court who stated, "ineffective assistance of counsel claims are better raised on post conviction where an evidentiary hearing can be held." These holdings function as a deferral of Ineffective Assistance of Trial Counsel issue to post-conviction proceedings where factual developement can take place. This defferal practice effectively combines the IAC (ineffective assistance of counsel) claims as direct appeal claims relayed for review with the claims that are going to be raised as post-conviction claims.

What effect did the deferrals have on petitioner's rights, a crushing one, as set out and described in *Martinez*. The post-conviction proceedings here are the first opportunity that a petitioner will have to have this claim heard, because no court heard the merits of the claim on

appeal. For this reason, direct appeal proceedings remained ongoing at the time plaintiff filed his Application for Post-Conviction Relief. For the purposes of that action, the court should be mindful that there was a consolidation of the deferred IAC claim from the direct appeal. The direct appeal claim of "ineffective assistance of counsel" was not heard on direct-appeal but re-directed to the post- conviction proceedings, specifically for further development, which to date has not occurred. Consequently, the continuation of the direct-appeal (IAC claim) and post-conviction proceedings  proceedings took place simultaneously as one.

Trial counsel was ineffective for having made several prejudicial stipulations which allowed evidence to go before the jury without affording his client the benefit of the *6th Amendment's, Confrontation Clause* and *Due Process Clause*. Petitioner is entitled the full protections of both and petitioner was constructively denied a proper defense on this issue as a result of underfunding, political interference and systemic ineffecticeness as set for in the "**Assessment of Trial Level Defense Services in Louisiana 40 years after Gideon,**" (See **Exhibit "C"**) Researched and written by the **National Legal Aid Defender Association**, Commissioned by the **National Association of Criminal Defense Lawyers.**" Petitioner agrees with and hereby adopts herein, by both reference and attaching hereto a diplicate of the same, the whole of there assessment as applicable to his case and how he was constructively denied his right to conflict-free and effective assistance of counsel due to systemic ineffectiveness which constructively deprives him of his *Sixth Amendment* right to effective assistance of counsel. As **Exhibit "D"**, offered is correspondence from Honorable Justice Calegero.

The state's theory of petitioner being responsible for firing a fatal shot was rested upon the foundation that there was an alleged match between a gun found and what petitioner is alleged to have had in his possession, the bullet from the victim's and shell casings found on the scene of the crime.

For comparative purposes, when the gun was test-fired and the results compared between the crime scene evidence and the test-fire evidence, the state's expert declared a match.

Despite the opinion of the state's expert opinion, the petitioner hereby alerts this Honorable Court to a critical and "NEW DEVELOPMENT," which crumbles a substantial portion of the foundations of the state's case.

There is a book which has been published in the field of science which establishes some critical facts now accepted amongst the leading scientist in the field of forensics.  The book is entitled "STRENGTHENING FORENSIC SCIENCE," by: the National Academy of Science.[4]  This book reveals that matching guns to bullets and bullets to guns as "junk science" and is wholly unreliable. As such, petitioner contends that in the absence of what has been purported to be a match between the gun and the bullet fragments which were extracted from the victm(s).  For this reason, if there has been any false matches, petitioner is entitled to the protection of the *Sixth Amendment* which specifically provides for Due Process of Law and a fair trial, this can only be secured by affording petitioner the moneys for expert testing on the bullets and bullet fragments himself.  Trial counsel should have had this done, however, trial counsel (as an independant and seperate claim was ineffective) for not making full use of this new scientific developement in defense of his client.  This also deprived petitioner of his rights pursuant the *14th Amendment* in its enitirety.  Petitioner wishes the appointement of counsel to anmend and/or supplement this pleading as need for he lacks the ability to perform the  substantive and fundamental duties which ultimately make the post conviction process

---

[4] Petitioner hereby invokes his right to secure out of state witnesses so that the authors of this work can come in as expert witnesses and verify how and why the science relied upon by the state and the jury to convict petitioner amounts to unreliable "junk science" and this is sufficient to warrant the finding of reasonable doubt.  Petitioner wishes to have the aid of counsel in or to secure the presence and attendance of these witnesses in a timely and prepared manner for demonstrations to the court.

meaningful, and since this is a claim of ineffective assistance of trial counsel, the procedural and equitable considerations set out in *Martinez v. Ryan*, 566 U.S. ---, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)

In the absence of the appointment of counsel, the adjudication of any ineffective assistance of trial counsel claim cannot be deemed reliable or trustworthy. This is especially so in this case where there was no further factual development beyond what the appellate court and appellate counsel had before them, and used in the piece-meal appellate process. The present litigation of the ineffective assistance of trial counsel cliam(s) is definitely warranted in this instance. Why ? Because *Martinez* teaches that, when ineffective-assistance of trial counsel claims are raised on appeal, they are routinely deferred into the post-conviction collateral proceeding where that will be the first time that the merits of the claim will be addressed, then counsel "must" be appointed to represent the appellee on that issue. Having counsel on one's first appeal is a matter of right and since this claim constitutes a continuation of the appellate process, such is necessitated. At this time failing to appoint counsel, the trial court would constructively deprive appellant/plaintiff the fundamental and substantive right to have the guiding hand of counsel at a "critical stage" in the proceedings wherein this will be the first time ever that trial counsel's ineffectiveness is heard.. (*U.S. v. Cronic*,466 U.S 648, 659, 104 S.Ct. 2039, 80 L.Ed 657 (1984) violation.

## CLAIM NO. 3
PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL WAS VIOLATED DURING THE SELECTION OF THE JURY? (*BATSON* AND *STRICKLAND* VIOLATIONS)

Petitioner contends that he was denied his constitutional right to a fair and impartial trial in violation of his right to an unbiased jury, when his counsel failed to object and allowed him to be tried

26

by a jury where races, classes, genders, and persons possessing certain politicians views were excluded on those basis alone.  Most were excluded for non-race neutral reasons.

Petitioner argues that the prosecutor used all of his peremptory challenges to exclude blacks from the jury based solely on their race without objection by counsel.  Thus, he was denied his right to effective assistance of counsel in that aspect as set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.CT. 2052, 2064, 80 L.Ed.2d 674 (1984), where such representation is unreasonable and clearly prejudicial to the petitioner.  In an effort to stifle petitioner's efforts to develop present and exhaust this claim, appellate counsel was ineffective in his appellate respresentation for not raising the the claim before the court of appeal that he was being prejudiced in his ability to present and exhaust the claim of *Due Process* Violations under the *6th Amendment* and the *14th Amendment*, and the *Equal Protection* Clause of the *14th Amendment* as it is applicable to the Grand and Petit Jury selection process which have been negative impacted in Jefferson Parish particularly.  By restricting appellate counsel access to the transcripts of the Voire Dire in these combined appeal/ post conviction proceedings, petitioner is constructively being deprived of substantive and fundamental constitutional rights.

More important, petitioner argues that this is a violation of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 106 S.CT. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that when the State racially exercise its peremptory challenges to excuse black potential jurors from the petit jury on the account of their race, the *Equal Protection Clause* of the *Fourteenth Amendment* to the United States Constitution is violated.   The Court set forth the standard that a defendant must establish to prove a prima facie case of purposeful discrimination.  Under this standard, the defendant must show that: 1.) he is a member of a cognizable racial group, and 2.) that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's

race.  Second, defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.  Third, defendant must show that these facts and any other relevant circumstances raise and inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. Id., 106 S.CT. at 1723.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.  The prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption - - or his intuitive judgment -- that they would be partial to the defendant because of their shared race.  Id., 106 S.CT. at 1723.  Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selection.  Id., 106 S.CT. at 1723-1724.

Petitioner also contends that during the jury voir dire, the State used more peremptory challenges than is required by law, and if the jury voir dire transcript was provided to petitioner, he would substantiate his allegations that his constitutional rights were violated.

Additionally, petitioner argues that during the selection of the jury,  several jurors stated that they could not be impartial to the defense because they had a pre-determined notion of petitioner's guilt and the trial court failed to remove these jurors for cause or rehabilitate them.  Also  these jurors were selected because defense counsel had used all his peremptory challenges and he could not challenge these jurors on that basis.  The question here remains, "Was petitioner deprived of his right to be tried by a fair and impartial jury?"  The answer to the above question is, "*NO*," petitioner was not afforded that right. When the U.S. Supreme Court took up the matter, it was decided that, [The right

to trial by an impartial jury lies at the very least of due process.] *Irvin v. Dowd*, 366 U.S. 717, 6

L.Ed.2d.

Petitioner submit that these instances during jury voir dire violated his right to a fair and

impartial jury, as guaranteed by the *Fifth, Sixth* and *Fourteenth Amendments* of the United States

Constitution.

**CLAIM #4**
**TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS TO A FAIR TRIAL**
**WHEN IT FAILED TO INSTRUCT OR SEQUESTER THE JURY WHEN IT RETIRED**
**DURING RECESS AND BREAKS DURING TRIAL.**

Petitioner contends that he was denied the right to a fair trial under the *Sixth Amendment* to

the United States Constitution when the trial court failed to instruct the jury or sequestered them so that

they were not allowed to discuss the case with others, read any media accounts of the trial, or report

any information that someone or something had influence on their verdict. The trial record is bare of

any instructions concerning the trial court charging the jury prior to releasing them for recess. **As for**

**as petitioner can recollect,** he following instructions from the trial court is somewhat similar:

THE COURT:

> All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come
> back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just
> keep in mind the longer we break, the later we go home. Court recesses for lunch.
> The Court stands in recess. Please remand the defendant.

The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures

and non-instructions employed by the trial court failed to properly insulate the jurors from extraneous

influences, or the possibility thereof, and at no time did the trial court adhere to the mandatory

instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737 (1970). The

the locality of Jefferson, a city steadily on the rise in population and serious felony crimes, where

conversation of non-juror third parties and jury members more than likely resulted in the jury verdict being based upon, and affected by, influences extraneous of the legal evidence introduced at trial.

*La.C.Cr.P. art. 791 C* provides that "In non-capital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." The purpose of this instruction is to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will based upon the evidence developed at trial. *State v. Parker*, 372 So.2d 1037 (La.1979). *Due process* requires that the accused receive a trial by an impartial jury free from outside influences. *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.CT. 1507, 1522, 16 L.Ed.2d 600 (1966). Stated differently, "the right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent jurors'. The failure to accord an accused a fair trial violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.CT. 1639, 1642, 6 L.Ed.2d 751 (1961).

Petitioner argues that he was deprived of due process because the jury was swayed by influences outside the courtroom, it is the duty of the Court to independently review the trial records and hold an evidentiary hearing with members of the jury present, so that their testimony will be heard that their verdict was not based upon the influence of third parties to convict an alleged violent offender as a having committed second degree murder, that it is believed to have occurred during an alleged armed robbery. When juror misconduct concerns influences from outside sources, the complete failure to hold a hearing constitutes an abuse of discretion and is reversible error because a presumption of prejudice arises when the trial court learn of such influences. *United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981); *Marshall v. United States*, 360 U.S. 310, 312, 79 S.CT. 1171, 3 L.Ed.2d 1250 (1959). The traditional rule in such cases has been that there must exist a nexus between the community prejudice and jury prejudice; there must be a showing that "prejudice found

30

its way into the jury panel." *Pamplin v. Mason*, 364 F.2d 1, 6 (5th Cir. 1966).   Several Supreme Court decisions have fashioned the principle that in certain extreme circumstances where there has been "inherently prejudicial publicity," *McWilliams v. United States*, 394 F.2d 41, 44 (8th Cir. 1968), the actual existence of prejudice in the jury box need not be shown.  Petitioner submits through the testimony of jurors, it will be established that information of his prior convictions and arrests were discussed by citizens in the hallways and outside the courtroom where the jurors had opportunity to hear and engage in improper discussion.  More discussion took place outside the courthouse where some jurors were allowed to take a smoke break after they ate lunch.  These jurors also were influenced in their verdict by members of the deceased victim's family revealing information about what the district attorney had told them about the accused's criminal history.

Although jurors stated on voir dire that anything they knew about the case would not hinder their ability to give both the state and defendant a fair trial, prejudice seeped into their minds during these absences from the courtroom.  The record does not support that the trial court admonished the jury at no time to ignore publicity about the trial, or report if anyone discussed the case with them; this charge is mandatory in criminal proceedings. *State v. Hill*, 562 So.2d 12 (La.App. 5 Cir. 1990).  In complaining of the prejudice in this case, it is not the quantity, but the quality that survives in the locality of Jefferson.  In essence, petitioner contends he could not receive a fair trial  because he was the subject of extensive "discussion" of his unadjudicated criminal history in the locality of Jefferson, a prominence that brings prejudice.  Although the record fails to disclose that any prejudice to the petitioner could have resulted, never-the-less the mandate of *La.C.Cr.P. art. 791* must be complied with or it is reversible error.  Therefore, petitioner is entitled to a reversal of his convictions, or in the alternative an evidentiary hearing be held where testimony will establish a record to support that the jury verdict was obtained by the outside influence of the people of the locality of Jefferson along

31

with members of the deceased victim's family who lingered in the hallways and stood outside the courthouse.  The news clippings showed that not only did the community reek with disgust for petitioner and his co-defendant's but rather they wanted them "hung" or at a minimum, deported.  Some of the prejudicial information was coming from the cops.  On the blog about the shooting in this case, a blogger titled beccazer o 11/19/08 at 1:20AM wrote in pertinent part:

> BTW, heard it from a JP detective that one of the patron/victims wouldn't give up his wallet and was shot, THEN the owner started shooting.  But the TP gets things wrong all the time, no different here.

Another titling themself as gasmoney wrote

> I guess another way would be to dig out one of the two bullets still lodged in Mario Funes and compare it to the one that killed the victim.  If they matcj then Mr. Gomez likely did accidentally kill the victim.  If they don't match, then likely it was Rivera's 357 that did it.

What these posts show is that leading up to the trial, there was a continuous flow of conversation and opinion within the community and those who interact with the Jefferson Parish community and the predominant sentiment was these were illegals and they should not have been in America to begin with and that they should be executed.  For this reason, the selection and composition of the jury as a fair cross-section of any venue would have been appropriate, but this was impossible in Jefferson Parish due to the deliberate non compliance with the *Federal National Voter Registration Act of 1993*.

## CLAIM NO. 5
## THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR WHEN HE MADE ERRONEOUS AND MISLEADING COMMENTS ON THE RESPONSIVE VERDICTS.

Petitioner contends that his Constitutional rights to a fair trial and due process of law under the *Fifth* and *Fourteenth Amendments* were violated when the trial judge made erroneous and

32

misleading comments on the responsive verdicts. During the jury charge/instructions, the trial judge gave misleading comments to the responsive verdicts for second degree murder and manslaughter.

Petitioner contends that the judge's comment is reversible error, because the trial judge precluded the jurors from considering returning lesser verdicts and misled them as to their evaluation of the possible verdicts. The Louisiana Supreme Court has noted that "Louisiana juries are instructed to return a guilty verdict for the offense charged if warranted by the evidence and to consider lesser verdicts only if the evidence does not justify a conviction for the greater offense." *Roberts v. Louisiana*, 428 U.S. 325, 334 n.10, 96 S.CT. 3001, 49 L.Ed.2d 974 (1976).

This essentially has the effect of taking away the possible lesser verdict from the jury's consideration unless they can all agree that the accused is not guilty of the charged crimes. However, it has long been held that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. In *State v. Copeland*, 530 So.2d 526 (La. 1988), the court stated, "we are aware that the rule of *Beck v. Alabama*, 447 U.S. 625, 100 S.CT. 2382, 65 L.Ed.2d 392 (1980), applies in a case where the failure to instruct on lesser included offenses results from the omission of the trial judge as well as from the operation of state law. *Cordova v. Lynaugh*, 838 F.2d 764 (5th Cir. 1988), cert denied, ___ U.S.___, 108 S.CT. 2832, 100 L.Ed.2d 369(1986)."

In *Keeble v. United States*, 412 U.S. 205, 208, 93 S.CT. 1993, 1995, 36 L.Ed.2d 844, Justice Brennen noted that providing the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable doubt standard. Justice Brennen went on to say:

"... Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction...." Id. 100 S.CT. at 2388.

This point was reiterated by Justice White in *Beck v. Alabama*, 447 U.S. 625, 100 S.CT. 2382, 2388, 65 L.Ed.2d 392 (1980), where he quoted Justice Brennen.

Similarly, in *State v. Copeland*, 532 So.2d 526 (La. 1988) the court held that when "a defect in the instructions effectively withdraws second degree murder and manslaughter from the jury's consideration, due process is violated." This effect of withdrawing those verdicts from the jury's consideration deprives the defendant of due process of law. Petitioner avers that the same effect applies in this instant case concerning the responsive verdicts of second degree murder v. manslaughter. In sum, petitioner contends that jurors usually follow the court's instructions, and they believe that the judge is the overseer of the proceedings and they rely on his instructions and comments heavily in their deliberations. Without a doubt, the judge's comment contributed to petitioner's convictions. Petitioner contends that the trial judge committed reversible error, thereby warranting the granting of a new trial.

## CLAIM NO. 6
**WHETHER PROSECUTORIAL MISCONDUCT OCCURRED WHEN THE (1) PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF THE STATE WITNESSES AND (2) FAILED TO CORRECT PERJURED TESTIMONY IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL?**

**(1) Improper Vouching:**

Petitioner submits and the record support that the prosecutor made improper comments during the state's closing argument to the jury by vouching for the credibility of several of the state's witnesses, and appealing to the jury for sympathy in accepting the testimony of the victim as absolute truth. Thus, petitioner contends that his due process right to a fair trial under the *Sixth Amendment* of the *Untied States Constitution and Article 1 § 2 of the Louisiana Constitution* were violated. *State v. Palmer*, 775 So.2d 1231 (La.App. 1 Cir. 2000).

34

"Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). While the comments at issue are artfully phrased and ill-advised, they quite clearly are based on the prosecutor's personal opinion. *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998). This combination of remarks by the prosecutor himself, together with vouching through the testimony of several witnesses, persons who position the jury might easily identify with the integrity of the United States, presents vouching in a very powerful form. In trying to bolster a witness's credibility, a prosecutor may not overstep the bounds of propriety and fairness. Improper vouching occurs when the prosecutor places "the prestige of the government behind the witness" by proving "personal assurances of [the] witness's veracity." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) *cert denied*, 452 U.S. 942, 101 S.CT. 3088, 69 L.Ed.2d 957 (1981). First, the summation from the prosecutor states that police and social worker and persons hired to protect children do such a good and thorough job which makes them more credible, trustful and not a liar. Further, to make the victim's and others who testified for the state more credible, he states: when they couldn't answer the question, they said, "I don't recall or I don't remember." This was improper vouching by "placing the prestige of the government behind a witness through personal assurance of the witnesses' veracity. By his own language, the prosecutor asserted to the jury that members of the police force are not liars, and when they don't know the answer, they say, they don't remember. Here, an experienced assistant district attorney, deliberately introduced into the case his personal opinion of the witnesses' credibility. He repeatedly ignored his special obligation to avoid improper suggestions and insinuations. A prosecutor has no business telling the jury his individual impressions of the evidence. The prosecutor need not invoke the name of the government in offering his personal belief. No explanation was given of how the State ascertains

35

the honesty or veracity of its witnesses.  Indeed, there is nothing in the record upon which the

prosecutor have grounded his statement.

The United States Supreme Court discussed the dangers of vouching in *United States v.*

*Young*, 470 U.S. 1, 18-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985).  The Court stated the following:

> The prosecutor's vouching for the credibility of witnesses and
> expressing his personal opinion concerning the guilt of the accused
> pose two dangers: such comments can convey the impression that
> evidence not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus jeopardize the
> defendant's right to be tried solely on the basis of the evidence
> presented to the jury; and the prosecutor's opinion carries with it the
> imprimatur of the 'Government and may induce the jury to trust the
> Government's judgment rather than its own view of the evidence.

This matter should be remanded for a new trail and because this practice has long been held

unconstitutional.

**(2) Perjured Testimony:**

Petitioner contends that the prosecutor's actions in failing to correct the testimony of witnesses

whom I knew to be untruthful constitutes prosecutorial misconduct.  Conversely, if the prosecutor has

knowingly used perjured testimony or false evidence, the standard is considerably less onerous: the

conviction "must be set aside if there is any reasonable likelihood that the false testimony could have

affected the jury's verdict. *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959).

The proper question for this Honorable Court to determine at an evidentiary hearing is, whether "there

is any reasonable likelihood that the false testimony could have affected the judgment of the jury."

See, **United States v. Agurs**, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976).  Such

a corruption of the truth-seeking process strike at the confidence  of the conviction and sentence of

petitioner, Rigoberto Funes.  Moreover, given the attention required to support a juror's determination

36

of credibility to assist in his finding of proof beyond a reasonable doubt, whether the jurors minds could have been changed to support their reasoning in reaching a verdict of guilty as charged.

In our criminal justice system the prosecutor has at his disposal the substantial resources of the government as well as considerable other advantages. In exchange, the system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction. *Imber v. Pachman*, 424 U.S. 409, 96 S.CT. 984, 47 L.Ed.2d 128 (1976); *Kirkpatrick v. Whitley*, 992 F.2d 491 (5th Cir. 1993). See also *ABA Model Rules of Professional Conduct, Rules 3.3(a)(4), 3.4(a), (b), and (f), and 3.8*, all of which has been violated by the prosecution.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.CT. 1173. Furthermore, fundamental fairness to an accused, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972). In this case, petitioner's argument is wholly substantiated as he provides a copy of the police report/interviews with the alleged victim lend support to his contentions, which eliminates this claim as a bare assertion. *State v. Broadway*, 753 So.2d 801 (La.1999). The prosecution's actions raise serious questions about both the reality and appearance of fairness in petitioner's conviction and punishment. Absent

37

an adequate and factual record, petitioner respectfully asks the Court not to sweep away these charges on the assumption that the jury would not have arrived at a different conclusion, had it been told of the matters he attributes to the prosecution. .

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois, supra*. It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that the expect in ballistics was not being honest. It would be upon hearing the expert's testimony about linking guns to certain bullets, tend to believe the accuracy of the court qualified expert's testimony under oath. However, a rational trier of fact would discount the expert's testimony had they knew that the ballistics process of linking a bullet to a poarticular gun is flawed, then they would have disconted this testimony or possibly the judge would not have allowed it.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois*, 389 U.S. 906, 88 S.CT. 222 (1967); *Giles v. Maryland*, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The presentation of known false evidence is incompatible with the rudimentary requirements of our system of justice. *Mooney v. Holohan*, 294 U.S. 103, 55 S.CT. 340, 79 L.Ed. 791 (1935). To gain release based upon it, a petitioner must show that the testimony was material and affected the outcome of the trial; that the government knew or should have known that the testimony was false. *United States v. Chagra*, 735 F.2d 870 (5th Cir. 1984). A conviction must be set aside if there is any reasonable possibility that the use of false testimony could have affected the trial. *United States v. Bagley, supra*. The cardinal proposition is that "[t]he constitutional right of a criminal defendant to cross-examine witnesses against him that are free to testify without fear of the state retaliation."

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that, his trial would have resulted in acquittal or that there

would an insufficiency of the evidence to support a conviction. *Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict.* **Bagley**, 105 S.CT. at 3382 n. 9.

What is also important to the fair administration of justice in this case is the fact that it is now known that the witness's sworn testimony was the result of the prosecution's misconduct, where the prosecutor knew both of the witnesses were testifying falsely and he did nothing to correct it. In accordance with the law and argument presented, petitioner's conviction in this matter should be set aside, and in the alternative, this matter scheduled for an evidentiary hearing.

## CLAIM NO. 7
COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN COUNSEL FAILED TO SEEK QUASHING OF THE GRAND JURY INDICTMENT ON THE GROUNDS OF VILATION OF THE NATIONAL VOTER REGISTRATION ACT OF 1993. THE JURY PANEL FOR THE GRAND AND PETIT JURY WERE BOTH QUASHABLE .. "YES.""

Petitioner contends that this violation of constitutional protections set forth, is clear and precise. There was no fair cross-section of jefferson parish which viewed the evidence and returned an indictment. Why? Because the Parish of Jefferson was steeped in violating the *National Voter Registration Act of 1993* and further was engaing in a form of purging the pool of jurors avaiable to participate in the petit jury process. Petitioner was forced to acceptjurors who had reached a conclusion that petitioner was guilty prior to trial. These jurors sat in violation of petitoner's substantive rights. One female juror unambiguously stated that she likely could not be fair to Mr. Funes because of close (Yet undisclosed) friendships with and relations to several crime victims and past experiences. Nothing in the record shows the state made divulged any information that would assist in the removable of any juror in knew to be tainted by bias, nor does the record sho that trial counsel conducted background checks on any of the jurors. Although many of these jurors selected

39

in violation of the the *NVRA*, many of them were removable for cause *LSA-C.Cr.P. Art. 797(2)*, *State v. Holmes*, 619 So.2d 761 (La. App. 4th Cir. 1993).

In cases involving juror with predisposed dispositions towards guilt of the accused prior to trial, the Louisiana Supreme Court has observed in addressing a trial court's erroneous denial of cause challenge stating that:

> "An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights constituting reversible error. <u>State v. Divers</u>, 681 So.2d 320 (La. 1996); <u>Smith v. Gearinger</u>, 888 F.2d 1334 (11th Cir. 1989).

Court has a duty to intervene in the cause of justice being properly administered. There can be no strategic reason for failing to seek the removal a juror properly excusable for cause, where as here, defense counsel had to exercise a peremptory strike(s) to remove the clearly biased juror(s). Likewise, prejudice is clear. Mr. Funes entitlement to twelve peremptory challenges was infringed upon by Asst. District Attorney, the Court and trial counsel.

Counsel's failure to seek removal for cause of clearyl disqualifieable jurors deprived petitioner of his Constitutionally guaranteed right to strategically exercise peremptory challenges and is a manifestation of pure ineffectiveness. Counsel's ineffectiveness struck at the heart of minimal requirements for competent attorney conduct.. Counsel's ineffectiveness infringed upon his client's right to a fair trial, and to have this trial take place before an impartial jury. As a result, cancel fell below the objective standard of reasonableness of an attorney in that situation. These jurors made it clear that they could not be fair and was predisposed to find Funes guilty as charged or at least one of the listed verdicts which established some form of guilt, even if it was just to get a measure of revenge on behalf of the Gomez's. These jurors came fro a relatively small parish that consists primarily of business and industrial pursuits and the community is thoroughly intertwined and the internet trafic which came about after this incident shows that the community was outraged and wanted

to expell all immigrants illegal or not counsel took no action which was the true result of a thorough

incestigation into the background processes which lead to the composition of the grand and petit jury

pools and thereafter allowed the selection process of jurors to run afoul of petitioner's constitutional

right to equal protection and due process of the law.

## CLAIM NO. 8
## INEFFECTIVENESS BY NOT SECURING REBUTTAL EXPERTS FOR THE DEFENSE

Finally, petitioner argues that his trial counsel and appellate counsel were ineffective for

failing to assign and argue ineffective assistance of counsel regarding trial counsel.  Trial Counsel

failed to object to numerous constitutional violations which occurred and/or he caused, thereby failing

to preserve issues that could have been presented on direct appeal, thus exposing this petitioner (an

indigent petitioner) to run the risk of the invocation of procedural bars.  The issues presented in this

post conviction support that petitioner's convictions and sentence were obtained in violation of the

Constitutions of both, the United States of America and the Louisiana Constitution of 1974.

Accordingly, trial and appellate counsel was ineffective and petitioner's convictions should

be set aside, or in the alternative an evidentiary hearing granted.  In *Ake v. Oklahoma*, 470 U.S. 68,

105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court recognized the indigent defendant's right

to expert assistance.  However, in order to meet the requirements of *Ake*, the defendant without means

must "make an ex parte threshold showing to the trial court that [the area of expertise] is likely to be

a significant factor in his defense. . . ." Id. at 82-83 (emphasis supplied).

Petitioner was further denied effective assistance of counsel when trial counsel failed to

secure expert witnesses on behalf of his client..  Although the allegations against petitioner were

circumstantial at best, trial counsel failed to secure in as much as a single expert witness in an attempt

to refute the state's expert.

41

Counsel provided no expert in an effort to refute the stat's "junk science evidence about matching bullets to guns, nor did counsel have any expet present to bring forth the disparity in the miniority population allowed to participate in the Grand and Trial jury process and a result of discriminatory practices, all this violated petitioner's right to due process and Equal Protection of the law.   EXHIBITS ARE ADOPTED FROM THE *STATE OF LOUISIANA V. ISAIAH DOYLE*, 05-05262, 2th JDC, Parish of Jefferson,  DEATH PENALTY CASE.

**CLAIM #9**
**INDEPENDENT CLAIM OF "GRAND JURY AND TRIAL JURY DISCRIMINATION" THIS IS A "NEW FACT" PREVIOUSLY NOT KNOWN TO PETITIONER AND IT MEETS THE EXCEPTION OF 930.4 and 930.8(A)(1) (THIS CLAIM SHOWS A NEED FOR EXPERTS)**

Petitioner, is entitled to relief pursuant to the *Fifth, Sixth, Eight, Thirteenth and Fourteenth Amendments of the United States Constitution,* and *Artilce I, Sections 2, 3, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27* of the Louisiana Constitution and any other known applicable law known to exists which is applicable here, and moves this Honorable court to conduct an evidentiary hearing and upon hearing all the relevant evidence, grant the nullification of his conviction and sentence and grant a new trial as to guilt or innocence; to arrest the judgement of the trial jury and dismiss it as a whole and to grant the new trial on the grounds of racial discrimination and class discrimination in the composition of the petit jury pools as a direct result of a violation of the *National Voter's Rights Act of 1993.*

I.   UNLAWFUL AND SYSTEMATIC EXCLUSION OF LOW-INCOME, DISABLED, PUBLIC ASSISTANCE RECIPIENTS, BLACK, OTHER MINORITY JURORS FROM THE JURY VENIRE

   a)   Overview

The venire presented for jury selection in this case was obviously underrepresented by minorities of the Jefferson Parish area that the United States Federal Government has become embroiled in this action and is seeking remedy of the refusal of the State of Louisiana to comply with the mandates of the *National Voter's Registration Act of 1993.*

42

On July 12, 2011, in a remarkable developement, the government of the united States to the extraordinary step of filing suit against the State of Louisiana, the Secretary of State, and various state agencies for violating the *National Voter Registration Act*. (NRVA). Complaint, *United States v. State of Louisiana et al*, No. 3:11-CV-00470-JJB-DLD (M.D. Jul. 12, 2011). The lawsuit denounces the state of Louisiana's refusal to comply with the law mandating that certain voter registration opportunities be made available to persons with disabilities and low-income citizens. Id. The law violated demands that voter registration material and assistance be provided not only upon the initial registration of such persons but also any time they notify an agency provididing them with assistance of change in address or renewal of benefits. *42 U.S.C. 1973gg et seq.*

In Louisiana, as a direct result of historic amd entrenched racial disadvantage, a massively disproportionate number of African-Americans are low-income citizens living with disabilities. As a result, Louisiana's refusal to provide for registration and address change opportunities for the poor and disabled in this state has fallen, for the most part, on the black community, and to a significant but lesser degree on other communities of color in Louisiana.

As discussed herein, an analysis of the jury summons process in Jefferson Parish establishes that the direct effect of Louisiana's deliberate, persistent, and illegal refusal to afford to those of low income the registration and address change opportunities required by law has resulted in the underrepresentation of those economic and social groups on jury venires and consequently, the underrepresentation of black jurors on jury venires. This underrepresentation of low-income minorities was also cited in *Ferrand v. Schedler*. The *United States v. State of Louisiana et al*, No. 3:11-CV-00470-JJB-DLD (M.D. Jul. 12, 2011), suit focused on low-income and the disabled, but both derive from the same premise. The momentous lawsuit filed by the Civil Rights Division of the Department of Justice (DOJ) has uncovered phenomena that explain the underrepresentation that

43

was noted in the *Ferrand v. Schedler* case and complained of in petitioner's most recent application for post-conviction relief.

The nullification of the trial jury's verdict of guilt, the recognition of any conviction deriving therefrom and the imposition of any/all sentences deriving therefrom should all be declared nullities and a new trial ordered. The practice of the state of Louisiana in refusing to abide by the mandate of the *National Voter Registration Act of 1993* violated the *Sixth Amendment* fair cross-section requirement (as incorporated into the *Fourteenth Amendment*) and the *Equal Protection Clause of the Fourteenth Amendment*, in addition to other law refference in this pleading. This pleading is a supplement to the pre-existing claim of a violation of the *NRVA* in petitioner's original successive pcr-application based upon these facts previously not known to the petitioner or his attorney and the holdings in *Martinez v. Ryan* (U.S. Supreme Ct. 2012).

    **b)**    The State of Louisiana has deliberately chose to:

        1.)    violate federal law; and

        2.)    to limit its voter registration activities to the direct prejudice of the poor, disabled and predominately black citizens of this state.

The requirements of the *National Voter Registration Act of 1993 (NRVA) of 1993* sets out mandatory provisions for various aspects of voter registration in the States, Louisiana included. These provisions require that certain agencies be designed as voter registration offices, and that they offer a variety of information, outreach, and assistance to patrons. While *Section 5 of the NVRA* required States to offer voter registration opportunities at motor vehilce agencies, *Section 6* outlines requirements that such registration opportunities be offered by mail-in application. *42 U.S.C. 1973gg-4, -5 Section 7 of the NVRA* mandates that public assistance and disability agencies offer voting registration opportunities and assistance. Id at -6.

Pursuant to the *NRVA*, whenever the Louisiana Office of Motor Vehicles (OMV) is involved in a license application, renewal, or change of address transaction, the transaction must also serve as a registration to vote or change of voter address unless the applicant ots ot. *42 U.S.C. 1973gg-4*. The same is true for OMV issuance of Louisiana identification cards. Id. Furthermore, the *NVRA* compels any office that either provides public assistance[5] or services to persons with disabilities[6] (through state funded programs) to offer voter registration services. *42 U.S.C. 1973gg-6*. These services are extensive, and include providing any applicant for recertification, renewal or change of address with respect to such services or assistance with a voter registration form and providing them assistance in completeing the form.  See id.  The officies must also provide a preference/declination form to determine if the applicant wishes to be registered to vote at their address and advise them that benefits and assistance are unrelated to the decision to register or not register. Id.  The agency must accept registration forms and transmit them to the Secretary of State. *42 U.S.C. 1973gg-6(a)(4)(A)*.

As the Department of Justice contends, the State of Louisiana has:

(1)     failed to designate the relenat agencies as voter registration agencies;

(2)     failed to provide preference/declination forms;

(3)     failed to make available voter registration forms;

---

[5] Public assistance "includes any of the following federal public assistance programs: the Supplemental Nutrition Assistance Program (SNAP, formerly the Food Stamp Program), the Special Supplemental Nutrition Program for Women, Infants and Children (WIC), the Temporary Assistance for Needy Families (TANF) program (formerly the AID to Families with Dependent Children or AFDC program) the Medicaid program, and the State Children's Health Insurance Program (SCHIP)."  The United States Department of Justice, "The National Voter Registration Act of 1993 (NRVA): Questions and Answers" at ¶ 13, available at www.justice.gove/crt/about/vot/nvra/nvra_faq.php

[6] This includes "offices providing vocational rehabilitation, transportation, job training, education counseling, rehabilitation, or inependent-living services for persons with disabilities." Id.  at ¶ 14.

(4)     failed to transmit forms, and;

(5)     failed to train staff to comply with the NVRA.

See complaint/suit at *United States v. State of Louisiana*, et al., No. 3:11-CV-00470-JJB-DLD (M.D. La. Jul. 12, 2011).

> The necessisty of the National Voter Registration Act in light of the
> century-long struggle for the enfranchisement of African-Americans
> and rural poor and rural disabled.

The *National Voter Registration Act of 1993* is the latest legislative action in the century-long struggle for equal voting rights for African-Americans, minority, and loc-income communities within the Unites States. In its report recommending approval of the *National Voter Registration Act*, the Committee on House Administration took notice of this struggles' tortured history. "Restrictive registration laws and administrative procedures" of the late 1900s, that committee found, were specially designed "to keep certain groups of citizens fro voting." *H.R. Rep. No. 103-9, at 1 (1993)*. Particularyly in Southern States such as Louisiana, those who were systematically disenfranchised were in large measure "blacks and the rural poor." *Id.* Even in the wake of the *14th and 15th Amendments*, "Southern States were seeting out to accomplish an effective nullification of the war measures of Congress." *R. Wardlaw, Negro Suffrage in Georgia, 1867-1930, p. 34 (Phelps,-Stokes Fellowship Studies, No. 11, 1932)*. These racist administrative procedures took the form of "poll tax[es], literacy tests, residency requirements, selective purges . . . [and] annual reregistration [sic] requirements." *Id.* As soon as the U.S. Supreme court explained, such "[m]anipulative devices and practices were soon employed to deny vote to blacks." *Rice v. Cayetano*, 528 U.S. 495, 513 (2000). Their combines effect was to create maliciously bureaucratic obstacles to voting, which "were so effective that between 1896 and 1924 . . . the turnout [of voters in the South] went from 57% to 19%, with the black vote dropping from 44% to essentially 0%." *Id*

46

(empasis added) Of course, 1896 was a watershed year in the history of discrimination in the United States, the Supreme court upholding a Louisiana law requiring railroad companies to provide "equal but seperate" seating for African-Americans abd whites. *Plessy v. Furguson*, 163 U.S. 537, 544 (1896).

      The post-Reconstruction discrimination laws were not limited to disenfranchisement of poor and minority citizens, and "[i]n the wake of *Plessy*, many states expanded their Jim Crow laws" to ensure total segregation in "residential areas, parks, and hospitals, theaters . . . [even] seperate phone books." *Regents University of California v. Blake*, 438 U.S. 265, 393 (Marshall, J., concurring). Such practices were adaptive and persistent, continuing throughout the first half of the 20th century. See *Myers v. Anderson*, 238 U.S. 368 (1915) grandfather clause); *Lane v Wilson*, 307 U.S. 268 ("procedural hurdles"); *Terry Adams*, 345 U.S. 461 (1953)(striking down a white primary); *Smith v. Allwright*, 321 U.S. 649 (1944) (white primary in Texas); *United States v. Thomas*, 362 U.S. 58 (1960) (registration); *Gomillion v. Lightfoot*, 364 U.S. 339 (1960) (gerrymandering by race); *Louisiana v. United States*, 380 U.S. 145 (1965) (invalidation Louisiana law requiring voters to demonstrate knowledge of federal and state constitutions). Attempts to disenfranchise African-Americans in Louisiana have been particularly flagrant and protean, as the U.S. Supreme Court took pains to outline in *Louisiana v. U.S.*, 380 U.S. 145 (1965). Since the Enactment of the *Louisiana Constitution of 1898*, "the State had put into effect a successful policy of denying Negro citizens the right to vote because of their race." Id., at 147. After the raciall-based grandfather clause was found unconstitutional in *Guinn v. United States*, 238 U.S. 347 (1915), Louisiana adopted their so-called interpretation test of 1921. Id. At 148. This test, which required that African-Americans demonstrate "a reasonable interpretation' of any clause in the *Louisiana Constitution* or the *Constitution of the United States*," was a transparent and effective method of systematic and racial disenfranchisement.

47

Id.; see *La. Const. 1921, Art. VIII, ss 1(c), 1(d)*. The effect of this particular tactic was devastating: between 1921 and 1944, "the percentage of registered voters in Louisiana who were Negroes never exceeded one percent." *Louisiana v. U.S.*, 380 U.S. at 148.

Among the most entrenched of the "prerequisites to the franchise" were poll taxes, which required African-Americans to pay between $1.00 and $2.00 each year to remain eligible to vote.[7] Abita R. Ellis, "The Cost of the Vote: Poll Taxes, Voter identification Laws, and the Price of Democracy, 86 Denver U.L. Rev. 1023, 1042 (2009). Although such economically based legislation affected poor white and African-American voters alike, many staes enacted provisions that acted as "a series of loopholes to guarantee poor white voting while" continuing to deter racial minorities.[8] Finding that "[t]he payment of poll taxes as a prerequisite to voting is a familiar and reasonable regulation," the constitutionality of poll tax legislation was upheld in *Breedlove v. Suttles*, 302 U.S. 277, 284 (1937). While Louisiana abolished their poll tax requirements before breedlove in favor of such convienient discriminatory practices as the "reasonable interpretation" tests, Mississippi persisted with its poll tax late in 1966, even in the wake of *Harper v. Virginia State Bd. of Elections*. Ellis, "The Cost of the Vote" at 1043. That decision held that "the right to vote was too precious, too fundamental to be so burdened or conditioned " on wealth. *Harper v. Virginia State Bd of Elections*, 383 U.S. 663, 607 (1966). These types of developements in jurisprudence helped

---

[7] It is important to note not only that $1.00 to $2.00 "was an extreme amount to many," but also that these payments were cumulative and had to be paid in advance of the elections. Abita R. Ellis, "The Cost of the Vote: Poll Taxes, Voter identification Laws, and the Price of Democracy, 86 Denver U.L. Rev. 1023, 1042 (2009).

[8] These provisions are linked to the interpretation clauses mentioned earlier, whereby election officials could "register voters who could 'understand' and section of the state constitution and read to them." This places the enfranchisement decision soley in the discretion of teh examiner. Abita R. Ellis, "The Cost of the Vote: Poll Taxes, Voter identification Laws, and the Price of Democracy, 86 Denver U.L. Rev. 1023, 1042 (2009).

48

to counteract the history of disfranchisement of African-American and minority voters, as did the

Voting Rights Act's "complex scheme of strigent remedies aimed at areas where voting discrimination

has been most flagrant." *State of South Carolina v. Katzenbach*, 383 U.S. 301, 315 (1966).

> The purpose of NVRA in the wake of the Voting Rigts Act and th
> Jacksonian principles underlying an enfranchised and active electorate.

The political philosophy of Andrew Jackson was instrumental both in eliminating the

conditioning of the right to vote on land ownership, as well as emphasising the popular election of

judges and other officials.  The political lanscape prior to the advent of jacksonian democracy was

dominated by a *"Jeffersonian model," favoring decision-making and the selection of lower-echelon*

*officials by an elected elite (Congress, Legislators, the President and Governors)."*  Ferris K.

Neshewat, *"Judicial restraint: Resolving the Constitutional Tension Between the First Amendment*

*Protection of Political Speech and the Compelling Interest in Preserving Judicial Integrity During*

*Judicial Elections,"* 24 Quinnipiac L.  Rev. 757, 766 (2006).  Jackson's perspective eschewed a

*"Return to the Jeffersonian ideal of Pastoral America run by Enlightened Farmers"* in favor of a

non-freehold based universal (white male) electorate." Paul Johnson, *A History of the American*

*People*, 220-221 (1997).  The Jacksonian revolution embodied the idea that "the more people who

had a presidential vote the better," and that "to liberate and empower this huge moral popular force"

would eliminate "the entrenched oligarchy, the corrupt ruling elite." Id at 222.  Courts have noted that

"the Jacksonian revolution of the 1820's and 1830's provided political parties a new impetus" that led

to political parties becoming "permanebt features in our political system." *Cromer v. State of South*

*Carolina*, 917 F.2d 819, 833 (C.A. 4 1990).  This revolution instated an upheaval "which dislodged

49

the old ruling class typified by John Quincy Adams and brought to power" new more populists leaders. Allan Nevins, *"At the Roots of Democracy,"* NY Times (September 16, 1945).[9]

The National Voter Registration Act was precisely designed "to expand the franchise, so that every American will have the most precious of rights that we enjoy, which is access to the ballot box." *139 Cong.  Rec.  S2738* (daily ed Mar.  11 1993) (statement of Sen.  Moseley-Braun).  This represents an embodiment of the free excercise of the right to vote at the core of the political philosophy of Andrew Jackson, who said that "[t]he great constitutional corrective in the hands of the people against usurpation of power, or corruption by their agents, is the right of suffrage." Paul Johnson, *A history of the American People* at 221.

The the ***Voting Rights Act of 1965*** (VRA) constitutied one of the most important right od the Civil Rights movement, its effect was largely limited to the abolition of transparent exclusionary voter registration characterists of the early- to mid-20th century.  Although the establishment of the ***VRA of 1965*** "eliminated the more obvious impediments to registration," it nevertheless left a measure of "unfinished business." *H.R. Rep.  No.  103-9, at 107* (1993) The impetus for the ***National Voter Registration Act*** was to take up this unfinished business, by addressing the "steady decline in citizen participation in Federal Elections" between 1965 and 1992.  Id.  Compiling date from public opinion polls, committee reports, and individual testimony, the legislature determined that increasing voter registration opportunities through methods such as agency-based registration was the "positive action Congress can take to give the greatest number of people an opportunity to participate." Id As noted in the House debates, the *NVRA* seeks to remedy the continuing legacy of "a rather unfortunate tradition," one in which "[w]e have used voter registration mechanisms . . . throughout many, many decades to prevent various groups we were from time to time and by certain groups considered

---

[9] Available at http://www.nytimes.com/books/00/11/26/specials/schlesinger-jackson.html

undesirable, to make it very difficult for them to vote." *139 Cong. Rec. H505* (daily ed Feb. 4, 1993) (statement of rep. Swift) Representative Ed Towns confronted the issue more directly in his statements, reminding those members of the House that [t]he memories of the African-Americans are still fresh with the degrading but legal techniques used to bar them from voting, such as poll taxes, so-called literacy tests, and in some cases physical or emotional intimidation." *145 Cong. Re. 505* (daily Feb. 4, 1993) (statement of Rep. Towns). Rep. Towns concluded, expressing his support for the *NVRA* and his confidence that it would "gurantee that public institutions are used to empower American citizens to easily engage in democratic elections." Id.

The mandatory registration of public assistance and disability services lie at the heart of the *National Voter Registration Act's* goal to increase the amount of the voting eligible population registered to vote. An effort was made to limit the scope of this provision through a Senate amendment; howver, this change in the proposed law was seen as devastating its intent and effectiveness and was ultimately rejected.. See *139 Cong. Rec. H1828* (daily ed. Apr. 1, 1993). The Senate amendment would have required only armed forces recruitment offices to be mandatory voter registration agencies. Id. The main sponsor of the bill, Rep. Swift, explained that making the designation of public assistance offices optional rather than mandatory would render "this provision of legislation funcitionally inoperable." *139 Cong. Rec. H1823* (daily ed. Apr. 1, 1993)(statement of Rep. Swift). Having public assistance and disability services officies designated as mandatory voter registartion agnecies was deemed "central to attain the goals of this legislation" because of they were not so designated, "the agency-based program would exclude a segement of the population that the motor-voter provisions would not reach, primarily the poor and disabled citizens." *139 Cong. Rec. S5642* (daily ed. May 6, 1993) (statement of Rep. Ford). The Senate report noted that "motor-voter registration programs may not adequately reach low income citizens and minorities," and cited

51

Department of Transportaion study for support.  *S.Rep. 103-6* (1993).  That study found "that almost 50 percent of those persons who do not have a drivers license have annual incomes of less than $10,000." Id.  These statements and reports, as well as the steadfast determination by the *NVRA's* supporters to include the publis assistance and disabiltiy services mandate, demonstrate that the duties placed on public assistance and disability service agencies were carefully thought out, well-reasoned, and subject to open debate.

One of the most vocal critics of the *NVRA*, and particularly the mandatory designation requirment, was Representative Livingston of Louisiana.  At that time, representative livingston's congressional district was primarily made up of Jefferson and St. Bernard Parishes.

During the debate on the Sante amendment, Representative Livingston further lamented that the *NVRA* is trying to "tilt the political system in favor of voting by people who go to the welfare office." id.  Rep Flake, on the other hand, who "grew up in the time of poll taxes," recognized the importance of including the mandatory designation of public assistance offices, to ensure voter registration opportunities for those who were so often denied their franschise, "the very persons who despreately need a voice in out Nation's future." *139 Cong.  Rec.  H1823* (daily ed. Apr.  1 1993) (statement of Rep.  Flake).  Ultimately, the final legislations included mandatory designation for public assistance and disability services.  These are the very same provisions with which Louisiana and Jefferson Parish are in flagrant non-compliance.  See Complaint, *United States v.  State of Louisiana* et al., No 3:11-CV-00470-JJB-DLD (M.D. La.  Jul.  12, 2011).

Louisiana's voter registration numbers are so low that the DOJ is suing the State of Louisiana, DHH, and DCFS for violations of the agency registration provisions of the NVRA

The agency registration section of the *NVRA* had been ignored in Louisiana to the extent that the Department of justice has filed a lawsuit for declaratory andf injuctive relief for non-compliance.

Complaint, *United States v. State of Louisiana*, et al., No 3:11-CV-00470-JJB-DLD (M.D. La. Jul. 12, 2011), (hereinafter "Complaint"). The complaint alleges that the States of Louisiana, the Louisiana Department of Health and Hospitals (DHH), and yje Louisiana Department of Children and Family Services (DCFS) have "failed to provide voter registration opportunities as required by *Section 7 of the NVRA*." Complaint at 4. The department of Justice finds that these violation "are evidenced by the fact that Louisiana has received very few voter registration applications from its public assistance and disability services offices despite the significant percentage of its population receiving such services.." Id at 5. These statistics are measured through Election Assistance Commission surveys which each State submits on an annual basis. In part, these surveys measure the number of voter registration applications received from motor vehicle, public assistance, diability services, and armed forces recruitment officies. *Exhibit 2, U.S. Election Assitance Commission 2010 Election Administration & Voting Survey*, at 5. In 2009-2010, there were "6,037 voter applications from public assistance offices, representing 1.1. of all voter registration applications received from 2009-2010. Complaint at 5.

In contrast, there are 1,701,020 citizens enrolled in Medicaid programs at the end of January 2011" in Louisiana. Complaint at 6. These low numbers of registration (only 14, 725 from public assistance between October 2006 and October 2010), when compared with the "3.1 million Medicaid applications, renewals, and address changes from January 2007 to January 2011" create an inconsistency that "is probative of Louisiana's unlawfl failure to offer the voter registration opportunities required by the *NVRA*." Id at. 7. Despite the fact that Louisiana is bound by federal statute to provide voter registration information and assistance upon each of those 3.1 million Medicaid transactions, less than 0.5% of these transactions are resulting in any voter registration activity. The Department of Justice has cited such an overwhelming disparity as not simply indicative,

but probative of non-compliance.  Complaint at 7.  Although in 2001-2002 Louisiana received 3.3%

of all voter registration applications from public assistance offices, that number dropped to just 1.1%

in 2009-2010.  Id. at 5.  The complaint includes allegations that [m]any Medical Program offices had

neither the forms nor the procedures in place to offer voter," office of DHH "did not regularly offer

eligible clients the opportunity to register to vote," multiple offices of DFCS "did not regularly offer

eligible clients the opportunity to register to vote with every application," and other agencies have

been distributing "out-od date and legally concompliant forms." Id.  At 8.

Defendant adopts in full the factual allegations of the United States government in this

pleading, attached the government's complaint and associated documentary proof, and seeks the time

to fully develope and present these proofs.

> Medicaid and SNAP enrollment and voter registration statistics for
> Louisiana demonstrate a vastly disproportionate number of low-
> income persons registering to vote

The Medicaid enrollment information for the entire state of Louisiana lists 674,420 African

-Americans, which is 53% of the population of Medicaid eligible persons in the state (1,270, 976).

Exhibit 19.11, La. Medicaid Eligibles by Race.  Despite so many consumers of public assistance

services, only 6, 037 persons registered to vote through such agencies, representing 1.1% of total

voter registration throughout the state (532, 735).  Exhibit 19.1, Voter Registrations Source for

Louisiana 2009-2010.  This large difference between the number of persons on Medicaid and the

number of persons registering to vote through public assistance agencies prove that Louisisana is not

complying with the *NVRA*.  Because of the large percentage of African Americans enrolled in

Medicaid, this noncompliance disproportionately affects this distinctive group.

The correlation between poverty and race demonstrated above is hardly a new or surrising condition in Louisiana.  Current figures show that 63.5% of teh households on SNAP in Louisiana are African American (232,578/365,844).[10]

The statistical breakdown in Jefferson Parish Matches the statewide experience with the intended beneficiaries of the NVRA

There are 118,146 Medicaid eligible persons in  Jefferson  Parish.  (All exhibits in State v. Isaiah Doyle, 05-05262, 24th JDC, are adopted in full here by their original identification in that case)Exhibit 19.2, DHH Medicaid Eligibles by Race.  There are 53,182 African Americans who are Medicaid eligible.  Exhibit 19.2, DHH Medicaid Eligibles by Race.  45% of the Medicaid eligible population in Jefferson Parish is African American.  46.7% of the Medicaid eligible population in Jefferson Parish is on Medicaid, as compared with only 14.1% of the white population.  Exhibit 19.2, DHH Medicaid Eligibles by Race.  Almost half of all people on Medicaid in Jefferson are African American, without taking intoo account the 10,364 persons whose race is listed as "unknown." Exhibit 19.2, DHH Medicaid Eligibles by Race.

This means that those applying for public assistance, renewing or changing addresses-the populations targeted by the *NVRA's* voter registration agencies provisions - are primarily African American.  The National Voter Registration Act was designed to increase voter registration by creating interactive agency based registration sites at designated agencies throughtout the United States.  Jefferson Parish's failure to comply has led to a decrease in voter registration through such agencies, and this has affected African Americans at a far greater rate than it affects whites.  The voter registration information gathered by the Election Assistance Commission supports the conclusion that

---

[10] According to a 2009 study, 11% of Jefferson Parish residents received food stamps, however, there was a massive racial disparity in operation.  26% of black residents of Jefferson Parish were were receiving food stamps, while only 5% of white resident were in the program. See http://www.nytimes.com/interactive/2009/11/28/us/20091128-foodstamps.html.

African Americans are being denied opportunities to register to vote, and therefore be included I the jury selection process. See Exhibit, Voter Registration Survery. In Jefferson Parish only 355 people registrered to vote through public assitance agencies, even though 53,182 African Americans, and over 118, 146 people are on Medicaid in said parish. Exhibit 19.2  La. Medicaid Eligibles by Race. 0.3% of  Medicaid recipients in  Jefferson Parish registered to vote through public assistance agencies.  Exhibit 19.2, Medicaid Eligibles by Race.  These figures represent a substantially disproportionate number of people on public assistance as compared with the voter registration coming from such agencies.

Because Jefferson Parish is not offering the services mandated by federal law, there is a corresponding deficiency in voter registration.  The jury selection procedure in Jefferson Parish is largely dependent on voter registration lists. See *La.C.Cr.P. Art 408.1(A)(1)*.  Compliance with the requirements of the *NVRA* would increase voter registration for those enrolled or enrolling in public assistance programs like Medicaid.

c)   **The applicable legal standards for fair cross-section and equal protection claims**

This claim is based on both the *Sixth Amendment's* fair cross-section requirement (applied to the States under the *Fourteenth Amendment's* due process clause) and the equal protection clause of the Fourteenth Amendment.  It is similiarly based in *La.  Const.  Art.  1, § 2, 3, 12, 16* and other applicable provisions of law as discussed in this motion.

**Fair Cross Section Analysis**

With respect to the fair cross-section component of the claim, the Supreme Court has held that "the selection of a petit jury from a representative cross-section of the community is an essential component of the *Sixth Amendment* right to a jury trial." *Taylor v.  Louisiana*, 419 U.S. 522, 528, 95 S.Ct.  692, 42 L.Ed.2d 690 (1975).  The test of *Duren v.  Missouri*, 439 U.S. 357, 99 S.Ct.  664,

58 L.Ed.2d 579 (1979), controls when determining whether the jury venire is a representative cross-section of the community. The Supreme Court recently explained the *Duren* test as follows:

> To establish a prima facie violation of the fair cross-section requirement, this Court's pathmarking decision in *Duren* instructs, a defendant must prove that: (1) a group qualifying as "distinctive" (2) is not fairly and reasonably represented in jury venires, and (3) "systematic exclusion" in the jury-selection process accounts for the underrepresentation. 439 U.S., at 364, 99 S.Ct. 554; see supra, at 1387-1388. *Berghuis v. Smith*, —U.S.—, 130 S.Ct. 1382, 1392 (2010).

In *Duren*, the Court explained the third step of the analysis as follows:

> [I]n order to establish a prima facie case, it was necessary for petitioner to show that the underrepresentation of women, generally and on his venire, was due to their systematic exclusion in the jury-selection process. Petitioner's proof met this requirement. His undisputed demonstration that a large discrepancy occurred not just occasionally but in every weekly venire for a perios of nearly a year manifestly indicates that the cause of the under representation was systematic-that is, inherent in the particular jury-selection process utilized. Petitioner Duren's statistics and other evidence also established when in the selection process the systematic exclusion took place.

*Duren*, 439 U.S. at 366, 99 S.Ct. At 669. The burden then shifts to the State to justify the systematic exclusion:

> We have explained that States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community. However, we cautioned that the right to a proper jury cannot be overcome on merely rational grounds. Rather, it requires that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group.

*Duren*, 439 U.S. at 366, 99 S.Ct. At 670. The Court explained this third prong further in Berghuis:

> The "disproportionate and consistent exclusion of women from the [Jackson County] jury wheel and at the venire stage," the Court concluded, "was quite obviously due to the system by which the juries were selected." Id. At 367, 99 S.Ct. 664. "[A]ppropriately tailored" hardships exemptions, the Court added, would likely survive a fair-cross-section challenge if justified by an important state interest. Id., at 370, 99 S.Ct. 664.

*Burghuis*, supra, 130 S.Ct. At 1393 (italics in orignal; boldface added)

The thrust of a fair cross-section, rather that an equal protection claim, is that it is not based upon the existence of discriminatory intent. Most fair cross-section claims involve jury selection methods or jury service criteria that are facially race - or gender-nuetral but that have the effect of systematically excluding a distinct group.

The Supreme Court requires automatic reversal where there is proof of systematic exclusion of specific groups from petit and grand juries. See, e.g. *Peters v. Kiff*, 407 U.S. 493, 92 S.ct. 2163, 33 L.Ed.2d 83 (1972) (exclusion of African-Americans); *Ballard v. United States*, 329 U.S. 187, 67 S.ct. 261, 91 L.Ed 181 (1946) (exclusion of women); *Thiel v. Southern Pacific Co.*, 328 U.S. 2217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946) (exclusion of wage-laborers). This reversal is necessary because systematic exclusion of cognizable groups from the jury compromises the very intergrity of the trial process. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ci. 692, 42 L.Ed.2d 690 (1975).

The Supreme Court has made the purposes animating the fair cross-section requirement abundantly clear:

> (1) "guard[ing] against the excercise of arbitrary power" and ensuring that the "commonsense judgement of the community" will act as "a hedge against the overzealous or mistaken prosecutor," (2) preserving "public confidence in the fairness of the criminal justice system," and (3) implementing our belief that "sharing in the administration of justice is a phase of civic responsibility."
> *Lockhart v. McCree*, 476 U.S. 162, 174-175 (1986)

To this may be added the salutary effect that diverse juries have on the fact finding process. Studies on jury deliberations have shown that racially diverse juries deliberate more extensively, consider more facts, makes less factual errors in deliberation and are more willing to tackle difficult topics in deliberations than single-race juries. See, e.g, Sommers, S., *On Racial Diversity and Group Decision Making: Identifying Multiple Effects of Racial Composition on Jury Deliberations*, J. of Personality and Soc. Psychol., 2006, Vol. 90, No. 4, 597-612.

## Equal Protection Analysis

In addition to the fair cross-section analysis, the Court must also scrutinize the State of Louisiana's deliberate refusal to implement the *National Voter Registration Act of 1993*. As the facts set forth avove show, the state deliberately chose to violate federal law and limt its voter registration activities to the direct prejudice of the poor, disabled and predominantly black citizens of this state.

The purposeful excercise of State action to deny Americans their rights as citizens on the basis of race or economic or social group violates the *Fourteenth Amendment*:

> [T]he facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the state itself, with a mind so unequal and oppressive as to amount to a practical denial by the state of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad benign provisions of the fourteenth amendment to the constitution of the United States. Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with and evil eye and an unequal hand, so as to practically make unjust and illegal discriminations between persons in similiar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.
>
> *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 1073 (1886).

Where the state has violated the equal protection rights of citizens who are otherwise jury-eligible, the defendant may assert those rights in his criminal proceedings. *Powers v. Ohio*, 499 U.S. 400 (1986). In order to establish a violation of the *Equal Protection Clause*, a discriminatory purpose for state action must be shown. *Washington v. Davis*, 426 U.S. 229 (1976). In this case, that purpose is shaping the racial and socio-economic maku-up of the vote in Louisiana.

The Supreme Court has articulated a framework for establishing whether such a discriminatory purpose exists in the context of jury selection in a criminal case:

> The first step is to establish that the group is one that is recognizable, distinct class, singled out for different treatment under the laws , as written or as applied. . . . Next,

59

the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors over a significant period of time. . . . Finally, a selection procedure that is susceptible of abuse or is not racially nuetral supports the presumption of discrimination raised by the statistical showing.

*Castaneda v. Partida*, 430 U.S. 482, 494-495 (1977) (citations ommitted) Evidence in this case supports the inference that Louisiana officials deliberately resisted the express commands of the *National Voter Registration Act of 1993.* Thus, the finding of a prima-facie case is warranted and additional fact developement should be allowed.

d)  **Louisiana's decision not to comply with the National Voter Registration Act violated Mr. Funes's right to have a fair cross-section of the community in his jury(ies) venire. (Grand and Petit)**

*Louisiana's decision not to comply impacts the representation of distinctive groups of Jefferson Parish Citizens on Jefferson Parish venires*

In *Lowenfeld,* the Louisiana Supreme court summarized the relevant case law defining those groups which are considered distinctive groups for fair cross-section purposes:

A survey of past decisions shows those groups which the court found to be distinctive. Distinctions based on race or national original clearly meet this test. See *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Hernandez v. Texas*, 347 U.S. 475, 74 S.ct. 667, 98 L.Ed. 866 (1954). Women comprise such a group. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In *Thiel v. Souther Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946), the court, in finding that daily wage earners were a distinct group, said these groups include, "economic, social, religious, racial, political and geograhpical groups of the community."

*State . Lowenfield,* 495 So.2d 1245, 1254 (La.1985); see *State v. Cage*, 337 So.2d 1123, 1124 (la. 1976) (finding fair cross-section violation in exclusion of a group of poor black people living in susidized housing). The Court in *Thiel* (supra) made the point that the fair cross-section requirement:

does not mean, of course, that every jury must contain representatives of all the econmic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does not mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. *Thiel,* at 220

60

The listing of distinctive groups is also reflected in the Rule of the Lousiana Supreme court prohibiting the exclusion of citizens from jury service based on their membership in one of the protected groups"

### RuleXXV.  Jury Service

Section 1.  It is the policy of this court that all litigants in Louisiana courts entitled to trial by jury shall have the right to grand, petit, and civil juries selected at random from a fair cross-section of the parish wherein the district court convenes, that all qualified citizens shall have the opportunity to be considered for jury service in the district courts of Louisiana and shall have an obligation to serve as jurors when summoned for that purpose, and that no citizen shall be excluded from jury service in the district courts of Louisiana on account or race, color, religion, sex, national origin or economic status.

### La.S.Ct.R.  XXV

The distinctive groups the subject of this fair cross-section claim are:

1.)  Low income citizens

2.)  Citizens with disabilities

3.)  Citizens who receive public assistance

4.)  Black citizens

5.)  Citizens who are members of other racial minorities

*Louisiana's decision not to comply has resulted in unfair and unreasonable representation of the impacted groups in Jefferson Parish venires.*

The fact of under-representation of the distinctive groups is established both directly and through inference.  Given the breaking nature of the information regarding the state s of Louisiana's unlawful conduct, Defendant seeks an opportunity to further develope the factual basis of this claim and the scope of the under-representation caused.  However, peititioner believes that his showing with respect to Black Citizens of Jefferson Parish meets the required standard.

61

According to the U.S. Census 2010, the population of Jefferson is 432, 552.  The proportion og the population identified as black is 26.3%.[11]

In anticipation of Mr. Funes grand and petit trial jury summonses were issued, to be served by mail.  25.5% of those to whom summonses were sent were black.  See Exhibit 19.13, Jefferson Parish Jury Summons Date April 2009- March 2011.

The special venire of jurors presented for jury selection for Mr. Funes's trial consisted of 189 persons, 33 of whom were black.  This is a percentage of 17.4%.  Ultimately, the actual jury selected in Mr. Funes's case only had ____[12] black juror(s).

The progressive under-representation of black prospective jurors in Mr. Funes's venire is shown in the table which follows:

---

[11] This information is made available on the Bureau of the Census website, operated by the U.S. government.  U.S. Census Bureau, "State and County Quick Facts: Jefferson Parish Louisiana," available at http://quickfacts.census.gov/qfd/states/22/22051.html.

[12] Voire dire portion of the trial transcript need to be produce for this information so that appointed post conviction counsel can inject any/all missing information correctly into this writ application and counsel should be given the opportunity to amend the petitioner as needed.





An analysis of the jury summons returns in Mr. Funes's case discloses two critical categories of summonsed jurors who did nor for a part of the venire made available for trial. They are "returned from the post office - NFA" and "no show." These catagories refer to people to whom a summons was either returned marked "no forwarding address" or nobody attended in response to the summons. For the "no shows" there was no proof or verification that the summonsed juror still lived at the relevant address.

For Mr. Funes's venire  46% of the summonses issued to black prospective jurors were marked as "returned from post offfice - NFA". That is 66% of black prospective jurors summonsed were not included in the venire because either no response or a "no forwarding address" response was received to the summons mailed to the address maintained in the jury pool database. These may be referred to as unsuccessfully summonsed jurors.

By contrast, 26% of the summonses issued to white prospective jurors[13] were marked as "no show" and a further 15% were marked as "returned from post office -NFA." That is, only 41% of non-black jurors summonsed were not included in the venire for these reasons.

Black jurors in Mr. Funes's case were unsuccessfully summonsed at the address maintained in the Jefferson Parish jury pool database at a rate of 1.6 times that of white jurors.

This disparity accounts for the 8.9% absolute and 33.8% relative under-representation of black prospective jurors on the venire.

Of the jurors who given codes other than "no show" or "NFA," 17% were black, 74% were white and 9% were members of other racial minorities.

While there are numerous other ways that jurors may have ended up on the venire, the overwhelming number who did not make it to the venire were excused under the no show or NFA categories. Excusal under the other categories had no meaningful impact on the relative racial makeup of the venire in this context.

The fact that it is the disproportionate rate of unsuccessful summonses that accounts for the under representation of blacks on the venire is shown in the chart below:

---

[13] The same results apply where all non-black jurors are aggregated, though this is in part due to the relatively large number of white jurors and the relatively small number of other minority jurors. However, such an aggregation would mask the fact that other minority jurors are also over-represented in the number of "no show" and "NFA" entries in the computer, just as they are over represented in the number of citizens in parish receiving public assistance.



Were it not for the disproportionate rate of "no show" and "NFA" returns on the summonses of black jurors, there would not have been the under-representation that was seen in the venire made available for Mr. Funes's trial.

A review of all jury summons activity for the last two years discloses that the disproportion in Mr. Funes's case is typical and represents a part of an ongoing, routine, routine and and regularly occurring under-representation of black jurors.

For ease of analysis in seeing the regular failure to successfully summons black jurors it is helpful to combine the returns on summonses marked as "NFA", "no show" and "JPSO attempted" under the label "unsuccessful summonses". A review of every jury summons for the period 4/1/09 to 3/31/11[14] shows that consistently across the last two years the rate of unsuccessful summonses of black prospective jurors has averaged 61% and that of of non-black prospective jurors has averaged

_____

[14] This involves 374 jury summons dates involving summonses issued to 177,702 prospective jurors. The data from these figures were calculated have been submitted to the court on a

43%. The consistent pattern shows that black prospective jurors in the jury pool databases have been unsuccessfully summonsed at a rate of 1.4 times the rate of white prospective jurors.

The underrepresentation of black prospective jurors is shown not to be limited to Mr. Funes's own venire but is a consistent pattern across all the venires summonsed in the Parish and to represent a substantial underrepresenation.

The underrepresentation of other minority groups is also seen to be significant. Other minorities have also been unsuccessfully summonsed at a rate of 1.4 times the rate of white prospective jurors.

Given the figures described above regarding the number of black and minority residents of Jefferson Parish receiving public assistance as a result of poverty (and assistance for a disability) it is a reasonable inference that the underrepresentation is directly related to the violation of the *NVRA* and the low income and disabled populations are underrepresented in the venire for Mr. Funes and other juries in Jefferson Parish. Certainly a prima facie case is established.

Defendant specifically requests that a hearing be ordered and an opportunity to further develope the information and provide more direct proof of the underrepresentation of the groups indentified in this pleading. The DOJ's law suit establishing the violation of the *NVRA* was filed on July 12, 2011. Because petitioner is restricted by the rigors of imprisonment, information flows to him a lot slower than society at large. It was only recently (May 1, 2013) that petitioner became aware of of the existence of the suit and obtained a copy of the pleadings and some supporting documents. Petitioner had a very limited window to react to the new and critically important information which has been disclosed by the Department of Justice in a case where underrepresentation had been observed and put before the court by counsel.

*The underrepresentation of black prospective jurors in Mr. Funes's venire and*
*other venires in the Parish is accounted for by the disproportionate failure to*

66

*successfully summons black jurors by mail at the address held in the Jefferson Parish Jury pool database.*

As demonstrated above, the clear cause of the underrepresentation of black and other minority prospective jurors is that disproportionately high rate of unsuccessful summonses. The same is alleged to be true for low income citizens and persons with a disability.

This disproportionate rate of unsuccessful summonses among this group is also shown to be directly related to the state of Louisiana's unlawful voter registration system – a system that violates federal law in a way that directly reduces the opportuninty for low income citizens and persons with disabilities to register to register to vote and maintain current address information.

Lest there be any suggestion that the high "no show" figure is due to some form of apathy among black and minority citizens, regards may be had to the number of black "no show" jurors in the jury venire for whom Accurint® gives a different current address than the one on file in the clerk of court's database and the rate of failed summonses in the period when a larger number of the summonses were served by JPSO deputies.

Mr. Funes's attorneys have researched the current address of all black jurors from Mr. Funes's venire designated as "no show" in the public records database Accurint®.[15]  Accurint® lists entirely different current addresses for 49% of the black jurors designated as "no show" by the clerk of court in the jury venire.  Attempts to contact "no show" jurors with the sme current addresses in Accurint® as the clerk of court's files revealed that even some of those jurors had moved away from those addresses.  See Exhibit "__",[16] Statement of Kim Allen, Jurly 17, 2011 (Shavita Allen is my daughter.  She used to live at this address but moved away about a year and a half ago.")

---

[15] Accurint® combines over 4 billion current public records.  LexisNexis®, Accurint® http://www/lexisnexis.com/risk/solution.accurint,aspx

[16] Counsel is needed to get this correct information.

Moreover, JPSO's experience attempting to personally deliver summonses further demonstrates that the vast number of minority "no show" summonses cannot be explained by the apathy of intended recipients. When JPSO were attempting personal service there was a 62% rate of unsuccessful summonses among black jurors and since the resort to mail service only, that rate sits at 57%. Moreover, under the mail service only system 35% of black jurors are marked as "no show" and 22% as NFA. When JPSO deputies attempted service of summonses only 16% of black jurors were marked as "no show", with 36% marked as "JPSO attempted" and 10% marked as "NFA". (The no show figure for white jurors was 12%).

It is clear that the "no show" figure is substantially made up of those people previously recorded as "JPSO attempted." That is people with an incorrect address in the database, as confirmed by the physical attempt at service of a JPSO Deputy. Indeed, Michael Cyprian, the JPSO Deputy in charge of accomplishing service of summonses has confirmed to representatives of counsel that this problem has persisted for some time and has always been related to quality of the addresses in the database used to generate summonses.

Finally, as a matter of completeness, no inference should be drawn from the drop in the rate of unsuccessful summonses since personal service was abandoned. While the overall percentage of unsuccessful summonses has dropped, the racial disparity in unsuccessful service has crpt up, with black jurors now unsuccessfully summonsed at 1.47 times the rate of white prospective jurors.

In short, defendant has clearly established the systematic exclusion of the identified distinctive groups of by the unlawful conduct of the State of Louisiana in depriving these groups of the legislatively mandated opportunities to register and maintain current addresses. At the same time, the State of Louisiana has required as a matter of law that jury service be based primarily upon one's presence upon the state's illegally composed voter registration list. *La.C.Cr.P. art. 408.1.*

Even if the court were not satisfied of the proof of intentional exclusion, the statistical showing made even with so little time to develope the proofs clearly establishes a prima facie case.

A prima facie case having been established, the burden falls to the state to disprove the systemic exclusion or demonstrate that the cause (breaking federal law) serves a significant state interest.

**e)   In failing to comply with the NVRA, Louisiana has purposefully discriminated against African-Americans in violation of the Equal Protection Clause.**

*Louisiana singled-out distinct groups for different treatment under the law*

Counsel adopt and incorporates their arguments from subsection b) above and state that the following distinct classes of individuals were intended targets in the state's failure to comply with the clear commands of federal law:

(1) Low income citizens

(2) Citizens with disabilities

(3) Citizens who receive public assistance

(4) Black/African-American Citizens

(5) Citizens who are members of other racial minorities

Substantial underrepresentation has occurred as a result of Louisiana's failure to adhere to federal law. Low-income citizens with disabilities, recipients of public assistance, and Black/African-American Citizens or other minority citizens of Louisiana have been substantially underrepresented among new voter registrations in the parish as compared to their number in the general population.

The information already available to counsel indicates that Medicaid and other public assistance agencies are vastly underrepresented as sources of new registration applications.

Complaint at 5. Available date indicate that these groups represent significant portions of the state population. Medicaid recipients, for instance, comprised 25.8% of its total citizen population, according to "2010 Census data." Complaint at 6. These figures represent a substantially disproportionate number of people on public assistance as compared with voter voter registration coming from such agencies. Given the racial and socio-economic makeup of Medicaid beneficiaries statewide (53%, Black 100% under the means-tested poverty threshold), there is a reasonable inference that the above named groups have been substantially underrepresented among new registrations over the last twenty years. This inference could be strengthened by appeal to additional relevant data, which counsel seeks additional time to conduct.

### Louisiana's decision to defy "FEDERAL" law was not race-neutral

Where an allegedly "race-neutral" ground for excluding minority jurors applies disproprotionately to that minority group, it is not "neutral" at all. In *Fourteenth Amendment* cases, such a purportedly "neutral" ground is considered a surrogate or proxy for race.

General principles of racial discrimination, particularly those set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986) and its progeny, are applicable to analyzing whether failure to successfully summons black community members constitutes a systematic exclusion of African-American jurors. *Williams v. State*, 125 P.3d 627, 634-36 (Nev. 2005). In *United States v. Bishop*, 959 F.2d 820, 825 (9th Cir. 1992), overruled as to different holding, *United States v. Nevils*, 598 F.3d 1158, 1166 (9th Cir. 2010), the Government justified the exclusion of an African-American venire-member who lived in Compton, California, on grounds that her community was "a poor and violent community whose residents are likely to be anesthetized to such violence and more likely to think that the police probably used excessive force." The Court found that, because the vast

majority of the residents of Compton were African-American, this purportedly "race-neutral" grounds was a surrogate for race.

The *Bishop* Court relied on *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 1872-73 (1991), where, although denying relief to *Hernandez*, Justice Kennedy's opinion made clear that where a justification for jury exclusion correlates with ethnic or racial identity, that justification is not "race- neutral" but is rather a proxy for racial or ethnic exclusion. Other Courts similarly interpret *Hernandez* as forbidding the State to use, as "race-neutral" justifications, classifications that are merely substitutes for race or ethnicity. See *Lard v. State*, 749 So.2d 276, 280-81 (Miss.App.1999) (Irving, J., concurring) (justification tainted by impermissible generalizations regarding racial groups and their enviroment is inherently discriminatory), citing *Bishop* and *Hernandez*; *Commonwealth v. Horne*, 635 A.2d 1033 (Pa. 1994)(same).

The social and political history of the Parish also provide a context. Jefferson Parish is largely made up of what are known as "white flight" surburbs and has long had a negative reputation when it comes to matters of race. The black population in Jefferson Parish has increased, growing 75% between 1980 and 2000 and now making up nearly 27% of the Parish. That influx has been met a steady stream of racially charged incidents involving state actors, including the District Attorney's Office itself.

71

By way of example[17]: in December 1986 Sherrif Harry Lee ordered his deputies to routinely stop and question blacks in largely white areas.  In 1987 the Jefferson Parish Council ordered a metal and steel barricade built in the middle of the street bordering Orleans Parish to keep the majority black residents of that parish of of Jefferson.  In 1989 david Duke was elected as state representative for the 81st Representative District.  In 1991 Jefferson Parish was ordered to establish its first ever majority black voting district.  In 1994, two black men dies in the custody of the Sheriff's department, at least one of whom was reportedly hog-tied.  Reacting to criticisms, Sherrif Lee withdrew police from a black neighborhood and said "To hell with them.  I don't need that.  I haven't heard one word of support from one black person."  In 2003 two Jefferson Parish prosecutors wore ties in court with a noose and a grim reaper painted on them at pre-trial hearing in a capital case involving a black defendant, aged just 16 years at the time of the crime.  In 2005, Jefferson Parish officers were discovered to be using a homemade caricature of a black prisoner as taget practice.  In 2005, deputies fired over 100 bullets at three unarmed black teens, killing a 16 year old sparking allegations of racisim.  In 2006, in the midst of Hurricane Katrina's devastation, officers armed with shotguns blocked evacuees trying to flee New Orleans across the Gretna Bridge, sparking more outrage from black leaders.

---

[17]

See Frances Frack Marcus, *Louisiana Sheriff Backed After Racial Remark*, N.Y. Times, Dec. 23, 1986, p.  A17; *Barricades to Black Drivers Dismantled*, L.A. Times, Feb.  22, 1987, p.25; Kim Chatelain and Robert Rhoden, *Duke Beats Treen by 227 Votes*, Times-Picayune, Feb.  19, 1989, p. A1; Joe Darby, *Westwego Gets Order for New Black District*, Times Picayune, Oct.  30, 1991, p.B1; Joe Darby, *Jeff Suspect Who Died Was Hog-Tied*, Times Picayune, Mar.  22, 1994, p.  B1; Bill Walsh, Greg Thomas, Joe Darby and Paul Atkinson, *Lee Pulls Out Cops After Two Deaths*, times Picayune, Mar.  15, 1994, p.  A1; Jeffrey Gentleman, *Prosecutors' Morbid Neckties Stir Criticism*, N.Y.Times, Jan 5, 2003, p.114; *Target Practices*, Gambit Weekly, Apr.  12, 2005, p.19; Michelle Hunter, *Lee Backs Lethal Response To Chase: More Than 100 Shots Left Teen Driver Dead*, Times Picayune, June 1, 2005, p.1; Gardiner Harris, *Storm and Crisis: Battling The Storm; Police in Suburbs Blocked Evacuees, Witnesses Report*, N.Y. Times, Sept.10, 2005, p.A13.

f) Conclusion

As the United States Supreme Court has held, "with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process." *Powers v. Ohio*, 499 U.S. 400, 407 (1991). As deTocqueville put it:

> The jury system as understood in America seems to me as direct and extreme a consequence of the dogma of the sovereignty of the people as universal suffrage. They are both equally powerful means of making the majority prevail . . . [T]he jury is above all a political institution . . . [and] should be made to harmonize with the other laws establishing that sovereignty.

This court should grant defendant time to develope his claim, conduct an evidentiary hearing, and require the state to present the necessary justifications for its actions under the fair cross-section and equal protection standards. Due to the violation of the *Sixth* and *Fourteenth Amendments*, this Court should grant a new trial to Mr. Funes. Further the court should also grant such relief due to the negative impact upon the jury venire composition resulting from the State of Louisiana's refusal to comply with a Federal mandate. This rejection of a federal mandate affected both the venire of petitioner's Grand Jury composition and his Petit Jury composition.

## CLAIM NO. 10
## TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN IT FAILED TO INSTRUCT OR SEQUESTER THE JURY WHEN IT RETIRED DURING RECESS AND BREAKS DURING TRIAL.

Petitioner contends that he was denied the right to a fair trial under the *Sixth Amendment* to the United States Constitution when the trial court failed to instruct the jury or sequestered them so that they were not allowed to discuss the case with others, read any media accounts of the trial, or report any information that someone or something had influence on their verdict. The trial record is bare of any instructions concerning the trial court charging the jury prior to releasing them for recess. As for as petitioner can recollect, he following instructions from the trial court is somewhat similar:

THE COURT:

All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just keep in mind the longer we break, the later we go home. Court recesses for lunch. The Court stands in recess. Please remand the defendant.

The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures and non-instructions employed by the trial court failed to properly insulate the jurors from extraneous influences, or the possibility thereof, and at no time did the trial court adhere to the mandatory instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737 (1970). The locality of Jefferson Parish is a city steadily on the rise in population and serious felony crimes, where conversation of non-juror third parties and jury members more than likely resulted in the jury verdict being based upon, and affected by, influences extraneous of the legal evidence introduced at trial.

*La.C.Cr.P. art. 791 C* provides that "In non-capital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court." The purpose of this instruction is to insulate the jurors from outside influence, or the possibility thereof, and to insure that their verdict will based upon the evidence developed at trial. *State v. Parker*, 372 So.2d 1037 (La.1979). Due process requires that the accused receive a trial by an impartial jury free from outside influences. *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.CT. 1507, 1522, 16 L.Ed.2d 600 (1966). Stated differently, "the right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent jurors'. The failure to accord an accused a fair trial violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.CT. 1639, 1642, 6 L.Ed.2d 751 (1961).

Petitioner argues that he was deprived of due process because the jury was swayed by influences outside the courtroom, it is the duty of the Court to independently review the trial records

and hold an evidentiary hearing with members of the jury present, so that their testimony will be heard that their verdict was not based upon the influence of third parties to convict an alleged violent offender as a principal to second degree murder, that it is believed to have occurred during an illegal drug transaction.  When juror misconduct concerns influences from outside sources, the complete failure to hold a hearing constitutes an abuse of discretion and is reversible error because a presumption of prejudice arises when the trial court learn of such influences.  *United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981); *Marshall v. United States*, 360 U.S. 310, 312, 79 S.CT. 1171, 3 L.Ed.2d 1250 (1959).  The traditional rule in such cases has been that there must exist a nexus between the community prejudice and jury prejudice; there must be a showing that "prejudice found its way into the jury panel." *Pamplin v. Mason*, 364 F.2d 1, 6 (5th Cir. 1966).   Several Supreme Court decisions have fashioned the principle that in certain extreme circumstances where there has been "inherently prejudicial publicity," *McWilliams v. United States*, 394 F.2d 41, 44 (8th Cir. 1968), the actual existence of prejudice in the jury box need not be shown.  Petitioner submits through the testimony of jurors, it will be established that information of his prior convictions and arrests were discussed by citizens in the hallways and outside the courtroom where the jurors had opportunity to hear and engage in improper discussion.  More discussion took place outside the courthouse where some jurors were allowed to take a smoke break after they ate lunch.  These jurors also were influenced in their verdict by members of the deceased victim's family revealing information about what the district attorney had told them about the accused's criminal history.

Although jurors stated on voir dire that anything they knew about the case would not hinder their ability to give both the state and defendant a fair trial, prejudice seeped into their minds during these absences from the courtroom.  The record does not support that the trial court admonished the jury at no time to ignore publicity about the trial, or report if anyone discussed the case with them; this

75

charge is mandatory in criminal proceedings. *State v. Hill*, 562 So.2d 12 (La.App. 5 Cir. 1990). In complaining of the prejudice in this case, it is not the quantity, but the quality that survives in the locality of Jefferson. In essence, petitioner contends he could not receive a fair trial because he was the subject of extensive "discrimination" as evidenced by the attached duplicate of the suit and the figures thus found to relate to Jefferson Parish, a prominence that brings prejudice. Most importantly, the mandate of *La.C.Cr.P. art. 791* must be complied with or it is reversible error. Therefore, petitioner is entitled to a reversal of his convictions, or in the alternative an evidentiary hearing be held where testimony will establish a record to support that the jury verdict was obtained by the outside influence of the people of the locality of Jefferson Parish, along with members of the deceased victim's friends and family who lingered in the hallways and stand outside the courthouse.

## CLAIM NO. 11
CONFLICT OF INTEREST AGAINST THE ENTIRETY OF THE JEFFERSON PARISH INDIGENT DEFENDER BOARD FOR COVERING UP THE FACT THAT THEY WERE WELL AWARE OF THE SYSTEMIC INEFFECTIVE ASSISTANCE BEING PROVIDED FOR THE REASONS SET OUT IN THE "ASSESSMENT OF TRIAL LEVEL DEFENSE SERVICES IN LOUISIANA 40 YEARS AFTER GIDEON"

Petitioner avers that the Jefferson Parish Indigent Defender Office and its employees has, for years, concealed from their clients the fact that they were under funded and the fact that they were controlled by undue political interference. These and other components worked together to deprive all their clients of their fundamental right to counsel as provided for by the State and Federal Constitution. Petitioner complains of the denial of both a State and Federal Constitutional right and requests that the claims be adjudicated under both authorities of law as independent claims. Also, those same public defenders concealed that a portion of their pay came directly from the persons who were convicted and had fines and fees assessed against them.

Constitutional Deprivations Problems:

76

a.) Louisiana Statutes do not safeguard against undue judicial interference. Judges appoint IDB board members in violation of independent payment of defense counsel.

b.) The public defender offices are not entirely state-funded as required, in favor of contract flat-fee services.(gross-underfunding places limitations on options available in representing clients)

c.) Client confidentiality is constantly abridged, clients are routinely denied access to counsel until the court forces a meetings between client and counsel before the court as a part of the proceedings.

d.) Louisiana Public defender statutes do not protect those accused of crimes from being the victims of public defender overload. The workload of Louisiana Public Defenders are in far excess of all nationally recognized standards. Failure to control caseload permits poor quality representation.

e.) Louisiana Statutes deprived petitioner of his federal counstitutional *Sixth Amendment* right to counsel by permitting unqualified attorney's to be appointed to represent indigent defender cases for which they are not qualified to represent. Additionally, there is no systematic indigent defense training in the state.

f.) A review of all prosecutor and IDB financial audits reveal that there is no parity between prosecution and indigent defender resources. Indigent defense is not a co-equal partner in the justice system in Louisiana.

g.) The general training of Continuing Legal Education is not specifically appropriate for the indigent defense field when ultimately served little if any purpose of bettering the quality of representation received by indigents accused of crimes.

h.) Louisiana Statutes provide no guarantee that indigent defense attorneys be reviewed for quality. LIDAB has no authority or capacity to do so. There is no supervision or quality review of the indigent defense system.

As a result of all the above and foregoing and whatever else appointed Post Conviction Counsel can dig up who is appointed to further investigate the allegations contained herein. These allegations require the appointment of independent counsel, and it further requires that he be given the resources to fully investigate, interview and develope the factual specifics in order to validate these claims. Further, petitioner urges that the publis defenders previously appointed to represent him in the pre-trial, trial and post-trial (appeal) proceedings did not raise the claims of ineffective assistance of counsel before and during trial because of the conflict of interest in raising this viable *Sixth*

77

*Amendment* violation against the very system that employs them and which ultimately pays them. The failure to raise the violation of the *National Voter Registration Act* (Equal Protection and Due Process Violation) is a prime example of ineffective assitance pretrial. The failure of appeal counsel to blame trial counsel for this egregious lapse in representation shows that there is a protective shell of understanding to "not bite the hands that feeds you. For this reason, petitioner once again was deprived of his substantive and fundamental right to counsel. Prejudice is presumed only if the defendnat demonstrates that counsel "actively represented conflicting interests" and that and actual conflict of interests adversely affected his lawyer's performance." *Cuyler v. Sullivan*, supra, 446 U.S., at 350, 348, 100 S.Ct., at 1719, 1718 footnote omitted.

The type of breakdown in the adversarial process that implicates the *Sixth Amendment* is not limited to counsel's performance as a whole; specific errors and omissions may be the focus of a claim of ineffective assistance as well. *United States v. Cronic*, 466 U.S. 648, 657, 104 S.Ct. 2039, 2048 (1984).

However, breach of the duty of loyalty, as prejudicial conduct, is in and of itself a deprivation of one's right to counsel of choice in the absence of an express waiver and also the right to counsel free from conflicts-of-interest. **The concealment of the divided loyalty undermines the client because it deprives him of critical information needed in order to decide how his case will proceed forward.** This further inhibits his right to counsel acting with his best interest and the preservation of his rights while being represented. The *Sixth Amendment* provides that an accused has:

1.) The right to counsel of choice;

2.) The right to conflict-free counsel (and once a person has an attorney who is the counsel of choice and who is not burdened by actual conflicts of interest) and

3.) the effectiveness of that counsel who has met the first two (2) criteria.

78

The Courts have recognized that the harm caused by representing conflicting interest is difficult to measure because the harm "is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible plea negotiations and in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942). Therefore when an attorney labors under an actual conflict of interest, the defendant need not show prejudice in order to obtain reversal of his conviction. *Berger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987). *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978); see *Glasser v. United States*, 315 U.S. at 75-65, 62 S.Ct. At 476, (the right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial).

## CONCLUSION

Petitioner concludes by stating that he has made the requisite showing under: *State ex rel. Bernard v. Criminal District Court*, 653 So.2d 1174 (La. 1995) to warrant this reviewing court to provide him with a complete copy of the **"Jury Voire Dire transcript"** so that he may file an effectively make corrections to this post conviction application, or in this case supplement the petition with portions of the record in support of his claims. Petitioner has met his burden of proof and his convictions and sentence have been obtained in violation of the United States Constitution and Louisiana Constitution.

Wherefore, petitioner prays that this court vacate his convictions and sentence, and remand the matter to the trial court for a new trial. In the alternative, petitioner respectfully request that this Honorable Court order an Evidentiary Hearing, and appoint counsel to settle the allegations set forth above.

Petitioner further prays that this Honorable Court order the Clerk of Court or Court Reporter to provide petitioner with a complete copy of the trial transcripts hearing in this matter.

Respectfully Submitted By:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce-2
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA  70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify that I have forwarded a copy of the above proceedings to the Clerk of Court and District Attorney's Office for the Parish of Jefferson, 200 Derbigny St., Gretna, La. 70053, on this 4th day of June 2014.

*Rigoberto Funes*
Rigoberto Funes

80

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, #571875, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein (in this Memorandum of Law in Support of His Application for Federal Habeas Corpus Relief, are true to the best of his knowledge and belief.   Therafter, this document was tendered to the hands of a Prison Official (Classification Officer) on this _04_ day of June, 2014.


_____
Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

# IN THE
# UNITED STATES EASTERN DISTRICT
# FOR THE STATE OF LOUISIANA

### DOCKET: _____

### Rigoberto Funes
### Petitioner

### versus

### Burl Cain, Warden
### Respondent

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SUPPLEMENTAL HABEAS CLAIMS WHICH WERE EXHAUSTED
### IN PETITIONER'S DIRECT APPEAL
### [PETITIONER MAINTAIN'S HIS REQUEST FOR APPOINTMENT OF
### COUNSEL PURSUANT THE "CRIMINAL JUSTICE ACT"]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### SUPPLEMENT TO THE ORIGINAL MEMORANDUM OF LAW

### RESPECTFULLY SUBMITTED:

*Rigoberto Funes*

**RIGOBERTO FUNES**
**#571875**
**LA. STATE PRISON**
**Spruce-2**
**Angola, La.  70712**

# TABLE OF CONTENTS

PAGE NO.

SUPPLEMENTAL CLAIM #1 (this claim originates from petitioner's direct appeal) ......... 2

CLAIM NO. 2 (this claim originates from petitioner's direct appeal) ..................... 10

CONCLUSION ........................................................................... 13

CERTIFICATE OF SERVICE ............................................................. 13

TABLE OF AUTHORITIES

PAGE NO.

CONSTITUTIONS
U.S.C.A. Const.Amend. 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S.C.A. Const.Amend. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S.C.A. Const.Amend. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATUTES
9th Cir. Model Crim. Jury Instruction 3.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Court Interpreters Act, 28 U.S.C. §§ 1827-28. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La.C.Cr.P. art. 782(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FEDERAL CASES
Apodaca v. Oregon, 406 U.S. 404 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Apprendi v. New Jersey, 530 U.S. 466, 47 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 11

Blakely v. Washington, 542 U.S. 296, 301 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) . . . . . . . . . . 8

Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989) . . . . . . . . . . 8

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) . . . . . . . . . . . . . . . 6

McDonald v. City of Chicago, 130 S.Ct. 3020, 3035 n.14 (2010) . . . . . . . . . . . . . . . . . . 11

Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986) . . . . . . . . . . 8

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) . . . . . . . . . . . . . . 2

Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) . . . . . . . . . . . . 7

Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983) . . . . . . . . . . 9

Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) . . . . . . . . . . . . . 9

United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir. 1987) . . . . . . . . . . . . . . 7

United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir. 1985) . . . . . . . . . . . . . 7

United States v. Short, 790 F.2d 464, 469 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATE CASES
State v. Bertrand, 2008-2215 (La. 3/17/09), 6 So.3d 738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**SUPPLEMENTAL CLAIM NO. 1 (this claim comes from petitioner's direct appeal)**
TRIAL COURT ERRED IN DENYING MOTION TO SUPPRESS STATEMENTS WHICH
STATEMENTS WERE TAKEN IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE
FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

Rigoberto Funes contends that the trial court erred in denying his motion to suppress

statements. Funes argues that his statements were taken in violation of his *Fifth* and *Sixth*

*Amendment* rights to the United States Constitution. Specifically, he argues that the State failed

to carry its burden of proving a knowing and intelligent waiver. In support of his argument,

defendant asserts that the fact that the recorded waivers were deficient offers compelling evidence

that the "off the record" advisory and waiver was likewise constitutionally inadequate. In addition,

Funes asserts that where Officer Maggie Pernia represented that she was fluent in Spanish, the

recorded statements demonstrate Pernia's inability to effectively communicate the *Miranda*

warnings to him in Spanish.

### THE WAIVER LANGUAGE WAS DEFICIENT

According to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prior

to questioning, an individual in custody must be advised of 1) his right to remain silent; 2) that

anything he says can be used against him in a court of law; 3) that he has the right to the presence

of attorney; and 4) if he cannot afford an attorney, one will be appointed for him prior to any

questioning if he so desires.

At the hearing on Funes' Motion to Suppress, Maggie Pernia testified that she obtained two

recorded statements from him. (R.p.323-324). Pernia told the judge that she considers herself to

be bilingual. (R.p.324). She admitted, however, that her skill as an interpreter was based on her

long ago birth in Cuba, and, it is presumed, her early childhood there - as it is, at the time of trial

she had been with the Sheriff's Office for almost thirty years. (R.pp.322-328). In any event, self-

2

confident in her ability, she personally advised Funes of this rights before taking any statement from him. (R.p.324).

In particular, Pernia claimed that she informed Funes in Spanish, in an unrecorded pre-interview, that "you have a right to remain silent; anything you say can and will be used against you in a court of law; you have the right to have an attorney present with you during questioning; if you can't afford an attorney, one will be appointed to you; if you decide to answer questions now, without an attorney present, you still have the right to stop answering questions at anytime until you speak to an attorney." (R.p.324). When she took a second taped statement, instead of advising him of his right anew, she simply "reminded him of the same rights. . . and told him they were still in effect." (R.p. 325) She agreed that the tape recorded statements contained "every question and answer that was put by her and given" by Funes. (R.p.327).

On cross, Pernia noted that the first statement began at 7:19 p.m., about five hours after the shooting. (R.p.330). She admitted that in the pre-interview with Funes and in the recorded interview she did not use a written waiver form. (R.p.332). She admitted that the recorded waiver of rights in the 7:19 statement was deficient because it did not include "each and every right under the Miranda decision" stating, "I did not read the rights like I read them at the beginning during the pre-interview, but I reminded him of his rights, of the important rights in that statement." (R.p.334).

In particular, in the recorded statement, Pernia merely told Funes, "Rigoberto, before we started to record this, I told you, you didn't had (sic) to speak to me, is this true?" Pernia also told Funes, "I told you, you could have an attorney and what you may tell me could be used against you in Court. Have I advised you of all of this?" and "Ok, Rigoberto, do you want to speak with me at this time?" Funes answered "yes" to each of these questions in the tape. See p. 1 of transcript

3

of 7:19 statement in evidence.

It is extremely important to note that she did not advise Funes - a 20 year-old indigent - that if he could not afford an attorney, an attorney would be provided to him without cost before any questioning.

In this recorded waiver, in thus memorializing what she "just told him" Pernia makes the record plain that "before we started to record this" she recited for him a deficient listing of his *Miranda* rights. Clearly the tape displays an inadequate advisal of rights. If that is in fact what Pernia "just told" Funes - then she just proved that the statement must be suppressed and the trial court erred in failing to grant his motion, thus entitling him to a new trial. The tape thus shows that the unrecorded waiver was equally deficient.

Pernia also admitted that she did not obtain a written waiver for the second statement either, obtained at 12:24 a.m. on the morning of October 31, 2008. (R.p.336).

In the 12:24 statement, at pp. 1-2, Pernia simply declared, "Rigoberto, you have the right to remain silent and to have a lawyer present. Understand this." and "I have not forced you to talk with me, nor have I treated you badly, is this true?" to which statements Funes replied, "yes."

With regard to brief third statement, obtained at 2:50 a.m. on the morning of October 31, involving identification of his confederates in photographic lineups, Sgt. Kevin Decker testified. (R.pp.345-356). In that statement, Decker used a fellow officer, Deputy Jimmy Mendez, to translate. (R.p.352). Rather than go over his rights with him, Decker simply asked Funes "if he was still aware of his rights." (R.p.352). Mendez testified and admitted that he relied on the advisal of rights purportedly given to Funes earlier. (R.p.369). He admitted that he has no training or certification in translating and can neither read nor write in Spanish. (R.p. 373).

## LACK OF INTERPRETIVE SKILL NEGATES MEANINGFUL WAIVER

4

In the context of judging the deficiency of the waivers themselves, it is worth noting that the broken English in the recorded statements reveals how the self-professed bilingual Pernia clearly struggled in her attempts to communicate in Spanish. When her Spanish was translated to English, her lack of skill was made plain.

The following illustrative examples are taken from the 7:19 statement: p.1 - "Rigoberto, before we started to record this, I told you, you didn't had (sic) to speak to me, is this true?"; p.2 "I will ask. What happened uh-no let me start, the bar in the 4th street, it's called Gomez. Do you know this?"; p.3 "And went to play pool, and there weren't any problems that day?"; p.6 "Nothing, and so only, what were you all going to do?", "How you, how do you know Renil?", "I see that Renil is the brother, is your brother-in-law?"; p.7 "Then he is the boy-in-law, he is Melvin's brother-in-law?"; p.9 "You went on the door first."; p.12 "Wait a minute, let me see something? You come out with this boy Jose. You arrived at the car."; p.14 "How old are you?" - when Funes answered, "I am 20 years old. My birthday is September 13." Pernia inexplicably - and revealing - asked "Where? You didn't shoot?".

The 12:24 statement contains the following illustrative examples by Pernia: p.1 "This is your second declaration you done, truth, you have to say yes and no.", "But this is your second declaration - interview I done, truth?"; p.2 "That was the plan, you told at one time."; p.5 "Why Pedro and Jose come?"; p.6 "And you took anything out of pockets?", "Jose, was the one taking out of pocket?"; p.9 "How from your brother?  How 'your brother'?"; p.10 "How you know?"

This broken English is not highlighted for the purpose of ridiculing Pernia but to illustrate that she struggled to communicate with Funes regarding the comparatively simple mechanics of a barroom armed robbery. If she had such difficulty in communicating the simple "who what when where and how" of the crime, one can only imagine the even greater difficulty she encountered in

advising the twenty year old indigent Funes of the essential constitutional rights he possessed. Her clear difficulty in understanding his responses in the recorded statement must call into question her claim that Funes understood his rights and thereafter waived them.

Accordingly, Funes submits, it would be the height of folly to assume that the unrecorded explanation of rights, and their attendant waiver, was done correctly when the recorded advisal is so clearly deficient, and where the "bilingual" Pernia is exposed to have struggled to communicate the much readily understood facts of the crime. It is only fair to presume that the unrecorded conversation revealed a similar difficulty with communication. Certainly, the evidence in the record does not show that the State carried its heavy burden of proving a knowing and intelligent waiver of Funes' constitutional rights.

### THE STATE FAILED TO CARRY ITS BURDEN

As established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the *Fifth Amendment* right to counsel is intended to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. The burden of proving compliance with the procedures set forth therein is with the Government and that it is a heavy burden, quoting this language:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel . . . This Court had always set high standards of proof for the waiver of constitutional rights, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-assert those standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only

6

means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Miranda v. Arizona*, 384 U.S. at 475.

Thus, according to *Miranda*, prior to questioning, the individual must be advised of 1) his right to remain silent; 2) that anything he says can be used against him in a court of law; 3) that he has the right to the presence of an attorney; and 4) if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Id. at 444. While the individual may knowingly and intelligently waive these rights, unless such warnings and waiver thereof are demonstrated, no evidence obtained as a result of the interrogation may be used against the individual. Id. In order for the waiver to be valid, the relinquishment of the right must have been voluntary in the sense that it was the product of a free individual choice rather than intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). It also must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Id. "[L]anguage may in some instances impair an individual's ability to waive his rights in a knowing manner." *United States v. Boon San Chong*, 829 F.2d 1572, 1574 (11th Cir. 1987). See, *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1985) ("[L]anguage difficulties may impair the ability of a person in custody to waive [*Miranda*] rights in a free and aware manner."); *United States v. Short*, 790 F.2d 464, 469 (6th Cir. 1986) (holding defendant's language difficulties and lack of understanding regarding the United States criminal justice system rendered her waiver of Miranda rights invalid).

In federal courts, translations for criminal defendants and witnesses who are not fluent in English are normally provided by certified experts. Congress requires federal courts to certify interpreters for use in federal judicial proceedings. See, *Court Interpreters Act, 28 U.S.C. §§*

7

*1827-28*. To be certified as a Spanish federal-court interpreter, an applicant must pass a rigorous written and oral examination, which requires native-level mastery of both English and Spanish. Many people claim "fluency" in a foreign language, but "there are few persons in the United States who can interpret with the degree of precision and accuracy required at the Federal court level." H.R. Rep. No. 100-889, at 58 (1988), reprinted in 1988 U.S.C.C.A.N. 5982, 6019.  Indeed, jurors who consider their own translation skills superior to those of the certified interpreter are instructed to consider only the certified translation.  See, *9th Cir. Model Crim. Jury Instruction 3.20*.

While Pernia's representation that she is fluent in Spanish was well intended, her statement nonetheless lacks one crucial component: confirmation by someone familiar with the requisite standard that her fluency was commensurate with the level required for translating the sometimes difficult words and concepts used in a *Miranda* advisal of rights.  If anything, the recorded statements show that she struggled haltingly throughout.  Bilingual "fluency" is certainly not demonstrated.  This lack of skill on the part of Pernia must be taken into account when judging whether she was able to communicate the *Miranda* warnings to Funes in an understandable manner.

While there is no rigid rule requiring that the warnings to an accused be a virtual incantation of the precise language set forth in the *Miranda* opinion, see *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), and reviewing courts need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), still the reviewing court must determine "whether the warnings reasonably 'convey to [a suspect] his rights as required by *Miranda*.'" Id. (quoting *California v. Prysock*, 453 U.S. at 361).

Additionally, there is a strong presumption against waiver, and in order to establish that

statements taken by police during uncounseled custodial interrogation are admissible, the burden rests with the State to establish "that the [suspect] knowingly and intelligently waived his privileges against self-incrimination and his right to retained or appointed counsel." *Miranda*, 86 S.Ct. at 1628. Indeed, courts must "'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

The Supreme Court has explained the procedure for evaluating the validity of waivers as follows:

The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than, intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1985).

As part of this inquiry, courts must consider the unique facts of a particular case, "including the background, experience, and conduct of the accuse." *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983) (internal citations omitted). Again, although there is no requirement of adherence to talismanic language, courts "indulge every reasonable presumption," *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (internal quotation marks omitted), that a suspect has not waived his right to counsel under *Miranda*, see, e.g. *Oregon*

9

*v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (Powell, J., concurring) ("We are unanimous in agreeing . . . that the [*Miranda*] right to counsel is a prime example of those rights requiring the special protection of the knowing and intelligent waiver standard") (internal quotation marks and brackets omitted).

In this case, the recorded "waiver" falls woefully short of the goal of reasonably conveying to Funes the right he possessed under *Miranda*. In the first recorded statement, Pernia declared simply: "Rigoberto, before we started to record this, I told you, you didn't had (sic) to speak to me, is this true?" . . . ."I told you, you could have an attorney and what you may tell me could be used against you in Court. Have I advised you of all of this?" As noted above, this advisal is clearly deficient on its face for failing to advise Funes that he would be provided counsel at no cost - and damning reflects what was just told "before we started to record this." At the time of the purported waiver, the 20 year old indigent alien had been held incommunicado in police custody for over five hours. The circumstances of this case fail to satisfy the knowing and intelligent waiver standard required by law.

The record before this Court demonstrates that the State failed to carry its heavy burden of proving a knowing and intelligent waiver. The evidence shows that the recorded waivers were deficient and are compelling evidence that the "off the record" advisal and waive was likewise constitutionally inadequate. Therefore, it was error for the trial court to deny the motion to suppress, thus resulting in Funes' constitutional rights under *U.S.C.A. Const.Amends. 5 & 6* to be violated and requires that he be granted a new trial.

### CLAIM NO. 2 (this claim originates from petitioner's direct appeal)
THE TRIAL COURT ERRED IN CHARGING THE JURY THAT A LESS THAN UNANIMOUS VERDICT WAS SUFFICIENT TO CONVICT DEFENDANT FOR AN OFFENSE NECESSARILY PUNISHABLE BY HARD LABOR.

In this case, trial counsel unsuccessfully challenged the constitutionality of *Louisiana Code*

10

*of Criminal Procedure Article 782(A)*. (R.pp. 85-93; 117; 618-625). In particular, trial counsel challenged the trial court's instruction on lack of a need for jury unanimity. As noted, the jury was polled on its verdict and it was found that each verdict was by a vote of only eleven to one. (R.pp. 1201-1203).

Funes submits that a non-unanimous verdict is a violation of federal due process, such that the verdict cannot stand. A non-unanimous verdict in a case such as the instant one violates *U.S.C.A. Const.Amends. 6 & 14*.

Louisiana is one of two states that allows a person to be convicted of a felony by a less than unanimous jury verdict. (Oregon is the other. See Or. *Const. Art. I § 11; Or. Rev. Stat. § 136.450*). This practice contravenes centuries of common law, as well as longstanding American precedent, requiring unanimity to convict in criminal cases. Nevertheless, in *Apodaca v. Oregon*, 406 U.S. 404 (1972), a bare majority of this Court - in a deeply fractured, internally contradictory decision - held that the Constitution does not forbid the states from securing convictions by non-unanimous verdicts.

In *Apodaca*, four justices concluded that the *Sixth Amendment* did not require unanimous juries and four justices concluded that the **Sixth Amendment** did require unanimity and that the *Fourteenth Amendment* applied the requirement to the states. The result in Apodaca turned on the conclusion of a single justice that, while the *Sixth Amendment* had a unanimity requirement, the *Fourteenth Amendment* did not apply that requirement to the states.

Subsequent developments in the Supreme Court's *Sixth* and *Fourteenth Amendment* jurisprudence call the five-vote judgment in *Apodaca* into serious question. In terms of the Sixth Amendment, the plurality opinion in *Apodaca* is squarely inconsistent with the Supreme Court's recent, repeated pronouncements in cases reviewing criminal convictions from state courts that the

11

Sixth Amendment requires "that the 'truth of every accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors.'" *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (quoting William Blackstone, Commentaries on the Laws of England 343 (1769)); accord *Apprendi v. New Jersey*, 530 U.S. 466, 47 (2000); see also *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3035 n.14 (2010) ("[T]he *Sixth Amendment* right to a jury trial by jury requires a unanimous jury verdict.")

In terms of the *Fourteenth Amendment*, Justice Powell's concurring opinion cannot be squared with the Supreme Court's holding last term in *McDonald*, supra, that "[t]he relationship between the Bill of Rights' guarantees and the States must be governed by a single, neutral principle": "incorporated Bill of Rights protections are to be enforced against the States under the *Fourteenth Amendment* according to the same standards that protect those personal rights against federal encroachment." 130 S.Ct. at 3035, 3048 (internal quotation and citation omitted).

In recognition of the apparently continued vitality of the *Apodaca* decision the Louisiana Supreme Court has rejected the argument that a non-unanimous verdict in a case such as the instant one, provided for by *La.C.Cr.P. art. 782(A)*, violates the *Fifth, Sixth* or *Fourteenth Amendments* to the U.S. Constitution.

In *State v. Bertrand*, 2008-2215 (La. 3/17/09); 6 So.3d 738, the trial court found that *La.C.Cr.P. art. 782(A)* violated the *Fifth, Sixth* and *Fourteenth Amendments* to the United States Constitution, relative to the number of jurors needed to concur to render a verdict in cases in which punishment is necessarily confinement at hard labor, the same issue raised by Funes in the instant case. On direct appeal by the State, the Louisiana Supreme Court reversed, stating in its conclusion:

Due to this Court's prior determination that *Article 782* withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court's still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the *Fifth, Sixth,* and *Fourteenth Amendments.* With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts. *State v. Bertrand,* 6 So.3d 738, 743 (La. 3/17/09).

The Supreme Court of the United States recently denied writs in a case from Louisiana challenging the constitutionality of *Article 782.* Funes nonetheless maintains that the day will come when this wrong, and the error of *Apodaca,* is rectified. Accordingly, Funes maintains that the non-unanimity instruction that resulted in his verdict and multiple life sentence was a denial of due process, contrary to the *Sixth* and *Fourteenth Amendments* to the U.S. Constitution.

This Court should grant certiorari and revisit this issue, finding that life sentences imposed must be vacated and the non-unanimous verdicts set aside and the case remanded for a new trial.

## CONCLUSION

Funes submits that in reviewing his direct appeal appeal claims State-level Fifth Circuit Court of Appeal committed constitional error in determining that his inculpatory statements made without an adequate *Miranda* warning were admissible and permitted its use at his trial, that his three consecutive life sentences were not excessive and that a unanimous verdict was not required under the *Sixth* and *Fourteenth* Amendments according to the circumstances of this case.

Wherefore, he pray that this Court would grant certiorari and remand this matter for further proceedings.

Respectfully Submitted:

*Rigoberto Funes*
Rigoberto Funes #571875

13

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify that a copy of the foregoing **Supplemental Claims from Applicant's "Direct Appeal" Claims [they are fully exhausted])** have been submitted along with his Federal Writ of Habeas w/ Memo of Law in Support, both have been served upon the Paul Connick, Jr., District Attorney for the Parish of Jefferson, all properly addressed with sufficient postage affixed on this _4 th_ day of June, 2014.

_Rigoberto Funes_
RIGOBERTO FUNES #571875
SPRUCE-2
LA. STATE PENITENTIARY
ANGOLA, LA 70712

14

# ROSTER OF APPENDICES

**Appendix #1-** Copy of Louisiana Law Review, *"Act 492 of 1980 - Post Conviction Relief"* [explaining in detail by the author of the act Professor Cheney C. Joseph, LSU how the process is designed to work.] (Note: the procedure as described here is rarely adhered to relative to post-conviction hearing and appointment of counsel to aid in the development of the record. The Louisiana practice of denying these necessities severely underdeveloped the state-court record and impugns the Federal Habeas Corpus proceedings.)**PLEASE READ "CAREFULLY" THE LAST PAGE OF THE DISTRICT JUDGE'S ORDER AT APPENDIX #12 IN DUE COMPARISON WITH THE AUTHOR OF THE POST-CONVICTION STATUTES EXPLANATION OF HOW THE LOUISIANA POST CONVICTION PROCESS IS TO WORK.**

**Appendix #2-** Cover Letter & PCR Supervisory Writ of Review filed 5/7/14

**Appendix #3-** Copy of Writ denial of Rehearing Application by Fifth Circuit Court of Appeal 4/28/14

**Appendix #4-** Copy of Request for Rehearing before the 5th Cir. filed 4/4/14 (see notarization)Exhibits included: copy of Notarized page proving timely filing of original pleading to the court by "mailbox rule", Proof of timely filing by mail receipt, copy of judgement challenged, and cases proving petitioner to be correct.

**Appendix #5-** Copy of Writ denial by Fifth Circuit Court of Appeal filed 3/25/14.

**Appendix #6-** 3/12/14 Granting a Return date on petitioner's timely filed notice of intent. Awarding petitioner an extension of time until March 31, 2014 to file his Supervisory Writ of Review, yet, petitioner filed it in 2/14/14.

**Appendix #7-** Copy of PCR Supervisory Writ of Review to State-level Fifth Circuit filed 2/14/14

**Appendix #8-** Order of 1/16/14 addressing remaining claims.

**Appendix #9-** Copy of 11/3/2013 Letter explaining to Judge that "Discovery" and "Admissions" were Statutorily encouraged w/ case law as exhibits.

**Appendix #10-** Traversal to the State's Reply to petitioner's request for post conviction relief, petitioner declared that the state had submitted evidence which proved petitioner's claims by operation of *Juris de jure*. Filed 11/4/2013

**Appendix #11-** Re-Urged Motions for Appointment of Counsel; Evidentiary Hearing, Discovery, and Authentication of documents secured through

Discovery filed. Unanswered (to date) Requests for Admissions filed 9/3/13. Petition for Writ of Habeas Corpus Ad Testificandum. State Court judge erroneously concluded multiple claims were not cognizable, yet, those claims (i.e. conflict of interest and ineffective assistance) had been recognized in both state and federal law.

**Appendix #12-**    Order denying Petitioner's Post-conviction Request for Admissions because the judge erroneously believes that Requests for Admissions could only be had in civil suits, denial of appointment of counsel, denial of request for evidentiary hearing, denial of request for Writ of Habeas Corpus Ad testificandum, and denial and/or erroneous barring of multiple claims. PLEASE? COMPARE THIS ORDER WITH THE "EXPLANATORY CONTENTS" OF APPENDIX #1.

**Appendix #13-**    Traversal to the State's Procedural Objections to petitioner's request for Post Conviction Relief, (filed 9/3/13

**Appendix #14-**    Order of the trial court dated 7/22/13 denying access to transcripts

**Appendix #15-**    Exhibit "D" of petitioner's Post Conviction - A Copy of a letter signed in the handwriting of former La. Supreme Court Justice, Pascal F. Calogero, date December 11, 1990, where the Constitutionality of the Louisiana Indigent Defense System was being called into question. (Attached thereto is a proposal for the Spangenburg Group to undertake a Study of Louisiana's indigent Defender System) It was noted then by Mr. Bob Spangenburg, that "This system of funding indigent defense is unlike any other in the United States.

**Appendix #16-**    Exhibit "C" of petitioner's Post Conviction - A Copy of the National Legal Aid & Defender Association, Evaluation - "An Assessment of Trial-Level Indigent Defense Services in Louisiana 40 Years After Gideon." (Quoting the Executive Summary at page iii: "In direct violation of state and federal constitutions, Louisiana government (both state and local) has constructed a disparate system that fosters systemic ineffective assistance of counsel due primarily to inadequate funding and lack of independence from undue political influence."

**Appendix #17-**    Exhibit "B" of petitioner's Post Conviction - a duplicate of *United States v. State of Louisiana*, 3:11-cv-00470-JJB-RLB filed 7/12/11. (The state of Louisiana is being sued by the United States Government for discriminatory practices and Non-compliance with the *NVRA of 1993*.

**Appendix #18-**    Exhibit "A" of petitioner's Post Conviction - duplicate of the (civil suit) *Ferrand v. Schedler*, 2:11-cv-00926 (filed 4/19/11) [suit regarding Non-compliance with the *NVRA of 1993*] this suit later became *Scott v. Schedler* as Roy Ferrand dropped out of the suit.]

**Appendix #19-**    Petitioner's Post Conviction Application with Memorandum of Law Attached Motions for Appointment of Counsel; Evidentiary Hearing, Discovery, and Authentication of documents secured through Discovery filed. Unanswered (to date) Requests for Admissions

**Appendix #20-**    Copy of Judgement denying Writ of Certiorari (Direct Appeal)

**Appendix #21-**    Certiorari (Direct Appeal) to the Louisiana Supreme Court filed 1/25/2012.

# Appendix #1

Copy of Louisiana Law Review, *"Act 492 of 1980 - Post Conviction Relief"* [explaining in detail by the author of the act Professor Cheney C. Joseph, LSU how the process is designed to work.] (Note: the procedure as described here is rarely adhered to relative to post-conviction hearing and appointment of counsel to aid in the development of the record. The Louisiana practice of denying these necessities severely underdeveloped the state-court record and impugns the Federal Habeas Corpus proceedings.) PLEASE READ "CAREFULLY" THE LAST PAGE OF THE DISTRICT JUDGE'S ORDER AT APPENDIX #12 IN DUE COMPARISON WITH THE AUTHOR OF THE POST-CONVICTION STATUTES EXPLANATION OF HOW THE LOUISIANA POST CONVICTION PROCESS IS TO WORK.

632                     *LOUISIANA LAW REVIEW*                    [Vol.

## ACT 492 OF 1980 — POSTCONVICTION RELIEF

In 1976, an *ad hoc* committee was appointed by the Supreme Court of Louisiana to study the problem of habeas corpus in Louisiana.[33] Trial judges had expressed concern about repetitive applications, unnecessary hearings, and administrative difficulties surrounding production of prisoners.

Under the then-existing statutes and jurisprudence, if a prisoner serving a sentence alleged a ground for relief, a hearing was required.[34] The trial court was not authorized to defer holding a hearing or ordering that the prisoner be brought to court.

As a result of the *ad hoc* committee's study, legislation was adopted to curb repetitive writs[35] and to authorize the supreme court to promulgate rules providing for an alternative method of handling the disposition of writ applications for persons subsequent to conviction.[36]

The supreme court rules (which became effective on January 1, 1977) were modeled on the American Bar Association Standards for Post Conviction Remedies and the proposed (since modified and adopted) federal rules governing postconviction applications by state prisoners under 28 U.S.C. § 2254.

Following the adoption of the supreme court rules, Chief Justice Dixon requested that the Louisiana Law Institute draft legislation incorporating the rules into a new title of the Code of Criminal Procedure exclusively dealing with post-appellate challenges to convictions.[37] Provisions found in the existing title on habeas corpus dealing with postconviction matters were removed.

Louisiana Act 429 of 1980 incorporated the Chief Justice's suggestions. Act 429 creates a clear delineation between preconviction challenges to custody (habeas corpus) and postconviction challenges (postconviction relief).

---

33.  The author and Professor P. Raymond Lamonica of the LSU Law School served as reporters for the committee.

34.  See *State ex rel. Cherry v. Cormier*, 281 So. 2d 99 (La. 1973).

35.  See 1976 La. Acts, No. 382, amending LA. CODE CRIM. P., art. 353 to authorize the district court to dismiss a writ application for inexcusable failure to raise the grounds asserted in a prior application.

36.  See 1976 La. Acts. No. 448, amending LA. CODE CRIM. P., art. 359 to authorize the Supreme Court of Louisiana to adopt rules relative to applications by convicted persons in custody.

37.  The author serves as reporter for the Louisiana Law Institute Advisory Committee which proposed 1980 La. Acts. No. 429.

### Persons Who May Petition

As under prior law, not all persons convicted and sentenced may avail themselves of postconviction relief. The procedures are available only to convicted persons "in custody," who have fully exhausted their right of appeal.[38] If a petitioner's appeal is pending or if a petitioner still has the right to appeal, he cannot avail himself of postconviction relief.[39] This limitation is clearly designed to prevent the use of postconviction relief as a substitute for the orderly process of appeal.

The term "custody" is broadly defined in article 924 of the Code of Criminal Procedure to include detention or confinement as well as probation or parole supervison. The definition merely codifies the jurisprudence, which has included such supervised release situations within the ambit of habeas corpus relief.[40] However, once the sentence is satisfied, postconviction relief is barred. The conviction can be challenged only if it is later used to enhance penalty (*e.g.*, under Louisiana Revised Statutes 15:429.1) or to serve as an element of a crime in a subsequent criminal prosecution (*e.g.*, Louisiana Revised Statutes 14:95.1).

### Venue for Postconviction Relief

Because postconviction petitions challenge the proceedings leading to conviction, venue was logically retained in the parish wherein the conviction occurred.[41] There the court most likely will find the record of the trial proceedings, the prosecutor, defense counsel, and other witnesses whose testimony might be relevant to factual issues.

The repealer clause of Act 429 of 1980 makes specific reference to a special venue provision for suits challenging the manner of computation of sentence.[42] Such suits do not fall within the scope of postconviction relief, and venue for such actions lies in the 19th Judicial District Court for the Parish of East Baton Rouge. The 19th Judicial District Court has specially-appointed commissioners to handle such complaints.

Unlike preconviction habeas corpus, petitions for postconviction relief must be filed in the *district court* in the parish of proper

---

38.  La. Code Crim. P. art. 924.

39.  La. Code Crim. P. art. 924.1.

40.  *See* Carafas v. LaVallee, 391 U.S. 234 (1968).

41.  La. Code Crim. P. art. 925. Former La. Code Crim. P. art. 352 contained a similar provision for postconviction habeas corpus.

42.  *See* La. R.S.15:571.15 (Supp. 1979).

venue.[43] City and municipal courts have no authority to consider such applications, even in connection with convictions arising from those courts. After appeal is concluded, postconviction complaints concerning a city or municipal court conviction must be addressed to the district court for the parish in which the city or municipal court lies. For example, if a person is convicted and sentenced in city court based on his guilty plea and later wishes to contest the validity of the plea, the application is to be filed in district court for the parish in which the city lies.

## The Petition

Following the lead of several other courts, the Louisiana Supreme Court adopted an approved form for applications for postconviction relief.[44] Copies of these forms should be available at the various institutions operated by the Louisiana Department of Corrections and also should be available in the offices of the clerks of the district courts. Louisiana Code of Criminal Procedure article 926D authorizes the district court to require use of the Uniform Application on penalty of dismissal. If a petition is filed which does not follow the Uniform Application, the district court may provide the petitioner with a copy of the Uniform Application and require that it be used.[45]

The Uniform Application requires the petitioner to supply certain specific data and is designed to facilitate reviewing applications to dispose promptly of those which are frivolous or plainly reveal a lack of merit. One of the purposes of the 1980 legislation and the form is to assist district courts in the often tedious task of finding that "needle in a haystack"; that is, in finding which petitions have substance and arguable merit among the mass of frivolous or otherwise-unmeritorious petitions which are filed.

Although Code of Criminal Procedure article 926 requires use of the Uniform Application, dismissal for failure to follow the form is discretionary. The trial court thus may choose to entertain the writ application which adequately asserts the petitioner's complaints even though it is not filed in the approved form. However, requiring use of the Uniform Application assures inclusion of the necessary information.

The Uniform Application also explicitly warns the petitioner that he must include all complaints (which are "known or

---

43. La. Code Crim. P. art. 926A.
44. See Louisiana Supreme Court Rules, Appendix A.
45. La. Code Crim. P. art. 926D.

discoverable by the exercise of due diligence") and that failure to do
so can result in dismissal of any subsequent petitions. This
"repetitive writs" warning follows the language of the statute and is
designed to prevent a protracted series of petitions, all based on dif-
ferent alleged errors.[46]

The Uniform Application contains a list of commonly alleged er-
rors to assist the applicant in assuring inclusion of all known or
discoverable complaints. The list also should eliminate the conten-
tion that, although aware of the *facts*, the petitioner was unaware
that those facts constituted a ground for postconviction relief.

. The Code of Criminal Procedure (and the Uniform Application)
call for allegations of *fact*, not conclusory allegations, concerning the
alleged errors.[47] The form requires the petitioner to "tell his story"
and to list witnesses who can support his version. If the petition
does not allege a factual basis for relief, it may be dismissed without
a hearing or even an answer by the district attorney.[48]

Dismissal without an answer is also appropriate if the petition
does not include the required information.[49] Before dismissal,
however, the court should have the clerk note the deficiencies and
send the petition back to the petitioner so that he can correct
them.[50]

## The District Attorney's Answer

The Code of Criminal Procedure requires the district court to
order the district attorney to file an answer whenever "an applica-
tion alleges a claim which, *if established*, would entitle the peti-
tioner to relief.""[50]

The answer must be filed within a time frame to be set by the
district court, but not to exceed thirty days.[51] Actually, the Code of
Criminal Procedure requires the "custodian, through the district at-
torney in the parish in which the defendant was convicted," to file
the answer.[52] Although the Code retains the fiction that the custo-
dian is the opposing party, in cases of postconviction challenges, the
prosecutor who sought and secured the challenged conviction is really
the opposing party. Thus, the Code of Criminal Procedure articles

46. LA. CODE CRIM. P. art. 930.4E.
47. LA. CODE CRIM. P. art. 926B(3).
48. LA. CODE CRIM. P. art. 928.
49. LA. CODE CRIM. P. arts. 926E & 928.
50. LA. CODE CRIM. P. art. 926E & 930.4F.
51. LA. CODE CRIM. P. art. 927.
52. *Id.*
53. *Id.*

clearly recognize his role as the attorney for the respondent custodian.

District courts must not confuse ordering the *filing* of an answer with ordering the *production of the prisoner.*[54] Ordering an answer merely requires a response from the prosecution. Whether the case will proceed further after the answer is filed and the record reviewed is an entirely separate question. Whether *further proceedings* are necessary often can be decided only *after* the district attorney files an answer. In some cases the answer and supporting documents may satisfy the district court that the claims are without foundation and that summary dismissal is appropriate.[55]

## Summary Disposition Without an *Evidentiary Hearing*

Louisiana Code of Criminal Procedure article 929 envisions the possibility of disposition based on the application, the answer, and other supporting documents.

In order to expand the record,[56] the district court may order production of the record of the proceedings leading to the conviction. For example, the colloquy of a guilty plea may adequately resolve the merits of a challenge to the adequacy of the *"Boykin* examination."[57]

Recognizing the need in some cases to go beyond the record of the proceedings, the Code of Criminal Procedure now empowers the district court to authorize oral depositions, requests for admissions of fact, and requests for admission of genuineness of documents.[58] Such discovery techniques may be used upon a showing of "good cause" and are to be regulated by the court. The court should be guided by the Louisiana Code of Civil Procedure in specifying the conditions under which the discovery techniques are to be used.[59]

Discovery devices may be employed effectively to eliminate possible factual disputes by fully developing the petitioner's allegations. What appears to be a factually meritorious claim (when alleged in the petition) may collapse after the petitioner's deposition has been taken and, under oath, he recants some of his allegations.

After the methods of expanding the record have been employed, the court may find that no evidentiary hearing is needed.[59]

---

54. LA. CODE CRIM. P. art. 927B.
55. LA. CODE CRIM. P. art. 929A.
56. LA. CODE CRIM. P. art. 929B.
57. *Id.*
58. *Id.*
59. LA. CODE CRIM. P. art. 929A.

Due to the obvious importance of the discovery procedures in determining the appropriateness of summary dismissal, the petitioner is entitled to the assistance of counsel if such methods are utilized.[60]

The availability of summary disposition recognizes the obvious fact that the record or expanded record will sometimes conclusively belie the allegations of the petition. An evidentiary hearing will be necessary only to resolve disputes over contested facts where real credibility issues are presented.[61]

Whether the sort of factual dispute exists which requires an evidentiary hearing is obviously a sensitive question and deserves the most careful consideration by the trial court. The credibility of witnesses cannot generally be resolved on a "cold record." The proper method to dispose of a genuine and material factual dispute is by evidentiary hearing where witnesses testify before the district court subject to cross examination. However, that is not to suggest that a summary disposition is never appropriate just because there are some factual disputes. For example, if a petitioner alleges that he was not advised of certain of his rights during his arraignment and the record shows that such advice was given, summary disposition may be appropriate despite what might be characterized as a factual dispute.

The wording of the code article is significant. Louisiana Code of Criminal Procedure article 930 requires an evidentiary hearing if there are "questions of fact which cannot properly be resolved" on the basis of the expanded record. Obviously, the Code of Criminal Procedure assumes that some factual disputes can be resolved on the record and some cannot. Article 929A specifically refers to the resolution of "factual and legal" issues on the basis of the expanded record (including depositions, other "reliable" documents, etc.). This is a matter which must be approached with much caution. The trial court must be sensitive to the petitioner's right to have fair determination of the factual basis of his claim.[62]

A hearing requiring production of the petitioner will be required when factual disputes exist which cannot properly be resolved on the basis of the record or the expanded record. Several aspects of this evidentiary hearing should be considered.

Evidentiary rules governing the trial on the question of guilt or

---

60. LA. CODE CRIM. P. art. 930.7.
61. LA. CODE CRIM. P. arts. 929 & 930.
62. See Jordon v. Estelle, 594 F.2d 144 (5th Cir. 1979); Scott v. Estelle, 567 F.2d
632 (5th Cir. 1978); Crawford v. Linahan, 253 S.E.2d 171 (Ga. 1979).

*Please read →*

innocence need not be followed at the hearing." Louisiana Co
Criminal Procedure article 930B specifically recognizes admissi
of various properly authenticated documents, such as re
transcripts, depositions and admissions of fact.

Since the search for truth is the district court's paramount
cern, all reliable evidence tending to establish the relevant f
should be considered. With the judge as fact-finder in this hear
objections on traditional hearsay grounds generally can be c
sidered as affecting the weight rather than the admissibility of
evidence.

If an evidentiary hearing is held, the petitioner is entitled
counsel, and to court-appointed counsel if indigent." Because mc
petitioners will be indigent prisoners who have no means to empl
counsel, the court generally must appoint counsel if an evidentia
hearing is ordered.

## Basis for Granting or Denying Relief

Not all issues will be considered on their merits in postconvic
tion proceedings. First, some purely statutory rights are not deeme
crucial enough to warrant inclusion in the postconviction relief pro
visions. Second, issues which already have been fully litigated
generally cannot be reasserted. Third, failure to raise cognizable
issues at an earlier stage of the proceedings often will bar relief.

As is evident, only matters of fundamental significance can be
raised. Most of the grounds for relief have a constitutional basis,
either state or federal.

The "repetitive applications" article recognizes two distinctly

---

63. See Crawford v. Linahan, 253 S.E.2d 171 (Ga. 1979).
64. LA. CODE CRIM. P. art. 930.7. See State ex rel. Cherry v. Cormier, 281 So. 2d
99 (1973).
65. LA. CODE CRIM. P. art. 930.3 provides:
   If the petitioner is in custody after sentence for conviction for an offense,
   relief shall be granted only on the following grounds:
   (1) The conviction was obtained in violation of the constitution of the United
   States or the state of Louisiana;
   (2) The court exceeded its jurisdiction;
   (3) The conviction or sentence subjected him to double jeopardy;
   (4) The limitations on the institution of prosecution had expired;
   (5) The statute creating the offense for which he was convicted and sentenced
   is unconstitutional; or
   (6) The conviction or sentence constitute the ex post facto application of law
   in violation of the constitution of the United States or the state of Louisiana.
66. LA. CODE CRIM. P. art. 930.4A & D.
67. LA. CODE CRIM. P. art. 930.4B, C, & E.

7.

different bases for dismissal without reaching the merits of application. The first involves the prior litigation of the issue on appeal or in a prior application for postconviction relief.[68] The second involves an "inexcusable" procedural default on the part of petitioner due to his failure to raise or pursue the claim in earlier proceedings." The "repetitive applications" article is very broad in scope and is phrased in discretionary terms. Obviously, the court must assess fairness considerations to the state and the petitioner in deciding whether to allow the petitioner to relitigate or raise his claim.

If the claim was previously considered on appeal (or in a prior application), the court should give the petitioner an opportunity to show why relitigation is appropriate because (1) the ground may be considered in the interest of justice, and (2) the ground must have been litigated fully on appeal. Thus, the court properly may consider an issue previously disposed of if justice requires relitigation or if the handling of the appeal was such that the ground was not litigated fully. The court must consider such factors as the competency of defense counsel and subsequent jurisprudential developments.

The following situations give rise to a procedural default which may bar raising the claim in post conviction proceedings:

(1) "If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."[69]

(2) "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."[70]

(3) "A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."[71]

The concept of an inexcusable procedural default obviously will have to be developed by the jurisprudence. Federal courts have employed the "cause and prejudice" test of *Wainwright v. Sykes*,[72]

68.  LA. CODE CRIM. P. art. 930.4A & D.
69.  LA. CODE CRIM. P. art. 930.4B, C, & E.
70.  LA. CODE CRIM. P. art. 930.4B.
71.  LA. CODE CRIM. P. art. 930.4C.
72.  LA. CODE CRIM. P. art. 930.4E.
73.  433 U.S. 72 (1977). *See United States v. Brown*, ___ F.2d ___ (D.C. Cir. 1980); Tyler v. Phelps, 622 F.2d 172 (5th Cir. 1980); Parton v. Wyrich, 614 F.2d 154 (8th Cir. 1980); Indiviglio v. United States, 612 F.2d 624 (2d Cir. 1979); Jurek v. Estelle, 593 F.2d 672 (5th Cir. 1979); Rachel v. Bordenkircher 590 F.2d 200 (6th Cir. 1978); O'Berry v. Wainwright, 546 F.2d 1204 (5th Cir. 1977).

Please read

640                                    LOUISIANA LAW REVIEW                          [Vo

The two tests should be developed along parallel lines for the
vious reason that to do otherwise would be to invite the necessit
federal intervention into the state criminal justice process. If L
siana courts will not allow petitioners to raise federal constitutio
claims which can be raised in federal district courts, they will p
vent full and fair litigation in state courts, thereby paving the w
to the federal habeas court." The state courts should, of course, p
vide an adequate corrective process and must be cognizant of t
development of the "cause and prejudice" test by federal courts.

Whether a procedural default by the petitioner is "excusable"
obviously a very sensitive issue which must be decided in an adve
sary context." The district court should never simply dismiss an a
plication as "repetitive" on the face of the pleadings without first a
fording the petitioner an opportunity to show cause for his failure t
raise or pursue the claim in the earlier proceedings."

## Judgment Granting or Denying Relief

The Code of Criminal Procedure requires the district court t
render written or transcribed reasons for granting or denyin
relief." A copy of the judgment and of the reasons for judgmen
must be furnished to the petitioner, the district attorney, and th
custodian."

The Code of Criminal Procedure uses the term "furnished"
rather than "served" to avoid technical connotations associated witl
service of process. It is enough that all concerned are given a copy
by some means.

The district judge's reasons will be very important if the judg
ment is reviewed by the Louisiana Supreme Court or by a federal
district or appellate court." The reasons may be brief but should in-
clude findings of fact and conclusions of law.

## Custody of Petitioner

The petitioner is entitled to be released from custody if relief is
granted on a ground which would bar retrial for the offense, e.g., a
successful plea of double jeopardy." However, even in such case the

---

74.  28 U.S.C. § 2254 (1976); Tyler v. Phelps, 622 F.2d 172 (5th Cir. 1980); Cahteri
v. Wainwright, 582 F.2d 348 (5th Cir. 1978).
75.  La. Code Crim. P. art. 930.4F & 930.7.
76.  La. Code Crim. P. art. 930.4F.
77.  La. Code Crim. P. art. 930.1.
78.  Id.
79.  See 28 U.S.C. § 2254 (1976).
80.  La. Code Crim. P. art. 930.5.

district court or supreme court may stay the effect of the judgment granting relief pending the state's application for review.[81] The granting of a stay is discretionary with either court.

If relief is granted on a ground which merely would entitle the petitioner to a new trial, then he is entitled to have bail set pending the new trial.[82] An exception to this general rule exists in capital cases in which bail may be denied initially.[83] An application for bail may be stayed pending the state's application for review.[84] Thus, the petitioner's right to be admitted to bail may come into effect only upon the supreme court's denial of the state's application for review.[85]

## Review of District Court Judgments

The petitioner's review of a trial court judgment is by application to the supreme court under the supreme court's supervisory jurisdiction.[86] The state also may apply to the supreme court for supervisory review from an adverse judgment.[87] The only exception exists in a case in which the basis for granting relief involves declaring a statute or ordinance to be unconstitutional.[88] In that case, under article V, section 5 of the Louisiana Constitution, the supreme court has appellate jurisdiction and the state may appeal. The appeal provisions of the Code of Criminal Procedure are applicable.[89] The district court must set the appropriate return dates in cases of applications for supervisory writs or appeals.[90]

## Right to Counsel

Petitioners are statutorily entitled to counsel if:

(1) an evidentiary hearing is ordered, or

(2) discovery is authorized to expand the record, or

(3) the court is considering dismissal for failure to raise the issue in an earlier proceeding.[91]

If the court determines that the "repetitive writs" provisions

---

81. LA. CODE CRIM. P. art. 930.6.
82. LA. CODE CRIM. P. art. 930.5.
83. LA. CODE CRIM. P. art. 930.5 & 313.
84. LA. CODE CRIM. P. art. 930.6.
85. *Id.*
86. LA. CODE CRIM. P. art. 930.5; LA. CONST. art. V, § 5.
87. *Id.*
88. *Id.*
89. *See* LA. CODE CRIM. P. arts. 911-23.
90. LA. CODE CRIM. P. art. 919.
91. LA. CODE CRIM. P. art. 930.7.

642

*LOUISIANA LAW REVIEW* [Vol. 41

may be a basis for dismissal, the court must appoint counsel." Counsel for the petitioner is critical in assisting him in explaining his failure to raise the issue in earlier proceedings. Because dismissal on this basis precludes reaching the merits of the petitioner's contentions, counsel's intervention at this stage is of extreme importance. Similarly, the authorization of the use of discovery to expand the record may lead the court to dismiss without an evidentiary hearing." Thus, counsel must be appointed to protect the interest of the petitioner.

In Louisiana, counsel has always been required if an evidentiary hearing is held." Counsel's role in developing the facts and in cross-examining the state's witnesses is obvious.

Otherwise, the appointment of counsel is discretionary, even though the petition alleges a claim which, if established, would entitle him to relief. Appointment of counsel is not required on the basis of the allegations of the petition alone.

---

92. *Id.*
93. *Id.*
94. See *State ex rel. Cherry v. Cormier,* 281 So. 2d 99 (La. 1973).

# Appendix #2

Cover Letter & PCR Supervisory Writ of Review filed 5/7/14

Clerk of Court
La. State Supreme Court
400 Royal Street
New Orleans, La. 70130

May 7, 2014

Re: Letter of Clarification

Dear Honorable Clerk:

Please read carefully, as I will be as brief as possible. Based upon the attached rulings, it would "appear" as though the pleading is untimely or improper, however, this is due to a procedural quagmire created by the courts below. The Court of Appeals judgement basically directs that the petitioner should have engaged in piecemeal-litigation, a practice frowned upon by that same court.[1]

The state claimed that this petitioner was untimely; however, on page 32 of petitioner's Supervisory Writ of Review, there is a duly notarized affidavit which stipulated in pertinent part:

"...Thereafter, this document was tendered to the hands of a Prison Official on this 14th day of February, 2014."[1]

This Ex Officio Notary #24851 is one and the same Prison Classification Officer that accepted petitioner's pleadings and deposited them into the U.S. Postal Service. Between the judgment and placing his pleading in prison officials hands, only Twenty-Eight (28) days passed. The state erroneously convinced the court that:[ Because the Writ was not post-marked until February 17, 2014 (a Monday), and was not file stamped by the clerk until February 21, 2014, a Friday, and therefore untimely.]

In an effort to correct this assessment, petitioner wrote back to the court of appeals pointing out its calculation error in disregard of *Houston v. Lack* (the mailbox rule). The Court's opinion addresses the merits of some claims, but erroneously casts the case into procedural default. Petitioner attempted correction through rehearing to no avail.

For the concerns expressed above, petitioner seeks to have this matter remanded to the Fifth Circuit Court of Appeals, to have the erroneous finding of untimeliness removed. Why? Because this erroneous classification can be injurious before this Honorable Court and subsequently the Federal court is relief is sought their. Petitioner prays that in both "equity" and "fairness" that this Honorable Court does not force him to bear the false stigma of having been untimely before the Court of Appeals.

Petitioner understands that this is a unique circumstance, but, would not seek this Honorable Court's graces of equity if the law did not support the legal position he has taken with respect to the erroneous procedural default imposed upon him. Honorable Clerk, "Please" subpoena/order that the record be delivered to this Honorable Court for your inspection and determination of timeliness. If you agree, please have orders issued directing that the court of appeals consider the application as a timely one?

Thank you kindly for reading this correspondence.

Respectfully submitted,

Rigoberto Funes

Rigoberto Funes
#571875
La. State Prison, Spruce-2
Angola, La.  70712

---

[1] *Berman v. De Chazal*, 717 So.2d 658, 98-81 (La.App. 5 Cir. 5/27/98)

[2] February 14, 2014 was a Friday, please check the calendar?. When petitioner placed this in the hands of prison officials on that Friday, it is understandable that prison official did not immediately process it and petitioner was not in a position to mandate immediate mailing.

13.

IN THE
SUPREME COURT
FOR THE
STATE OF LOUISIANA

Originated in the
24th JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
DISTRICT COURT DOCKET NO: 08-5641

Rigoberto Funes
*Petitioner*

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY
*Respondent*

FIFTH CIRCUIT DOCKET # 14-KH-124

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUPERVISORY WRIT OF REVIEW
AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF

→PETITIONER SEEKS A "STAY" OF THIS PLEADING AND REMAND
TO THE COURT OF APPEAL FOR CORRECTION OF ERRONEOUS
PROCEDURAL DETERMINATION WHICH VIOLATES
*HOUSTON V. LACK*←

Petitioner acknowledges that this Honorable has the Right to Adjudicate
All Claims in spite of the Fourth Circuit's Erroneous Procedural Determination

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS DOCUMENT WAS TENDERED TO PRISON AUTHORITIES WITHIN
THE 30 DAYS ALLOWED FOR SEEKING SUPERVISORY WRITS FROM
THE MARCH 25, 2014, JUDGEMENT.

THE LOWER COURTS DENIED RELIEF DESPITE:

[THE DISTRICT ATTORNEY SUBMITTED EVIDENCE TO THE TRIAL
COURT, FROM THE CASE OF *LUTHER SCOTT, et al v. TOM SCHEDLER*
2:11-cv-00926-JTM-JCW,(U.S. E.D. La.) PROVING PETITIONER'S CLAIMS]

RESPECTFULLY SUBMITTED:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON Spruce-2
LA. STATE PENITENTIARY
ANGOLA, LA 70712

## COURT RULES

### APPENDIX C. SUPREME COURT OF LOUISIANA
### WRIT APPLICATION FILING SHEET

No. _____

### TO BE COMPLETED BY COUNSEL
### or PRO SE LITIGANT FILING APPLICATION

**TITLE**

Applicant: _____ Rigoberto Funes _____

Have there been any other filings in this
Court in this matter?   ☐ Yes  ☒ No

Rigoberto Funes
VS.

Are you seeking a stay order? _____ No _____
Priority Treatment? _____ No _____

Burl Cain, Warden

If so you MUST complete & attach a
Priority Form

### LEAD COUNSEL PRO SE LITIGANT INFORMATION

**APPLICANT:** Rigoberto Funes  **RESPONDENT:** State of Louisiana
Name: Rigoberto Funes   Name: Paul Connick, DA
Address: La. State Prison, Spruce-2   Address: 200 Derbigny Street
Angola, La. 70712   Gretna, La. 70053
Phone: _____ Bar Roll No. _____   Phone: N/Aavailable  Bar Roll No. N/Available

Pleading being filed: ☒ In Proper Person,  ☒ In Forma Pauperis

Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they
represent.

### TYPE OF PLEADING

☒ Civil, ☐ Criminal, ☐ Bar, ☐ Civil Juvenile, ☐ Criminal Juvenile, ☐ Other

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: _____   Docket No. _____
Judge/Commissioner/Hearing Officer: _____   Ruling Date: _____

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: 24th JDC   Docket No. 98-5641
Judge and Section: Hon. John Molaison   Date of Ruling/Judgment: 1/16/14

### APPELLATE COURT INFORMATION

Circuit: Fifth Circuit   Filing Date: 2/17/14   Docket No. 14-KH-124
Applicant in Appellate Court: Rigoberto Funes
Ruling Date: 3/25/14   Panel of Judges: Murphy, Wicker, Gravios   En Banc: ☐

### REHEARING INFORMATION

Applicant: Rigoberto Funes   Filing Date: 4//14   Action on Rehearing: _____
Ruling Date: 4/23/14   Panel of Judges: Murphy, Wicker, Gravios   En Banc: ☐

### PRESENT STATUS

Pre-Trial, Hearing/Trial Scheduled Date: _____, ☐ Trial in Progress, ☒ Post Trial
Is there a stay now in effect? No  Has this pleading been filed simultaneously in any other court? No
If so, explain briefly _____

### VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to
the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule
X, are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the
appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other
counsel and unrepresented parties.

_____ Rigoberto Funes _____
SIGNATURE

## TABLE OF CONTENTS

WRIT GRANT CONSIDERATIONS ............................................................ 1

SUPERVISORY WRIT OF REVIEW AS TO PETITIONER'S
    APPLICATION FOR POST-CONVICTION RELIEF ................................ 2

REQUEST THAT JUDICIAL NOTICE BE TAKEN OF:
    JUDGEMENT OF THE U.S. EASTERN DISTRICT JUDGE, HON. JANE TRICHE
    MILAZZO, JANUARY 22, 2013, IN *LUTHER SCOTT, et al v. TOM SCHEDLER* 2:11-cv-
    00926-JTM-KCW,(U.S. E.D. La.2012) ................................................ 2

JURISDICTION TO ENTERTAIN AN APPLICATION FOR REHEARING .......... 2

ERRONEOUS DETERMINATION OF UNTIMELINESS, JUDGEMENT SHOULD BE
    CORRECTED PURSUANT *HOUSTON V. LACK, SUPRA* ........................ 2

ERRONEOUS DETERMINATION THAT PURSUANT *U.R.C.A., RULE 4-3*, PETITIONER
    FAILED TO SEEK A NOTICE OF INTENT OR RETURN DATE CONCERNING THE
    SEPTEMBER 13, 2013, RULING DENYING SELECT ISSUES. [*LA.C.C.P. ART 1915(b)*
    and *LA.C.C.P. Art. 2083*, PREVAILS.] ................................................ 3

FAILURE TO FOLLOW *HAINES V. KERNER, SUPRA* .............................. 4

WHETHER THIS CASE WAS RESOLVED ON FEDERAL AND STATE GROUNDS OR JUST
    STATE? .................................................................................... 5

"CAUSE" AND THE "EQUITABLE TOLLING" ISSUE
    ............................................................................................ 8

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB
    system which ultimately begets systemic-conflicts-of-interest ................ 9

*******QUOTING FROM THE ORIGINAL WRIT STOPS HERE BUT ALL ARGUMENTS
    IN THE ORIGINAL & SUPERVISORY WRIT ARE ADOPTED BY REFERENCE.
    (NO CLAIMS FROM THE TRIAL COURT NOR COURT OF APPEALS OR
    ARGUMENTS ARE ABANDONED.)***** ............................................ 11

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment
    of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon," members
    of the Louisiana Appellate Project; and members of the Spangenberg Group who made the
    first study of the Louisiana Indigent Defender System (proposal presented to Sam Salton,
    James Boren, and Nina Maples, September 11, 1990) .............................. 11

A LISTING OF ISSUES PRESENTED FOR REVIEW .............................. 11

STATEMENT OF FACTS RELEVANT TO THE ASSIGNMENT OF ERRORS AND ISSUES FOR
    REVIEW, WITH REFERENCES TO SPECIFIC PAGE NUMBERS OF THE RECORD
    ............................................................................................ 12

A SHORT SUMMARY OF THE ARGUMENT ...................................... 12

Procedural default pursuant post conviction procedures
    ............................................................................................ 12

Cause and the equitable tolling issue ................................................ 15

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB
    system which ultimately begets systemic-conflicts-of-interest ................ 16

JEFFERSON PARISH D.A.'S OFFICE HAS CONCEDED TO.... ............................. 18

ATTACHMENTS WHICH WEIGH ON THIS COURT'S DECISION ..................... 19

PETITIONER MAINTAINS THAT PRO SE PLEADINGS ARE TO BE HELD TO LESS
        STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS
        ..................................................................................... 19

"PREJUDICE COMPONENT" .......................................................... 20

FACTS NOT KNOWN EXCEPTION La.C.Cr.P. Art. 930.8(A)(1)
        (Applicable standard of review is de novo) ...................................... 22

Deferral of IAC claim from direct appeal to PCR constitutes 'cause'(Applicable standard of review
        is de novo) ........................................................................ 24

Petitioner's Sixth Amendment right to a fair trial was violated during the selection of the jury?
        (*Batson* and *Strickland* violations)(Applicable standard of review is de novo) ........ 26

Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester
        the jury when it retired during recess and breaks during trial.(Applicable standard of review
        is de novo) ........................................................................ 27

The trial judge committed reversible error when he made erroneous and misleading comments on the
        responsive verdicts.(Applicable standard of review is de novo) ...................... 27

Whether prosecutorial misconduct occurred: (1) prosecutor improperly vouched for the credibility
        witnesses and (2) failed to correct perjured testimony (Applicable standard of review is de
        novo) ............................................................................. 28

Counsel rendered ineffective assistance of counsel at trial when counsel failed to seek quashing of
        the grand jury indictment on the grounds of violation of the National Voter Registration Act
        of 1993.(Applicable standard of review is de novo) ................................ 30

Ineffectiveness by not securing rebuttal experts for the defense (Applicable standard of review is
        de novo) .......................................................................... 31

Independent claim of "Grand Jury and Trial Jury Discrimination" (this is a "new fact" previously not
        known to petitioner and it meets the exception of 930.8(a)(1)(Applicable standard of review
        is de novo) ....................................................................... 31

Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester
        the jury when it retired during recess and breaks during trial. ...................... 32

Conflict of Interest against the entirety of the Jefferson Parish Indigent Defender (Applicable
        standard of review is de novo) ..................................................... 32

Deprivation of Access to Relevant Transcripts
        Law and Argument (Applicable standard of review is de novo) ..................... 33

CONCLUSION ..................................................................... 34

CERTIFICATE OF SERVICE ........................................................ 35

AFFIDAVIT ....................................................................... 35

## TABLE OF AUTHORITIES

Trevino v. Thaler, 569 U.S. ___ (2013) .................................................................

La. Const. Art. Article X, § 30 ................................................................. 34

Article 1, Section 19 ................................................................. 34

Martinez v. Ryan, ___ S.Ct. ___, 2012 WL 912950 .................................................................

National Voter's Rights Act of 1993 .................................................................

NVRA of 1993 .................................................................

Sixth Amendment ................................................................. 33

United States v. Bagley, supra ................................................................. 30

United States Constitution ................................................................. 28

United States Constitution, Amendment 5 ................................................................. 27

United States Constitution, Amendment 6 ................................................................. 8

United States Constitution, Amendment 13 ................................................................. 31

United States Constitution, Amendment 14 ................................................................. 10, 16

Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985) ................................................................. 31

Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ...... 10, 17

Batson, supra ................................................................. 10, 17

Campbell v. Louisiana, 118 S.Ct. 1419 (1998) ................................................................. 22

Couley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957) ................................................................. 5, 20

Eubanks v. Louisiana (1958) ................................................................. 22

Ex Parte Aaron, 275 Ala. 377, 379 155 So.2d 334, cert. Denied, 375 U.S. 989, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963) ................................................................. 21

Falzerano v. Collier, 535 F.Supp. 800, 803 (D.N.J. 1982) ................................................................. 6, 13

Fay v. Noia, 372 U.S. 3912, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ................................................................. 20

Ferrand v. Schedler ................................................................. 9, 10, 16, 17

Ferrand v. Schedler, 2:11-cv-00926-LMA-JCW ................................................................. 23, 24

Francis v. Henderson, 425 U.S. 536 (1976) ................................................................. 6, 9, 13, 16, 18, 20, 22

Giglio v. United States, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972) ................................................................. 30

Giles v. Maryland, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967) ................................................................. 30

Haines v Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ................................................................. 19

Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) ................................................................. 3, 4, 34

Hale v. United States, 435 F.2d 737 (1970) ............................................. 27, 32

Hollis v. Davis, 941 F.2d 1471 (C.A. 11 (Ala.) 1991) .................................. 21

Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) ............... 2, 4

Luther Scott v. Tom Schedler, et al, 2:11-cv-00926-jtm-jcw,(U.S. E.D. La,2012) ......... 2

McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)
.................................................................................................. 21

Napue v. Illinois, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959) ................. 29

Napue, 79 S.Ct. 1173 ....................................................................... 29

Nash v. Illinois, 389 U.S. 906, 88 S.CT. 222 (1967) ...................................... 30

Pierre v. Louisiana (1939) .................................................................. 22

Roberts v. Louisiana, 428 U.S. 325, 334 n.10, 96 S.CT. 3001, 49 L.Ed.2d 974 (1976) ...... 28

Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064 ........................... 21, 26

Trevino v. Thaler, 513 U.S.__ (2013) ...................................................... 13, 25

U.S. v. Cronic, supra ......................................................................... 26

U.S. v. Louisiana ........................................................................... 10, 17

United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) .......................... 9, 16

United States v. Agurs, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976) ....... 29

United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980) cert denied, 452 U.S. 942, 101 S.CT.
3088, 69 L.Ed.2d 957 (1981) ............................................................... 28

United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998) .............................. 28

United States v. Young, 470 U.S. 1, 13-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985) ......... 29

Vasquez v. Hillery .......................................................................... 10, 17

Winters v. Cooks, 489 F.2d 174 (C.A. 5 (Miss.) 1973) .................................. 10, 17, 20

## STATE CONSTITUTION

La. Const. Art Article X, § 30 .............................................................. 5

Louisiana Constitution of 1974, Article 1, § 2 ............................................ 28

Louisiana Constitution of 1974, Article I, Sections 2, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27
.................................................................................................. 31

Louisiana Constitution of 1974, Article V, § 25(c) ...................................... 34

Louisiana Constitution of 1974, Art 5, § 5 (D) (2) ...................................... 34

La. Const. Art. Article X, § 30 ............................................................ 5

Louisiana Constitution of 1974, Article 1, § 2 ............................................ 28

Louisiana Constitution of 1974, Article I, Sections 2, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27
.................................................................................. 31

Louisiana Constitution of 1974, Article V, § 25(c) ................................... 34

Louisiana Constitution. of 1974, Art 5, § 5 (D) (2) ................................... 34

### STATE STATUTES

La.Cr.C.P. art. 930.8(A)(1) .......................................................... 21

La.C.Cr.P. Art. 927(A) .............................................................. 24

LA.C.C.P. ART 1915(b) ............................................................. 3, 4

LA.C.C.P. Art. 2083 ................................................................ 3

La.C.Cr.P. Article 930.4 ............................................................ 22

La.C.Cr.P. art 930.8(A)(1) .......................................................... 22

LSA-C.Cr.P. Art. 797(2) ............................................................ 31

### STATE CASES

Berman v. De Chazal, 717 So.2d 658, 98-31 (La.App. 5 Cir. 5/27/98) ................... 3

Deloch v. Whitley, 684 So.2d 349 (1996) .................................. 7, 14, 18, 22

Funes v. Cain, 14-KH-124. .......................................................... 2

State ex rel Golvar v. State, 660 So.2d 1189 (La. 1995) ............................... 22

State ex rel Hensley v. State, 876 So.2d 78, 2003-1691 (La. 6/4/04) .................... 5

State ex rel. Egana v. State, 2000-2351 (La. 9/22/00), 771 So.2d 638, 2000-2351 (La. 4/4/03), 840
So.2d 1212 ....................................................................... 3, 4

State ex rel. Hills v. State, 54 So.3d 1109 (La. 2011) ................................. 22

State ex rel. Johnson v. Maggio, 440 So.2d 1336, 1337 (La. 1983) ...................... 3

State ex rel. Johnson v. Whitley, 648 So.2d 909, 92-2689 (La. 1/6/95) ................... 5

State v. Holmes, 619 So.2d 761 (La. App. 4th Cir. 1993) .............................. 31

State v. Kenneth Dilosa, 848 So.2d 546 (2003) ...................................... 22

State v. Palmer, 775 So.2d 1231 (La.App. 1 Cir. 2000) ............................... 22

State v. Rick Langley, 711 So.2d 651 (1998) ........................................ 22

State v. Robinson, 387 So.2d 1143 (La. 1980) ....................................... 34

Threeway Finance Co. V. McDonald, 213 La. 504, 35 So.2d 31 (1948) .................. 3

### REFERENCE AUTHORITIES

"An Assessment of trial Level Indigent Defense Services in Louisiana 40 Years After Gideon."
Research and Written by: National Legal Aid & Defender Association; Commissioned by: National
Association of Criminal Defense Lawyers. ................................... 4, 11, 19, 25

"STRENGTHENING FORENSIC SCIENCE," by: the National Academy of Science . . . . . 26

# WRIT GRANT CONSIDERATIONS

Why this case is appropriate for review under this consideration stated under Rule X section (a)(1)?

> Conflicting Decisions. The decision of the court of Appeals conflicts with a decision of another court, this court, or and the Supreme Court of the United States

The Fifth Circuit has refused to adhere to the provisions of *La.C.Cr.P. Art. 930.4(B)* and *Art. 930.7(B)*, which is a mandatory provision of statutory law and carries with it the power and force of Legislative Intent

Why this case is appropriate for review under this consideration stated under Rule X section (a)(3)?

> Erroneous Interpretation or Application of Constitution or Laws. The Fifth Circuit Court of Appeals has erroneously interpreted and applied the constitution and a law of this state as well as the United States, and this decision will cause material injustice to applicant and affect the public interest in the fair and transparent operation of the Judicial Branch of the Louisiana Government.

In post conviction proceedings, petitioner's remain entitled to *due process* of law pursuant the *14th Amendment* and *equal protection* of the law pursuant the same. In accordance with the decisions of the United States Supreme Court in *Martinez v. Ryan* and *Trevino v. Thaler*, because this petitioner raised the claim of ineffective assistance of trial and appellate counsel in his presentation of claims to the 24th Judicial District Court, there existed an 6th Amendment entitlement to the appointment of counsel to aid him in the presentation of his post-conviction ineffective assistance of counsel claim against his trial and appellate counsel. Failure to provide counsel negates the defenses available to the State of Louisiana, because it chose to forego the protective procedures codified in *La.C.Cr.P. Art. 930.4(F)* and *Art. 930.7(B)*. Pursuant *La. Const. Art. 10, § 30*, and *La. Const. Art 5, § 25(c)*, the trial Judge nor the Judges of the Fifth Circuit were at liberty to disregard the *United States Constitution; Louisiana Constitution of 1974*; nor the statutory law created by the Louisiana Legislature.

The public has a "vested interest" in the preservation, application and adherence to the Law of both this Nation and this State, especially by those in Judicial office who are supposedly bound by their Judicial Oaths of Office to fulfill this obligation.

Why this case is appropriate for review under this consideration stated under Rule X section (a)(5)?

> Gross departure from proper judicial proceedings. The Fifth Circuit Court of Appeal has so far departed from proper judicial proceedings and so abused its powers, and has sanctioned such a departure and abuse by a the 24th Judicial District Court so as to warrant an exercise of this Honorable court's Supervisory Authority.

The trial court deprived petitioner of substantive rights as to the claim of ineffective assistance of counsel claims levied against trial and appellate attorneys during the initial post-conviction proceeding which are now equated with being a continuation of the direct appeal proceedings where the right to counsel is absolute. The Court of appeal has issued a erroneous judgment of untimeliness due to its wanton disregard for the applicability of *Houston v. Lack* (the mailbox rule), to cases in Louisiana, and it has further departed from proper judicial proceeding by punishing petitioner for not actively engaging in piece-meal litigation. Consequently, by mis-labeling petitioner as untimely and giving a mixed judgement containing written reasons addressing imposition of the erroneous procedural bar of (of untimeliness). This erroneous classification of "untimeliness" rendered the fair treatment and addressing of petitioner's underlying claims non-existent.

**IN THE
SUPREME COURT
FOR THE
STATE OF LOUISIANA**

STATE EX REL. Rigoberto Funes                     DOCKET NO. _____
                    Petitioner

VERSUS                                             FILED _____

BURL CAIN, WARDEN                                  _____
LA. STATE PENITENTIARY
                    Respondent                     Deputy Clerk

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

SUPERVISORY WRIT OF REVIEW AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF
AND
REQUEST THAT JUDICIAL NOTICE BE TAKEN OF:
JUDGEMENT OF THE U.S. EASTERN DISTRICT JUDGE, HON. JANE TRICHE
MILAZZO, JANUARY 22, 2013, IN *LUTHER SCOTT, et al v. TOM SCHEDLER*
2:11-cv-00926-JTM-JCW, (U.S. E.D. La.2012), et al
FROM 1993-2011 THE STATE OF LOUISIANA WAS IN VIOLATION OF THE
*NVRA OF 1993.*

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, before this Honorable Court with the intent of having this

Honorable Court to review the judgement which the Fifth Circuit Court of Appeals made on March

25, 2014, in the case of *Funes v. Cain*, 14-KH-124. This petitioner contends that the judgement

complained of is not sustainable as a matter of law. PETITIONER SHOULD HAVE

PREVAILED PER OPERATION OF *Juris de jure*, The State submitted irrefutable evidence

proving that the State of Lousinina was tried and convicted of violating the *NVRA act of 1993.*

### JURISDICTION TO ENTERTAIN AN APPLICATION FOR REHEARING

Finally, petitioner hereby invokes this Honorable Courts Jurisdiction pursuant *Rule X,* of

the Louisiana Supreme Court Rules to entertain a Supervisory Writ Application before this

Honorable Court.

### ERRONEOUS DETERMINATION OF UNTIMELINESS, JUDGEMENT SHOULD BE CORRECTED PURSUANT *HOUSTON V. LACK, SUPRA*

Petitioner avers and provides evidentiary proof that his pleadings are timely under the

precedent *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), wherein a

prisoner's criminal pleadings are deemed in court, at the time he tenders them to prison officials for

depositing into the prisons internal mailing system. . In this instance, on page 32 of petitioner's

2

23.

Supervisory Writ of Review before the Court of Appeals, there is a duly notarized affidavit which stipulated in pertinent part:

> "...Thereafter, this document was tendered to the hands of a Prison Official on this 14th day of February, 2014."[1]

This Ex Officio Notary #24851 is one and the same Prison Classification Officer that accepted petitioner's pleadings and deposited them into the U.S. Postal Service. Between the judgment and placing his pleading in prison officials hands, only 28 days passed.

Your petitioner contends that there is ample case-law originating in the State of Louisiana, establishing that the mailbox rule is applicable to pro se filings by prisoners. *State ex rel. Egana v. State*, 2000-2351 (La. 9/22/00), 771 So.2d 638, 2000-2351 (La. 4/4/03), 840 So.2d 1212. Additionally, in *State ex rel. Egana v. State*, the Louisiana Supreme Court further directed that same Fifth Circuit Court of Appeal:

> "....The Court of Appeal, Fifth Circuit is directed to reconsider its opinion in *State v. Egana*, (La.App. 5th Cir. 2/29/00) 758 So.2d 88). Specifically, the court is directed to review relator's district court filing of April 1999 both to determine if relator filed it timely under the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and to determine whether, if read fairly and in conformance with principles applicable in review of pro se pleadings, it constituted a motion for appeal. See generally *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 632 (1972) (Court holds pro se filings to "less stringent standards than formal pleadings filed by lawyers...."); *State ex rel. Johnson v. Maggio*, 440 So.2d 1336, 1337 (La. 1983) (pro se petitioner is not to be denied access to the courts for review of his case on the merits by overzealous application of form and pleading requirements or hyper-technical interpretations of court rules.")........." *Id.* 771 So.2d 638 (La. 2000)

ERRONEOUS DETERMINATION THAT PURSUANT *U.R.C.A., RULE 4-3*, PETITIONER FAILED TO SEEK A NOTICE OF INTENT OR RETURN DATE CONCERNING THE SEPTEMBER 13, 2013, RULING DENYING SELECT ISSUES. [*LA.C.C.P. ART 1914(b)* and *LA.C.C.P. Art. 2083*, PREVAILS.]

Petitioner avers that the Fifth Circuit Court's Judgment of March 25, 2014, violates a bedrock principle of law in this state. For it has been held under Judgments appealable that:

> (a) The general rule that there is no appeal except in the case of final judgment is universal in order to prevent piecemeal appeals. *Threeway Finance Co. v. McDonald*, 213 La. 504, 35 So.2d 31 (1948)

This same sentiment was echoed by this same court in *Berman v. De Chazal*, 717 So.2d 658, 98-81 (La.App. 5 Cir. 5/27/98) :

> "....The trial court should not have certified partial judgement as appealable, as interest of judicial administration far outweighed any considerations of justice to litigants; partial judgement would not terminate suit for any party, one remaining claim for

---

[1] Please see attached copy of page 32, with designation of Notary and his Id#. (Exhibit "A")

3

relief if granted would render appeal moot, and remainder of the case had either been delayed pending outcome of appeal or result would be piecemeal litigation if matter had gone to judgement on remaining issues and appellate court reversed and remanded for retrial. *LSA-C.C.P. art. 1915, subd. B(1).*

Therefore, this Honorable Fifth Circuit Court Of Appeal's decision is not only trampling upon statutory law, but it is likewise going against its own prior decisions interpreting and applying the law. Petitioner maintains that the trial court never certified the September 13, 2013, judgement as a final appealable judgement either. The fact is, the trial court made a partial summary judgement and it would have been improper for petitioner to invoke the review process with the court of appeal and thereby deliberately institute piece-meal litigation.

Petitioner properly awaited a final judgement and proceeded into this court with all claims being reflected in his Supervisory Writ of Review. All claims were heavily related (all of them had their origins in the Systemic Ineffective Assistance of Counsel delineated in *"An Assessment of trial Level Indigent Defense Services in Louisiana 40 Years After Gideon."* (See Exhibit Copy of Book in Record of PCR at Trial Court Level). Further instructions and prohibitions against piecemeal litigation was addressed in *Daigle & Associates, APLC v. Lafayette Insurance Company*, 2004-0915, 916 So.2d 1078 (La. App. 1 Cir. 6/29/05). Also, these decisions show that to apply a procedural bar in this case would not reflect a regularly and even-handed application of the procedural bar, thus, the matter would still invite federal habeas review. Petitioner requests that this Honorable Court remand this case back to the Court of with an order directing it to alter its March 25, 2014, judgement, wherein it was asserted that he should have filed a "Notice of Intent" thereby requesting a return date which would have ultimately forced him to proceed in piece-meal fashion with the litigation. Also, petitioner asks that this honorable court overrule the inapplicable judgements of the trial Court as the are not sustaing as a matter of law when applied to the facts of this case.

### FAILURE TO FOLLOW *HAINES V. KERNER, SUPRA*

The above opinion in *State ex rel. Egans v. State*, shows that this is not the first occasion that the Louisiana Supreme Court has been required to issue a correctively instructive judgement against the Honorable Fifth Circuit Court of Appeal for similar conduct. Petitioner avers that he is the subject of deprivation of rights and protections assured him by operation of the Federal decisions of *Haines v. Kerner, supra* and *Houston v. Lack, supra*. Petitioner tendered his pleadings to prison officials on 2/14/14[2], the final decision challenged was issued on January 18, 2014. These

---

[2] Please see attached Exhibit "B" (duplicate of mail slip receipt showing acceptance and responsibility for depositing into the prison mailing system by Prison Classification Officer

sentiments were echoed in both *State ex rel. Johnson v. Whitley*, 648 So.2d 909, 92-2689 (La. 1/6/95) and *State ex rel Heasley v. State*, 876 So.2d 78, 2003-1691 (La, 6/4/04).

### WHETHER THIS CASE WAS RESOLVED ON FEDERAL AND STATE GROUNDS OR JUST STATE?

Petitioners pleadings are replete with references to and claims to the rights and protections covered by the United States Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-52, 92 S.Ct. at 596, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Despite this clear invocation of federal law over these proceedings and *La. Const. Art. Article X, § 30*, no court has complied with those precepts. The state invoked state law over the claims, though occasionally referencing federal cases, the review was limited to state court determination to applying only state law not state court interpretation nor application of federal law. Pursuant *Haines*, Petitioner's writ could only be dismissed for failure to state a claim. However, an erroneous determination that a claim should be dismissed is a "federal mixed question of law and fact" to be reviewed *de novo*. Also, despite petitioner directing the court's attention to other State and Federal cases where the same issue of law was fully adjudicated, as a reviewing court, this court has erroneously upheld the trial judgment. In the original PCR, traverse to the state's procedural objections, and the Supervisory Writ of Review, petitioner specifically showed the court "cause" for any lapses in his presentation of issues raised. (See prior pleadings where petitioner detailed trial counsel systemic and actual instances of ineffective assistance.) Petitioner included in his pleadings the following clear and unequivocal statements conveying that his is a foreign national not familiar fluent with the English language and reliant upon others for assistance. The following is quoted directly from petitioner's prior pleading in this court.

Petitioner presently lacks the ability: to fully understand English, investigate his claims he lacks the academic capability to comprehend post conviction statutes[3], procedures, and case law

---

Raphael Augustine, dated 2/14/14:

[3]

Petitioner has never had his intellectual capability assessed through an individual interview by one or more psychologists nor has he ever been administered a verbal intelligence and reading comprehension test. Also, he has never been administered the Law School Admission Test (LSAT) to compare his ability to those of students starting out in the field of law. Also, there has been no personality testing in order to get an estimate of his current emotional and mental well-being, gauging whether his capacity to perform the task he faced (filing a competent post-conviction), was negatively

He is totally dependant upon others to aid in the perfection and presentation of his claims and issues.

Petitioner suffers from a "constructive denial of counsel," which constitutes a "structural defect" in the collateral review process as was true in the pre-trial, trial and post-trial proceedings. Having counsel on one's first appeal is a matter of right. In light of recent decisions, a claim of ineffective assistance of trial counsel in the first collateral review is deemed a continuation of the direct appeal process as explained in *Martinez v. Ryan, supra* and *Trevino v. Thaler, supra.*[5]

The request made by the State seeking the dismissal of several of petitioner's claims at the trial court level pursuant the holdings in *Francis v. Henderson*, 425 U.S. 536 (1976), were insufficient grounds upon which to deny relief. A dismissal under *Francis* or any other reason advanced by the state on any claim is inapplicable to the fact specific circumstances of this case. Funes' failure to timely challenge the composition of the grand and petit jury pools meets the "cause" and "prejudice" requirements of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); he establishes the elements of *Francis*. The state maintained, that Funes has not demonstrated "cause" nor "prejudice." This contention is contrary to the record. Petitioner sufficiently raised and argued counsel's pre-trial ineffectiveness, trial post-trial ineffectiveness which immunizes petitioner from the applicability of procedural default. Collectively, the manner in which the state intends to use counsel's ineffectiveness as a battering-ram against the constitutional rights of this petitioner connotes evidence of "structural-error."

Here, Funes has argued his claims, both as independent and inter-related substantive issues. Funes's arguments encompass:

affected by depression or any other debilitating mental illness.

[4]

In post conviction proceedings, the most critical reason which justifies the help of a lawyer are: The need for factual investigation. Since the vast majority of post-conviction issues are based on facts that are not in the record, the most critical aspect of any case will be the required factual investigation. Regardless of how educated the individual, or how long he has to prepare, this task is simply impossible for the prisoner to perform from the Louisiana State Penitentiary.

[5]

Some courts had expressed the opinion that even a complete library would not provide the inmate with much chance of success: "In this court's view, access to the fullest law library anywhere is a useless and meaningless gesture in terms of the great mass of prisoners. The bulk and complexity [of the legal issues] have grown to such an extent that even experienced lawyers cannot function efficiently today without the support of special [research] tools . . . . To expect untrained laymen to work with entirely unfamiliar books whose contents they cannot understand, may be worthy of Lewis Carroll, but hardly satisfies the substance of the constitutional duty of [access to courts] . . . Access to full law libraries makes about as much sense as furnishing medical services through books like: 'Brain Surgery Self Taught', or 'How to remove your own Appendix', along with scalpels, drills, hemostats, sponges and sutures." *Falzerano v. Collier*, 535 F.Supp. 800, 803 (D.N.J. 1982)[?]

6

(1) the State of Louisiana engaged in [jury pool-fixing] for both the Grand and Petit juries through non-compliance with the *NVRA of 1993*,

(2) Trial counsel was systemically ineffective. Counsel's active engagement in a conflict-of-interest during his representation of petitioner (Counsel concealed the systemic-ineffectiveness of the public defenders' office as described in "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon."

(3) Counsel's "active" and "systemic-conflict-of-interest" caused counsel to be ineffective in not filing a motion to quash both the Grand Jury and the Petit Jury due to systemic exclusion of those who are handicapped, minorities, and/or reliant upon public assistance and the systemic-ineffectiveness by the design and operation of the Indigent Defender System.

(4) The Indigent Defender Board(s) is/are working in collision with the District Attorney's Office to allow the clients of the IDB office to be subjected to unconstitutionally tainted prosecutions and discriminately composed Grand and Petit Jury pools during the Indictment and trial process.

Unlike *Deloch*, this petitioner did/does not speak the English language, and was given an interpreter for all proceedings. This fact goes to the truth of petitioner having been completely reliant upon the expertise and guiding hand of counsel. At any rate, the State of Louisiana has introduced evidence into the record which effectively carried petitioner's burden of proving his entitlement to relief. The petitioner alleged and the State of Louisiana submitted verifiable evidence that, the State of Louisiana, October 15, 2012 - October 17, 2012, was convicted before the U.S. Eastern District Court, of violating the *NVRA of 1993*. The state's chosen defenses against petitioner are extinguishable. To overcome procedural default, petitioner need only establish "cause" for the procedural default. Procedural bars are only applicable when the a moving party proves that the applicability of the procedural bar did not derive from: 1.) a corrupted process, or 2.) internal-scheme specifically designed or structured to deprive a party litigant of a protected right (right to effective counsel and/or conflict-free counsel) by fraud, silence, or or misrepresentation.

Although the state argues that counsel's failure to file a pre-trial motion to quash waived petitioner's equal protection claim against the State of Louisiana for "fixing" the composition of the criminal jury pools for the Grand and Petit jury through non-compliance with the mandates of the *NVRA of 1993*." Counsel's failure to file the pre-trial motion establishes that counsel was not acting as counsel envisioned by the *Sixth Amendment, but rather suffering from a conflict-of-interest.*

The instant petitioner directs this Honorable Court's attention to the "cause" of his procedural default; Counsel did not file a motion to quash the grand jury nor the trial jury because of the existing conflict they had as a member of the Jefferson Parish Indigent Defender Board who relied on this conflict to go unnoticed for continued wage earnings. This constitutes an "external factor" which

injected "cause" for the procedural default to be embedded in reality. Petitioner avers that both his trial and appellate counsel suffered from inter-related conflicts-of-interest.

(1) Trial counsel had an interest in not filing systemic ineffectiveness against his office nor objection to his own failure to file proper and timely pre-trial motions to quash the Grand and Petit Jury's impaneled for violating of the *NVRA of 1993*. Therefore, counsel "prejudiced" his client by not preserving the issue for review on direct appeal.

(2) Because the direct appeal is a stage where petitioner still has the right to counsel, Appellate counsel is a part of a system which "systemically" provides ineffective assistance of counsel at the appellate level. Appellate counsel had a coveted interest in not pointing out to the appellate court, trial counsel's ineffective-assistance for the failure to file pre-trial motions to quash. This is so because, (appellate counsel) too had been ineffective in countless cases for never having pointed out the ineffective-assistance of trial counsel(s) for not filing pre-trial motions to quash indictments on the grounds of intentional violations of the *NVRA of 1993*, thereby tainting the jury pools for the Grand and Petit juries (juries which should have been quashed due to the taint).

(3) Further, because appellate counsel is an integral part of the systemic by-passing of these "structural error" claims and ineffective assistance at the appellate level, appellate counsel had an interest in not pointing out that, as individuals and as a collective body, the Attorney's of the Louisiana Appellate Project had been by-passing legitimate ineffective-assistance of counsel claims against Indigent Defender Board Attorneys as individuals and as a collective (in thousands of cases). The Indigent Defender Board has "never filed pre-motions to quash the grand or petit juries despite all the elements and evidence to prove those as viable claim since the public discovery of the systemic excluding of a distinctive class of people from becoming registered voters to be included in the state jury pools because of their, disability, race, economic or social status, and other identifiers set out in the *NVRA of 1993*."

## "CAUSE" AND THE "EQUITABLE TOLLING" ISSUE

The State of Louisiana, in its desire to preserve the unconstitutional practice of depriving the poor, handicapped and un-educated of an opportunity to be members of the jury pools throughout the State of Louisiana seeks to prevent the adjudication of this vital issue. Discrimination otherwise qualified persons from becoming registered voters. Petitioner avers that the following will show the self-exterminating nature of the procedural defaults raised by the State of Louisiana.

1.) Who is responsible for supplying the *Sixth Amendment*'s standard of effective assistance of counsel for the poor 40+ years after *Gideon*, when a person is charged with a crime inside the boarders of Jefferson Parish? *Answer: The State of Louisiana*.

2.) Does this State have obligation to comply with the *National Voter's Rights Act of 1993*? *Answer: Yes.*

3.) Is it true that the IDB Office of Jefferson Parish has never questioned the unconstitutional practices deriving from the State's Violation of the *NVRA of 1993*? *Answer: Yes.*

4.) Was the State of Louisiana, found by the U.S. Eastern District of Louisiana, to have violated its obligation to comply with the *National Voter's Rights Act of 1993*? *Answer: Yes.*

Considering the honest answers to these questions, the statute of limitations to filing a "Pre-trial Motion to Quash the Grand and Petit Juries, does not constitute a "jurisdictional bar" and as such, it is subject to equitable tolling. *"The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable."* The doctrine applies principally where the plaintiff is actively misled by the defendant (in this case his attorney) about the cause of action or is prevented in some extraordinary way from asserting the rights. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Petitioner thus meets the "cause" and "prejudice" requirement of *Francis*, because there were extra-ordinary preventive measures in place to prevent counsel from filing them.

**The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB system which ultimately begets systemic-conflicts-of-interest**

Petitioner avers through the art of deduction, the following is both true and evident. There exists an unwritten and unspoken of agreement between D.A.'s Office and Public Defender's Office which includes but is not limited to:

A.) No IDB Counsel will file pre-trial Motions to Quash the Grand or Petit Juries will be filed with respect to the State's Violation of the *NVRA of 1993*.

B.) No IDB Counsel will file any pleadings against himself/herself nor the Jefferson Parish IDB Office for promoting and/or preserving the systemic-unconstitutional Ineffective-Assistance of Counsel as set forth in, but not limited to, "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon," as published in 2004, nor which remains reality to the date of this filing.

Standing alone, these two agreements are depriving citizens of the honest and constitutionally required services of the Jefferson Parish IDB Office. Petitioner bears the burden of proving or disproving, through the actions or inactions of the Jefferson Parish IDB Office that this understood contract exists. In proving strategically arranged and systemic ineffective assistance of counsel establishing "cause" for the procedural default, the following facts are offered.

A.) Since the State of Louisiana's deliberate and systemic violation of the *NVRA of 1993*, was exposed in *Ferrand v. Schedler*, the Jefferson Parish IDB Office has not made any pre-trial motions to quash the Grand Jury and/or Petit Jury on the grounds of the jury pools being "fixed" by the state's refusal to comply with the *NVRA of 1993*, despite the issue being a viable and sustainable one.

B.) The Jefferson Parish IDB Office has not filed a single claim of systemic-ineffective assistance of counsel against the IDB as a whole. They are prevented from filing the claim because it is a conflict-of-interest to do so. It would be politically incorrect, socially deplorable, economically devastating and/or would likely cost their employment with the Jefferson Parish IDB. So, it is through the silence of the Jefferson Parish IDB; the Jefferson Parish District Attorney's Office is given a

decisive advantage over any person in that parish as a part of a systemic reality and the extreme budgetary constraints of the Jefferson Parish IDB Office. Ultimately and realistically, this serves to deprive those charged with a crime in this parish of the *Sixth Amendment* Right to Counsel and *Fourteenth Amendment* Right to Due Process and Equal Protection of the Law.

The only reasonable conclusion is evident, petitioner has been deprived of his *Sixth Amendment* right to counsel, his right to conflict-free counsel, and his right to a Grand and Petit Jury, free from systemic-exclusion of handicapped, minorities and, those dependent upon public assistance.

As a starting point, systemic and unconstitutional exclusion of minorities or readily identifiable group is "structural error" requiring automatic reversal and not amenable to "harmless error" analysis. See *Arizona v. Fulminate* and *Vasquez v. Hillery*.

Now, the magnitude and the scope of the jury-pool-fixing scheme set in place by non-compliance with the *National Voter Registration Act*, was sufficient to bring a halt to any efforts to immediately re-indict petitioner. How is that so? The State of Louisiana would have been obligated to bring the State of Louisiana into conformity with the *NVRA of 1993*, until then, any subsequent Grand Jury Pool would have suffered the same unconstitutional taint. The repair of the unconstitutional Jury Pool System could not have been achieved right away, because the Secretary of State Tom Schedler was asked to remedy the matter, and when he refused, actions were taken and both he and the State of Louisiana were sued in two (2) civil suits. The aforementioned suits are what brought this constitutional rights deprivation to petition's attention. These civil cases are *Ferrand v. Schedler* and *U.S. v. Louisiana* as set out in the PCR Application and Memorandum in Support of petitioner's request for Post-Conviction Relief.

The time period that it may have or perhaps would take to compose a constitutionally acceptable trial and petit jury, the petitioner's speedy trial rights would have been implicated and this too could have been a "pry pole" used by IDB counsel in any effort to securing a plea agreement on behalf of his client as was the case in *Winters v. Cooks*, 489 F.2d 174 (C.A. 5 (Miss.) 1973).

As a settled issue, a *Batson* violation is structural error for which prejudice is generally presumed. This violation is sufficient to undermine confidence in the outcome of the trial because Grand and Petit Jury discrimination is structural error. See *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)(noting the structural defects in the constitution of the trial mechanism "defy analysis by 'harmless-error' standards").

As a result of the procedural objections urged by the Jefferson Parish District Attorney's Office, the following questions were posed to them but have gone unanswered:

1.) When did the District Attorney's Office notes the statistical under-representation of black and other minorities in their jury pools for the Grand and Petit Jury?

2.) When did the Jefferson Parish realize that their Jury Pools were unconstitutionally composed by way of the state's Non-compliance with the *NVRA of 1993*?

3.) Where any other methods in place which aided the Jefferson Parish District Attorney's office in facilitating the under-representation of minorities, handicapped and the impoverished?

4.) How many indictments where secured while any of the above practices were in place?

5.) How many criminal trials proceeded to verdict while the above practices where in effect?

\*\*\*\*\*\*QUOTING FROM THE ORIGINAL WRIT STOPS HERE BUT ALL ARGUMENTS IN THE ORIGINAL & SUPERVISORY WRIT ARE ADOPTED BY REFERENCE. (NO CLAIMS FROM THE TRIAL COURT NOR COURT OF APPEALS OR ARGUMENTS ARE ABANDONED.)\*\*\*\*\*

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon," members of the Louisiana Appellate Project; and members of the Spangenberg Group who made the first study of the Louisiana Indigent Defender System (proposal presented to Sam Salton, James Boren, and Nina Maples, September 11, 1990), and its subsequent results. Petitioner further invokes his right to call/summons/subpoena out-of-state witnesses for the purposes of fully developing the record relative to the claims raised through these pleadings.

## A LISTING OF ISSUES PRESENTED FOR REVIEW

\*"Federal Questions of Both, "Law" and "Fact"Are Raised by the Actions and Inactions of the Trial Court; \*Applicability of *Article X, § 30 of the Louisiana Constitution of 1974*; \*Procedural Default Pursuant Post Conviction Procedures; \*Cause and the Equitable Tolling Issue; \*The Standing Agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB System which ultimately begets Systemic-Conflicts-of-Interest; \*Jefferson Parish D.A.'s Office has conceded to...; \*Attachments which weigh on this Court's decision; \*Petitioner maintains that *Pro Se* Pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers; \*"Prejudice Component"; \*Facts not known exception La.C.Cr.P. Art. 930.8(A)(1); \*Deferral of IAC claim from Direct Appeal to PCR Constitutes 'Cause'; \*Petitioner's Sixth Amendment Right to a Fair Trial was violated during the Selection of the Jury? (*Batson and Strickland* Violations); \*Trial Court Violated Petitioner's Due Process Rights to a Fair Trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial; \*The Trial Judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts; \*Whether

11

Prosecutorial Misconduct occurred: (1) Prosecutor Improperly Vouched for the Credibility Witnesses and (2) Failed to Correct Perjured Testimony; *Counsel Rendered Ineffective Assistance of Counsel at Trial When Counsel Failed to Seek Quashing of the Grand Jury Indictment on the Grounds of Violation of the National Voter Registration Act of 1993; *Ineffectiveness by Not Securing Rebuttal Experts for the Defense *Independent Claim of "Grand Jury and Trial Jury Discrimination" (This Is a "New Fact" Previously Not Known to Petitioner and it Meets the Exception of 930.8(a)(1) *Trial Court Violated Petitioner's Due Process Rights to a Fair Trial When it Failed to Instruct or Sequester the Jury When it Retired During Recess and Breaks During Trial; *Conflict of Interest Against the Entirety of the Jefferson Parish Indigent Defender; *Deprivation of Access to Relevant Transcripts

## STATEMENT OF FACTS RELEVANT TO THE ASSIGNMENT OF ERRORS AND ISSUES FOR REVIEW, WITH REFERENCES TO SPECIFIC PAGE NUMBERS OF THE RECORD

The Trial Judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts in his summation to the jury and in his jury instructions.

## A SHORT SUMMARY OF THE ARGUMENT

The trial court made a erroneous determination that petitioner's claims were subject to procedural default, the state submitted evidence proving petitioner's claims were sustainable, and he established that he should have been given an evidentiary hearing which the trial court refused to do. The "Requests for Admissions" was never responded to by the state, and because of this it is the state who is in procedural default. Petitioner established cause for his failure to file a pre-trial motion to quash. Petitioner's entire case was tainted by the unconstitutionally composed jury pool, trial counsel was ineffective for failing to challenge the taint; nd the Jefferson Parish Public Defender's Office is steeped in Systemic Ineffective assistance of counsel and deprives those it represented of their *6th Amendment* right to counsel.

Procedural default pursuant post conviction procedures

Petitioner, contends that the state's procedural objections to his/these claims are without merit and should have been rejected in the face of their own exhibits, Mr. Funes' makes a substantial showing that delay in filing the *NVRA* issue was not his fault, but rather the result of ineffective and conflict-laden counsel appointed by both the Court and the Appellate Project (at the Appeal stage). Petitioner presently lacks the ability; to fully understand english, investigate his claim; he lacks the

academic capability to comprehend post conviction statutes[6], procedures, and case law.  He is
totally dependant upon others to aid in the perfection and presentation of his claims and issues.

Petitioner suffers from a "constructive denial of counsel," which constitutes a "structural
defect" in the collateral review   process as was true in the pre-trial, trial and post-trial
proceedings.   Having counsel on one's first appeal is a matter of right.  In light of recent
decisions, a claim of ineffective assistance of trial counsel in the first collateral review is deemed
a continuation of the direct appeal process as explained in *Martinez v. Ryan, supra* and *Trevino
v.Thaler*, 513 U.S.__ (2013).[7]

The request made by the State seeking the dismissal of several of petitioner's claims at the
trial court level pursuant the holdings in  *Francis v.  Henderson*, 425 U.S. 536 (1976), were
insufficient grounds upon which to deny relief.  A dismissal under *Francis* or any other reason
advanced by the state on any claim is inapplicable to the fact specific circumstances of this case.
Funes' failure to timely challenge the composition of the grand and petit jury pools meets the "cause"
and "prejudice" requirements of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct.  1708, 48 L.Ed.2d
149 (1976); he establishes the elements of *Francis*.   The state maintained, that Funes has not
demonstrated "cause" nor "prejudice."   This contention is contrary to the record.   Petitioner
sufficiently raised and argued counsel's pre-trial ineffectiveness, trial post-trial ineffectiveness which
immunizes petitioner from the applicability of procedural default.  Collectively, the manner in which

---

[6]
Petitioner has never had his intellectual capability assessed through an individual interview by one
or more psychologists nor has  he ever been administered a verbal intelligence and reading
comprehension test. Also, he has never been administered the Law School Admission Test (LSAT)
to compare his ability to those of students starting out in the field of law.  Also, there has been no
personality testing in order to get an estimate of his current emotional and mental well-being, gauging
whether his capacity to perform the task he faced (filing a competent post-conviction), was negatively
affected by depression or any other debilitating mental illness.

[7]
In post conviction proceedings, the most critical reason which justifies the help of a lawyer are: The
need for factual investigation.  Since the vast majority of post-conviction issues are based on facts that
are not in the record, the most critical aspect of any case will be the required factual investigation.
Regardless of how educated the individual, or how long he has to prepare, this task is simply
impossible for the prisoner to perform from the Louisiana State Penitentiary.

[8]
Some courts had expressed the opinion that even a complete library would not provide the inmate with
much chance of success:   "In this court's view, access to the fullest law library anywhere is a useless
and meaningless gesture in terms of the great mass of prisoners.  The bulk and complexity [of the legal
issues] have grown to such an extent that even experienced lawyers cannot function efficiently today
without the support of special [research] tools . . . . To expect untrained laymen to work with entirely
unfamiliar books whose contents they cannot understand, may be worthy of Lewis Carroll, but hardly
satisfies the substance of the constitutional duty of [access to courts].  Access to full law libraries
makes about as much sense as furnishing medical services through books like: "Brain Surgery Self
Taught", or "How to remove your own Appendix", along with scalpels, drills, hemostats, sponges and
sutures." *Falzerano v. Collier*, 535 F.Supp. 800, 803 (D.N.J. 1982)

the state intends to use counsel's ineffectiveness as a battering-ram against the constitutional rights of this petitioner connotes evidence of "structural-error."

Here, Funes has argued his claims, both as independent and inter-related substantive issues.

Funes's arguments encompass:

(1) the State of Louisiana engaged in [jury pool-fixing] for both the Grand and Petit juries through non-compliance with the *NVRA of 1993*,

(2) Trial counsel was systemically ineffective. Counsel's active engagement in a conflict-of-interest during his representation of petitioner (Counsel concealed the systemic-ineffectiveness of the public defenders office as described in "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon."

(3) Counsel's "active" and "systemic-conflict-of-interest" caused counsel to be ineffective in not filing a motion to quash both the Grand Jury and the Petit Jury due to systemic exclusion of those who are handicapped, minorities, and/or reliant upon public assistance and the systemic-ineffectiveness by the design and operation of the Indigent Defender System.

(4) The Indigent Defender Board(s) is/are working in collusion with the District Attorney's Office to allow the clients of the IDB office to be subjected to unconstitutionally tainted prosecutions and discriminately composed Grand and Petit Jury pools during the Indictment and trial process.

Unlike *Deloch*, this petitioner did/does not speak the English language, and was given an interpreter for all proceedings. This fact goes to the truth of petitioner having been completely reliant upon the expertise and guiding hand of counsel. At any rate, the State of Louisiana has introduced evidence into the record which effectively carried petitioner's burden of proving his entitlement to relief. The petitioner alleged and the State of Louisiana submitted verifiable evidence that, the State of Louisiana, October 15, 2012 - October 17, 2012, was convicted before the U.S. Eastern District Court, of violating the *National Voter's Rights Act of 1993*.

The state's chosen defenses against petitioner are extinguishable. To overcome procedural default, petitioner need only establish "cause" for the procedural default. Procedural bars are only applicable when the a moving party proves that the applicability of the procedural bar did not derive from: 1.} a corrupted process, or 2.) internal-scheme specifically designed or structured to deprive a party litigant of a protected right (right to effective counsel and/or conflict-free counsel) by fraud, silence, and or misrepresentation.

Although the state argues that counsel's failure to file a pre-trial motion to quash waived petitioner's equal protection claim against the State of Louisiana for "fixing" the composition of the criminal jury pools for the Grand and Petit jury through non-compliance with the mandates of the *NVRA of 1993*." Counsel's failure to file the pre-trial motion establishes that counsel was not acting as counsel envisioned by the *Sixth Amendment, but rather suffering from a conflict-of-interest.*

The instant petitioner directs this Honorable Court's attention to the "cause" of his procedural default: Counsel did not file a motion to quash the grand jury nor the trial jury because of the exisiting conflict they had as a member of the Jefferson Parish Indigent Defender Board who relied on this conflict to go unnoticed for continued wage earnings. This constitutes an "external factor" which injected "cause" for the procedural default to be embedded in reality. Petitioner avers that both his trial and appellate counsel suffered from inter-related conflicts-of-interest.

(1) Trial counsel had an interest in not filing systemic ineffectiveness against his office nor objection to his own failure to file proper and timely pre-trial motions to quash the Grand and Petit Jury's impaneled for violating of the *NVRA of 1993*. Therefore, counsel "prejudiced" his client by not preserving the issue for review on direct appeal.

(2) Because the direct appeal is a stage where petitioner still has the right to counsel, Appellate counsel is a part of a system which "systemically" provides ineffective-assistance of counsel at the appellate level. Appellate counsel had a coveted interest in not pointing out to the appellate court, trial counsel's ineffective-assistance for the failure to file pre-trial motions to quash. This is so because, (appellate counsel) too had been ineffective in countless cases for never having pointed out the ineffective-assistance of trial counsel(s) for not filing pre-trial motions to quash indictments on the grounds of intentional violations of the *NVRA of 1993*, thereby tainting the jury pools for the Grand and Petit juries (juries which should have been quashed due to the taint).

(3) Further, because appellate counsel is an integral part of the systemic by-passing of these "structural error" claims and ineffective assistance at the appellate level, appellate counsel had an interest in not pointing out that, as individuals and as a collective body, the Attorney's of the Louisiana Appellate Project had been by-passing legitimate ineffective-assistance of counsel claims against Indigent Defender Board Attorneys as individuals and as a collective (in thousands of cases). The Indigent Defender Board has "never filed pre-motions to quash the grand or petit juries despite all the elements and evidence to prove those as viable claim since the public discovery of the systemic excluding of a distinctive class of people from becoming registered voters to be included in the state jury pools because of their, disability, race, economic or social status, and other identifiers set out in the *NVRA of 1993*."

__Cause and the equitable tolling issue__

The State of Louisiana, in its desire to preserve the unconstitutional practice of depriving the poor, handicapped and un-educated of an opportunity to be members of the jury pools throughout the State of Louisiana seeks to prevent the adjudication of this vital issue. Discrimination otherwise qualified persons from becoming registered voters. Petitioner avers that the following will show the self-exterminating nature of the procedural defaults raised by the State of Louisiana.

1.) Who is responsible for supplying the *Sixth Amendment's* standard of effective assistance of counsel for the poor 40+ years after *Gideon*, when a person is charged with a crime inside the boarders of Jefferson Parish? *Answer: The State of Louisiana.*

2.) Does this State have obligation to comply with the *National Voter's Rights Act of 1993*? *Answer: Yes.*

3.) Is it true that the IDB Office of Jefferson Parish has never questioned the unconstitutional practices deriving from the State's Violation of the *NVRA of 1993*? *Answer: Yes.*

4.) Was the State of Louisiana, found by the U.S. Eastern District of Louisiana, to have violated its obligation to comply with the *National Voter's Rights Act of 1993*? *Answer: Yes.*

Considering the honest answers to these questions, the statute of limitations to filing a "Pre-trial Motion to Quash the Grand and Petit Juries, does not constitutute a "jurisdictional bar" and as such, it is subject to equitable tolling. *"The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable."* The doctrine applies principally where the plaintiff is actively misled by the defendant (in this case his attorney) about the cause of action or is prevented in some extraordinary way from asserting his rights. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Petitioner thus meets the "cause" and "prejudice" requirement of *Francis*, because there were extra-ordinary preventive measures in place to prevent counsel from filing them.

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB system which ultimately begets systemic-conflicts-of-interest

Petitioner avers through the art of deduction, the following is both true and evident. There exists an unwritten and unspoken of agreement between D.A.'s Office and Public Defender's Office which includes but is not limited to:

A.) No IDB Counsel will file pre-trial Motions to Quash the Grand or Petit Juries will be filed with respect to the State's Violation of the *NVRA of 1993*.

B.) No IDB Counsel will file any pleadings against himself/herself nor the Jefferson Parish IDB Office for promoting and/or preserving the systemic-unconstitutional Ineffective-Assistance of Counsel as set forth in, but not limited to, "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon," as published in 2004, nor which remains reality to the date of this filing.

Standing alone, these two agreements are depriving citizens of the honest and constitutionally required services of the Jefferson Parish IDB Office. Petitioner bears the burden of proving or disproving, through the actions or inactions of the Jefferson Parish IDB Office that this understood contract exists. In proving strategically arranged and systemic ineffective assistance of counsel establishing "cause" for the procedural default, the following facts are offered.

A.) Since the State of Louisiana's deliberate and systemic violation of the *NVRA of 1993*, was exposed in *Ferrand v. Schedler*, the Jefferson Parish IDB Office has not made any pre-trial motions to quash the Grand Jury and/or Petit Jury on the grounds of the jury pools being "fixed" by the state's refusal to comply with the *NVRA of 1993*, despite the issue being a viable and sustainable one.

B.) The Jefferson Parish IDB Office has not filed a single claim of systemic-ineffective assistance of counsel against the IDB as a whole. They are prevented from filing the claim because it is a conflict-of-interest to do so. It would be politically incorrect, socially deplorable, economically devastating and/or would likely cost their employment with the Jefferson Parish IDB. So, it is through the silence of the Jefferson Parish IBD, the Jefferson Parish District Attorney's Office is given a decisive advantage over any person in that parish as a part of a systemic reality and the extreme budgetary constraints of the Jefferson Parish IDB Office. Ultimately and realistically, this serves to deprive those charged with a crime in this parish of the *Sixth Amendment* Right to Counsel and *Fourteenth Amendment* Right, to Due Process and Equal Protection of the Law.

The only reasonable conclusion is evident, petitioner has been deprived of his *Sixth Amendment* right to counsel, his right to conflict-free counsel, and his right to a Grand and Petit Jury, free from systemic exclusion of handicapped, minorities and, those dependant upon public assistance.

As a starting point, systemic and unconstitutional exclusion of minorities or readily identifiable group is "structural error" requiring automatic reversal and not amenable to "harmless error" analysis. See *Arizona v. Fulminate* and *Vasquez v. Hillery.*

Now, the magnitude and the scope of the jury-pool-fixing scheme set in place by non-compliance with the *National Voter Registration Act*, was sufficient to bring a halt to any efforts to immediately re-indict petitioner. How is that so? The State of Louisiana would have been obligated to bring the State of Louisiana into conformity with the *NVRA of 1993*, until then any subsequent Grand Jury Pool would have suffered the same unconstitutional taint. The repair of the unconstitutional Jury Pool System could not have been achieved right away, because the Secretary of State Tom Schedler was asked to remedy the matter, and when he refused, actions were taken and both he and the State of Louisiana were sued in two (2) civil suits. The aforementioned suits are what brought this constitutional rights deprivation to petition's attention. Those civil cases are *Ferrand v. Schedler* and *U.S. v. Louisiana* as set out in the PCR Application and Memorandum in Support.

The time period that it may have or perhaps would take to compose a constitutionally acceptable trial and petit jury, the petitioner's speedy trial rights would have been implicated and this too could have been a "pry pole" used by IDB counsel in any effort to securing a plea agreement on behalf of his client as was the case in *Winters  v. Cooks*, 489 F.2d 174 (C.A. 5 (Miss.) 1973).

As a settled issue, a *Batson* violation is <u>structural error</u> for which prejudice is generally presumed.   This violation is sufficient to undermine confidence in the outcome of the trial because Grand and Petit Jury discrimination is structural error. See *Arizona v.  Fulminante*, 499 U.S. 279, 309, 111 S.Ct.  1246, 113 L.Ed.2d 302 (1991)(noting the structural defects in the constitution of the trial mechanism "defy analysis by 'harmless-error' standards").

As a result of the procedural objections urged by the Jefferson Parish District Attorney's Office, the following questions were posed to them but have gone unanswered:

1.) When did the District Attorney's Office notes the statistical under-representation of black and other minorities in their jury pools for the Grand and Petit Jury?

2.) When did the Jefferson Parish realize that their Jury Pools were unconstitutionally composed by way of the state's Non-compliance with the *NVRA of 1993*?

3.) Where any other methods in place which aided the Jefferson Parish District Attorney's office in facilitating the under-representation of minorities, handicapped and the impoverished?

4.) How many indictments where secured while any of the above practices were in place?

5.) How many criminal trials proceeded to verdict while the above practices where in effect?

## JEFFERSON PARISH D.A.'S OFFICE HAS CONCEDED TO...

Though the State argued that claim #1 fails to state a claim upon which relief can be granted, this assertion was refuted in the state's own pleading. The cited cases where this court same issue was adjudicated, in *Francis* and *Davis*.

Petitioner avers that, "the fixing of the Grand and Petit Jury so as to exclude those who were handicapped, minorities and/or dependent upon public assistance," is a "Federal Question of law because it involves the state's compliance with a federal statute."

In urging procedural default against petitioner's claims, the State of Louisiana effectively advances petitioner's argument that counsel was ineffective and this ineffectiveness constitutes the "cause" for petitioner's subsequent default. Because of the conflict-of-interest, the IDB counsel rendered aid to petitioner's adversary and provided them a better opportunity to indict and convict. Through the "understood" and "unspoken agreement" between the Jefferson Parish District Attorney's Office and the Jefferson Parish IDB to: *Never file challenges to the unconstitutional jury pool composition nor selection processes*, petitioner could only receive *systemic-ineffective-assistance*. Petitioner re-invokes his request for an evidentiary hearing and an opportunity to depose under oath, the entire staff of the IDB Office. Petitioner furthers that, he wishes to lodge public records request for the IDB Office and archived records of the Jefferson Parish IDB Office covering the expanse from 1994 to 2013, with respect to all clients who have been subject to either a Grand Jury Indictments and/or Petit Jury Trials. Further, petitioner aims to fully effectuate and prosecute his request for all the persons he listed as material-witnesses *to this cause to come forth and testify under oath as to the reality of and the effects of the State of Louisiana violating the National Voter's Rights Act of 1993*. Also, this Honorable Court should note that the cases of *Dalcoe, Francis,* and *Davis* are not synonymous with this case, as not one of those litigants raised the claim(s) of ineffective-assistance of counsel nor conflict-of-interest against the counsel representing them at the time of the procedural default.

18

## ATTACHMENTS WHICH WEIGH ON THIS COURT'S DECISION

In error, the trial court functioned under the false belief that Admissions of Fact cannot be used in these proceedings, however, the post-conviction provisions specifically provide for these discovery, admissions of fact, authentication of documents, and conducting an evidentiary hearing to further develop the record. Petitioner presented to the trial court, all of the following, they remain pending without answer, thus, this case is not properly before this Court of Appeals:

(1.) Request for Post-Conviction Application-related "Admissions of Fact"; Request for Post-Conviction Application-related "Discovery;Request Post-Conviction Application-related "Authentication of Documents request" for all documents acquired through discovery;Request for subpoena of out-of-state witnesses; Request that the Jefferson Parish Public Defender involved in this case submit to the subpoena powers of this Honorable Court to give testimony on the following issues which bear upon the court's decision;

(a) When did they become aware of the existence of the *NVRA of 1993*?

(b) In how many cases have they filed a motion to quash, and/or sought relief based upon the State of Louisiana's violation of the *NVRA of 1993*?

(c) In how many cases have the Jefferson Parish IBD filed pleadings alleging systemic ineffective assistance of counsel by their office as a result under-funding and but not limited to the findings set out in the *An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 years after Gideon*?

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon;" members of the Louisiana Appellate Project; and members of the Spangenberg Group who made the first study of the Louisiana Indigent Defender System (proposal presented to Sam Salton, James Boren, and Nina Maples, September 11, 1990), and its subsequent results. Petitioner further invokes his right to call/summons/subpoena out-of-state witnesses for the purposes of fully developing the record relative to the claims raised through these pleadings.

## PETITIONER MAINTAINS THAT PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists, does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of any favorable doubt regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the issue in *Haines v Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " "beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"

Id., at 520-52, 92 S.Ct. at 596, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Petitioner, hereby invokes his right to be held to a less stringent standard which provides that his pleading "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." Plaintiff contends that precedent of the United States Supreme Court regarding pro se pleadings is binding.

## "PREJUDICE COMPONENT"

The petitioner has established the "cause" requirement of *Francis v. Henderson*, 425 U.S. 536 (1976), and *Davis*, in the arguments presented above, hereinafter, the petitioner quotes the legal authority for the purposes of showing that he meets the "prejudice requirement" as a result of IDB Counsel's failure to challenge the jury-pool-fixing-scheme. In the case of *Winters v. Cook*, 489 F.2d 174 (C.A.5 (Miss.) 1973), the U.S. Fifth Circuit addressed the issue of waiver by counsel:

> "Waiver by counsel-- As the court below found on clear record evidence, Winters attorney fully considered the possibility of raising constitutional objections to the racial composition of the grand jury , but rejected that course of action in favor of a plea of guilty. By such plea his client was assured of receiving the prosecutions's recommendation of a life sentence with parole after serving ten years), thus avoiding what counsel reasonably considered was the distinct possibility of the death sentence. Counsel testified that the threat of his urging these constitutional objections to the jury selection procedures was the 'pry pole' that he used in getting the state to allow the defendant to enter a guilty plea. In his opinion as an experienced criminal attorney this procedure utilized the unlawful condition in the most effective way. Even the most skillful trial tactician should be hard pressed to fault counsel's considered and conscientious strategy to waive this option in return for practical assurance that his client would not be executed. Where as here, a competent attorney who is well-versed in the defense of murder charges deliberately refrains from making a known constitutional objection to the composition of a grand or petit jury for strategic purposes, there has been a deliberate by-pass and waiver under *Fay v. Noia*, 372 U.S. 3912, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)." (This Footnote is very important")

The prejudice suffered by petitioner Funes is summed up intelligently by the excerpt from the aforementioned court opinion. The attorney in that case used the 'threat of his urging these constitutional objections to the jury selection procedures' as the 'pry pole' "that he used in getting the state to allow the defendant to enter a guilty plea." This ( a constitutional attack against the

---

*

The same rationale set forth in Winters v. Cook, applies to all the state's claims, and in order to avoid redundancy, petitioner applies his contention of ineffective assistance of counsel coupled with the conflicting-interests maintained by counsel during all proceeding are what caused the lapses which the state now urges as lapses warranting the application of procedural default. Petitioner contends the District attorney enjoins him in proving the prejudice prong of ineffectiveness as counsel's failure are still rendering aid to the prosecution at this late hour. Counsel's pre-trial and trial ineffectiveness is the state's sole basis for launching a procedural default assault against petitioner's claim of suffering constitutional deprivations.

unconstitutional composition of the Grand and petit jury pool, along with other necessitated verbal objections) is what IDB counsel in this case never considered, nor used despite the fact that this tactic has been available since 1973, and all the evidence to prove the claim was clearly ascertainable by counsel and available to counsel pre-trial.  Even the State of Louisiana through the Parish of Jefferson, District Attorney, specified this fact in its procedural objection when they wrote:

"....and the petitioner in this case was as capable of learning these facts as was petitioner in that case." Id. at page -5 of 8- (state's procedural objection)[19]

Simply put, the state avers that the non-English speaking petitioner should have either known of this violation or should have learned this violation from a source other than counsel. If this is true of petitioner, how much more is this true of IDB counsel?  When confronted with a similar question in *Hollis v. Davis*, 941 F.2d 1471 (C.A. 11 (Ala.)  1991), the court wrote extensively upon the premise which is likewise applicable here.  In *Hollis* the Court wrote:

"But Mr. Hollis challenge involves the systematic exclusion of blacks from the pool from which grand and petit juries were chosen.  This right could hardly have been better established by 1959, and any competent attorney practicing criminal defense in Alabama at the time should have known of it." Id. at 1477-78

"If Mr. Jinks did not assert this right because he was unaware of it, his representation was not "within the range of competence demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct.  at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct.  1441, 1449, 25 L.Ed.2d 763 (1970)). A Justice of the Alabama Supreme Court noted in 1963 that "it is beyond the realm of speculation that any active lawyer, practicing law and residing in Montgomery, could fail to know that the question of the exclusion of Negroes from the juries in Montgomery County has been raised in recent years.... [I]t is inconceivable that any qualified and active local attorney would not know of the raising of the question...." *Ex Parte Aaron*, 275 Ala.  377, 379 155 So.2d 334, cert.  Denied, 375 U.S. 989, 84 S.Ct.  177, 11 L.Ed.2d 126 (1963) (Merrill, J., concurring ).  Bullock County borders Montgomery County to the southeast.  This  ineffective assistance establishes cause for the procedural default."

The same principles at work in that case are also present and at work in this case.  It should be common knowledge to the Jefferson Parish IBD Office to at least file a motion to quash, thereby, preserving the claim for later review if necessary and preventing future prejudice to the  client's by having frustrated their ability to raise the challenge at a later date because counsel failed to file the requisite pre-trial motion to quash.

_____

[19]

True enough, the Deloch case and this case is similar as to the primary claim raised, but Sidney Deloch, did not raise the independent substantive claim(s) of ineffective assistance of counsel nor conflict-of-interest.  An for that reason, his claim failure, he (Deloch) never sought, beyond 930.8(A)(1) to establish the cause and prejudice components required by *Francis v. Henderson* nor *Davis v. United States*.  And for the sake of clarity, La.C.Cr.P. Art.  930.8(A)(1) was not nor truly could it be a consideration here as petitioner's application for post-conviction relief is both timely and his very first.

In recent years there has been *State v. Kenneth Diloza*, 848 So.2d 546 (2003), *Campbell v. Louisiana*, 118 S.Ct. 1419 (1998), *State v. Rick Langley*, 711 So.2d 651 (1998), and *Deloch v. Whitley*, 684 So.2d 349 (1996), therefore, IDB counsel could not argue that he was unaware of his obligations with respect to this issue. Historically, cases like *Eubanks v. Louisiana* (1958), *Pierre v. Louisiana* (1939) are just two (2) cases that counsel should have at least been casually acquainted with. Further, there have been cases where litigants have argued, albeit improperly, that they were entitled to the presumption of prejudice when their trial counsel failed to file the required Pre-trial Motion to Quash. *Francis v. Henderson* required that the cause and prejudice provision be met as done herein.

## FACTS NOT KNOWN EXCEPTION La.C.Cr.P. Art. 930.8(A)(1)
### (Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filing a part of this exhaustion process. As it stands, 1.) there is no requirement of "due diligence" in seeking facts upon which to file a claim predicated upon *Article 930.4*, FACTS NOT KNOWN[11] or 2.) a time limitation for meeting the exception.[12] As written art. 930.4 is designed to deprive only certain applicants (those without new facts [art 930.8(A)(1)], of the unlimited time period within which to file an application for post- conviction relief. Because this is a limited and selective restriction, it cannot be said that art. 930.8(A)(1) therefore denies those meeting the exception their right of access to court...). Consequently, this petitioner does not fall in the category of one who failed to raise a known issue on appeal and the Louisiana Supreme Court recognizes no "due diligence requirement" in seeking the facts to be used in meeting an exception to procedural bars. However, plaintiff did file this application within two years of discovering that: "the Parish of Jefferson, State of Louisiana, through its public assistance offices has been violating the *NVRA* (National Voters Right Act), which in turn had a direct impact on the composition of plaintiff's petit/trial jury."

---

[11] *State ex rel. Hills v. State*, 54 So.3d 1109 (La. 2011)

[12] *State ex rel Golver v. State*, 660 So.2d 1189 (La. 1995)

Logically then, plaintiff's post-conviction and post-appeal discovery of the violation of the Federal *NVRA* [15] and its impact on the composition of his trial jury meets this exception as well. These are facts which plaintiff had no knowledge of, nor knew the Parish of Jefferson, State of Louisiana to be violating nor was he aware that this violation of the *National Voters Rights Act* was significantly altering the composition of his trial jury, until he was given notice of the case of *Ferrand v. Schedler*, 2:11-cv-00926-LMA-JCW.    Though disparities are obvious, plaintiff avers that with the assistance sought, he can meet his burden of proving this claim. The charts are listed and titled hereafter:



Initial Applications for Louisiana SNAP



Louisiana Medicaid Applications to DHH

---

[15] Plaintiff obtained a copy of the Civil Suit filed in *Ferrand v. Schedler*, Case 2:11-cv-00926, Document 1 Filed 4/19/11. See Exhibit "A" (This civil suit is attached hereto and it is 37 pages long, and it has exhibits from Attorney Ronald Wilson ("Notice Letter-2 pages) and another from Attorney Ronald Wilson ( Letter to Secretary Schedler-pages 4 pages). These exhibits are copies of correspondence to Secretary of State, Honorable Tom Schedler.

23



## Voter Registration Applications from

La. Public Assistance Agencies during 1995-2008

As reflected above and on the previous page, there are gross disparities in the amount of people who sought public assistance versus the amount of voter registration applications available and/or submitted. The failure to implement the *NVRA of 1993*, was pervasive and widespread. At one point, the Department of Children & Family Services did not have enough voter registration applications forms available for distribution nor was assistance offered to applicants who may have needed help in completing the forms as required by law. Most importantly, the Department of Children & Family Services, has conceded in *Ferrand v. Schedler*, to non-compliance with the *NVRA*; thus, plaintiff has made a relevant showing of a claim which if established, would entitle him to relief. (See *La.C.Cr.P. Art. 927(A)*) Plaintiff hereby requests that this Honorable Court takes "Judicial Notice" over all the facts, evidence and pleadings filed in *Ferrand v. Schedler*, 2:11-cv-00926, (U.S. Eastern District of Louisiana 2011),(See Exhibits "A" and "B" of Post Conviction Record transferred to this Honorable Court) as it relates to proving plaintiff's complaints of deprivation of a constitutionally protected right which had a discriminatory (class discrimination) effect upon the composition of his trial/petit jury.

**Deferral of IAC claim from direct appeal to PCR constitutes 'cause'(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filing a part of this exhaustion process. Plaintiff contends that *Art. 927(A)* in pertinent part provides:

24

> If the application alleges a claim which if established would entitle the petitioner to
> relief, the court shall order the custodian, through the district attorney in the parish in
> which the defendant was convicted, to file any procedural objections he may have,
> or an answer on the merits if there are no procedural objections within a specified
> period not in excess of thirty days.

This provision gives the state [a period not in excess of thirty days] to file procedural objections. The only requirement imposed upon the plaintiff is: "to allege a claim which, if established, would entitle petitioner to relief" and he has met this requirement

In its procedural objection, the state's focus was the applicability of *Martinez*, this was settled in *Trevino*. Because ineffective assistance of counsel claim are routinely deferred from the direct appeal process to post conviction proceedings by judgement of the Circuit Courts of Appeal, within the State of Louisiana.

What effect did the deferrals have on petitioner's rights, a crushing one, as set out and described in *Martinez*? Post-conviction proceedings in this State are the first opportunity that a petitioner will have to have this claim heard, because no court heard the merits of the claim on appealthus, direct appeal proceedings remained ongoing at the time plaintiff filed his Application for Post-Conviction Relief.

Petitioner was constructively denied a proper defense on this issue as a result of underfunding, political interference and systemic ineffectiveness as set for in the "Assessment of Trial Level Defense Services in Louisiana 40 years after Gideon," (See Exhibit "C" of Post Conviction Record transferred to this Honorable Court) Researched and written by the National Legal Aid Defender Association, Commissioned by the National Association of Criminal Defense Lawyers." The state's theory of petitioner being responsible for firing a fatal shot was rested upon the foundation that there was an alleged match between a gun found and what petitioner is alleged to have had in his possession, the bullet from the victim's and shell casings found on the scene of the crime. For comparative purposes, when the gun was test-fired and the results compared between the crime scene evidence and the test-fire evidence, the state's expert declared a match.

Despite the opinion of the state's expert opinion, the petitioner hereby alerts this Honorable Court to a critical and "NEW DEVELOPMENT," which crumbles a substantial portion of the foundations of the state's case.

There is a book which has been published in the field of science which establishes some critical facts now accepted amongst the leading scientist in the field of forensics. The book is entitled

"STRENGTHENING FORENSIC SCIENCE," by: the National Academy of Science,[14] This book reveals that matching guns to bullets and bullets to guns as "junk science" and is wholly unreliable. As such, petitioner contends that in the absence of what has been purported to be a match between the gun and the bullet fragments which were extracted from the victm(s). *Due Process* of Law and a Right to a fair trial can only be secured by affording petitioner the moneys for expert testing on the bullets and bullet fragments himself. Trial counsel failed to do this, counsel was ineffective for not making full use of this new scientific developement in defense of his client.

Having counsel on one's first appeal is a matter of right and since this claim constitutes a continuation of the appellate process, such is necessitated. At this time failing to appoint counsel, the trial court would constructively deprive appellant/plaintiff the fundamental and substantive right to have the guiding hand of counsel at a "critical stage" in the proceedings wherein this will be the first time ever that trial counsel's ineffectiveness is heard, (*U.S. v. Cronic, supra,* violation)

Petitioner's Sixth Amendment right to a fair trial was violated during the selection of the jury? (*Batson* and *Strickland* violations)(Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied his constitutional right to a fair and impartial trial in violation of his right to an unbiased jury, when his counsel failed to object and allowed him to be tried by a jury where races, classes, genders, and persons possessing certain politicians views were excluded on those basis alone. Most were excluded for non-race neutral reasons.

Petitioner argues that the prosecutor used all of his peremptory challenges to exclude blacks from the jury based solely on their race without objection by counsel. Thus, he was denied his right to effective assistance of counsel in that aspect as set out in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.CT. 2052, 2064, 80 L.Ed.2d 674 (1984), where such representation is unreasonable and clearly prejudicial to the petitioner. By restricting appellate counsel access to the transcripts of

---

[14]

Petitioner hereby invokes his right to secure out of state witnesses, specifically, the authors of this work can verify how and why the science relied upon by the state and the jury to convict petitioner amounts to unreliable "junk science".

the Voire Dire in these combined appeal/ post conviction proceedings, petitioner is constructively

being deprived of substantive and fundamental constitutional rights.

---

**Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial.(Applicable standard of review is de novo)**

---

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum

of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to

both), because the "new" strict rules imposed by the court that went into effect January 1, 2014,

prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all

arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied

the right to a fair trial under the *Sixth Amendment* to the United States Constitution when the trial

court failed to instruct the jury or sequestered them so that they were not allowed to discuss the case

with others, read any media accounts of the trial, or report any information that someone or

something had influence on their verdict. The trial record is bare of any instructions concerning the

trial court charging the jury prior to releasing them for recess. As for as petitioner can recollect,

he following instructions from the trial court is somewhat similar:   THE COURT:

> All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come
> back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just
> keep in mind the longer we break, the later we go home. Court recesses for lunch.
> The Court stands in recess. Please remand the defendant.

The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures

and non-instructions employed by the trial court failed to properly insulate the jurors from

extraneous influences, or the possibility thereof, and at no time did the trial court adhere to the

mandatory instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737

(1970).

---

**The trial judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts.(Applicable standard of review is de novo)**

---

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum

of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to

both), because the "new" strict rules imposed by the court that went into effect January 1, 2014,

prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all

arguments in those filings a part of this exhaustion process. Petitioner contends that his

Constitutional rights to a fair trial and due process of law under the *Fifth* and *Fourteenth*

*Amendments* were violated when the trial judge made erroneous and misleading comments on the responsive verdicts. During the jury charge/instructions, the trial judge gave misleading comments to the responsive verdicts for second degree murder and manslaughter.

Petitioner contends that the judge's comment is reversible error, because the trial judge precluded the jurors from considering returning lesser verdicts and misled them as to their evaluation of the possible verdicts. The Louisiana Supreme Court has noted that "Louisiana juries are instructed to return a guilty verdict for the offense charged if warranted by the evidence and to consider lesser verdicts only if the evidence does not justify a conviction for the greater offense." *Roberts v. Louisiana*, 428 U.S. 325, 334 n.10, 96 S.CT. 3001, 49 L.Ed.2d 974 (1976).

Whether prosecutorial misconduct occurred: (1) prosecutor improperly vouched for the credibility witnesses and (2) failed to correct perjured testimony (Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process.

Petitioner avers and the record support that the prosecutor made improper comments during the state's closing argument to the jury by vouching for the credibility of several of the state's witnesses, and appealing to the jury for sympathy in accepting the testimony of the victim as absolute truth. Thus, petitioner contends that his due process right to a fair trial under the *Sixth Amendment* of the *United States Constitution and Article 1 § 2 of the Louisiana Constitution* were violated. *State v. Palmer*, 775 So.2d 1231 (La.App. 1 Cir. 2000).

"Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). In trying to bolster a witness's credibility, a prosecutor may not overstep the bounds of propriety and fairness. Improper vouching occurs when the prosecutor places "the prestige of the government behind the witness" by proving "personal assurances of [the] witness's veracity." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) *cert. denied*, 452 U.S. 942, 101 S.CT. 3088, 69 L.Ed.2d 957 (1981). By his own language, the prosecutor asserted to the jury that members of the police force are not liars, and when they don't know the answer, they say, they don't remember. Here, an experienced assistant

district attorney, repeatedly ignored his special obligation to avoid improper suggestions and insinuations.

The United States Supreme Court discussed the dangers of vouching in *United States v. Young*, 470 U.S. 1, 18-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985). The Court stated the following:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the 'Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

This matter should be remanded for a new trail and because this practice has long been held unconstitutional.

(2) Perjured Testimony:

Petitioner contends that the prosecutor's actions in failing to correct the testimony of witnesses whom I knew to be untruthful constitutes prosecutorial misconduct. Conversely, if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous; the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict. *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959). The proper question for this Honorable Court to determine at an evidentiary hearing is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." See, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976). Such a corruption of the truth-seeking process strike at the confidence of the conviction and sentence of petitioner, Rigoberto Funes. Moreover, given the attention required to support a juror's determination of credibility to assist in his finding of proof beyond a reasonable doubt, whether the jurors minds could have been changed to support their reasoning in reaching a verdict of guilty as charged.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.CT.

29

1173. Furthermore, fundamental fairness to an accused, i.e., due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois, supra*. It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that the expert in ballistics was not being honest. It would be upon hearing the expert's testimony about linking guns to certain bullets, tend to believe the accuracy of the court qualified expert's testimony under oath. However, a rational trier of fact would discount the expert's testimony had they knew that the ballistics process of linking a bullet to a poarticular gun is flawed, then they would have discounted this testimony or possibly the judge would not have allowed it.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois*, 389 U.S. 906, 88 S.CT. 222 (1967); *Giles v. Maryland*, 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that his trial would have resulted in acquittal or that there would an insufficiency of the evidence to support a conviction. *Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict. Bagley*, 105 S.CT. at 3382 n. 9.

**Counsel rendered ineffective assistance of counsel at trial when counsel failed to seek quashing of the grand jury indictment on the grounds of violation of the National Voter Registration Act of 1993.(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that this violation of constitutional protections set forth, is clear and precise. There was no fair cross-section of Jefferson Parish which viewed the evidence and returned an indictment. Why? Because the Parish of Jefferson was steeped in violating the *National Voter Registration Act of 1993* and further was

engaging in a form of purging the pool of jurors available to participate in the petit jury process. All jurors were selected in violation of the the *NVRA*, many of them were removable for cause *LSA-C.Cr.P. Art. 797(2)*, *State v. Holmes*, 619 So.2d 761 (La. App. 4th Cir. 1993).

---

**Ineffectiveness by not securing rebuttal experts for the defense (Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Trial Counsel failed to object to numerous constitutional violations which occurred and/or he caused; thereby failing to preserve issues that could have been presented on direct appeal, thus, exposing this petitioner (an indigent petitioner) to run the risk of the invocation of procedural bars. The issues presented in this request for post-conviction relief convey that petitioner's conviction was obtained in violation of the U.S. Constitution and the Louisiana Constitution of 1974. Trial counsel even refused to secure experts for petitioner. In *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court recognized the indigent defendant's right to expert assistance. However, in order to meet the requirements of *Ake*, the defendant without means must "make an ex parte threshold showing to the trial court that [the area of expertise] is likely to be a significant factor in his defense. . . ." *Id.* at 82-83 (emphasis supplied). Counsel failed to secure in as much as a single expert witness in an attempt to refute the state's experts.

---

**Independent claim of "Grand Jury and Trial Jury Discrimination" (this is a "new fact" previously not known to petitioner and it meets the exception of 930.8(a)(1)(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner, is entitled to relief pursuant to the *Fifth, Sixth, Eight, Thirteenth and Fourteenth* Amendments of the *United States Constitution, Article I, Sections 2, 3, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27*. Further, the court should also grant such relief due to the negative impact upon the jury venue composition resulting

from the State of Louisiana's refusal to comply with a Federal mandate, affecting the composition of petitioner's Grand Jury and Petit Jury.

**Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial.**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied the right to a fair trial under the *Sixth Amendment* to the United States Constitution when the trial court failed to instruct the jury or sequestered them so that they were not allowed to discuss the case with others, read any media accounts of the trial, or report any information that someone or something had influence on their verdict. The trial record is void of any instructions charging the jury prior to releasing them for recess. Because he has been denied access to the transcript, petitioner only remember something of the nature: THE COURT:

> All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just keep in mind the longer we break, the later we go home. Court recesses for lunch. The Court stands in recess. Please remand the defendant.

> The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures and non-instructions employed by the trial court failed to properly insulate the jurors from extraneous influences, or the possibility thereof, and at no time did the trial court adhere to the mandatory instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737 (1970).

**Conflict of Interest against the entirety of the Jefferson Parish Indigent Defender (Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner avers that the Jefferson Parish Indigent Defender Office and its employees for years have concealed from clients that they were under-funded and they were controlled by undue political interference. These components deprive all clients of their fundamental right to counsel (State and Federal Constitution).

**Constitutional Deprivations Problems:**

a.) Louisiana Statutes do not safeguard against undue judicial interference. Judges appoint IDB board members in violation of independent payment of defense counsel; b.) The public defender offices are not entirely state-funded as required, in favor of contract flat-fee services (gross-underfunding places limitations on options available in representing clients); c.) Client confidentiality is constantly abridged, clients are routinely denied access to counsel until the court forces a meetings between client and counsel before the court as a part of the proceedings. d.) Louisiana Public defender statutes do not protect those accused of crimes from being the victims of public defender overload. The workload of Louisiana Public Defenders are in far excess of all nationally recognized standards. Failure to control caseload permits poor quality representation; e.) Louisiana Statutes deprived petitioner of his federal constitutional *Sixth Amendment* right to counsel by permitting unqualified attorney's to be appointed to represent indigent defender cases for which they are not qualified to represent. Additionally, there is no systematic indigent defense training in the state; f.) A review of all prosecutor and IDB financial audits reveal that there is no parity between prosecution and indigent defender resources. Indigent defense is not a co-equal partner in the justice system in Louisiana; g.) The general training of Continuing Legal Education is not specifically appropriate for the indigent defense field when ultimately served little if any purpose of bettering the quality of representation received by indigents accused of crimes; h.) Louisiana Statutes provide no guarantee that indigent defense attorneys are reviewed for quality. LIDAB has no authority or capacity to do so. There is no supervision or quality review of the indigent defense system.

The allegations herein require appointment of independent counsel, and resources to fully investigate, interview and develop the factual details of the claim. All public defenders previously appointed to represent petitioner in the pre-trial, trial and post-trial (appeal) proceedings did not raise the claims of ineffective assistance of counsel before and during trial because of the conflict of interest in raising this viable *Sixth Amendment* violation against the very system that employs them and which ultimately pays them. Failure to raise the violation of the *National Voter Registration Act (Equal Protection* and *Due Process Violation*) is a prime example of ineffective assistance pretrial. Appellate counsel failed to hold trial counsel accountable for egregious lapses in representation, further, depriving petitioner of substantive right.

**Deprivation of Access to Relevant Transcripts**
**Law and Argument (Applicable standard of review is de novo)**

Petitioner, Rigoberto Funes, has been constructively, actively and continuously denied his right to adequate and meaningful appeal review by way of "STATE CREATED IMPEDIMENT," resulting from the appointment of ineffective and conflict-laden defense counsel from the Jefferson Parish IDB. This is of no fault of Funes as he has utilized due diligence to no avail. Funes urges that all portions of the record are of "extreme importance" and his ability to review the complete record will enable him to have meaningful appeals prepared on his behalf should more appeals be needed. Constitutional Violation contained in the missing or un-transcribed portions of

the transcript, pose an impediment to have a thorough appellate review". The continued failure to produce the complete and entire transcript will preclude Funes from enjoying equal protection of the law, if other indigent appellants are freely given their complete record, then Funes is entitled to the same treatment as anyone else before the Courts of law. Without a complete record, appeal counsel couldonly be ineffective; failure to designate all constitutional violations/errors contained in the complete transcript precludes raising those violations later in the proceedings, which is highly prejudicial to the accused.

The *La. Const. of 1974, Article I, Section 19* provides that "the review under an appeal of right from a felony conviction [accorded by *Louisiana Constitution of 1974, Art 5, § § (D) (2)*] shall be based upon a complete record of all evidence upon which a judgement is based." *State v. Robinson*, 387 So.2d 1143 (La. 1980).

## CONCLUSION

Wherefore, for the "cause" and "prejudice" shown as to all the lapses in counsel's representation deriving from systemic ineffectiveness and conflict-of-interest laden representation, petitioner prays that all Procedural objections perfected through the Jefferson Parish District Attorney's Office, to claims 2 through 12 be dismissed and that this Honorable Court recognize that petitioner's pleadings did address the issue "cause" in the form of explaining the origins and practice of "Systemic Ineffectiveness" by the Jefferson Parish Public Defender's Office. Petitioner wishes to have all claims raised on post-conviction addressed on their merits. Unequivocally, petitioner has not sought to omit nor leave behind any of his claims nor the protections of *Haines v. Kerner*, nor *Louisiana Constitution of 1974, Article V, § 25(c)* in conjunction with the operation of *Art. X, § 30*.

Respectfully Submitted By:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify under oath and penalty of perjury, that I have forwarded a copy of the above Supervisory Writ of Review to the District Attorney's Office for the Parish of Jefferson 200 Derbingy Street, Gretna, La. 70053, on this 9th day of April, 2014.

_Rigoberto Funes_
Rigoberto Funes

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on this 9 day of April, 2014.
May

_Bobbie Hilman #137743_
Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

35

56

# Appendix #3

Copy of Writ denial of Rehearing Application by Fifth Circuit Court
of Appeal 4/28/14

RIGOBERTO FUNES
VERSUS
BURL CAIN, WARDEN, LA. STATE
PENITENTIARY

NO. 14-KH-124

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## ORDER

Relator seeks reconsideration of this Court's March 25, 2014 denial of

his/her writ application number 14-KH-124.

Uniform Rules-Courts of Appeal, Rule (URCA) 2-18.7 provides as

follows:

### 2-18.7. When Rehearing Will Be Considered

An application for rehearing will be considered in cases
where the court has:

(A) Granted a writ application on the merits;
(B) Dismissed an appeal; or
(C) Ruled on the merits of an appeal.

URCA Rule 4-9 provides that "Rules 2-18.1 through 2-18.7 apply to

requests for rehearings related to writ applications."

IT IS ORDERED that, since there is no rehearing from the denial of a

writ, this matter is refused according to URCA Rules 2-18.7 and 4.9.

Gretna, Louisiana this 28th day of April , 2014

FOR THE COURT:

JUDGE ROBERT M. MURPHY

JUDGE FREDERICKA HOMBERG WICKER

JUDGE JUDE G. GRAVOIS

A TRUE COPY
GRETNA

APR 2 8 2014

DEPUTY CLERK
COURT OF APPEAL, FIFTH CIRCUIT

58

# Appendix #4

Copy of Request for Rehearing before the 5th Cir. filed 4/4/14 (see notarization)Exhibits included: copy of Notarized page proving timely filing of original pleading to the court by "mailbox rule", Proof of timely filing by mail receipt, copy of judgement challenged, and cases proving petitioner to be correct.

IN THE
5TH CIRCUIT COURT OF APPEAL
FOR THE
STATE OF LOUISIANA

Originated in the
24th JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
DISTRICT COURT DOCKET NO: 68-5641

Rigoberto Funes
Petitioner

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY
Respondent

FIFTH CIRCUIT DOCKET # 14-KH-124
************************************************************

REHEARING ON
SUPERVISORY WRIT OF REVIEW
AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF

************************************************************

PLEASE REFER TO THE "ATTACHED" & "NOTARIZED"
CERTIFICATE OF SERVICE WITH AFFIDAVIT
STIPULATING THAT THIS DOCUMENT WAS TENDERED TO
PRISON AUTHORITIES WITHIN THE 14 DAYS ALLOWED FOR
A REHEARING FROM THE MARCH 25, 2014, WRITTEN
OPINION FROM THIS COURT. (AFFIDAVIT AT PAGE 11)

THIS HONORABLE COURT DENIED RELIEF DESPITE:

[THE DISTRICT ATTORNEY SUBMITTING EVIDENCE TO THE TRIAL
COURT, FROM THE CASE OF *LUTHER SCOTT, et al v. TOM SCHEDLER*
2:11-cv-00926-JTM-JCW,(U.S. E.D. La.) PROVING PETITIONER'S CLAIMS]

RESPECTFULLY SUBMITTED:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce-2
LA. STATE PENITENTIARY
ANGOLA, LA 70712

## TABLE OF CONTENTS

REHEARING OF SUPERVISORY WRIT OF REVIEW AS TO PETITIONER'S
    APPLICATION FOR POST-CONVICTION RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REQUEST THAT JUDICIAL NOTICE BE TAKEN OF:
    JUDGEMENT OF THE U.S. EASTERN DISTRICT JUDGE, HON. JANE TRICHE
    MILAZZO, JANUARY 22, 2013, IN *LUTHER SCOTT, et al v. TOM SCHEDLER* 2:11-cv-
    00926-JTM-JCW,(U.S. E.D. La.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION TO ENTERTAIN AN APPLICATION FOR REHEARING . . . . . . . . . . . . . . . 1

ERRONEOUS DETERMINATION OF UNTIMELINESS, JUDGEMENT SHOULD BE
    CORRECTED PURSUANT *HOUSTON V. LACK, SUPRA* . . . . . . . . . . . . . . . . . . . . . . 1

ERRONEOUS DETERMINATION THAT PURSUANT *U.R.C.A., RULE A-3*, PETITIONER
    FAILED TO SEEK A NOTICE OF INTENT OR RETURN DATE CONCERNING THE
    SEPTEMBER 13, 2013, RULING DENYING SELECT ISSUES. [*LA.C.C.P. ART 1915(B)*
    and *LA.C.C.P. Art. 2083*, PREVAILS.] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FAILURE TO FOLLOW *HAINES V. KERNER, SUPRA* . . . . . . . . . . . . . . . . . . . . . . . . . . 3

WHETHER THIS CASE WAS RESOLVED ON FEDERAL AND STATE GROUNDS OR JUST
    STATE? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

"CAUSE" AND THE "EQUITABLE TOLLING" ISSUE (as argued previously)
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB
    system which ultimately begets systemic-conflicts-of-interest . . . . . . . . . . . . . . . . . . . 8

******QUOTING DIRECTLY FROM SUPERVISORY WRIT BEGAN ON PAGE 4 OF
    THIS PLEADING AND STOPS HERE BUT ALL ARGUMENTS IN THE ORIGINAL
    SUPERVISORY WRIT ARE ADOPTED BY REFERENCE. (NO CLAIMS OR
    ARGUMENTS ARE ABANDONED.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment
    of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon," members
    of the Louisiana Appellate Project; and members of the Spangenberg Group who made the
    first study of the Louisiana Indigent Defender System (proposal presented to Sam Salton,
    James Boren, and Nina Maples, September 11, 1990) . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

### U.S. CONSTITUTION

United States Constitution, Amendment 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States Constitution, Amendment 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

### FEDERAL STATUTES

NVRA of 1993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

National Voter's Rights Act of 1993? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

### FEDERAL CASES

Trevino v. Thaler, 569 U.S. ___ (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

La. Const. Art. Article X, § 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Deloch v. Whitley, 684 So.2d 349 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Martinez v. Ryan, -- S.Ct. ---, 2012 WL 912950 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) . . . . . . 8, 9

Batson, supra . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . 4

Falzerano v. Collier, 535 F.Supp. 800, 803 (D.N.J. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ferrand v. Schedler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Francis v. Henderson, 425 U.S. 536 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) . . . . . . . . 2, 3, 10

Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) . . . . . . . . . . . . . 2, 3

Luther Scott v. Tom Schedler, et al, 2:11-cv-00926-jtm-jcw, (U.S. E.D. La. 2012) . . . . . . . . . . 1

U.S. v. Louisiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 7

Vasquez v. Hillery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Winters v. Cooks, 489 F.2d 174 (C.A. 5 (Miss.) 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### STATE CONSTITUTION
La. Const. Art. Article X, § 30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Louisiana Constitution of 1974, Article 5, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Louisiana Constitution of 1974, Article V, § 25(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### STATE STATUTES
L.A.C.C.P. ART 1915(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

LA.C.C.P. Art. 2083 ........................................................................ 2

La.C.Cr. P. Art. 916 ....................................................................... 1

**STATE CASES**

Berman v. De Chazal, 717 So.2d 658, 98-81 (La.App. 5 Cir. 5/27/98) ................ 3

Funes v. Cain, 14-KH-124. ................................................................ 1

State ex rel Hensley v. State, 876 So.2d 78, 2003-1691 (La. 6/4/04) ................ 4

State ex rel. Egana v. State, 2000-2351 (La. 9/22/00), 771 So.2d 638, 2000-2351 (La. 4/4/03), 840 So.2d 1212 ........................................................... 2, 3

State ex rel. Johnson v. Maggio, 440 So.2d 1336, 1337 (La. 1983) ................... 2

State ex rel. Johnson v. Whitley, 648 So.2d 909, 92-2689 (La. 1/6/95) .............. 4

Threeway Finance Co. V. McDonald, 213 La. 504, 35 So.2d 31 (1948) ................ 2

**REFERENCE AUTHORITES**
"An Assessment of trial Level Indigent Defense Services in Louisiana 40 Years After Gideon."
Research and Written by: National Legal Aid & Defender Association; Commissioned by: National
Association of Criminal Defense Lawyers. ............................................ 3, 9.

IN THE
FIFTH CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes          DOCKET NO.14-KH-124
          Petitioner

VERSUS                     FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY          _____
          Respondent          Deputy Clerk

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REHEARING ON DENIAL OF**
SUPERVISORY WRIT OF REVIEW AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF
AND
**REQUEST THAT JUDICIAL NOTICE BE TAKEN OF:**
JUDGEMENT OF THE U.S. EASTERN DISTRICT JUDGE, HON. JANE TRICHE
MILAZZO, JANUARY 22, 2013, IN *LUTHER SCOTT, et al v. TOM SCHEDLER*
2:11-cv-00926-JTM-JCW,(U.S. E.D. La.2012), et al
FROM 1993-2011 THE STATE OF LOUISIANA WAS IN VIOLATION OF THE
*NVRA OF 1993.*

MAY IT PLEASE THE COURT:

     NOW INTO COURT comes, before this Honorable Court with the intent of having this Honorable Court to correct the judgement which it has made on March 25, 2014, in the case of *Funes v. Cain*, 14-KH-124. This petitioner contends that the judgement complained of is not sustainable as a matter of law. PETITIONER SHOULD HAVE PREVAILED PER OPERATION OF *Juris de jure*, The State submitted irrefutable evidence proving that the State of Louisiana was tried and convicted of violating the *NVRA act of 1993.*

     **JURISDICTION TO ENTERTAIN AN APPLICATION FOR REHEARING**

     The Supervisory Jurisdiction of this Honorable Court derives from the *Art. 5, § 10*, and *La.C.Cr. P. Art. 916*, divesting the trial court of jurisdiction after final judgement that is subject to supervisory jurisdiction of this court by law. Petitioner hereby invokes this Honorable Courts Jurisdiction to entertain and application before this Honorable Court. A rehearing is proper when 1.) Petitioner applies for the application within 14 days of the courts decision and 2.) When the court has issued a written opinion as done here on

     **ERRONEOUS DETERMINATION OF UNTIMELINESS, JUDGEMENT SHOULD BE**
**CORRECTED PURSUANT *HOUSTON V. LACK, SUPRA***

     Petitioner avers and provides evidentiary proof that his pleadings are timely under the

precedent *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), wherein, a prisoner's criminal pleadings are deemed in court, at the time he tenders them to prison officials for depositing into the prisons internal mailing system.  In this instance, on page 32 of petitioner's Supervisory Writ of Review, there is a duly notarized affidavit which stipulated in pertinent part:

> "...Thereafter, this document was tendered to the hands of a Prison Official on this 14th day of February, 2014."[1]

This *Ex Officio* Notary #24851 is one and the same Prison Classification Officer that accepted petitioner's pleadings and deposited them into the U.S. Postal Service.  Between the judgment and placing his pleading in prison officials hands, only 28 days passed.

Your petitioner contends that there is ample case-law originating in the State of Louisiana, establishing that the mailbox rule is applicable to pro se filings by prisoners.  *State ex rel. Egana v. State*, 2000-2351 (La. 9/22/00), 771 So.2d 638, 2000-2351 (La. 4/4/03), 840 So.2d 1212.

Additionally, in *State ex rel. Egana v. State*, the Louisiana Supreme Court further directed this same Fifth Circuit Court of Appeal:

> "....The Court of Appeal, Fifth Circuit is **directed** to reconsider its opinion in *State v. Egana*, (La.App. 5th Cir. 2/29/00) 758 So.2d 881.  **Specifically, the court is directed** to review relator's district court filing of April 1999 both to determine if relator filed it timely under the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), and to determine whether, if read fairly and in conformance with principles applicable in review of pro se pleadings, it constituted a motion for appeal.  See generally *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (Court holds pro se filings to "less stringent standards than formal pleadings filed by lawyers...."); *State ex rel. Johnson v. Maggio*, 440 So.2d 1336, 1337 (La. 1983) (pro se petitioner "is not to be denied access to the courts for review of his case on the merits by overzealous application of form and pleading requirements or hyper-technical interpretations of court rules.")........." *Id.* 771 So.2d 638 (La. 2000)

**ERRONEOUS DETERMINATION THAT PURSUANT *U.R.C.A., RULE 4-3*, PETITIONER FAILED TO SEEK A NOTICE OF INTENT OR RETURN DATE CONCERNING THE SEPTEMBER 13, 2013, RULING DENYING SELECT ISSUES. [*LA.C.C.P. ART 1915(b)* and *LA.C.C.P. Art. 2083*, PREVAILS.]**

Petitioner avers that this court's Judgement of March 25, 2014, violates a bedrock principle of law in this state.  For it has been held under Judgements appealable that:

> (a) The general rule that there is no appeal except in the case of final judgement is universal in order to prevent piecemeal appeals.  *Threeway Finance Co. V. McDonald*, 213 La. 504, 35 So.2d 31 (1948)

This same sentiment was echoed by this same court in *Berman v. De Chazal*, 717 So.2d 658, 98-81 (La.App. 5 Cir. 5/27/98) :

---

[1] Please see attached copy of page 32, with designation of Notary and his Id#. (Exhibit "A")

3

> "....The trial court should not have certified partial judgement as appealable as interest of judicial administration far outweighed any considerations ... partial judgement would not terminate suit for any party, one remaining claim for relief if granted would render appeal moot, and remainder of the case had either been delayed pending outcome of appeal or result would be piecemeal litigation if matter had gone to judgement on remaining issues and appellate court reversed and remanded for retrial. LSA-C.C.P. art. 1915, subd. B(1).

Therefore, this Honorable Court's decision is not only trampling upon statutory law, but it is likewise going against its own prior decisions interpreting and applying the law. Petitioner maintains that the trial court never certified the September 13, 2013, judgement as a final appealable judgement either. The fact is, the trial court made a partial summary judgement and it would have been improper for petitioner to invoke the review process with the court of appeal and thereby deliberately institute piece-meal litigation.

Petitioner properly awaited a final judgement and proceeded into this court with all claims being reflected in his Supervisory Writ of Review. All claims were heavily related (all of them had their origins in the Systemic Ineffective Assistance of Counsel delineated in *"An Assessment of trial Level Indigent Defense Services in Louisiana 40 Years After Gideon."* (See Exhibit Copy of Book in Record of PCR at Trial Court Level). Further instructions and prohibitions against piecemeal litigation was addressed in *Daigle & Associates, APLC v. Lafayette Insurance Company*, 2004-0915, 916 So.2d 1078 (La. App. 1 Cir. 6/29/05). Also, these decisions show that to apply a procedural bar in this case would not reflect a regularly and even-handed application of the procedural bar, thus, the matter would still invite federal habeas review. Petitioner requests that this Honorable Court alter its March 25, 2014, judgement wherein it was asserted that he should have filed a "Notice of Intent" thereby requesting a return date which would have ultimately forced him to proceed in piece-meal fashion with the litigation.

## FAILURE TO FOLLOW *HAINES V. KERNER, SUPRA*

The above opinion in *State ex rel. Evans v. State*, shows that this is not the first occasion that the Louisiana Supreme has been required to issue a correctively instructive judgment against this Honorable Fifth Circuit Court of Appeal for similar conduct. Petitioner avers that he is the subject of deprivation of rights and protections assured him by operation of the Federal decisions of *Haines v. Kerner, supra* and *Houston v. Lack, supra*. Petitioner tendered his pleadings to prison officials on 2/14/14[2], the final decision challenged was issued on January 13, 2014. These sentiments were

---

[2] Please see attached Exhibit "B" (duplicate of mail slip ... showing acceptance and responsibility for depositing into the prison mailing system by Prison Classification Officer Raphael Augustine, dated 2/14/14).

-66-

echoed in both *State ex rel. Johnson v. Whitley*, 648 So.2d 909, 92-2589 (La. 1/6/95) and *State ex rel Hensley v. State*, 876 So.2d 78, 2003-1691 (La. 6/4/04).

## WHETHER THIS CASE WAS RESOLVED ON FEDERAL AND STATE GROUNDS OR JUST STATE?

Petitioners pleadings are replete with references to and claims to the rights and protections covered by the United States Supreme Court in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-52, 92 S.Ct. at 596, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Despite this clear invocation of federal law over these proceedings and *La. Const. Art. Article X, § 30*, no court has complied with those precepts. The state invoked state law over the claims, though occasionally referencing federal cases, the review was limited to state court determination to applying only state law not state court interpretation nor application of federal law. Pursuant *Haines*, Petitioner's writ could only be dismissed for failure to state a claim. However, an erroneous determination that a claim should be dismissed is a "federal mixed question of law and fact" to be reviewed *de novo*. Also, despite petitioner directing the court's attention to other State and Federal cases where the same issue of law was fully adjudicated, as a reviewing court, this court has erroneously upheld the trial judgment. In the original PCR, traverse to the state's procedural objections, and the Supervisory Writ of Review, petitioner specifically showed the court "cause" for any lapses in his presentation of issues raised. (See prior pleadings where petitioner detailed trial counsel systemic and actual instances of ineffective assistance.) Petitioner included in his pleadings the following clear and unequivocal statements conveying that his is a foreign national not familiar fluent with the English language and reliant upon others for assistance. The following is quoted directly from petitioner's prior pleading in this court.

Petitioner presently lacks the ability: to fully understand English, investigate his claim he lacks the academic capability to comprehend post conviction statutes[1], procedures, and case law.

---

[1] Petitioner has never had his intellectual capability assessed through an individual interview by one or more psychologists nor has he ever been administered a verbal intelligence and reading comprehension test. Also, he has never been administered the Law School Admission Test (LSAT) to compare his ability to those of students starting out in the field of law. Also, there has been no personality testing in order to get an estimate of his current emotional and mental well-being, gauging whether his capacity to perform the task he faced (filing a competent post-conviction), was negatively affected by depression or any other debilitating mental illness.

He is totally dependant upon others to aid in the perfection and presentation of his claims and issues.

Petitioner suffers from a "constructive denial of counsel", which constitutes a "structural defect" in the collateral review   process as was true in the pre-trial, trial and post-trial proceedings.   Having counsel on one's first appeal is a matter of right.   In light of recent decisions, a claim of ineffective assistance of trial counsel in the first collateral review is deemed a continuation of the direct appeal process as explained in *Martinez v. Ryan, supra* and *Trevino v. Thaler, supra.*[5]

The request made by the State seeking the dismissal of several of petitioner's claims at the trial court level pursuant the holdings in *Francis v. Henderson*, 425 U.S. 536 (1976), were insufficient grounds upon which to deny relief.   A dismissal under *Francis* or any other reason advanced by the state on any claim is inapplicable to the fact specific circumstances of this case. Funes' failure to timely challenge the composition of the grand and petit jury pools meets the "cause" and "prejudice" requirements of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct.  1708, 48 L.Ed.2d 149 (1976); he establishes the elements of *Francis.*   The state maintained, that Funes has not demonstrated "cause" nor "prejudice".   This contention is contrary to the record.   Petitioner sufficiently raised and argued counsel's pre-trial ineffectiveness, trial post-trial ineffectiveness which immunizes petitioner from the applicability of procedural default.   Collectively, the manner in which the state intends to use counsel's ineffectiveness as a battering-ram against the constitutional rights of this petitioner connotes evidence of "structural-error."

Here, Funes has argued his claims, both  as <u>independent</u> and <u>inter-related substantive issues.</u> Funes's arguments encompass:

(1) the State of Louisiana engaged in [jury pool-fixing] for both the Grand and Petit juries through non-compliance with the *NVRA of 1993*,

---

[4]

In post conviction proceedings, the most critical reason which justifies the help of a lawyer are: The need for factual investigation. Since the vast majority of post-conviction issues are based on facts that are not in the record, the most critical aspect of any case will be the required factual investigation. Regardless of how educated the individual, or how long he has to prepare, this task is simply impossible for the prisoner to perform from the Louisiana State Penitentiary.

[5]

Some courts had expressed the opinion that even a complete library would not provide the inmate with much chance of success:  "In this court's view, access to the fullest law library anywhere is a useless and meaningless gesture in terms of the great mass of prisoners. The bulk and complexity [of the legal issues] have grown to such an extent that even experienced lawyers cannot function efficiently today without the support of special [research] tools . . . . To expect untrained laymen to work with entirely unfamiliar books whose contents they cannot understand, may be worthy of  Lewis Carroll, but hardly satisfies the substance of the constitutional duty of [access to courts].  Access to full law libraries makes about as much sense as furnishing medical services through books like "Brain Surgery Self-Taught", or "How to remove your own Appendix", along with scalpels, drills, hemostats, sponges and sutures." *Falzerano v. Collier*, 535 F.Supp. 800, 803 (D.N.J. 1982)

68.

6

(2) Trial counsel was systemically ineffective. Counsel's active engagement in a conflict-of-interest during his representation of petitioner (Counsel concealed the systemic-ineffectiveness of the public defenders office as described in "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon."

(3) Counsel's "active" and "systemic-conflict-of-interest" caused counsel to be ineffective in not filing a motion to quash both the Grand Jury and the Petit Jury due to systemic exclusion of those who are handicapped, minorities, and/or reliant upon public assistance and the systemic-ineffectiveness by the design and operation of the Indigent Defender System.

(4) The Indigent Defender Board(s) is/are working in collusion with the District Attorney's Office to allow the clients of the IDB office to be subjected to unconstitutionally tainted prosecutions and discriminately composed Grand and Petit Jury pools during the Indictment and trial process.

Unlike *Deloch*, this petitioner did/does not speak the English language, and was given an interpreter for all proceedings. This fact goes to the truth of petitioner having been completely reliant upon the expertise and guiding hand of counsel. At any rate, the State of Louisiana has introduced evidence into the record which effectively carried petitioner's burden at proving his entitlement to relief. The petitioner alleged and the State of Louisiana submitted verifiable evidence that, the State of Louisiana, October 15, 2012 - October 17, 2012, was convicted before the U.S. Eastern District Court, of violating the *NVRA of 1993*. The state's chosen defenses against petitioner are extinguishable. To overcome procedural default, petitioner need only establish "cause" for the procedural default. Procedural bars are only applicable when the a moving party proves that the applicability of the procedural bar did not derive from: 1.) a corrupted process, or 2.) internal-scheme specifically designed or structured to deprive a party litigant of a protected right (right to effective counsel and/or conflict-free counsel) by fraud, silence, and or misrepresentation.

Although the state argues that counsel's failure to file a pre-trial motion to quash waived petitioner's equal protection claim against the State of Louisiana for "fixing" the composition of the criminal jury pools for the Grand and Petit jury through non-compliance with the mandates of the *NVRA of 1993*." Counsel's failure to file the pre-trial motion establishes that counsel was not acting as counsel envisioned by the *Sixth Amendment, but rather suffering from a* conflict-of-interest.

The instant petitioner directs this Honorable Court's attention to the "cause" of his procedural default. Counsel did not file a motion to quash the grand jury nor the trial jury because of the existing conflict they had as a member of the Jefferson Parish Indigent Defender Board who relied on this conflict to go unnoticed for continued wage earnings. This constitutes an "external factor" which injected "cause" for the procedural default to be embedded in reality. Petitioner avers that both his trial and appellate counsel suffered from inter-related conflicts-of-interest.

(1) Trial counsel had an interest in not filing systemic ineffectiveness against his office nor objection to his own failure to file proper and timely pre-trial motions to quash the Grand and Petit Jury's impaneled for violating the *NVRA of 1993*. Therefore, counsel "prejudiced" his client by not preserving the issue for review on direct appeal.

(2) Because the direct appeal is a stage where petitioner still has the right to counsel, Appellate counsel is a part of a system which "systemically" provides ineffective-assistance of counsel at the appellate level. Appellate counsel had a coveted interest in not pointing out to the appellate court, trial counsel's ineffective-assistance for the failure to file pre-trial motions to quash. This is so because, (appellate counsel) too had been ineffective in countless cases for never having pointed out the ineffective-assistance of trial counsel(s) for not filing pre-trial motions to quash indictments on the grounds of intentional violations of the *NVRA of 1993*, thereby tainting the jury pools for the Grand and Petit juries (juries which should have been quashed due to the taint).

(3) Further, because appellate counsel is an integral part of the systemic by-passing of these "structural error" claims and ineffective assistance at the appellate level, appellate counsel had an interest in  not pointing out that, as individuals and as a collective body, the Attorney's of the Louisiana Appellate Project had been  by-passing legitimate ineffective-assistance of counsel claims against Indigent Defender Board Attorneys as individuals and as a collective (in thousands of cases). The Indigent Defender Board has "never filed pre-motions to quash the grand or petit juries despite all the elements and evidence to prove those as viable claim since the public discovery of the systemic excluding of a distinctive class of people from becoming registered voters to be included in the state jury pools because of their, disability, race, economic or social status, and other identifiers set out in the *NVRA of 1993*."

## "CAUSE" AND THE "EQUITABLE TOLLING" ISSUE

The State of Louisiana, in its desire to preserve the unconstitutional practice of depriving the poor, handicapped and un-educated of an opportunity to be members of the jury pools throughout the State of Louisiana seeks to prevent the adjudication of this vital issue. Discrimination otherwise qualified persons from becoming registered voters. Petitioner avers that the following will show the self -exterminating nature of the procedural defaults raised by the State of Louisiana.

1.) Who is responsible for supplying the *Sixth Amendment's* standard of effective assistance of counsel for the poor 40+ years after *Gideon*, when a person is charged with a crime inside the boarders of Jefferson Parish? *Answer: The State of Louisiana.*
2.) Does this State have obligation to comply with the *National Voter's Rights Act of 1993?* *Answer: Yes.*
3.) Is it true that the IDB Office of Jefferson Parish has never questioned the unconstitutional practices deriving from the State's Violation of the *NVRA of 1993? Answer: Yes.*
4.) Was the State of Louisiana, found by the U.S. Eastern District of Louisiana, to have violated its obligation to comply with the *National Voter's Rights Act of 1993? Answer: Yes.*

Considering the honest answers to these questions, the statute of limitations to filing a "Pre-trial Motion to Quash the Grand and Petit Juries, does not constitute a "jurisdictional bar" and as such, it is subject to equitable tolling. *"The doctrine of equitable tolling preserves a plaintiff claim when strict application of the statute of limitations would be inequitable."* The doctrine applies principally where the plaintiff is actively misled by the defendant (in this case his attorney) about the cause of action or is prevented in some extraordinary way from asserting the rights. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Petitioner thus meets the "cause" and "prejudice" requirement of *Francis*, because there were extra-ordinary preventive measures in place to prevent counsel from filing them.

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB system which ultimately begets systemic-conflicts-of-interest

Petitioner avers through the art of deduction, the following is both true and evident. There exists an unwritten and unspoken of agreement between D.A.'s Office and Public Defender's Office which includes but is not limited to:

A.) No IDB Counsel will file pre-trial Motions to Quash the Grand or Petit Juries will be filed with respect to the State's Violation of the *NVRA of 1993*.
B.) No IDB Counsel will file any pleadings against himself/herself nor the Jefferson Parish IDB Office for promoting and/or preserving the systemic-unconstitutional, Ineffective-Assistance of Counsel as set forth in, but not limited to, "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon," as published in 2004, nor which remains reality to the date of this filing.

Standing alone, these two agreements are depriving citizens of the honest and constitutionally required services of the Jefferson Parish IDB Office. Petitioner bears the burden of proving or disproving, through the actions or inactions of the Jefferson Parish IDB Office that this understood contract exists. In proving strategically arranged and systemic ineffective assistance of counsel establishing "cause" for the procedural default, the following facts are offered.

A.) Since the State of Louisiana's deliberate and systemic violation of the *NVRA of 1993*, was exposed in *Ferrand v. Schedler*, the Jefferson Parish IDB Office has not made any pre-trial motions to quash the Grand Jury and/or Petit Jury on the grounds of the jury pools being "fixed" by the state's refusal to comply with the *NVRA of 1993*, despite the issue being a viable and sustainable one.
B.) The Jefferson Parish IDB Office has not filed a single claim of systemic-ineffective assistance of counsel against the IDB as a whole. They are prevented from filing the claim because it is a conflict-of-interest to do so. It would be politically incorrect, socially deplorable, economically devastating and/or would likely cost their employment with the Jefferson Parish IDB. So, it is through the silence of the Jefferson Parish IDB; the Jefferson Parish District Attorney's Office is given a decisive advantage over any person in that parish as a part of a systemic reality and the extreme budgetary constraints of the Jefferson Parish IDB Office. Ultimately and realistically, this serves to deprive those charged with a crime in this parish of the *Sixth Amendment* Right to Counsel and *Fourteenth Amendment* Right, to Due Process and Equal Protection of the Law.

The only reasonable conclusion is evident, petitioner has been deprived of his *Sixth Amendment* right to counsel, his right to conflict-free counsel, and his right to a Grand and Petit Jury, free from systemic-exclusion of handicapped, minorities and, those dependant upon public assistance.

As a starting point, systemic and unconstitutional exclusion of minorities or readily identifiable group is "structural error" requiring automatic reversal and not amenable to "harmless error" analysis. See *Arizona v. Fulminate* and *Vasquez v. Hillery*.

Now, the magnitude and the scope of the jury-pool-fixing scheme set in place by non-compliance with the *National Voter Registration Act*, was sufficient to bring a halt to any efforts to immediately re-indict petitioner. How is that so? The State of Louisiana would have been obligated to bring the State of Louisiana into conformity with the *NVRA of 1993*, until then, any

9

subsequent Grand Jury Pool would have suffered the same unconstitutional taint. The repair of the unconstitutional Jury Pool System could not have been achieved right away, because the Secretary of State Tom Schedler was asked to remedy the matter, and when he refused, actions were taken and both he and the State of Louisiana were sued in two (2) civil suits. The aforementioned suits are what brought this constitutional rights deprivation to petitioner's attention. These civil cases are *Ferrand v. Schedler* and *U.S. v. Louisiana* as set out in the PCR Application and Memorandum in Support of petitioner's request for Post-Conviction Relief.

The time period that it may have or perhaps would take to compose a constitutionally acceptable trial and petit jury, the petitioner's speedy trial rights would have been implicated and this too could have been a "pry pole" used by IDB counsel in any effort to securing a plea agreement on behalf of his client as was the case in *Winters v. Cooks*, 489 F.2d 174 (C.A. 5 (Miss.) 1973).

As a settled issue, a *Batson* violation is structural error for which prejudice is generally presumed. This violation is sufficient to undermine confidence in the outcome of the trial because Grand and Petit Jury discrimination is structural error. See *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)(noting the structural defects in the constitution of the trial mechanism "defy analysis by 'harmless-error' standards").

As a result of the procedural objections urged by the Jefferson Parish District Attorney's Office, the following questions were posed to them but have gone unanswered:

1.) When did the District Attorney's Office notes the statistical under-representation of black and other minorities in their jury pools for the Grand and Petit Jury?

2.) When did the Jefferson Parish realize that their Jury Pools were unconstitutionally composed by way of the state's Non-compliance with the *NVRA of 1993*?

3.) Where any other methods in place which aided the Jefferson Parish District Attorney's office in facilitating the under-representation of minorities, handicapped and the impoverished?

4.) How many indictments where secured while any of the above practices were in place?

5.) How many criminal trials proceeded to verdict while the above practices where in effect?
******QUOTING FROM THE WRIT STOPS HERE BUT ALL ARGUMENTS IN THE ORIGINAL SUPERVISORY WRIT ARE ADOPTED BY REFERENCE. (NO CLAIMS OR ARGUMENTS ARE ABANDONED.)

Petitioner aims to call expert witnesses who are Defense Attorneys; the Authors of "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon"; members of the Louisiana Appellate Project; and members of the Spangenberg Group who made the first study of the Louisiana Indigent Defender System (proposal presented to Sam Salter, James Boren, and Nina Maples, September 11, 1990), and its subsequent results. Petitioner further invokes

his right to call/summons/subpoena out-of-state witnesses for the purposes of fully developing the record relative to the claims raised through these pleadings.

## CONCLUSION

Wherefore, for the "cause" and "prejudice" shown as to all the lapses in counsel's representation deriving from systemic ineffectiveness and conflict-of-interest laden representation, petitioner prays that all Procedural objections perfected through the Jefferson Parish District Attorney's Office, to claims 1 through 12 be dismissed and that this Honorable Court recognize that petitioner's pleadings did address the issue "cause" in the form of explaining the origins and practice of "Systemic Ineffectiveness" by the Jefferson Parish Public Defender's Office. Petitioner wishes to have all claims raised on post-conviction addressed on their merits. Unequivocally, petitioner has not sought to omit nor leave behind any of his claims nor the protections of *Haines v. Kerner*, nor *Louisiana Constitution of 1974, Article V, § 25(c)* in conjunction with the operation of *Art. X, § 30*.

Respectfully Submitted By:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify under oath and penalty of perjury, that I have forwarded a copy of the above Supervisory Writ of Review to the 5th Circuit Court of Appeal for the State of Louisiana and the District Attorney's Office for the Parish of Jefferson 200 Derbingy Street, Gretna, La. 70053, on this _4th_ day of April, 2014.

*Rigoberto Funes*
Rigoberto Funes

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on this _04th_ day of April, 2014.

State Morales #85165
Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

# EXHIBITS SHOWING
# THAT
# REHEARING IS BOTH
# "TIMELY"
# AND "WARRANTED"

Exhibits are:

## EXHIBIT "A"

COPY OF CERTIFICATE OF SERVICE AND NOTARY STATEMENT, showing that petitioner filed his pleading two (2) days before his deadline.

1.) The day of the judgement was rendered does not count towards the deadline, the first day against petitioner was January 17, 2014 (January has 31days),

2.) The day of the filing does not count against the petitioner if it is timely,

3.) Thus, January 17, 2014 - February 13, 2014, accrued against petitioner, 30 days later would be February 17, 2014. *Houston v. Lack*, shows this writ to be timely by all means.

## EXHIBIT "B"

COPY OF PRISON MAILING RECEIPT DATE 2/14/14, FRIDAY, two (2) days before petitioner's Sunday deadline. Deadlines falling on Saturday's and Sunday's are given until the next business day, (that would be Monday, February 17, 2013, which is the date that the pleading was postmarked, thus, there is no way for petitioner to be legally deemed untimely.)

## EXHIBIT "C"

Copy of Judgement being challenged. The Judgement is 3 pages long, the last two being written pages signed by Judge Robert M. Murphy, Judge Fredricka Homberg Wicker, and Judge Jude G. Gravois.

## EXHIBIT "D"

Copy of *Linlake Ventures v. J.J. Krebs & Sons, Inc.*, 725 So.2d 545, 98-590 (La.App. 5 Cir. 12/16/98), set a standard in this Fifth Circuit Court which it did not follow in issuing its March 25, 2014, judgement against petitioner.

## EXHIBIT "E"

Copy of *Holthausen v. Dinartino, L.L.C.*, 86 So.3d. 639, 11-561 (La.App. 5th Cir 2012), which shows that the case of *Berman v. De Chazal*, 98-1; 717 So.2d 658 (La.App. 5th Cir. 5/27/98), remains the standard set in this Fifth Circuit Court which it did not follow in issuing its March 25, 2014, judgement against petitioner.

is highly prejudicial to the accused.

The *La. Const. of 1974, Article 1, Section 19* provides that "the review under an appeal of right from a felony conviction [accorded by *Louisiana Constitution, of 1974, Art 5, § 5 (D) (2)*] shall be based upon a complete record of all evidence upon which a judgement is based." *State v. Robinson*, 387 So.2d 1143 (La. 1980).

## CONCLUSION

Wherefore, for the "cause" and "prejudice" shown as to all the lapses in counsel's representation deriving from systemic ineffectiveness and conflict-of-interest laden representation, petitioner prays that the State of Louisiana, all Procedural objections perfected through the Jefferson Parish District Attorney's Office, to claims 1, 4, 5, 6a, 10, 11, and 12 be dismissed.

Respectfully Submitted By:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify that I have forwarded a copy of the aboveSupervisory Writ of Review to the District Attorney's Office for the Parish of Jefferson 200 Derbingy Street, Gretna, La. 70053, on this _14th_ day of Eebruary_ 2014.

*Rigoberto Funes*
Rigoberto Funes

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on this _14_ day of February, 2014.

*Michael Augustine*
Ex-Officio Notary
Dept. of Public Safety & Corrections/LSP

Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

32

OFFENDER'S REQUEST FOR LEGAL/INDIGENT MAIL

NAME: _____

NUMBER: _____

LOCATION: _____

BALANCE IN YOUR DRAWING ACCOUNT: $_____

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED:

_____
name

_____
address

_____
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

_____
name

_____
address

_____
city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

_____
offender's signature and number

_____        _____
classification officer              date

# *Application For Writs*

## No. 14-KH-124

## COURT OF APPEAL, FIFTH CIRCUIT

## STATE OF LOUISIANA

### FEBRUARY 21, 2014

*Susan Buckley*

Deputy Clerk

**RIGOBERTO FUNES**
VERSUS
**BURL CAIN, WARDEN, LA. STATE PENITENTIARY**

IN RE RIGOBERTO FUNES

APPLYING FOR SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JOHN J. MOLAISON, JR., DIVISION "E", NUMBER 05-5641

**Attorneys for Relator:**

Rigoberto Funes #571875
Louisiana State Penitentiary
Angola, LA 70712

**Attorneys for Respondent:**

Terry M. Boudreaux
Assistant District Attorney
200 Derbigny Street
Gretna, LA 70053
(504) 368-1020

**WRIT DENIED**
(See Attached Disposition)

Gretna, Louisiana, this 25th day of March, 2014.

Judgment Challenged on Rehearing

RIGOBERTO FUNES

VERSUS

BURL CAIN, WARDEN, LA. STATE
PENITENTIARY

NO. 14-KH-124

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**WRIT DENIED**

We find that the trial court did not err in denying relator's application
for post-conviction relief as to claims three, six(b), seven, eight, and nine, in
its January 16, 2014 ruling.

Relator has failed to present any evidence that would support his
position that his trial and appellate counsel were ineffective under the
standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984). We further find that relator has failed to
present any evidence to support his claim and the district court properly
surmised that relator's claim was speculative and conclusory. Thus, the trial
court properly concluded that relator failed to prove any deficiencies in
either his trial or appellate counsel's performance, or any resulting prejudice.

We find that the district court did not err in denying relator's claim of
prosecutorial misconduct. Upon the showing made, relator has failed to
provide evidence of prosecutorial misconduct. We find that the trial court
properly surmised in its January 16, 2014 ruling that relator provided no
evidence to refute the ballistics expert; thus relator's allegation of
prosecutorial misconduct, in that the State admitted false testimony of the
ballistics expert, was speculative.

In light of the Louisiana Supreme Court's decisions in *State ex rel.
Bernard v. Criminal District Court Section J*, 94-2247 (La. 4/28/95), 653
So.2d 1174 and *State ex rel. Payton v. Thiel*, 315 So.2d 40 (La. 1975),
relator's request for any discovery and all relevant transcripts are without
merit.

For these reasons, relator's writ application which challenges the trial
court's January 16, 2014 Order is denied.

To the extent that relator appears to challenge the trial court's
September 13, 2013 ruling, we find that any challenge to the district court's
September 13, 2013 denial of his application for post-conviction relief,
related to claims one, two, four, five, six(a), ten, eleven and twelve, along

with his "Re-Urged Motion for Appointment of Counsel and Evidentiary Hearing," "Petitioner Requests Discovery and Authentication of Documents Secured Through Discovery," and the "Request for Admissions Relative to Plaintiffs' Request for Post-Conviction Relief," in the current writ application is untimely pursuant to the U.R.C.A., Rule 4-3. Relator failed to file a notice of intent or seek a return date concerning the September 13, 2013 ruling. Furthermore, we find that relator's notice of intent, filed on February 12, 2014, seeks review only of the trial court's January 16, 2014 ruling. The instant writ application was not postmarked until February 17, 2014, and not stamp-filed with this Court until February 21, 2014. Furthermore, we find that relator has failed to show that the delay in filing the instant writ application was not due to relator's fault. *See* U.R.C.A., Rule 4-3.

For these reasons, relator's application as to both the September 13, 2013 and January 16, 2014 rulings of the trial court is denied.

Gretna, Louisiana, this 25th day of March, 2014.

JUDGE ROBERT M. MURPHY

JUDGE FREDERICKA HOMBERG WICKER

JUDGE JUDE G. GRAVOIS

A TRUE COPY
GRETNA

MAR 25 2014

COURT OF APPEAL, FIFTH CIRCUIT

2

*545  725 So.2d 545

98-590 La.App. 5 Cir. 12/16/98

Court of Appeal of Louisiana,
Fifth Circuit.

LINLAKE VENTURES, A Louisiana
Joint Venture, and ANF Partners # 1, A
Louisiana Joint Venture
v.
J.J. KREBS & SONS, INC., Continental
Casualty Company, Eustis Engineering
Co., Inc. Joseph J. Krebs, Jr., William B.
Haensel, Jr., Live Oak Builders, Inc.,
United States Fidelity and Guaranty
Insurance Company, and Fireman's Fund
Insurance Company.

Nos. 98-CA-590, 98-CA-591.
Dec. 16, 1998.

In civil action, the 24th Judicial District Court, Parish of Jefferson, Nos. 401-057, 402-536, Charles V. Cusimano, II, J., granted defendant's motion for partial summary judgment, and plaintiffs appealed that judgment. The Court of Appeal, Gothard, J., held that grant of motion for partial summary judgment was not final appealable judgment.

Dismissed.

West Headnotes

Appeal and Error ⭠80(6)

30 ----
    30III Decisions Reviewable
    30III(D) Finality of Determination
    30k75 Final Judgments or Decrees
    30k80 Determination of Controversy.
    30k80(6) Determination of Part of Controversy.

[See headnote text below]

Appeal and Error ⭠366

30 ----
    30VII Transfer of Cause
    30VII(B) Petition or Prayer, Allowance, and
Certificate or Affidavit
    30k366 Certificate as to Grounds.

Grant of motion for partial summary judgment was

not final appealable judgment, in absence of specific agreement by parties as to finality of partial summary judgment or express determination by trial court that there was no just reason for delay and designation of judgment as final. LSA-C.C.P. art. 1915.

Aubrey B. Hirsch, Jr., Matthew M. Brown, Locke, Purnell, Rain, Harrell, New Orleans, Louisiana, Attorneys for Plaintiff/Appellant.

Lawrence J. Duplass, Danna E. Schwab, Claire E. Breaux, Duplass, Zwain & Bourgeois, Metairie, Louisiana, Attorneys for Defendant/Appellee Fireman's Fund Insurance Company.

Before  GOTHARD,  EDWARDS,  and
CHEHARDY, JJ.

[98-590 La.App. 5 Cir. 2] GOTHARD, Judge.

Plaintiffs, Linlake Ventures and ANF Partners # 1, filed two actions against multiple defendants alleging breach of contract and faulty construction plans in the construction of two apartment buildings. The two matters were consolidated in the district court. One of the defendants, Fireman's Fund Insurance Company (Fireman's), the excess insurer of the general contractor on the project, filed a motion for partial summary judgment to resolve the issue of whether its coverage is limited to the excess coverage or whether the coverage would "drop down" to provide coverage for the insolvent primary insurer. After consideration of the *546. motion, the trial court ruled in favor of Fireman's and granted the partial summary judgment. Plaintiffs appeal that judgment.

The judgment does not settle all of the claims among the parties, nor does it dismiss Fireman's from the suit. It merely restricts the coverage to losses in excess of the primary insurance limits. As such, the judgment is not a final, appealable judgment.

[98-590 La.App. 5 Cir. 3] Code of Civil Procedure article 1915 was amended by Act No. 483, § 2 of the Regular Session of 1997, effective on July 1, 1997. The amended version of the article provides, in pertinent part, as follows:

B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

725 So.2d 545, 98-590 La.App. 5 Cir. 12/16/98, Linlake Ventures v. J.J. Krebs & Sons, Inc. (La.App. 5... Page 2
Cir. 1998)

intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time.

prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis added)

*Landry v. Torregano*, 98-3 (La.App. 5 Cir. 5/13/98), 712 So.2d 996. See also *Berman v. De Chazal* 98-8 (La.App.5/27/98), 717 So.2d 658. The record contains no agreement by the parties nor certification by the trial court that this judgment is immediately appealable. Accordingly, we dismiss the appeal for lack of jurisdiction.

DISMISSED.

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

**\*639**: 86 So.3d 639

11-561 La.App. 5 Cir. 1/4/12

Court of Appeal of Louisiana,
Fifth Circuit.

Brigitte B. HOLTHAUSEN, Luciano
Holthausen and Holthausen, Inc. a/k/a
"HEMLINE"

v.

DMARTINO, L.L.C., Muriel Decker and
Lynell Decker.

No. 11-CA-561.
Jan. 4, 2012.

**Background:** Lessors filed petition against lessees for damages and breach of lease agreements. Lessees filed reconventional demand and asserted affirmative defenses. Following remand from federal court, 2009 WL 1649693, the 24th Judicial District Court, Parish of Jefferson, No. 669-996, Division "O", Ross P. Ladart, J., denied lessors' motion for partial summary judgment, and granted lessees' motion for partial summary judgment. Lessors' petition for writ of supervisory review was denied. Lessors then filed motion to vacate prior order denying partial summary judgment and/or declaratory relief. The District Court denied motion, and lessors appealed.

**Holding:** The Court of Appeal, Walter J. Rothschild, J., held that order denying lessors' motion to vacate prior ruling denying motion for partial summary judgment was not final, appealable order.

Appeal dismissed.

West Headnotes

[1] Appeal and Error ⚖=23

30 —
30II Nature and Grounds of Appellate
   Jurisdiction
30k23 Determination of questions of jurisdiction
in general.

Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue.

[2] Appeal and Error ⚖=78(1)

30 —
30III Decisions Reviewable
30III(D) Finality of Determination
30k75 Final Judgments or Decrees
30k78 Nature and Scope of Decision
30k78(1) In general.

Order denying lessors' motion to vacate prior ruling denying motion for partial summary judgment in their action against lessees for breach of lease agreement was not final, appealable order, where there had been no decision as to merits of lessors' petition or lessees' reconventional demand. LSA-C.C.P. art. 968.

[3] Appeal and Error ⚖=782

30 —
30XIII Dismissal, Withdrawal, or
   Abandonment

30k779 Grounds for Dismissal
30k782 Want of Jurisdiction

[See headnote text below]

[3] Appeal and Error ⚖=893(1)

30 —
30XVI Review
30XVI(F) Trial De Novo
30k892 Trial De Novo
30k893 Cases Triable in Appellate Court
30k893(1) In general.

When no reasons are given by the trial court for certification as final of a judgment that does not resolve all claims of all parties, the appellate court reviews the certification de novo, and when an appellate court determines that a certification was an abuse of discretion, the appeal must be dismissed. LSA-C.C.P. arts. 968, 1911.

**\*640** J. Patrick Connick, Bryan S. McManus, Attorneys at Law, Metairie, LA, for Plaintiff/Appellants.

Kyle Schonekas, Joelle F. Evans, Attorneys at Law, New Orleans, LA, for Defendant/Appellee.

Panel composed of Judges MARION F. EDWARDS, WALTER J. ROTHSCHILD, and ROBERT A. CHAISSON.

WALTER J. ROTHSCHILD, Judge.

[11-561 La.App. 5 Cir. 2] Brigitte B. Holthausen, Luciano Holthausen and Holthausen, Inc. a/k/a "Hemline," filed the instant Petition for Damages and Breach of Contract against DMartino, LLC, Muriel Martini and Lynell Decker on the basis of certain lease agreements executed between the parties. Plaintiffs subsequently filed a Supplemental and Amending Petition for Damages requesting temporary, preliminary and injunctive relief against defendants.

The allegations of these petitions indicate that plaintiffs operate a retail women's clothing business in Louisiana, and as part of the business, plaintiffs lease the use of their trade names and logos to certain retailers. In the original petition, plaintiffs alleged that they entered into a lease agreement in 2004 with defendants who opened "Hemline" stores in Houston, Texas. Plaintiffs further alleged that defendants breached the contract of lease in several enumerated instances. Plaintiffs also sought a declaratory judgment that defendants acted in bad faith in their performance of their obligations under the agreement. In the [11-561 La.App. 5 Cir. 3] supplemental petition, plaintiffs alleged that new five-year lease agreements were executed with defendants in 2008 for the three stores defendants were operating at that time. According to plaintiffs' allegations, these agreements included a provision that during the lease term and for one year after its termination, defendants were prohibited from owning or operating a women's clothing business in the Houston area (hereinafter referred to as "the Non-Compete Clauses"). Plaintiffs attached to their petitions copies of the aforementioned lease agreements between the parties.

Defendants responded with an answer including affirmative defenses as well as a reconventional demand alleging breach of the lease obligations by

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

Case 2:14-cv-01342-JCZ-KWR   Document 1   Filed 06/05/14   Page 214 of 301

plaintiffs. Thereafter, defendants filed a motion for partial summary judgment seeking a ruling that the Non-Compete Clauses of the 2003 lease agreements were invalid and unenforceable as a matter of law. Defendants argued that Texas law applies to the enforcement of the Non-Compete Clauses of the agreements, and that pursuant to applicable Texas law, the Non-Competes are unenforceable.

Plaintiffs subsequently filed a cross-motion for partial summary judgment on the issue of the enforceability of the Non-Compete Clauses and also filed an opposition to defendants' summary judgment motion. Plaintiffs contended that the agreements in this case contain both choice of law provisions and forum selection clauses. Plaintiffs argued that Louisiana law was applicable to resolve the issues between the parties. Plaintiffs sought summary judgment that the Non-Compete Clauses are enforceable pursuant to Louisiana law.

This matter came for hearing on January 21, 2010. After argument, the trial *641 court orally granted defendants' motion for partial summary judgment and denied plaintiffs' motion, thereby finding the Non-Compete Clauses to be unenforceable as a matter of law. On the same day, plaintiffs requested written reasons for [11-561 La.App. 5 Cir. 4] judgment pursuant to La. C.C.P. art. 1917. Defendants objected to the request for written reasons on the basis that article 1917 only requires written reasons in "appealable contested cases." On February 4, 2010, the trial court entered an ex parte order denying the request for reasons, stating "[t]he matter subject to the request was not a final judgment." On February 8, 2010, plaintiffs noticed their intent to seek supervisory review from the trial court's January 21, 2010 ruling.

Our Court records indicate that on March 17, 2010, the Holthausen plaintiffs filed a writ application from the trial court's January 21, 2010 ruling. Defendants' opposition thereto was filed on March 26, 2010. Plaintiffs were granted time to respond and filed a reply memorandum on March 31, 2010. On May 5, 2010, the writ application was denied by a panel of this Court with the following language:

> On the showing made, we decline to exercise our supervisory jurisdiction in this matter. However, relator has an adequate remedy on appeal. This writ application is hereby denied.

Holthausen, et al v. DMartino, LLC, et al, No. 10C219 (La.App. 5 Cir. 5/5/2010). Our records indicate that plaintiffs did not file an application for review of this decision with the Louisiana Supreme Court.

Several months later, on January 14, 2011, plaintiffs filed in the trial court a Motion to Vacate and Partial Summary Judgment and/or Declaratory Judgment. In that motion, plaintiffs requested that the trial court vacate its previous judgment and issue partial summary judgment declaring that the Non-Compete Clauses executed by the parties were valid under Texas law and that defendants breached certain applicable sections of the contracts. Plaintiffs also argued that as the trial court applied Texas law to this dispute, the court was required to reform the agreements to comply with law. Plaintiffs further argued that because the trial [11-561 La.App. 5 Cir. 5] court did not declare its previous ruling to be a final judgment, the court had the authority to vacate that ruling. Defendants opposed

this motion on the basis that reconsideration of the trial court's ruling was unwarranted.

This matter was heard by the trial court on March 2, 2011, and by judgment rendered the same day, the motion to vacate and partial summary judgment were denied. The trial court further stated that the judgment constitutes "a final judgment as there is no just reason for delay on the issue of whether or not the non-compete clause is enforceable." It is from this judgment that plaintiffs now seek this devolutive appeal.

In its oral reasons stated at the motion hearing, the trial court denied the motion to vacate on the basis of the doctrine of law of the case, noting that plaintiffs' counsel indicated that there had been no change in the law or facts since the court's previous ruling. Thus, the trial court upheld its previous ruling denying the motion for partial summary judgment. The trial court further stated:

> Now, what I am going to add to my order and my ruling is that this is a final judgment, all right, and that language is to be incorporated in my judgment on your motion. So then if there is some concern on your client's part about the Fifth Circuit declining to exercise its supervisory jurisdiction, I think with that language you can now exercise an appeal, okay, from my ruling.

*642 By the present appeal, plaintiffs argue that the trial court erred in its determination that this matter is governed by the doctrine of law of the case. Further, plaintiffs argue that the trial court erred in ruling the Non-Compete Clauses were unenforceable under Texas law and in failing to reform the agreement to comply with the law.

[1] Based on the unusual posture of this case, we find it appropriate for us to consider the basis for our jurisdiction before addressing the merits of this appeal. Appellate courts have the duty to examine subject matter jurisdiction sua sponte, [11-561 La.App. 5 Cir. 6] even when the parties do not raise the issue. Motorola, Inc. v. Associated Indem. Corp., 2002-0716 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 717; Boudreaux v. State, Dept. of Transp. and Development, 011329 (La.2/26/02), 815 So.2d 7, 13.

The judgment from which this appeal is taken is a denial of plaintiffs' motion to vacate the court's previous ruling denying the motion for partial summary judgment. The judgment in the present case does not adjudicate all of the claims of the parties because there has been no decision as to the merits of the petition or the reconventional demand. It is evident that the judgment will not terminate the suit, and that the same parties will continue to litigate the remaining issues. Nevertheless, without stating reasons therefor, the trial court designated the judgment as final for purposes of an immediate appeal.

[2] The law in Louisiana is well settled that a final judgment is appealable in all causes in which appeals are given by law. La. C.C.P. art. 2083. An interlocutory judgment is appealable only when expressly provided by law. Id. When a court renders a partial judgment or a partial summary judgment as to one or more but less than all of the claims, demands, issues, or theories, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination

that there is no just reason for delay. La. C.C.P. art. 1915(B)(1). However, the law specifically provides that an appeal does not lie from the court's refusal to render a summary judgment. La. C.C.P. art. 968.

This Court has previously considered the issue of whether a denial of a summary judgment constitutes a final appealable judgment when it has been designated as such by the trial court. In *Ware v. Mumford*, 04-118 (La.App. 5 Cir. 5/26/04), 875 So.2d 885, this Court dismissed an appeal of a denial of defendant's motion for summary judgment stating as follows:

[11-561 La.App. 5 Cir. 7] La.Code of Civil Procedure Article 968 provides that "An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment." Code of Civil Procedure Article 1915 provides for the certification of partial final judgments. However, article 1915 does not supercede article 968. The certification of [defendant's] Motion for Summary Judgment by the trial court did not convert a non-appealable judgment into an appealable judgment.

*Id.*, 04-118, p. 2, 875 So.2d at 886-887.

[3] Although the judgment in the present case was designated by the trial court as final, we are not bound by this determination. When no reasons are given by the trial court for certification, the appellate court reviews the certification *de novo*. When an appellate court determines that a certification was an abuse of

discretion, the appeal must be dismissed. *Berman v. De Chazal*, 98-1 (La.App. 5th Cir 3/27/98), 717 So.2d 658.

After a review of the record, we conclude that the trial court abused its discretion in certifying the judgment as a final *643, one for the purpose of an immediate appeal under La. C.C.P. art. 1915. This Court cannot determine the merits of the issue involved nor our appellate jurisdiction is properly invoked by a valid final judgment. We are bound to follow the holding in *Ware*, and therefore conclude that the trial court's denial of plaintiff's motion to vacate the court's prior motion for partial summary judgment was an interlocutory judgment. Furthermore, the court's designation of this interlocutory judgment as final has no legal effect, and the interlocutory judgment is not subject to an immediate appeal.

Accordingly, we conclude that we have no appellate jurisdiction to consider the merits of the present appeal. Due to our resolution of this jurisdictional issue, we do not reach the issues raised by plaintiffs addressing whether the trial court properly denied the partial summary judgment. This issue may be addressed when a final judgment is rendered in this case.

[11-561 La.App. 5 Cir. 8] For the reasons stated herein, the present appeal is hereby dismissed. Costs of the appeal are to await a final judgment in this case.

*APPEAL DISMISSED*

© 2013 Thomson Reuters. No claim to original U.S. Govt. Works.

# Appendix #5

Copy of Writ denial by Fifth Circuit Court of Appeal filed 3/25/14.

# *Application For Writs*

# No. 14-KH-124

# COURT OF APPEAL, FIFTH CIRCUIT

# STATE OF LOUISIANA

**FEBRUARY 21, 2014**

*Susan Buckley*

Deputy Clerk

**RIGOBERTO FUNES**
**VERSUS**
**BURL CAIN, WARDEN, LA. STATE PENITENTIARY**

IN RE RIGOBERTO FUNES

APPLYING FOR SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JOHN J. MOLAISON, JR., DIVISION "E", NUMBER 08-5641

**Attorneys for Relator:**

Rigoberto Funes #571875
Louisiana State Penitentiary
Angola, LA 70712

**Attorneys for Respondent:**

Terry M. Boudreaux
Assistant District Attorney
200 Derbigny Street
Gretna, LA 70053
(504) 368-1020

**WRIT DENIED**
(See Attached Disposition)

Gretna, Louisiana, this 25th day of March, 2014.

RIGOBERTO FUNES

VERSUS

BURL CAIN, WARDEN, LA. STATE
PENITENTIARY

NO. 14-KH-124

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## WRIT DENIED

We find that the trial court did not err in denying relator's application
for post-conviction relief as to claims three, six(b), seven, eight, and nine, in
its January 16, 2014 ruling.

Relator has failed to present any evidence that would support his
position that his trial and appellate counsel were ineffective under the
standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984). We further find that relator has failed to
present any evidence to support his claim and the district court properly
surmised that relator's claim was speculative and conclusory. Thus, the trial
court properly concluded that relator failed to prove any deficiencies in
either his trial or appellate counsel's performance, or any resulting prejudice.

We find that the district court did not err in denying relator's claim of
prosecutorial misconduct. Upon the showing made, relator has failed to
provide evidence of prosecutorial misconduct. We find that the trial court
properly surmised in its January 16, 2014 ruling that relator provided no
evidence to refute the ballistics expert; thus relator's allegation of
prosecutorial misconduct, in that the State admitted false testimony of the
ballistics expert, was speculative.

In light of the Louisiana Supreme Court's decisions in *State ex rel.
Bernard v. Criminal District Court Section J*, 94-2247 (La. 4/28/95), 653
So.2d 1174 and *State ex rel. Payton v. Thiel*, 315 So.2d 40 (La. 1975),
relator's request for any discovery and all relevant transcripts are without
merit.

For these reasons, relator's writ application which challenges the trial
court's January 16, 2014 Order is denied.

To the extent that relator appears to challenge the trial court's
September 13, 2013 ruling, we find that any challenge to the district court's
September 13, 2013 denial of his application for post-conviction relief,
related to claims one, two, four, five, six(a), ten, eleven, and twelve, along

with his "Re-Urged Motion for Appointment of Counsel and Evidentiary Hearing," "Petitioner Requests Discovery and Authentication of Documents Secured Through Discovery," and the "Request for Admissions Relative to Plaintiffs' Request for Post-Conviction Relief," in the current writ application is untimely pursuant to the U.R.C.A., Rule 4-3. Relator failed to file a notice of intent or seek a return date concerning the September 13, 2013 ruling. Furthermore, we find that relator's notice of intent, filed on February 12, 2014, seeks review only of the trial court's January 16, 2014 ruling. The instant writ application was not postmarked until February 17, 2014, and not stamp-filed with this Court until February 21, 2014. Furthermore, we find that relator has failed to show that the delay in filing the instant writ application was not due to relator's fault. *See* U.R.C.A., Rule 4-3.

For these reasons, relator's application as to both the September 13, 2013 and January 16, 2014 rulings of the trial court is denied.

Gretna, Louisiana, this 25th day of March, 2014.

_____
JUDGE ROBERT M. MURPHY

_____
JUDGE FREDERICKA HOMBERG WICKER

_____
JUDGE JUDE G. GRAVOIS

A TRUE COPY
GRETNA
MAR 2 5 2014

DEPUTY CLERK
COURT OF APPEAL, FIFTH CIRCUIT

2

# Appendix #6

3/12/14 Granting a Return date on petitioner's timely filed notice of intent. Awarding petitioner an extension of time until March 31, 2014 to file his Supervisory Writ of Review, yet, petitioner filed it in 2/14/14.

TWENTY FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

DIVISION "E"

NO. 08-5641

STATE OF LOUISIANA

VERSUS

RIGOBERTO FUNES

FILED: 3-12-14 _____

RECEIVED
MAR 17 2014
W.F.P.S.D.

RECEIVED
MAR 24 2014
Legal Programs Department
DEPUTY CLERK

## ORDER

This matter comes before the court on the Petitioner's **NOTICE OF INTENT TO APPLY FOR WRITS, STAMPED AS FILED FEBRUARY 12, 2014.**

Petitioner seeks writs to challenge the court's denial of his *Application for Post Conviction Relief, vclaims #3, #6b, #7, #8 and #9*, on January 16, 2014. Uniform Rules of the Courts of Appeal Rule No. 4-3 provides that a writ return date must be within 30 days of the ruling sought to be reviewed. The court finds petitioner's notice timely.

Rule No. 4-3 provides that the court shall set a reasonable return date and that the court may extend the time for filing the application upon a proper showing. Based on Petitioner being an incarcerated pro se inmate, and his timely filing notice of intention to apply for writs, this court finds good cause to extend the return date.

Accordingly,

IT IS DECLARED BY THE COURT that Petitioner's writ application is returnable to the Fifth Circuit Court of Appeal on or before March 31, 2014.

Gretna, Louisiana this 12th day of March , 20 14

_____
JUDGE

**PLEASE SERVE:**
Petitioner    Rigoberto Funes, DOC # 571875, Louisiana State Penitentiary, Angola, LA 70712

**PLEASE ELECTRONICALLY SERVE:**

Terry Boudreux, Matthew Caplan, District Attorney's Office, 200 Derbigny St., Gretna, LA 70053

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

CERTIFIED
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

# Appendix #7

Copy of PCR Supervisory Writ of Review to State-level Fifth Circuit
filed 2/14/14

**IN THE**
**5TH CIRCUIT COURT OF APPEAL**
**FOR THE**
**STATE OF LOUISIANA**

**Originated in the**
**24th JUDICIAL DISTRICT COURT**
**PARISH OF JEFFERSON**
**DOCKET NO: 08-5641**

**Rigoberto Funes**
**Petitioner**

**VERSUS**

**BURL CAIN, WARDEN**
**LA. STATE PENITENTIARY**
**Respondent**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**SUPERVISORY WRIT OF REVIEW**
**AS TO PETITIONER'S**
**APPLICATION FOR POST-CONVICTION RELIEF**

**DISTRICT COURT DECISION OF JANUARY 18, 2014, BEING**
**CHALLENGED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS HONORABLE COURT SHOULD NOTE:

[THE STATE OF LOUISIANA HAS SUBMITTED EVIDENCE, IN ITS
REPLY, WHICH PROVED PETITIONER'S CLAIM]

**PETITIONER SHOULD HAVE PREVAILED PER OPERATION OF**
*Juris de jure*, The State submitted irrebutable evidence proving entitlement to
relief.

**RESPECTFULLY SUBMITTED:**

**Rigoberto Funes #571875**
**MAIN PRISON Spruce-2**
**LA. STATE PENITENTIARY**
**ANGOLA, LA 70712**

# TABLE OF CONTENTS

SUPERVISORY WRIT OF REVIEW
AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF . . . . . . . . . . . . . 1

JURISDICTION IS CONFERRED UPON THIS COURT . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . 1

A CONCISE STATEMENT OF THE CASE INDICATING THE NATURE OF THE
CASE, THE ACTION OF THE COURT AND THE DISPOSITION . . . . . . 2

ASSIGNMENT OF ALLEGED ERRORS . . . . . . . . . . . . . . . . . . . 2

A LISTING OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . 3

STATEMENT OF FACTS RELEVANT TO THE ASSIGNMENT OF ERRORS AND
ISSUES FOR REVIEW, WITH REFERENCES TO SPECIFIC PAGE
NUMBERS OF THE RECORD . . . . . . . . . . . . . . . . . . . . 4

A SHORT SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . 4

Procedural default pursuant post conviction procedures
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cause and the equitable tolling issue . . . . . . . . . . . . . . . 8

The standing agreement Jefferson Parish District Attorney's Office and the Jefferson
Parish IDB system which ultimately begets systemic-conflicts-of-interest
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

JEFFERSON PARISH D.A.'S OFFICE HAS CONCEDED TO... . . . . . . . . . 11

ATTACHMENTS WHICH WEIGH ON THIS COURT'S DECISION . . . . . . . . . 12

PETITIONER MAINTAINS THAT PRO SE PLEADINGS ARE TO BE HELD TO
LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED
BY LAWYERS . . . . . . . . . . . . . . . . . . . . . . . . . 13

"PREJUDICE COMPONENT" . . . . . . . . . . . . . . . . . . . . . . . 14

FACTS NOT KNOWN EXCEPTION La.C.Cr.P. Art. 930.8(A)(1)
(Applicable standard of review is de novo) . . . . . . . . . . 17

Deferral of IAC claim from direct appeal to PCR constitutes "cause" (Applicable
standard of review is de novo) . . . . . . . . . . . . . . . . 19

Petitioner's Sixth Amendment right to a fair trial was violated during the selection of
the jury? (*Batson* and *Strickland* violations)(Applicable standard of review is
de novo) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial.(Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . 22

The trial judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts.(Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Whether prosecutorial misconduct occurred: (1) prosecutor improperly vouched for the credibility witnesses and (2) failed to correct perjured testimony (Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Counsel rendered ineffective assistance of counsel at trial when counsel failed to seek quashing of the grand jury indictment on the grounds of violation of the National Voter Registration Act of 1993.(Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Ineffectiveness by not securing rebuttal experts for the defense (Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Independent claim of "Grand Jury and Trial Jury Discrimination" (this is a "new fact" previously not known to petitioner and it meets the exception of 930.8(a)(1)(Applicable standard of review is de novo) . . . . . . . . . . . . . . . . 28

Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conflict of Interest against the entirety of the Jefferson Parish Indigent Defender (Applicable standard of review is de novo) . . . . . . . . . . . . . . . . . . . . . . . . . 30

Deprivation of Access to Relevant Transcripts
    Law and Argument (Applicable standard of review is de novo) . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

AFFIDAVIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

TABLE OF AUTHORITIES

## CONSTITUTION

United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States Constitution, Amendment 5 . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States Constitution, Amendment 6 . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States Constitution, Amendment 13 . . . . . . . . . . . . . . . . . . . . . . . . 29

United States Constitution, Amendment 14 . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

National Voter's Rights Act of 1993? . . . . . . . . . . . . . . 7, 8, 9, 10, 11, 13, 18

## FEDERAL CASES

Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985) . . . . . . . . 28

Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Batson, supra . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Campbell v. Louisiana, 118 S.Ct. 1419 (1998) . . . . . . . . . . . . . . . . . . . . . . 16

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957) . . . . . . . 14

Eubanks v. Louisiana (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ex Parte Aaron, 275 Ala. 377, 379 155 So.2d 334, cert. Denied, 375 U.S. 989, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Falzerano v. Collier, 535 F.Supp. 800, 803 (D.N.J. 1982) . . . . . . . . . . . . . . . . 5

Fay v. Noia, 372 U.S. 3912, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) . . . . . . . . . . . . 14

Ferrand v. Schedler, 2:11-cv-00926-LMA-JCW . . . . . . . . . . . . . . 9, 10, 18, 19

Francis v. Henderson, 425 U.S. 536 (1976) . . . . . . . . . . . . . 8, 9, 12, 14, 17

Giglio v. United States, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972) . . . . . 26

Giles v. Maryland, 386 U.S. 66, 87 S.CT. 793, 17 L.Ed.2d 737 (1967) . . . . . . . . 27

Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) . . . . . . . . 13

Hale v. United States, 435 F.2d 737 (1970) . . . . . . . . . . . . . . . . . . . . . 23, 30

Hollis v. Davis, 941 F.2d 1471 (C.A. 11 (Ala.) 1991) . . . . . . . . . . . . . . . . . . . . 15

Martinez v. Ryan, — S.Ct. —, 2012 WL 912950 . . . . . . . . . . . . . . . . . . . . . . . . 6

McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Napue v. Illinois, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959) . . . . 26, 27

Pierre v. Louisiana (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Roberts v. Louisiana, 428 U.S. 325, 334 n.10, 96 S.CT. 3001, 49 L.Ed.2d 974 (1976)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064 . . . . . . . . . . 16, 22

Trevino v. Thaler, 513 U.S.___ (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

U.S. v. Cronic, supra . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

U.S. v. Louisiana . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) . . . . . . . . . . . . . 9

United States v. Agurs, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Roberts, 618 F.2d 530, 533 (9th Cir. 1980) cert denied, 452 U.S. 942,
101 S.CT. 3088, 69 L.Ed.2d 957 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998) . . . . . . . . . . . . . . . 25

United States v. Young, 470 U.S. 1, 18-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Vasquez v. Hillery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Winters v. Cooks, 489 F.2d 174 (C.A. 5 (Miss.) 1973) . . . . . . . . . . . . . . . 10, 14

## LOUISIANA CONSTITUTION

Louisiana Constitution of 1974, Article 1, § 2 . . . . . . . . . . . . . . . . . . . . . . . . 25

Louisiana Constitution of 1974, Article 5, § 10 . . . . . . . . . . . . . . . . . . . . . . . . 1

Louisiana Constitution of 1974, Article I, Sections 2, 3, 13, 14, 16, 17, 19, 20, 22, 24,
and 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Louisiana Constitution of 1974, Art 5, § 5 (D) (2) . . . . . . . . . . . . . . . . . . . . . 32

Article 1, Section 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## STATUTES

La.Cr.C.P. art. 930.8(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

La.C.Cr. P. Art. 916 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

La.C.Cr.P. Art. 927(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

La.C.Cr.P. Article 930.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

La.C.Cr.P. art 930.8(A)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

La.R.S. 14:30.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LSA-C.Cr.P. Art. 797(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R.S. 14:30.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## STATE CASES

Deloch v. Whitley, 684 So.2d 349 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 16

State ex rel Golver v. State, 660 So.2d 1189 (La. 1995) . . . . . . . . . . . . . . . . . 17

State ex rel. Hills v. State, 54 So.3d 1109 (La. 2011) . . . . . . . . . . . . . . . . . . 17

State v. Bell, 937 So.2d 445 (La.App. 3 Cir. 9/27/06) . . . . . . . . . . . . . . . . . . . 2

State v. Holmes, 619 So.2d 761 (La. App. 4th Cir. 1993) . . . . . . . . . . . . . . . 28

State v. Kenneth Dilosa, 848 So.2d 546 (2003) . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Palmer, 775 So.2d 1231 (La.App. 1 Cir. 2000) . . . . . . . . . . . . . . . . 25

State v. Rick Langley, 711 So.2d 651 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Robinson, 387 So.2d 1143 (La. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 32

## OTHER

An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 years after
Gideon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

. . "STRENGTHENING FORENSIC SCIENCE," by the National Academy of Sciences

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE
FIFTH CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes　　　　DOCKET NO. _____
　　　　　Petitioner

VERSUS　　　　　　　　　　　　　　FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY　　　　　　Deputy Clerk
　　　　　Respondent

\* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \*

SUPERVISORY WRIT OF REVIEW
AS TO PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF

\* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \* 　 \*

MAY IT PLEASE THE COURT:

　　　　NOW INTO COURT comes, Rigoberto Funes, who by virtue of the evidence

submitted in the state's response shows that he was entitled to the relief sought.

At present, this case requires critical attention, as the judgement of the trial court is

contrary to the evidence and both the State and Federal constitutions.

### JURISDICTION IS CONFERRED UPON THIS COURT

　　　　The Supervisory Jurisdiction of this Honorable Court derives from the *Art. 5,*

*§ 10,* and *La.C.Cr. P. Art. 916,* divesting the trial court of jurisdiction after final

judgement the is subject to supervisory jurisdiction of this court by law.

### STATEMENT OF THE CASE

　　　　On January 8, 1998, Rigoberto Funes was charged by Grand Jury Indictment

with four (4) counts of second degree murder, violations of statutes (*R.S. 14:30.1*)

relative to such.  Count II was dropped and petitioner proceeded to trial on Count I,

III, and IV. A twelve member jury found him guilty as charged on the remaining

counts.

　　　　Petitioner was subsequently sentenced to three (3) consecutive life terms of

imprisonment to be served consecutively.  Petitioner's Motion for Reconsideration of

1

Sentence was denied by the trial court.

On December 28, 2011, the Fifth Circuit Court of Appeal affirmed defendant's convictions, but remanded for resentencing. *State v. Funes*, ___ So.2d ___ (11-KA-120, La.App. 5 Cir. 12/28/11). Defendant timely filed a writ of certiorari in the Louisiana Supreme Court. The Supreme Court denied relief on May 25, 2012. (2012-KO-0290). The Trial Court has denied petitioner's request for post conviction relief without ever affording petitioner the minimal protections that were incorporated into the post conviction statute by Proffessor Cheney C. Joseph, upon creation. This Honorable Court of Appeals is confronted with "clear" and "convincing evidence" of the District Courts denial of petitioner's rights to due process, equal protection of the law, and/or petitioner's right to counsel to aid him in the presentation of his "direct appeal" of his ineffective assistance of counsel claim. For this reason, the District Court's judgement of January 16, 2013, is contrary to law and evidence (see attached exhibit "A", judgement of District Court)

## A CONCISE STATEMENT OF THE CASE INDICATING THE NATURE OF THE CASE, THE ACTION OF THE COURT AND THE DISPOSITION

The nature of this case is Post-Conviction, and petitioner comes before this honorable court seeking supervisory review in this quasi-civil proceeding because the trial court has erroneously denied petitioner's request for post-conviction relief on January 16, 2014.

## ASSIGNMENT OF ALLEGED ERRORS

Primarily everything here is a Federal Question of Law or deals with the State's interpretation and application of federal law. But there is one assigned error complained of, that being: The Trial Judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts. (cannot reference page numbers, court refused access to record.)

2.

**A LISTING OF ISSUES PRESENTED FOR REVIEW:**

*"Federal Questions of Both, "Law" and "Fact" Are Raised by the Actions and Inactions of the Trial Court; *Applicability of *Article X, § 30* of the *Louisiana Constitution of 1974.*; *Procedural Default Pursuant Post Conviction Procedures; *Cause and the Equitable Tolling Issue; *The Standing Agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB System which ultimately begets Systemic-Conflicts-of-Interest; *Jefferson Parish D.A.'s Office has conceded to...; *Attachments which weigh on this Court's decision; *Petitioner maintains that *Pro Se* Pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers; *"Prejudice Component"; *Facts not known exception La.C.Cr.P. Art. 930.8(A)(1); *Deferral of IAC claim from Direct Appeal to PCR Constitutes 'Cause'; *Petitioner's Sixth Amendment Right to a Fair Trial was violated during the Selection of the Jury? (*Batson* and *Strickland* Violations); *Trial Court Violated Petitioner's Due Process Rights to a Fair Trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial; *The Trial Judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts; *Whether Prosecutorial Misconduct occurred: (1) Prosecutor Improperly Vouched for the Credibility Witnesses and (2) Failed to Correct Perjured Testimony; *Counsel Rendered Ineffective Assistance of Counsel at Trial When Counsel Failed to Seek Quashing of the Grand Jury Indictment on the Grounds of Violation of the National Voter Registration Act of 1993; *Ineffectiveness by Not Securing Rebuttal Experts for the Defense *Independent Claim of "Grand Jury and Trial Jury Discrimination" (This Is a "New Fact" Previously Not Known to Petitioner and it Meets the Exception of 930.8(a)(1) *Trial Court Violated Petitioner's Due Process Rights to a Fair Trial When it Failed to Instruct or Sequester the Jury When it Retired During Recess and Breaks During Trial; *Conflict of Interest Against the Entirety of the Jefferson Parish Indigent

Defender; *Deprivation of Access to Relevant Transcripts

## STATEMENT OF FACTS RELEVANT TO THE ASSIGNMENT OF ERRORS AND ISSUES FOR REVIEW, WITH REFERENCES TO SPECIFIC PAGE NUMBERS OF THE RECORD

The Trial Judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts in his summation to the jury and in his jury instructions.

## A SHORT SUMMARY OF THE ARGUMENT

The trial court made a erroneous determination that petitioner's claims were subject to procedural default, the state submitted evidence proving petitioner's claims were sustainable, and he established that he should have been given an evidentiary hearing which the trial court refused to do. The "Requests for Admissions" was never responded to by the state, and because of this it is the state who is in procedural default. Petitioner established cause for his failure to file a pre-trial motion to quash. Petitioner's entire case was tainted by the unconstitutionally composed jury pool, trial counsel was ineffective for failing to challenge the taint; nd the Jefferson Parish Public Defender's Office is steeped in  Systemic Ineffective assistance of counsel and deprives those it represented of their *6th Amendment* right to counsel.

### Procedural default pursuant post conviction procedures

Petitioner, contends that the state's procedural objections to his/these claims are without merit and should have been rejected in the face of their own exhibits.  Mr. Funes' makes a substantial showing that delay in filing the *NVRA* issue was not his fault, but rather the result of ineffective and conflict-laden counsel appointed by both the Court and the Appellate Project (at the Appeal stage). Petitioner presently lacks the ability: to fully understand english,  investigate his claim; he lacks the academic capability to comprehend post conviction statutes', procedures, and case law.  He

---

[1]
Petitioner has never had his intellectual capability assessed through an individual interview by one or more psychologists nor has he ever been administered a verbal intelligence and reading

is totally dependant upon others to aid in the perfection and presentation of his claims and issues.

Petitioner suffers from a "constructive denial of counsel," which constitutes a "structural defect" in the collateral review process as was true in the pre-trial, trial and post-trial proceedings. Having counsel on one's first appeal is a matter of right. In light of recent decisions, a claim of ineffective assistance of trial counsel in the first collateral review is deemed a continuation of the direct appeal process as explained in *Martinez v. Ryan, supra* and *Trevino v. Thaler* 569 U.S. __ (2013).

The request made by the State seeking the dismissal of several of petitioner's claims at the trial court level pursuant the holdings in *Francis v. Henderson*, 425 U.S. 536 (1976), were insufficient grounds upon which to deny relief. A dismissal under *Francis* or any other reason advanced by the state on any claim is inapplicable to the fact specific circumstances of this case. Funes' failure to timely challenge the composition of the grand and petit jury pools meets the "cause" and "prejudice" requirements of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); he establishes the elements of *Francis*. The state maintained, that Funes has

---

comprehension test. Also, he has never been administered the Law School Admission Test (LSAT) to compare his ability to those of students starting out in the field of law. Also, there has been no personality testing in order to get an estimate of his current emotional and mental well-being, gauging whether his capacity to perform the task he faced (filing a competent post-conviction), was negatively affected by depression or any other debilitating mental illness.

[2]

In post conviction proceedings, the most critical reason which justifies the help of a lawyer are: The need for factual investigation. Since the vast majority of post-conviction issues are based on facts that are not in the record, the most critical aspect of any case will be the required factual investigation. Regardless of how educated the individual, or how long he has to prepare, this task is simply impossible for the prisoner to perform from the Louisiana State Penitentiary.

[3]

Some courts had expressed the opinion that even a complete library would not provide the inmate with much chance of success: "In this court's view, access to the fullest law library anywhere is a useless and meaningless gesture in terms of the great mass of prisoners. The bulk and complexity [of the legal issues] have grown to such an extent that even experienced lawyers cannot function efficiently without the support of special [research] tools . . . . To expect untrained laymen to work with entirely unfamiliar books whose contents they cannot understand, may be worthy of *Lewis Carroll*, but hardly satisfies the substance of the constitutional duty of [access to courts]. Access to full law libraries makes about as much sense as furnishing medical services through books like: "Brain Surgery Self Taught", or "How to remove your own Appendix", along with scalpels, drills, hemostats, sponges and sutures." *Falzerano v. Collier*, 535 F.Supp. 800, 803 (D.N.J. 1982)

not demonstrated "cause" nor "prejudice." This contention is contrary to the record. Petitioner sufficiently raised and argued counsel's pre-trial ineffectiveness, trial post-trial ineffectiveness which immunizes petitioner from the applicability of procedural default.   Collectively, the manner in which the state intends to use counsel's ineffectiveness as a battering-ram against the constitutional rights of this petitioner connotes evidence of "structural-error."

Here, Funes has argued his claims, both as independent and inter-related substantive issues. Funes's arguments encompass:

(1) the State of Louisiana engaged in [jury pool-fixing] for both the Grand and Petit juries through non-compliance with the *NVRA of 1993*,

(2) Trial counsel was systemically ineffective. Counsel's active engagement in a conflict-of-interest during his representation of petitioner (Counsel concealed the systemic-ineffectiveness of the public defenders office as described in "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon,"

(3) Counsel's "active" and "systemic-conflict-of-interest" caused counsel to be ineffective in not filing a motion to quash both the Grand Jury and the Petit Jury due to systemic exclusion of those who are handicapped, minorities, and/or reliant upon public assistance and the systemic-ineffectiveness by the design and operation of the Indigent Defender System..

(4) The Indigent Defender Board(s) is/are working in collusion with the District Attorney's Office to allow the clients of the IDB office to be subjected to unconstitutionally tainted prosecutions and discriminately composed Grand and Petit Jury pools during the Indictment and trial process.

Unlike *Deloch*, this petitioner did/does not speak the English language, and was given an interpreter for all proceedings. This fact goes to the truth of petitioner having been completely reliant upon the expertise and guiding hand of counsel. At any rate, the State of Louisiana has introduced evidence into the record which effectively carried petitioner's burden of proving his entitlement to relief. The petitioner alleged and the State of Louisiana submitted verifiable evidence that, the State of Louisiana, October 15, 2012 - October 17, 2012, was convicted before the U.S. Eastern District Court, of violating the *National Voter's Rights Act of 1993*.

The state's chosen defenses against petitioner are extinguishable. To overcome

6

107.

procedural default, petitioner need only establish "cause" for the procedural default. Procedural bars are only applicable when the a moving party proves that the applicability of the procedural bar did not derive from: 1.) a corrupted process, or 2.) internal-scheme specifically designed or structured to deprive a party litigant of a protected right (right to effective counsel and/or conflict-free counsel) by fraud, silence, and or misrepresentation.

Although the state argues that counsel's failure to file a pre-trial motion to quash waived petitioner's equal protection claim against the State of Louisiana for "fixing" the composition of the criminal jury pools for the Grand and Petit jury through non-compliance with the mandates of the *NVRA of 1993*." Counsel's failure to file the pre-trial motion establishes that counsel was not acting as counsel envisioned by the *Sixth Amendment*, but rather suffering from a conflict-of-interest.

The instant petitioner directs this Honorable Court's attention to the "cause" of his procedural default: Counsel did not file a motion to quash the grand jury nor the trial jury because of the exisiting conflict they had as a member of the Jefferson Parish **Indigent Defender Board** who relied on this conflict to go unnoticed for continued wage earnings. This constitutes an "external factor" which injected "cause" for the procedural default to be embedded in reality. Petitioner avers that both his trial and appellate counsel suffered from inter-related conflicts-of-interest.

(1) Trial counsel had an interest in not filing systemic ineffectiveness against his office nor objection to his own failure to file proper and timely pre-trial motions to quash the Grand and Petit Jury's impaneled for violating of the *NVRA of 1993*. That is how counsel "prejudiced" his client by not preserving the issue for review on direct appeal.

(2) Because the direct appeal is a stage where petitioner still has the right to counsel, Appellate counsel is a part of a system which "systemically" provides ineffective assistance of counsel at the appellate level. Appellate counsel had a coveted interest in not pointing out to the appellate court, trial counsel's ineffective-assistance for the failure to file pre-trial motions to quash. This is so because, (appellate counsel) too had been ineffective in countless cases for never having pointed out the ineffective assistance of trial counsel(s) for not filing pre-trial motions to quash indictments on the grounds of intentional violations of the *NVRA of 1993* thereby tainting the jury pools for the Grand and Petit juries (juries which should have been quashed due to the taint)

(3) Further, because appellate counsel is an integral part of the system by passing on these "structural error" claims and ineffective assistance at the appellate level, appellate counsel had an interest in not pointing out that, as individuals and as a collective body the Attorney's of the Louisiana Appellate Project had been by-passing legitimate ineffective-assistance of counsel claims against Indigent Defender Board Attorneys as individuals and as a collective (in thousands of cases). The Indigent Defender Board has "never filed pre-motions to quash the grand or petit juries despite all the elements and evidence to prove those as viable claim since the public discovery of the systemic excluding of a distinctive class of people from becoming registered voters to be included in the state jury pools because of their disability, race, economic or social status, and other identifiers set out in the *NVRA of 1993.*"

---

Cause and the equitable tolling issue

The State of Louisiana, in its desire to preserve the unconstitutional practice of depriving the poor, handicapped and un-educated of an opportunity to be members of the jury pools throughout the State of Louisiana seeks to prevent the adjudication of this vital issue. Discrimination otherwise qualified persons from becoming registered voters. Petitioner avers that the following will show the self -exterminating nature of the procedural defaults raised by the State of Louisiana.

1.) Who is responsible for supplying the *Sixth Amendment's* standard of effective assistance of counsel for the poor 40+ years after *Gideon*, when a person is charged with a crime inside the boarders of Jefferson Parish? *Answer: The State of Louisiana.*

2.) Does this State have obligation to comply with the *National Voter's Rights Act of 1993? Answer: Yes.*

3.) Is it true that the IDB Office of Jefferson Parish has never questioned the unconstitutional practices deriving from the State's Violation of the *NVRA of 1993. Answer: Yes.*

4.) Was the State of Louisiana, found by the U.S. Eastern District of Louisiana, to have violated its obligation to comply with the *National Voter's Rights Act of 1993? Answer: Yes.*

Considering the honest answers to these questions, the statute of limitations to filing a "Pre-trial Motion to Quash the Grand and Petit Juries, does not constitiute a "jurisdictional bar" and as such, it is subject to equitable tolling. "*The doctrine of equitable tolling preserves a plaintiffs claim when strict application of the statute of limitations would be inequitable.*" The doctrine applies principally where the plaintiff is actively misled by the defendant (in this case his attorney) about the cause of action

or is prevented in some extraordinary way from asserting the rights. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). Petitioner thus meets the "cause" and "prejudice" requirement of *Francis*, because there were extra-ordinary preventive measures in place to prevent counsel from filing them.

**The standing agreement Jefferson Parish District Attorney's Office and the Jefferson Parish IDB system which ultimately begets systemic conflicts of interest.**

Petitioner avers through the art of deduction, the following is both true and evident. There exists an unwritten and unspoken of agreement between D.A.'s Office and Public Defender's Office which includes but is not limited to;

A.) No IDB Counsel will file pre-trial Motions to Quash the Grand or Petit Juries will be filed with respect to the State's Violation of the *NVRA of 1993*.

B.) No IDB Counsel will file any pleadings against himself/herself nor the Jefferson Parish IDB Office for promoting and/or preserving the systemic unconstitutional Ineffective-Assistance of Counsel as set forth in, but not limited to, "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon," as published in 2004, nor which remains reality to the date of this filing.

Standing alone, these two agreements are depriving citizens of the honest and constitutionally required services of the Jefferson Parish IDB Office. Petitioner bears the burden of proving or disproving, through the actions or inactions of the Jefferson Parish IDB Office that this understood contract exists. In proving strategically arranged and systemic ineffective assistance of counsel establishing "cause" for the procedural default, the following facts are offered.

A.) Since the State of Louisiana's deliberate and systemic violation of the *NVRA of 1993*, was exposed in *Ferrand v. Schedler*, the Jefferson Parish IDB Office has not made any pre-trial motions to quash the Grand Jury and/or Petit Jury on the grounds of the jury pools being "fixed" by the state's refusal to comply with the *NVRA of 1993*, despite the issue being a viable and sustainable one.

B.) The Jefferson Parish IDB Office has not filed a single claim of systemic ineffective assistance of counsel against the IDB as a whole. They are prevented from filing the claim because it is a conflict-of-interest to do so. It would be politically incorrect, socially deplorable, economically devastating and/or would likely cost their employment with the Jefferson Parish IDB. So, it is through the silence of the Jefferson Parish IBD, the Jefferson Parish District Attorney's Office is given a decisive advantage over any person in that parish as a part of a systemic reality and the extreme budgetary constraints of the Jefferson Parish IDB Office. Ultimately and realistically, this serves to deprive those charged with a crime in this parish of the *Sixth Amendment*

Right to Counsel and *Fourteenth Amendment* Right to Due Process and Equal Protection of the Law.

The only reasonable conclusion is evident, petitioner has been deprived of his *Sixth Amendment* right to counsel, his right to conflict-free counsel and his right to a Grand and Petit Jury, free from systemic-exclusion of handicapped, minorities and, those dependant upon public assistance.

As a starting point, systemic and unconstitutional exclusion of minorities or readily identifiable group is "structural error" requiring automatic reversal and not amenable to "harmless error" analysis.  See *Arizona v. Fulminate* and *Vasquez v. Hillery.*

Now, the magnitude and the scope of the jury-pool-fixing scheme set in place by non-compliance with the *National Voter Registration Act*, was sufficient to bring a halt to any efforts to immediately re-indict petitioner.  How is that so?  The State of Louisiana would have been obligated to bring the State of Louisiana into conformity with the *NVRA of 1993*, until then, any subsequent Grand Jury Pool would have suffered the same unconstitutional taint.  The repair of the unconstitutional Jury Pool System could not have been achieved right away, because the Secretary of State Tom Schedler was asked to remedy the matter, and when he refused, actions were taken and both he and the State of Louisiana were sued in two (2) civil suits. The aforementioned suits are what brought this constitutional rights deprivation to petition's attention. Those civil cases are *Ferrand v. Schedler* and *U.S. v. Louisiana* as set out in the PCR Application and Memorandum in Support.

The time period that it may have or perhaps would take to compose a constitutionally acceptable trial and petit jury, the petitioner's speedy trial rights would have been implicated and this too could have been a "pry pole" used by IDB counsel in any effort to securing a plea agreement on behalf of his client as was the case in *Winters v. Cooks*, 489 F.2d 174 (C.A. 5 (Miss.) 1973).

10

107.

As a settled issue, a *Batson* violation is structural error for which prejudice is generally presumed.   This violation is sufficient to undermine confidence in the outcome of the trial because Grand and Petit Jury discrimination is structural error.  See *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct.  1246, 113 L.Ed.2d 302 (1991)(noting the structural defects in the constitution of the trial mechanism "defy analysis by 'harmless-error' standards").

As a result of the procedural objections urged by the Jefferson Parish District Attorney's Office, the following questions were posed to them but have gone unanswered:

1.)  When did the District Attorney's Office notes the statistical under-representation of black and other minorities in their jury pools for the Grand and Petit Jury?

2.) When did the Jefferson Parish realize that their Jury Pools were unconstitutionally composed by way of the state's Non-compliance with the *NVRA of 1993*?

3.)   Where any other methods in place which aided the Jefferson Parish District Attorney's office in facilitating the under-representation of minorities, handicapped and the impoverished?

4.) How many indictments where secured while any of the above practices were in place?

5.) How many criminal trials proceeded to verdict while the above practices where in effect?

## JEFFERSON PARISH D.A.'S OFFICE HAS CONCEDED TO...

Though the State argued that claim #1 fails to state a claim upon which relief can be granted, this assertion was refuted in the state's own pleading.  The cited cases where this exact same issue was adjudicated, in *Francis* and *Davis*.

Petitioner avers that, "the fixing of the Grand and Petit Jury so as to exclude those who were handicapped, minorities and/or dependant upon 'public assistance,' is a "Federal Question of law because it involves the state's compliance with a federal statute."

In urging procedural default against petitioner's claim, the State of Louisiana

11

effectively advances petitioner's argument that counsel was ineffective and this ineffectiveness constitutes the "cause" for petitioner's subsequent default. Because of the conflict-of-interest, the IDB counsel rendered aid to petitioner's adversary and provided them a better opportunity to indict and convict. Through the "understood" and "unspoken agreement" between the Jefferson Parish District Attorney's Office and the Jefferson Parish IDB to: *Never file challenges to the unconstitutional jury pool composition nor selection processes*, petitioner could only receive systemic-ineffective assistance. Petitioner re-invokes his request for an evidentiary hearing and an opportunity to depose under oath, the entire staff of the IDB Office. Petitioner furthers that, he wishes to lodge public records request for the IDB Office and archived records of the Jefferson Parish IDB Office covering the expanse from 1994 to 2013, with respect to all clients who have been subject to either a Grand Jury Indictments and/or Petit Jury Trials. Further, petitioner aims to fully effectuate and prosecute his request for all the persons he listed as material-witnesses to this cause to come forth and testify under oath as to the reality of and the effects of the State of Louisiana violating the *National Voter's Rights Act of 1993*. Also, this Honorable Court should note that the cases of *Deloch*, *Francis*, and *Davis* are not synonymous with this case, as not one of those litigants raised the claim(s) of ineffective-assistance of counsel nor conflict-of-interest against the counsel representing them at the time of the procedural default.

## ATTACHMENTS WHICH WEIGH ON THIS COURT'S DECISION

In error, the trial court functioned under the false belief that Admissions of Fact cannot be used in these proceedings, however, the post-conviction provisions specifically provide for these discovery, admissions of fact, authentication of documents, and conducting an evidentiary hearing to further develop the record. Petitioner presented to the trial court, all of the following, they remain pending without answer, thus, this case is not propery before this Court of Appeals:

(L) Request for Post-Conviction Application-related "Admissions of Fact", Request for Post-Conviction Application-related "Discovery Request Post-Conviction Application-related "Authentication of Documents request" for all documents acquired through discovery; Request for subpoena of out-of-state witnesses; Request that the Jefferson Parish Public Defenders involved in this case submit to the subpoena power of this Honorable Court to give testimony on the following issues which bear upon this court's decision;

(a) When did they become aware of the existence of the *NVRA of 1993*?

(b) In how many cases have they filed a motion to quash, and/or sought relief based upon the State of Louisiana's violation of the *NVRA of 1993*?

(c) In how many cases have the Jefferson Parish IBD filed pleadings alleging systemic ineffective assistance of counsel by their office as a result understanding and but not limited to the findings set out in the <u>An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 years after Gideon?</u>

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon," members of the Louisiana Appellate Project; and members of the Spangenberg Group who made the first study of the Louisiana Indigent Defender System (proposal presented to Sam Salton, James Boren, and Nina Maples, September 11, 1990), and its subsequent results. Petitioner further invokes his right to call/summons/subpoena out-of-state witnesses for the purposes of fully developing the record relative to the claims raised through these pleadings.

## PETITIONER MAINTAINS THAT PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists, does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of any favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the issue in *Haines v Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

"A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a

13

reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 590-52 & 107, 92 S.Ct. at 596, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Petitioner, hereby invokes his right to be held to a less stringent standard which provides that his pleading "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." Plaintiff contends that precedent of the United States Supreme Court regard pro se pleadings is binding.

## "PREJUDICE COMPONENT"

The petitioner has established the "cause" requirement of *Francis v. Henderson*, 425 U.S. 536 (1976), and *Davis*, in the arguments presented above, hereinafter, the petitioner quotes the legal authority for the purposes of showing that he meets the "prejudice requirement" as a result of IDB Counsel's failure to challenge the jury-pool-fixing-scheme. In the case of *Winters v. Cook*, 489 F.2d 174 (C.A.5 (Miss.) 1973), the U.S. Fifth Circuit addressed the issue of waiver by counsel:

"Waiver by counsel— As the court below found on clear record evidence, Winters attorney fully considered the possibility of raising constitutional objections to the racial composition of the grand jury , but rejected that course of action in favor of a plea of guilty. By such plea his client was assured of receiving the prosecutions's recommendation of a life sentence with parole after serving ten years), thus avoiding what counsel reasonably considered was the distinct possibility of the death sentence. Counsel testified that the threat of his urging these constitutional objections to the jury selection procedures was the 'pry pole' that he used in getting the state to allow the defendant to enter a guilty plea. In his opinion as an experienced criminal attorney this procedure utilized the unlawful condition in the most effective way. Even the most skillful trial tactician should be hard pressed to fault counsel's considered and conscientious strategy to waive this option in return for practical assurance that his client would not be executed. Where an there a competent attorney who is well-versed in the defense of murder charges deliberately refrains from making a known constitutional objection to the composition of a grand or petit jury for strategic purposes, there had been a deliberate by-pass and waiver under *Fay v. Noia* 372 U.S. 3912, 83.

14

III.

S.Ct. 822, 9 L.Ed.2d 837 (1963)." (This Footnote is very important)

The prejudice suffered by petitioner Funes is summed up intelligently by the excerpt from the aforementioned court opinion. The attorney in that case used the 'threat of his urging these constitutional objections to the jury selection procedures' as the 'pry pole' "that he used in getting the state to allow the defendant to enter a guilty plea." This ( a constitutional attack against the unconstitutional composition of the Grand and petit jury pool, along with other necessitated verbal objections) is what IDB counsel in this case <u>never considered, nor used</u> despite the fact that this tactic has been available since 1973, and all the evidence to prove the claim was clearly ascertainable by counsel and available to counsel pre-trial. Even the State of Louisiana through the Parish of Jefferson, District Attorney, specified this fact in its procedural objection when they wrote:

> "...and the petitioner in this case was as capable of learning these facts as was petitioner in that case." Id. at page -5 of 8- (state's procedural objections)[5]

Simply put, the state avers that the non-English speaking petitioner should have either known of this violation or should have learned this violation from a source other than counsel. If this is true of petitioner, how much more is this true of IDB counsel? When confronted with a similar question in *Hollis v. Davis*, 941 F.2d 1471 (C.A. 11 (Ala.) 1991), the court wrote extensively upon the premise which is likewise applicable

---

[4]

The same rationale set forth in Winters v. Cook, applies to all the state's claims, and in order to avoid redundancy, petitioner applies his contention of ineffective assistance of counsel coupled with the conflicting-interests maintained by counsel during all proceeding are which are the same which the state now urges as lapses warranting the application of procedural default. The contention that the District attorney enjoins him in proving the prejudice prong of ineffectiveness of counsel's failure are still rendering aid to the prosecution at this late hour. Counsel's pre-trial deficient performances is the state's sole basis for launching a procedural default assault against petitioner's claim of suffering constitutional deprivations.

[5]

True enough, the Deloch case and this case is similar as to the primary claim raised, but Sidney Deloch, did not raise the independent substantive claims(s) of ineffective assistance of counsel nor conflict-of-interest. And for that reason, his claim failure, he (Deloch) never sought, beyond 930.8(A)(1)(l) to establish the cause and prejudice components required by *French v. Henderson* nor *Davis v. United States*. And for the sake of clarity, La.C.Cr.P. Art. 930.8(A)(1)(l) was not nor truly could it be a consideration here as petitioner's application for post-conviction relief is both timely and his very first.

here. In *Hollis* the Court wrote:

> "But Mr. Hollis challenge involves the systematic exclusion of blacks from the pool from which grand and petit juries were chosen. This right could hardly have been better established by 1959, and any competent attorney practicing criminal defense in Alabama at the time should have known of it." Id. at 1477-78

> "If Mr. Jinks did not assert this right because he was unaware of it his representation was not "within the range of competence demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). A Justice of the Alabama Supreme Court noted in 1963 that "it is beyond the realm of speculation that any active lawyer, practicing law and residing in Montgomery, could fail to know that the question of the exclusion of Negroes from the juries in Montgomery County has been raised in recent years,... [I]t is inconceivable that any qualified and active local attorney would not know of the raising of the question...." *Ex Parte Aaron*, 275 Ala. 377, 379 155 So.2d 334, cert. Denied, 375 U.S. 989, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963) (Merrill, J., concurring ). Bullock County borders Montgomery County to the southeast. This ineffective assistance establishes cause for the procedural default."

The same principles at work in that case are also present and at work in this case. It should be common knowledge to the Jefferson Parish IBD Office to at least file a motion to quash, thereby, preserving the claim for later review if necessary and preventing future prejudice to the client's by having frustrated their ability to raise the challenge at a later date because counsel failed to file the requisite pre-trial motion to quash.

In recent years there has been *State v. Kenneth Dilosa*, 848 So.2d 546 (2003), *Campbell v. Louisiana*, 118 S.Ct. 1419 (1998), *State v. Rick Langley*, 711 So.2d 651 (1998), and *Deloch v. Whitley*, 684 So.2d 349 (1996), therefore, IDB counsel could not argue that he was unaware of his obligations with respect to this issue. Historically, cases like *Eubanks v. Louisiana* (1958), *Pierre v. Louisiana* (1939) are just two (2) cases that counsel should have at least been casually acquainted with. Further, there have been cases where litigants have argued, albeit improperly, that they were entitled to the presumption of prejudice when their trial counsel failed to file the required Pre-

16

trial Motion to Quash. *Francis v. Henderson* required that the cause and prejudice provision be met as done herein.

## FACTS NOT KNOWN EXCEPTION La.C.Cr.P. Art. 930.8(A)(1)
### (Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections (inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filing a part of this exhaustion process. As it stands, 1.) there is no requirement of "due diligence" in seeking facts upon which to file a claim predicated upon *Article 930.4*, FACTS NOT KNOWN[6] or 2.) a time limitation for meeting the exception.[7] As written *art. 930.4* is designed to deprive only certain applicants (those without new facts [*art 930.8(A)(1)*], of the unlimited time period within which to file an application for post-conviction relief. Because this is a limited and selective restriction, it cannot be said that *art. 930.8(A)(1)* therefore denies those meeting the exception their right of access to court...). Consequently, this petitioner does not fall in the category of one who failed to raise a known issue on appeal and the Louisiana Supreme Court recognizes no "due diligence requirement" in seeking the facts to be used in meeting an exception to procedural bars. However, plaintiff did file this application within two years of discovering that: "the Parish of Jefferson, State of Louisiana, through its public assistance offices has been violating the *NVRA* (National Voters Right Act), which in turn had a direct impact on the composition of plaintiff's petit/trial jury."

Logically then, plaintiff's post-conviction and post-appeal discovery of the

---

[6] *State ex rel. Hills v. State*, 54 So.3d 1109 (La. 2011)

[7] *State ex rel Golvar v. State*, 660 So.2d 1189 (La. 1995)

violation of the Federal *NVRA* [a] and its impact on the composition of [his] trial jury meets this exception as well. These are facts which plaintiff had no knowledge of, nor knew the Parish of Jefferson, State of Louisiana to be violating nor was he aware that this violation of the *National Voters Rights Act* was significantly altering the composition of his trial jury, until, he was given notice of the case of *Ferrand v. Schedler*, 2:11-cv-00926-LMA-JCW. Though disparities are obvious, plaintiff avers that with the assistance sought, he can meet his burden of proving this claim. The charts are listed and titled hereafter:



Initial Applications for Louisiana SNAP



Louisiana Medicaid Applications to DHH

---

[a] Plaintiff obtained a copy of the Civil Suit filed in *Ferrand v. Schedler*, Case 2:11-cv-00926, Document 1 Filed 4/19/11. See Exhibit "A". (This civil suit is attached hereto and it is 27 pages long, and it has exhibits from Attorney Ronald Wilson (Wilson Letter 2 pages) and another from Attorney Ronald Wilson ( Letter to Secretary Schedler properly filed). These exhibits are copies of correspondence to Secretary of State, Honorable Tom Schedler.





As reflected above and on the previous page, there are gross disparities in the amount of people who sought public assistance versus the amount of voter registration applications available and/or submitted. The failure to implement the *NVRA of 1993* was pervasive and widespread. At one point, the Department of Children & Family Services did not have enough voter registration applications forms available for distribution nor was assistance offered to applicants who may have needed help in completing the forms as required by law. Most importantly, the Department of Children & Family Services, has conceded in *Ferrand v. Schedler*, to non-compliance with the *NVRA*, thus, plaintiff has made a relevant showing of a claim which if established, would entitle him to relief. (See *La.C.Cr.P. Art. 927(A)*) Plaintiff hereby requests that this Honorable Court takes "Judicial Notice" over all the facts, evidence and pleadings filed in *Ferrand v. Schedler*, 2:11-cv-00926, (U.S. Eastern District of Louisiana 2011),(See Exhibits "A" and "B" of Post Conviction Record transferred to this Honorable Court) as it relates to proving plaintiff's complaints of deprivation of a constitutionally protected right which had a discriminatory (class discrimination) effect upon the composition of his trial/petit jury.

---

Deferral of IAC claim from direct appeal to PCR constitutes "cause"(Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filing a part of this exhaustion process. Plaintiff contends that *Art. 927(A)* in pertinent part provides:

> If the application alleges a claim which if established would entitle the petitioner to relief, the court shall order the custodian, through the district attorney in the parish in which the defendant was convicted, to file any procedural objections he may have, or an answer on the merits if there are no procedural objections within a specified period not in excess of thirty days.

This provision gives the state [a period not in excess of thirty days] to file procedural objections.  The only requirement imposed upon the plaintiff is, "to allege a claim which, if established, would entitle petitioner to relief" and he has met this requirement

In its procedural objection, the state's focus was the applicabililty of *Martinez* this was settled in *Trevino*  Because ineffective assistance of counsel claim are routinely deferred from the direct appeal process to post conviction proceedings by judgement of the Circuit Courts of Appeal, within the State of Louisiana.

What effect did the deferrals have on petitioner's rights, a crushing one, as set out and described in *Martinez*? Post-conviction proceedings in this State are the first opportunity that a petitioner will have to have this claim heard, because no court heard the merits of the claim on appeal thus, direct appeal proceedings remained uncontest the time plaintiff filed his Application for Post-Conviction Relief.

Petitioner  was constructively denied a proper defense on this issue as a result of underfunding, political interference and systemic ineffectiveness as set for in the "Assessment of Trial Level Defense Services in Louisiana 40 years after Gideon."

(See Exhibit "C" of Post Conviction Record transferred to this Honorable Court) Researched and written by the National Legal Aid Defender Association, Commissioned by the National Association of Criminal Defense Lawyers."

The state's theory of petitioner being responsible for firing a fatal shot was rested upon the foundation that there was an alleged match between a gun found and what petitioner is alleged to have had in his possession, the bullet from the victim's and shell casings found on the scene of the crime. For comparative purposes, when the gun was test-fired and the results compared between the crime scene evidence and the test-fire evidence, the state's expert declared a match.

Despite the opinion of the state's expert opinion, the petitioner hereby alerts this Honorable Court to a critical and "NEW DEVELOPMENT," which crumbles a substantial portion of the foundations of the state's case.

There is a book which has been published in the field of science which establishes some critical facts now accepted amongst the leading scientist in the field of forensics. The book is entitled "STRENGTHENING FORENSIC SCIENCE," by: the National Academy of Science.[*] This book reveals that matching guns to bullets and bullets to guns as "junk science" and is wholly unreliable. As such, petitioner contends that in the absence of what has been purported to be a match between the gun and the bullet fragments which were extracted from the victim(s). *Due Process* of Law and a Right to a fair trial can only be secured by affording petitioner the moneys for expert testing on the bullets and bullet fragments himself. Trial counsel failed to do this, counsel was ineffective for not making full use of this new scientific developement in defense of his client.

Having counsel on one's first appeal is a matter of right and since this claim

---

[*] Petitioner hereby invokes his right to secure out of state witnesses, specifically, the authors of this work can verify how and why the science relied upon by the state and the jury to convict petitioner amounts to unreliable "junk science".

21

constitutes a continuation of the appellate process, such is necessitated. At this time failing to appoint counsel, the trial court would constructively deprive appellant/plaintiff the fundamental and substantive right to have the guiding hand of counsel at a "critical stage" in the proceedings wherein this will be the first time ever that trial counsel's ineffectiveness is heard. (*U.S. v. Cronic, supra*, violation)

Petitioner's Sixth Amendment right to a fair trial was violated during the selection of the jury? (*Batson* and *Strickland* violations)(Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied his constitutional right to a fair and impartial trial in violation of his right to an unbiased jury, when his counsel failed to object and allowed him to be tried by a jury where races, classes, genders, and persons possessing certain politicians views were excluded on those basis alone. Most were excluded for non-race neutral reasons.

Petitioner argues that the prosecutor used all of his peremptory challenges to exclude blacks from the jury based solely on their race without objection by counsel. Thus, he was denied his right to effective assistance of counsel in that aspect as set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.CT. 2052, 2064, 80 L.Ed.2d 674 (1984), where such representation is unreasonable and clearly prejudicial to the petitioner. By restricting appellate counsel access to the transcripts of the Voire Dire in these combined appeal/ post conviction proceedings, petitioner is constructively being deprived of substantive and fundamental constitutional rights.

Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial.(Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But, by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied the right to a fair trial under the *Sixth Amendment* to the United States Constitution when the trial court failed to instruct the jury or sequestered them so that they were not allowed to discuss the case with others, read any media accounts of the trial, or report any information that someone or something had influence on their verdict. The trial record is bare of any instructions concerning the trial court charging the jury prior to releasing them for recess. As for as petitioner can recollect, he following instructions from the trial court is somewhat similar: THE COURT:

> All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just keep in mind the longer we break, the later we go home. Court recesses for lunch. The Court stands in recess. Please remand the defendant.

The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures and non-instructions employed by the trial court failed to properly insulate the jurors from extraneous influences, or the possibility thereof, and at no time did the trial court adhere to the mandatory instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737 (1970).

**The trial judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts.(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court

that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that his Constitutional rights to a fair trial and due process of law under the *Fifth* and *Fourteenth Amendments* were violated when the trial judge made erroneous and misleading comments on the responsive verdicts. During the jury charge/instructions, the trial judge gave misleading comments to the responsive verdicts for second degree murder and manslaughter.

Petitioner contends that the judge's comment is reversible error, because the trial judge precluded the jurors from considering returning lesser verdicts and misled them as to their evaluation of the possible verdicts. The Louisiana Supreme Court has noted that "Louisiana juries are instructed to return a guilty verdict for the offense charged if warranted by the evidence and to consider lesser verdicts only if the evidence does not justify a conviction for the greater offense." *Roberts v. Louisiana*, 428 U.S. 325, 334 n.10, 96 S.CT. 3001, 49 L.Ed.2d 974 (1976).

**Whether prosecutorial misconduct occurred: (1) prosecutor improperly vouched for the credibility witnesses and (2) failed to correct perjured testimony (Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process.

Petitioner avers and the record support that the prosecutor made improper comments during the state's closing argument to the jury by vouching for the credibility of several of the state's witnesses, and appealing to the jury for sympathy in accepting the testimony of the victim as absolute truth. Thus, petitioner contends that

his due process right to a fair trial under the *Sixth Amendment of the United States Constitution and Article I § 2 of the Louisiana Constitution were violated. State v. Palmer*, 775 So.2d 1231 (La.App. 1 Cir. 2000).

"Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). In trying to bolster a witness's credibility, a prosecutor may not overstep the bounds of propriety and fairness. Improper vouching occurs when the prosecutor places "the prestige of the government behind the witness" by proving "personal assurances of [the] witness's veracity." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) *cert denied*, 452 U.S. 942, 101 S.CT. 3088, 69 L.Ed.2d 957 (1981). By his own language, the prosecutor asserted to the jury that members of the police force are not liars, and when they don't know the answer, they say, they don't remember. Here, an experienced assistant district attorney, repeatedly ignored his special obligation to avoid improper suggestions and insinuations.

The United States Supreme Court discussed the dangers of vouching in *United States v. Young*, 470 U.S. 1, 18-19, 105 S.CT. 1038, 84 L.Ed.2d 1 (1985). The Court stated the following:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury, and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

This matter should be remanded for a new trail and because this practice has long been held unconstitutional.

(2) Perjured Testimony:

Petitioner contends that the prosecutor's actions in failing to correct the

25

testimony of  witnesses whom I knew to be untruthful constitutes prosecutorial misconduct.  Conversely, if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous: the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict.  *Napue v. Illinois*, 360 U.S. 264, 79 S.CT. 1173, 3 L.Ed.2d 1217 (1959).  The proper question for this Honorable Court to determine at an evidentiary hearing is, whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  See, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.CT. 2392, 2397, 49 L.Ed.2d 324 (1976).  Such a corruption of the truth-seeking process strike at the confidence  of the conviction and sentence of petitioner, Rigoberto Funes.   Moreover, given the attention required to support a juror's determination of credibility to assist in his finding of  proof beyond a reasonable doubt, whether the jurors minds could have been changed to support their reasoning in reaching a verdict of guilty as charged.

This contention implicates the United States Supreme Court's decision in *Napue*. To prove a *Napue* claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony.  The prosecutor in this case allowed the State witness to give false testimony without correction, therefore, the convictions gained as a result of that perjured testimony must be reversed, if the witness's testimony reasonably could have affected the jury's verdict, even though the testimony may be relevant only to the credibility of the witness.  Id. at 269, 79 S.CT. 1173, Furthermore, fundamental fairness to an accused, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Id.  When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial.  *Giglio v. United States*, 405 U.S. 150, 92 S.CT. 763, 31 L.Ed.2d 104 (1972).

Petitioner argues that the State's conduct in this issue is governed by the principle of *Napue v. Illinois, supra.* It is true as supported by the statements, not only did the witness lie, the prosecutor also knew that the expert in ballistics was not being honest. It would be upon hearing the expert's testimony about linking guns to certain bullets, tend to believe the accuracy of the court qualified expert's testimony under oath. However, a rational trier of fact would discount the expert's testimony had they knew that the ballistics process of linking a bullet to a particular gun is flawed, then they would have discounted this testimony or possibly the judge would not have allowed it.

The United States Supreme Court has held that there is no place in our system of criminal justice for prosecutorial misconduct. *Nash v. Illinois,* 289 U.S. 908, 88 S.CT. 222 (1967); *Giles v. Maryland,* 87 S.CT. 793, 17 L.Ed.2d 737 (1967).

The Court must provide a cumulative evaluation of the false testimony, keeping in mind that petitioner does not have to show that, his trial would have resulted in acquittal or that there would an insufficiency of the evidence to support a conviction. *Petitioner need only to show a reasonable likelihood that the false testimony affected the jury's verdict. Bagley,* 105 S.CT. at 3382 n. 9.

**Counsel rendered ineffective assistance of counsel at trial when counsel failed to seek quashing of the grand jury indictment on the grounds of violation of the National Voter Registration Act of 1993.(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that this violation of constitutional protections set forth, is clear and precise. There was no fair cross-section of Jefferson Parish which viewed the evidence and returned an indictment. Why? Because the Parish of

Jefferson was steeped in violating the *National Voter Registration Act of 1993* and further was engaging in a form of purging the pool of jurors available to participate in the petit jury process.   All jurors were selected in violation of the the *NVRA*, many of them were removable for cause *LSA-C.Cr.P. Art. 797(2)*, *State v. Holmes*, 619 So.2d. 761 (La. App. 4th Cir. 1993).

**Ineffectiveness by not securing rebuttal experts for the defense (Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections" (inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Trial Counsel failed to object to numerous constitutional violations which occurred and/or he caused, thereby failing to preserve issues that could have been presented on direct appeal, thus, exposing this petitioner (an indigent petitioner) to run the risk of the invocation of procedural bars. The issues presented in this request for post-conviction relief convey that petitioner's conviction was obtained in violation of the U.S. Constitution and the Louisiana Constitution of 1974. Trial counsel even refused to secure experts for petitioner. In *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court recognized the indigent defendant's right to expert assistance. However, in order to meet the requirements of *Ake*, the defendant without means must "make an ex parte threshold showing to the trial court that [the area of expertise] is likely to be a significant factor in his defense. . . ." Id. at 82-83 (emphasis supplied). Counsel failed to secure in as much as a single expert witness in an attempt to refute the state's experts.

**Independent claim of "Grand Jury and Trial Jury Discrimination" (this is a "new fact" previously not known to petitioner and it meets the exception of 930.8(a)(1)(Applicable standard of review is de novo)**

Petitioner hereby adopts all his arguments in his original "Post-Conviction

28

Memorandum of Law" and his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But in reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner, is entitled to relief pursuant to the *Fifth, Sixth, Eight, Thirteenth and Fourteenth* Amendments of the *United States Constitution, Article I, Sections 2, 3, 3, 13, 14, 16, 17, 19, 20, 22, 24, and 27.* Further, the court should also grant such relief due to the negative impact upon the jury venire composition resulting from the State of Louisiana's refusal to comply with a Federal mandate, affecting the composition of petitioner's Grand Jury and Petit Jury.

**Trial court violated petitioner's due process rights to a fair trial when it failed to instruct or sequester the jury when it retired during recess and breaks during trial.**

Petitioner hereby adopts all his arguments in his original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner contends that he was denied the right to a fair trial under the *Sixth Amendment* to the United States Constitution when the trial court failed to instruct the jury or sequestered them so that they were not allowed to discuss the case with others, read any media accounts of the trial, or report any information that someone or something had influence on their verdict. The trial record is void of any instructions charging the jury prior to releasing them for recess. Because he has been denied access to the transcript, petitioner only remember something of the nature:

THE COURT:

> All right. Ladies and gentlemen, your lunch has arrived. When you are ready to come back to finish up the trial, please let the deputy sheriff know. Don't wait for us. Just keep in mind the longer we break, the later we go home. Court recesses for lunch. The Court stands in recess. Please remand the defendant.

The record merely states that (Whereupon, a recess taken.). The jury sequestration procedures and non-instructions employed by the trial court failed to properly insulate the jurors from extraneous influences, or the possibility thereof, and at no time did the trial court adhere to the mandatory instructions required in all criminal cases. See, *Hale v. United States*, 435 F.2d 737 (1970).

Conflict of Interest against the entirety of the Jefferson Parish Indigent Defender (Applicable standard of review is de novo)

Petitioner hereby adopts all his arguments in his: original "Post-Conviction Memorandum of Law" and in his "Traverse to the State's Objections"(inclusive of the all the exhibits attached to both), because the "new" strict rules imposed by the court that went into effect January 1, 2014, prevent him from elaborating on his claims. But by reference here, petitioner seeks to make all arguments in those filings a part of this exhaustion process. Petitioner avers that the Jefferson Parish Indigent Defender Office and its employees for years have concealed from clients that they were under-funded, and they were controlled by undue political interference. These components deprive all clients of their fundamental right to counsel (State and Federal Constitution).

**Constitutional Deprivations Problems:**

a.) Louisiana Statutes do not safeguard against undue judicial interference. Judges appoint IDB board members in violation of independent payment of defense counsel; b.) The public defender offices are not entirely state-funded as required, in favor of contract flat-fees services.(gross-underfunding places limitations on options available in representing clients); c.) Client confidentiality is constantly abridged, clients are routinely denied access to counsel until the court forces a meetings between client and counsel before the court as a part of the proceedings. d.) Louisiana Public defender statutes do not protect those accused of crimes from being the victims of public defender overload. The workload of Louisiana Public Defenders are in far excess of all nationally recognized standards. Failure to control caseload permits poor quality representation; e.) Louisiana Statutes deprived petitioner of his federal constitutional *Sixth Amendment* right to counsel by permitting unqualified attorney's to be appointed to represent indigent defender cases for which they are not qualified to represent. Additionally, there is no systematic indigent defense training in the state; f.) A review of all prosecutor and IDB financial audits reveal that there is no parity between prosecution and indigent defender defense. Indigent defense is not a co-equal partner in the justice system in Louisiana; g.) The general training of Continuing Legal Education is not specifically appropriate for the indigent defense field when ultimately served little if any purpose of bettering the quality of representation received by indigents accused of crimes; h.) Louisiana Statutes provide no guarantee that indigent defense attorneys be reviewed for quality. LIDAB has no authority or capacity to do

so. There is no supervision or quality review of the indigent defense system.

The allegations herein require appointment of independent counsel and resources to fully investigate, interview and develop the factual details of the claims. All public defenders previously appointed to represent petitioner in the pre-trial, trial and post-trial (appeal) proceedings did not raise the claims of ineffective assistance of counsel before and during trial because of the conflict of interest in raising this viable *Sixth Amendment* violation against the very system that employs them and which ultimately pays them. Failure to raise the violation of the *National Voter Registration Act* (*Equal Protection* and *Due Process Violation*) is a prime example of ineffective assistance pretrial. Appellate counsel failed to hold trial counsel accountable for egregious lapses in representation, further, depriving petitioner of substantive right.

**Deprivation of Access to Relevant Transcripts**
**Law and Argument (Applicable standard of review is de novo)**

Petitioner, Rigoberto Funes, has been constructively, actively and continuously denied his right to adequate and meaningful appeal review by way of "**STATE CREATED IMPEDIMENT,**" resulting from the appointment of ineffective and conflict-laden defense counsel from the Jefferson Parish IDB. This is of no fault of Funes as he has utilized due diligence to no avail. Funes urges that all portions of the record are of "extreme importance" and his ability to review the complete record will enable him to have meaningful appeals prepared on his behalf, should more appeals be needed. Constitutional Violation contained in the missing or un-transcribed portions of the transcript, pose an impediment to have a thorough appellate review. The continued failure to produce the complete and entire transcript will preclude Funes from enjoying equal protection of the law, if other indigent appellants are freely given their complete record, then Funes is entitled to the same treatment as is anyone else before the Courts of law. Without a complete record, appeal counsel couldonly be ineffective; failure to designate all constitutional violations/errors contained in the complete transcript precludes raising those violations later in the proceedings, which

is highly prejudicial to the accused.

The *La. Const. of 1974, Article 1, Section 19* provides that "the review under an appeal of right from a felony conviction [accorded by *Louisiana Constitution of 1974, Art 5, § 5 (D) (2)*] shall be based upon a complete record of all evidence upon which a judgement is based." *State v. Robinson*, 387 So.2d 1143 (La. 1980).

## CONCLUSION

Wherefore, for the "cause" and "prejudice" shown as to all the lapses in counsel's representation deriving from systemic ineffectiveness and conflict-of-interest laden representation, petitioner prays that the State of Louisiana; all Procedural objections perfected through the Jefferson Parish District Attorney's Office, to claims 1, 4, 5, 6a, 10, 11, and 12 be dismissed.

Respectfully Submitted By:

*Rigoberto Funes*
Rigoberto Funes #571875
MAIN PRISON, Spruce 4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify that I have forwarded a copy of the aboveSupervisory Writ of Review to the District Attorney's Office for the Parish of Jefferson 200 Derbigny Street, Gretna, La. 70053, on this ___ day of February 2014.

*Rigoberto Funes*
Rigoberto Funes

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter this document was tendered to the hands of a Prison Official on this ___ day of February, 2014.

*Michael Augustine*
Michael Augustine 24851
Ex-Officio Notary
Dept. of Public Safety & Corrections/LSP

Notary of Other Person duly Commissioned to Accept a legal and binding Oath

/29.

32

# Appendix #8
Order of 1/16/14 addressing remaining claims.

SERVE

TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

NO. 08-5641                          DIVISION # E

R E C E I V E D        STATE OF LOUISIANA

JAN 27 2014            VERSUS

Legal Programs Department    RIGOBERTO FUNES

FILED: 1/14/14                              DEPUTY CLERK

ORDER

This matter comes before the court on the petitioner's APPLICATION FOR POST-CONVICTION RELIEF, STAMPED AS FILED JUNE 6, 2013, AS TO CLAIMS #3, #6B, #7, #8, AND #9. AND STATE'S REPLY, STAMPED AS FILED OCTOBER 11, 2013, AND PETITIONER'S TRAVERSAL TO STATE'S REPLY, STAMPED AS FILED NOVEMBER 8, 2013.

On July 29, 2010, the petitioner was convicted of counts #1, #3, and #4, LSA-R.S. 14:30.1, relative to second degree murder. On August 5, 2010, the court sentenced him on each count to life imprisonment at hard labor. His convictions were affirmed on appeal. *State v. Funes,* 11-120 (La. App. 5 Cir. 12/28/11) 88 So.3d 490; writ denied, 2012-200 (La. 5/25/12) 90 So.3d 408.

Petitioner filed an application for post-conviction relief, alleging the following claims:

1. Parish of East Jefferson, through its public assistance offices, has been violating the National Voter Rights Act, which in turn had a direct impact of the composition of the jury, and whether or not this is a form of jury fixing, violating due process and equal protection.

2. Deferral of ineffective assistance of counsel claim from direct appeal to post-conviction relief constitutes cause mandating appointment of counsel.

3. Right to fair trial was violated during jury selection (*Batson* and *Strickland* violations).

4. Trial court violated petitioner's due process and right to fair trial in failing to instruct or sequester jury when it retired during recess and breaks during trial.

5. Trial court committed reversible error in making erroneous and misleading comments on responsive verdicts.

6. Prosecutorial misconduct occurred when
   a. Prosecutor improperly vouched for credibility of state witness.
   b. Failed to correct perjured testimony in violation right to a fair trial.

7. (skipped by petitioner)

8. Ineffective assistance of counsel at trial when counsel failed to seek quashing of grand jury indictment on grounds of violation of the National Voter Registration Act of 1993. The jury panel for grand and petit jury were both quashable.

9. Ineffective assistance of counsel by not securing rebuttal experts for defense.

10. Independent claim of "Grand Jury and Trial Jury discrimination" meets a new fact previously not known to petitioner, meets the exception of 930.4 and 930.8(a)(1). (This claim shows a need for expert.)

11. Trial court violated petitioner's due process rights to a fair trial in failing to instruct or sequester the jury when it retired during recess and breaks during trial.

12. (Petitioner lists # 11 twice.) Conflict of interest against the entirety of the Jefferson Parish Indigent Defender Board for covering up the fact that they were well aware of the systemic ineffective assistance being provided

for the reasons set out in the "assessment of trial level defense services in Louisiana 40 years after Gideon".

On September 13, 2013, this court denied claims # 1, #2, #4, #5, #6a, #10, #11 and #12, finding them procedurally barred. These claims were ruled upon, and will not be re-litigated at this time. The court will now address the merits of claims #3, #6b, #8, and #9.

### Ineffective assistance of counsel

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Washington*, 491 So.2d 1337 (La.1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Legrand*, 2002-1462 (La.12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post conviction petitioner must prove deficient performance to the point that counsel was not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the *Strickland* test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1074.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in the instant application and argued in the petitioner's memorandum in support.

### Claim #3

Petitioner claims that his right to a fair trial was violated during jury selection in that jurors made pre-determined notions of defendant's guilt, and that counsel was ineffective for failure to dismiss these jurors. As the State surmises in its response, petitioner provides no evidence in support of this claim. He provides no affidavit, descriptions, nor data to identify which prospective jurors should have been disqualified. The court finds this claim speculative and conclusory.

Petitioner claims that "the prosecution used all of his peremptory challenges to exclude blacks from the jury based solely on their race," and that counsel was ineffective for failing to object. As the State points out, the record does not support this claim. The record reflects that the State used on peremptory challenge, and the State has presented evidence that this person was a white female. The court finds no merit to this claim.

### Claim #8

Petitioner claims that counsel was ineffective for failing to move to quash the indictment based on the composition of the grand jury. The court finds no merit to this claim. Petitioner fails to demonstrate the court would have granted any such motion, had any such motion been filed. Petitioner does not prove any discrimination. His allegations of discrimination are not supported by any evidence, and are conclusory. Petitioner fails to demonstrate any discriminatory purpose. The court finds no merit to his equal protection claim.

Furthermore, petitioner does not prove any prejudice resulting there from. The court finds no deficiency in counsel's performance, nor any prejudice resulting, as defendant was convicted based on the overwhelming evidence of guilt presented at trial.

### Claim #9

Petitioner claims that trial and appellate counsel was ineffective for failure to secure expert rebuttal witnesses for trial and failure to argue ineffective assistance of appeal. The court finds this claim vague, speculative, and conclusory. Petitioner does not propose the availability of any particular witness, and does not provide any evidence or details as to what any witness would testify. The court finds no deficiency in counsel's performance, and no prejudice resulting.

Claim #6b – Prosecutorial Misconduct

Petitioner argues that the State failed to correct perjured testimony of a witness. Petitioner claims that the expert in ballistics presented false testimony, but provides no evidence in support of this claim. His claims that,

"...the prosecutor also knew that the expert in ballistics was not being honest, that is, to be upon hearing the expert's testimony about linking guns to certain bullets tend to believe the accuracy of the court qualified expert's testimony under oath. However, a rational trier of fact would discount the expert's testimony had they knew that the ballistics process of linking a bullet to a particular gun is flawed, they would have discounted their testimony or possibly the judge would not have allowed it."

As the State surmises in its response, firearms examination and ballistics testimony such as the evidence presented in this case is routinely accepted. Petitioner provides no evidence to refute the firearms and ballistics testimony presented in this case. Petitioner's claim is merely speculative, as he fails to prove that any testimony presented in this case was false.

The court notes that petitioner failed to present any argument as to claim #7.

Accordingly,

IT IS ORDERED BY THE COURT that claims #3, #6b, #7, #8, and #9, of petitioner's application for post-conviction relief are procedurally barred and are hereby DENIED.

Gretna, Louisiana, this 16th day of January, 2014

JUDGE

PLEASE SERVE:

PETITIONER:  Rigoberto Funes, DOC # 571875, Louisiana State Penitentiary, Angola, LA 70712

PLEASE ELECTRONICALLY SERVE:

Terry Boudreux, Matthew Caplan, District Attorney's Office, 200 Derbigny St., Gretna, LA 70053

133.

# Appendix #9

Copy of 11/3/2013 Letter explaining to Judge that "Discovery" and
"Admissions" were Statutorily encouraged w/ case law as exhibits.

Twenty-Fourth Judicial District Court
Jefferson Parish, State of Louisiana
Gretna, La. 700 5 3

November 3, 2013

Re:    State of Louisiana v. Rigoberto Funes
       08-5641, Division "E"

Dear Honorable District Court Judge:

The trial court in this matter erroneously believed that discovery and requests for admissions of fact
did not apply in post conviction proceedings. This age old decision will show that the court was in
error with such a perception, whereby, petitioner prays that this will show the court that petitioner
can utilize the requests for admissions and discovery in criminal post-conviction proceedings.
Petitioner presents an excerpt from Tassin v. Whitley, 602 So.2d 721, (La. 1992) to drive home his
point.

Wherefore, petitioner prays that this suffices to prove that the court made an error in law in its original
judgement stating that petitioner could not utilize this procedures in post-conviction because this was
not a civil proceeding.

Thnak you for you consideration of these re--urged motions.

Respectfully submitted,

Rigoberto Funes
Rigoberto Funes
#571875
La.  State Prison
Spruce-#4
Angola, La, 70712

cc: file

*136.*

602 So.2d 721, State ex rel. Tassin v. Whitley, (La. 1992)

*723 the trial court will not be able to resolve the factual dispute without a full evidentiary hearing. La.C.Cr.P. art. 929, Official Revision Comment.

These post-conviction relief rules are modeled on the American Bar Association Standards for Post-Conviction Remedies and the proposed (since modified and adopted) federal rules governing post-conviction applications by state prosecutors under 28 U.S.C. § 2254. *See* Joseph, "Postconviction Procedure," 41 La.L.Rev. 625, 638 (1981). These post-conviction procedures were not designed to give the prisoner or the state a right to inquire into "any matter, not privileged, which is relevant to the subject matter involved in the pending action," as is afforded civil litigants. *Harris v. Nelson*, 394 U.S. 286, 297, 89 S.Ct. 1082, 1089, 22 L.Ed.2d 281 (1969). *See also* Federal Rules of Civil Procedure, Rule 26(b), and Louisiana Code of Civil Procedure article 1422. Such a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas or post-conviction proceeding. *Cf. Harris v. Nelson*, *supra*.

[2] In determining when summary disposition without plenary hearing and discovery are appropriate in a post-conviction proceeding, the court should bear in mind the purposes of these procedures. As expounded by Professor Joseph, the aims of the rules are as follows:

Louisiana Code of Criminal Procedure article 929 envisions the possibility of disposition based on the application, the answer, and other supporting documents.

In order to expand the record, the district court may order production of the record of the proceedings leading to the conviction. For example, the colloquy of a guilty plea may adequately resolve the merits of a challenge to the adequacy of the *"Boykin* examination."

Recognizing the need in some cases to go beyond the face of the proceedings, the Code of Criminal Procedure now empowers the district court to authorize oral depositions, requests for admissions of fact, and requests for admission of genuineness of documents. Such discovery techniques may be used upon a showing of "good cause" and are to be regulated by the court. The court should be guided by the Louisiana Code of Civil Procedure in specifying the conditions under which the discovery techniques are to be used.

Discovery devices may be employed effectively to eliminate possible factual disputes by fully developing the petitioner's allegations. What appears to be a factually meritorious claim (when alleged in the petition) may collapse after the petitioner's deposition has been taken and, under oath, he recants some of his allegations.

After the methods of expanding the record have been employed, the court may find that no evidentiary hearing is needed.

Due to the obvious importance of the discovery procedures in determining the appropriateness of summary dismissal, the petitioner is entitled to the assistance of counsel if such methods are utilized.

The availability of summary disposition

recognizes the obvious fact that the record or expanded record will sometimes conclusively belie the allegations of the petition. An evidentiary hearing will be necessary only to resolve disputes over contested facts where real credibility issues are presented.

Whether the sort of factual dispute exists which requires an evidentiary hearing is obviously a sensitive question and deserves the most careful consideration by the trial court. The credibility of witnesses cannot generally be resolved on a cold record." The proper subject of a genuine and material factual dispute is of evidentiary hearing where witnesses testify before the district court, subject to cross examination. However, that is not to suggest that a summary disposition is never appropriate just because there are some factual disputes. For example, if a petitioner alleges that he was not advised of certain of his rights during his arraignment and the record shows that such advice was given, summary disposition may be appropriate despite what might be characterized as a factual dispute.

*724. The wording of the code article is significant. Louisiana Code of Criminal Procedure article 930 requires an evidentiary hearing if there are "questions of fact which cannot *properly* be resolved" on the basis of the expanded record. Obviously, the Code of Criminal Procedure assumes that some factual disputes can be resolved on the record and some cannot. Article 929A specifically refers to the resolution of "factual and legal" issues on the basis of the expanded record (including depositions, other "reliable" documents, etc.). This is a matter which must be approached with much caution. The trial court must be sensitive to the petitioner's right to have fair determination of the factual basis of his claim.

A hearing requiring production of the petitioner will be required when factual disputes exist which cannot properly be resolved on the basis of the record or the expanded record. Several aspects of this evidentiary hearing should be considered.

Evidentiary rules governing the trial on the question of guilt or innocence need not be followed at the hearing. Louisiana Code of Criminal Procedure article 930B specifically recognizes admissibility of various properly authenticated documents, such as records, transcripts, depositions and admissions of fact.

Since the search for truth is the district court's paramount concern, all reliable evidence tending to establish the relevant facts should be considered. With the judge as fact-finder in this hearing, objections on traditional hearsay grounds generally can be considered as affecting the weight rather than the admissibility of the evidence.

If an evidentiary hearing is held, the petitioner is entitled to counsel, and to court-appointed counsel if indigent. Because most petitioners will be indigent prisoners who have no means to employ counsel, the court generally must appoint counsel if an evidentiary hearing is ordered.

Joseph, "Postconviction Procedure," 41 La.L.Rev. 625, 636-638.

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

602 So.2d 721, State ex rel. Tassin v. Whitley, (La. 1992)

Consequently, in determining whether there is "good cause," i.e., grounds or reason, for the proposed discovery, the trial court must weigh such considerations as whether the procedure will prejudice the petitioner's right to have a fair determination of the factual basis of his claim, whether there is a real credibility issue presented necessitating an evidentiary hearing, whether the proposed discovery can be used to eliminate a factual dispute or an evidentiary hearing, or whether there is a need in the particular case to supplement the record to facilitate summary disposition.

[3] Applying these factors to the record in the present case, I conclude that there is a complete absence of a showing of "good cause" for allowing the state to depose the prisoner's expert witnesses. In fact, the record contra-indicates permitting the practice of such discovery here. Absent is any indication that credibility assessments will not be required in deciding the issues upon which the prisoner's witnesses will give testimony. Nor was there any showing that the

depositions will eliminate the evidentiary hearing on these issues. On the contrary, it is very likely that the state will call witnesses to testify live on these same subjects and that the petitioner will have to present live testimony through its witnesses on the same issues. Consequently, the trial court's ruling will not facilitate either summary disposition or expediting of a plenary hearing. Moreover, because the discovery order does not grant the prisoner an equal right to depose the state's witnesses prior to the recommencement of the evidentiary hearing, there is a risk that the state will be given unfair advantage and that the relator will be deprived of a fair trial and determination of the merits of his claim.

For these reasons, the writ is granted and the trial court's order that oral depositions of the petitioner's witnesses may be taken by the state is vacated.

CALOGERO, C.J., and LEMMON and HALL, JJ., concur in the order and the opinion.

© 2013 Thomson Reuters. No claim to original U.S. Govt. works.

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes          DOCKET NO. 08-5641
             Petitioner

VERSUS                                 FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                 Deputy Clerk _____
             Respondent

### RE-URGED MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING ALSO PETITIONER REQUESTS DISCOVERY AND AUTHENTICATION OF DOCUMENTS SECURED THROUGH DISCOVERY

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, Rigoberto Funes, in proper person, who moves this Honorable

Court to appoint counsel to represent petitioner's meritorious post-conviction relief application and

grant an evidentiary hearing where he is entitled to relief requested.

Currently, petitioner is presently incarcerated and unable to retain counsel and motions the

Court, out of the abundance of caution and in the interest of justice, to appoint counsel pursuant to

*La.C.Cr.P. art. 930.7(A)(B)(C).* and *Martinez v. Ryan*, supra. and *Trevino v. Thaler*

Petitioner submits that the court will not be able to resolve and determine the factual and legal

issues presented based solely on the answer by the State and the supporting documents of exhibits

submitted and should order an evidentiary hearing under the provisions of *La.C.Cr.P. arts. 928, 929*

and *930.7(B)*

SUBMITTED BY:

_Rigoberto Funes_
Rigoberto Funes # 571,825
Main Prison, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LA. 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes          DOCKET NO. 08-3641
                    Petitioner

VERSUS                                 FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                 Deputy Clerk _____
                    Respondent

## ORDER

CONSIDERING THE FOREGOING POST-CONVICTION RELIEF APPLICATION AND MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING:

IT IS HEREBY ORDERED that attorney_____ enroll as

counsel of record to represent petitioner, Rigoberto Funes., before this Court pursuant to

*Martinez v. Ryan*, *Trevino v. Thaler* and *La.C.Cr.P. art. 930.7(B)* at an evidentiary hearing

to be held on this ____ day of _____, 2013.

Thus done this____ day of_____,2013.

_____
DISTRICT COURT JUDGE

Please Serve:

Rigoberto Funes # 571875
Main Prison, Spruce-4
La. State Penitentiary
Angola, LA 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes                    DOCKET NO. 06-5641
                    Petitioner

VERSUS                                            FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                            Deputy Clerk _____
                    Respondent

## REQUEST FOR ADMISSIONS RELATIVE TO PLAINTIFF'S REQUEST
## FOR PCR RELIEF

Plaintiff requests that defendant admit the truth of the following facts within fifteen (15) days

after receipt of the request. Please write/type true or false in the blank provided next to each statement.

### LIST OF ADMISSIONS

1. _____  Trial counsel never raised the claim of systemic-ineffective assistance of counsel against the IDB office for the Parish of Jefferson at any time since .

2. _____  appellate counsel did not raise ineffective assistance of trial counsel for failure to file the requisite motions to quash the grand and petit juries nor any other claim of ineffective assistance raised in petitioner's application for post conviction relief and memorandum of law in support.

3. _____  appellate counsel did not raise ineffective assistance against himself/herself for failure to raise the claim of ineffective assistance of counsel against trial counsel.

4. _____  When the state of Louisiana files procedural objections, the post-conviction professor Cheney Joseph wrote: "Due to the obvious importance of the discovery procedures in determining the appropriateness of summary dismissal, the petitioner is entitled to the assistance of counsel if such methods are utilized." 41 La.L.Rev. 637 1980-1981.

5. _____  Petitioner has requested a hearing with the assistance of counsel for the purpose of further developing the record in these proceedings.

6. _____  Though , Rigoberto Funes, was required to answer procedural objections without the assistance of counsel to aid him in the crafting nor presentation of his replies to the procedural objections raised by the 24th Judicial District Attorney's Office.

7. _____  Petitioner has offered the State of Louisiana an opportunity to withdraw its procedural objection or risk admitting the counsel was fully aware of the underlying claims and their meritorious nature and merely by-passed them to the detriment of his client.

8.        Petitioner has asserted that the entire Jefferson Parish IDB Office has a conflict-of-interest in this matter and is remaining silent and concealing systemic-ineffective assistance by that office.

9.        If the IDB Office for the Parish of Jefferson has a conflict-of-interest in this case, they cannot be appointed to represent this cause.

10.        Petitioner Funes has requested the issuance subpoenas for experts chosen by counsel to be appointed to him and made a request for out-of-state subpoenas for critical witnesses who will testify under oath to their factual knowledge and findings as they relate directly to the claims raised in this case.

11.        The "cause" and "prejudice" standard of *Francis v. Henderson*, the case upon which the state has relied upon in its arguments against petitioner has been addressed in Rigoberto Funes' traversal to the state's procedural objections.

12.        As it applies to the case of *State of Louisiana v. Rigoberto Funes*, which has its origins as the case of 24th JDC, #08-5641, Div. "E", Mr. Rigoberto Funes has alleged that the underlying facts substantiating the claim of negative impact upon his trial and petit jurors by the state's non-compliance with the Voter's Registration Act, was based upon the discovery of the 2011 civil suit filed as *Ferrand v. Schedler*, Case 2:11-cv-00926 (4/19/11) U.S. Eastern District of Louisiana.

13.        Although *Martinez v. Ryan* addressed the narrow issue of whether an Arizona petitioner could establish cause for a procedural default in federal court. It also addressed whether there is an exception to there being no right to counsel when a state defers an ineffective assistance of counsel claim to post conviction.

14.        An equitable ruling, by contrast, permits a variety of systems for appointing counsel in initial review collateral proceedings. And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal habeas proceedings.

15.        The State of Louisiana, through the Parish of Jefferson District Attorney's (Courts) barred Rigoberto Funes from having the merits of his ineffective assistance of trial counsel claim adjudicated; the conflict-of-interest claim; the violation of the *NVRA of 1993* claim; the jury sequestration issue showing counsel's ineffectiveness; erroneous jury instruction and credibility vouching issue due to counsel's failure to timely object; and ineffective counsel's failure to correct or object to perjured testimony.

16.        A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957)

12.        At this present time, the *State of Louisiana* is being sued by the *Federal Government in the Middle District of Louisiana* for non-compliance with the National Voter's Rights Act of 1993. U.S. v. Louisiana, U.S. Middle District of Louisiana, 3:11-cv-00470-JJB-RLB

The foregoing admissions of fact are hereby propounded for the adequate and expedient resolution of both the procedural issue(s) and the merits of the underlying claims in *State of Louisiana v. Rigoberto Funes*, which has its origins as the case of 24th JDC, #08-5641, Div. "E", Parish of Jefferson, State of Louisiana.

RESPECTFULLY SUBMITTED:

*Rigoberto Funes*
Rigoberto Funes #575,627
Main Prison, Spruce 4
LA. STATE PENITENTIARY
ANGOLA, LA 70712

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that he served a copy of the above pleading upon the District Attorney for the Parish of Jefferson and the above address, and he also notified the of the deadline for the admissions thereon. Mr. Funes executed this document , with assistance, to the best of his limited knowledge and understanding of the law, he attests that the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on the _4_ day of August, 2013.

Notary of Other Person duly Commissioned to Accept a legal and Binding Oath

Ex Officio Notary
Dept. of Public Safety & Corrections/LSP

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes
        Petitioner

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY
        Respondent

DOCKET NO. 08-5641

FILED _____

Deputy Clerk _____

## ORDER

IT IS ORDERED that the Honorable _____, District Attorney for the 24TH Judicial District Court, Parish of Jefferson, State of Louisiana, file an answer or present any argument in opposition to the foregoing "Request for Admissions" relative to petitioner's Application for Post-Conviction Relief, within fifteen (15) days of receipt of this document.

Thus said and done and signed this day of _____, 2013.

_____
DISTRICT COURT JUDGE

Please Serve:
Rigoberto Funes # 574875
Main Prison, Spruce-4
La. State Penitentiary
Angola, LA 70712

143.

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes          DOCKET NO. 08-5641
         Petitioner

VERSUS                      FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY         Deputy Clerk _____
         Respondent

## PETITION AND ORDER FOR
## WRIT OF HABEAS CORPUS AD TESTIFICANDUM

MAY IT PLEASE THE COURT:

Petitioner, Rigoberto Funes, in proper person, respectfully request this Honorable Court to order the Respondent Warden to produce petitioner for an Evidentiary Hearing, pursuant to Louisiana Code of Criminal Procedure, *Article 930.A* for the following reasons to wit:

I.

That, said petitioner, Rigoberto Funes # 571875 , is incarcerated in the Louisiana State Penitentiary, at Angola, Louisiana.

II.

That petitioner, therefore, desires that a Writ of Habeas Corpus Ad Testificandum be issued and directed to Burl Cain, Warden at the Louisiana State Penitentiary, Angola, LA, to produce the person of Rigoberto Funes, # 571875 , petitioner for an evidentiary hearing to be held at the 24TH Judicial District Court, Parish of Jefferson, State of Louisiana, on this _____ day of _____, 2013, at ____ o'clock ____ .m.

WHEREFORE, premises considered, petitioner prays that a Writ of Habeas Corpus Ad Testificandum be issued herein as hereinafter set forth so that the petitioner, Rigoberto Funes # 571875 , may be present to present witnesses and testify at the hearing set in the above entitled cause.

RESPECTFULLY SUBMITTED:

x Rigoberto Funes
Rigoberto Funes # 571875
Main Prison, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LA 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes                    DOCKET NO. 08-5641
       Petitioner

VERSUS                                           FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                           Deputy Clerk _____
       Respondent

## ORDER

IT IS ORDERED that a Writ of Habeas Corpus Ad Testificandum be issued on the foregoing

petition and be directed to Burl Cain, Warden, Louisiana State Penitentiary, Angola, Louisiana, to

produce the person, Rigoberto Funes #_571375_ , for an Evidentiary Hearing to be held at the

24TH Judicial District Court, Parish of Jefferson, Gretna, La., State of Louisiana, on this ____ day

of _____, 2013, at the time of ____ o'clock ____ .m.

Thus done and signed in the 24TH Judicial District Court, Parish of Jefferson, Gretna, La., on

this ___ day of _____, 2013.


                                _____
                                DISTRICT COURT JUDGE


Please Serve:

Rigoberto Funes #_571825_
Main Prison, Spruce-4
La. State Penitentiary
Angola, LA 70712

# Appendix #10

Traversal to the State's <u>Reply</u> to petitioner's request for post conviction relief, petitioner declared that the state had submitted evidence which proved petitioner's claims by operation of *Juris de jure*. Filed 11/4/2013

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

DOCKET NO: 03-5541

Rigoberto Funes
Petitioner

VERSUS

BURL CAIN, WARDEN
LA. STATE PENITENTIARY
Respondent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
TRAVERSAL
OF THE STATE'S REPLY TO
PETITIONER'S
APPLICATION FOR POST-CONVICTION RELIEF

PETITIONER PREVAILS IN THIS PLEADING PER OPERATION OF
*Juris de jure* , The State has submitted evidence proving entitlement to relief.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

YOUR HONOR SHOULD NOTE:

[THE STATE OF LOUISIANA HAS SUBMITTED EVIDENCE, IN ITS REPLY, WHICH
PROVE PETITIONER'S CLAIM]

RESPECTFULLY SUBMITTED:

xsRigoberto Funes
Rigoberto Funes #571375
MAIN PRISON, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LA 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes                          DOCKET NO. 08-5641
                    Petitioner

VERSUS                                                 FILED_____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                                 _____
                    Respondent                         Deputy Clerk

MEMORANDUM OF LAW
TRAVERSING THE STATE'S ARGUMENTS OPPOSING
PETITIONER'S REQUEST FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, Rigoberto Funes, who by virtue of the evidence submitted in the state's response to the merits of several claims as ordered by the court, hereby proclaims that although the state opposes relief. The evidence submitted by the state compels the granting of the relief sought.

The Oath of Office for any public official maintains without fail that: all Officials acting in relation to this matter are first bound by their Official Oaths of Office executed pursuant *Article X, § 30 of the Louisiana Constitution of 1974.* Conforming to their respective Oaths of Office, public official would be of like opinion that the Court is obliged to grant petitioner's request for post-conviction relief. As a result of the "proof" offered by the State of Louisiana that a bench trial was conducted in the U.S. Eastern District of Louisiana, October 15, 2012 - October 17, 2012, wherein after, the State of Louisiana was found guilty of being in violation of the *NVRA of 1993*, up to 2011, which incorporates the time frame wherein petitioner's grand jury impanelment occurred and when the impaneling of petitioner's petit jury occurred.

Petitioner maintains that the issues presented in his Application for PCR and his Memorandum in Support, entitle petitioner to the nullification of all proceedings subsequent to the violation of the *NVRA of 1993*. Further, an evidentiary hearing is warranted with the appointment of counsel as required by *La.C.Cr.P. Art. 930.7(B)*. At such a hearing, a record will be established to support that petitioner is entitled to the relief sought. Petitioner herein shows that **"all" of the State's procedural objections are worthy of dismissal** due to ineffective assistance of counsel

148,

and conflict-of-interest laden representation.

## PROCEDURAL DEFAULT PURSUANT POST CONVICTION PROCEDURES

At first glance, if the court were given over to being misled, the state's procedural objections would ultimately appear to be valid. However, petitioner negates this appearance by urging that the entire framework of his case from start to end has been unconstitutionally impacted by the State's deliberate violation of the *NVRA of 1993*, resulting in "jury fixing" of the Grand and Petit Jury. Petitioner, contends that the state's procedural objections to this/these claims where counsel failed to either "contemporaneously object" or "file" Motion to Quash are wholly meritless in the wake of the "cause" advanced for the procedural default.

Mr. Funes' makes a substantial showing that delay in filing these claims were not his fault, but rather the result of ineffective and conflict-laden counsel. Counsels who were appointed to him by the Court from the Jefferson Parish IDB Office and the Appellate Project. Petitioner presently lacks the ability to investigate his claim; he lacks the academic capability to comprehend post conviction statutes', procedures, and case law. He is totally dependant upon others. Presently, just as before PCR proceedings were instituted., petitioner is suffering from (A "constructive denial [3]," which constitutes a "structural defect" in the collateral review process as was true in the pre-trial, trial and post-trial proceedings. That claim falls under a continuation of the appellate process with respect to the claim of trial counsel ineffective assistance of counsel. Further, as the state exposes in all of its procedural objections, petitioner is only at risk of procedural default because without counsel he lacks the expertise and access to the other meaningful tools by which to make his initial application for post-conviction relief claim of ineffective-assistance a competent one without the aid of counsel. Having counsel on one's first appeal has become a matter of right, and a claim

_____

Petitioner has never had his intellectual capability assessed through an individual interview by one or more psychologists nor has he ever been administered a verbal intelligence and reading comprehension test. Also, he has never been administered the Law School Admission Test (LSAT) to compare his ability to those of students starting out in the field of law. Also, there has been no personality testing in order to get an estimate of his current emotional and mental well-being, gauging whether his capacity to perform the task he faced (filing a competent post-conviction), was negatively affected by depression or any other debilitating mental illness.

_____

In post conviction proceedings, the most critical reason which justifies the help of a lawyer are: The need for factual investigation. Since the vast majority of post-conviction issues are based on facts that are not in the record, the most critical aspect of any case will be the required factual investigation. Regardless of how educated the individual, or how long he has to prepare, this task is simply impossible for the prisoner to perform from the Louisiana State Penitentiary.

of ineffective assistance of trial counsel in the first collateral review is deemed a continuation of the direct appeal process as explained in *Martinez v. Ryan* and *Trevino v. Thaler*.[1]

The state's request for dismissal of several of petitioner's claims under the holdings in *Francis v. Henderson*, 425 U.S. 536 (1976), must fail. A dismissal under *Francis* or any other reason advanced by the state on any claim is inapplicable to the fact specific circumstances of this case. To excuse Funes' failure to timely challenge the composition of the grand and petit jury pools at this late day, the "cause" and "prejudice" requirements of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), must be satisfied. The state maintains, by their urgence of procedural bars, that Funes has neither demonstrated "cause" nor "prejudice." This contention is belittled by the record as petitioner sufficiently raised and argued counsel's pre-trial ineffectiveness at trial and post-trial ineffectiveness. Collectively, these deficiencies constitute a "structural denial of counsel."

Here, Funes has argued his claims, both as independent and inter-related substantive issues. Funes's arguments encompass:

(1) the State of Louisiana engaged in [jury pool-fixing] for both the Grand and Petit juries through non-compliance with the *NVRA of 1993*,

(2) Trial counsel was systemically ineffective

(3) Counsel was actively engaged in a conflict-of-interest during Funes' representation as he was actively concealing from his client the systemic-ineffectiveness of the public defenders office set forth in "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon."

(4) Counsel effectively engaged in an "active" and "systemic-conflict-of-interest" which caused counsel to be ineffective in not filing a motion to quash for both the

---

[1]

Also, it is necessary to note that some years ago, the Law Libraries throughout D.O.C. had Westlaw online, due to a accidental firewall breach, some inmates accessed some information not appreciated by the department. Since that time all inmates have been made to suffer in their access to current material in their efforts to continue the litigation of their cases. The inmates are given access to Westlaw through a quarterly update system. As a matter of routine, this system is rarely if ever, up-to-date with cases decided upon within the last ninety (90) days. As a general rule, the system is six to 12 months behind and the opposition (state) has up to the moment access. This too contributes to the reality of why: Requiring a prisoner to litigate post-conviction without appointing counsel is a fundamental denial. Long before anyone chose to cut back on prisoner access to courts, some courts had expressed the opinion that even a complete library would not provide the inmate with much chance of success: "In this court's view, access to the fullest law library anywhere is a useless and meaningless gesture in terms of the great mass of prisoners. The bulk and complexity [of the legal issues] have grown to such an extent that even experienced lawyers cannot function efficiently today without the support of special [research] tools .... To expect untrained laymen to work with entirely unfamiliar books whose contents they cannot understand, may be worthy of Lewis Carroll, but hardly satisfies the substance of the constitutional duty of [access to courts]. Access to full law libraries makes about as much sense as furnishing medical services through books like; "Brain Surgery Self-Taught", or "How to remove your own Appendix", along with scalpels, drills, hemostats, sponges and sutures." *Falzerano v. Collier*, 535 F.Supp. 800, 803 (D.N.J. 1982)

Grand Jury and the Petit Jury, when counsel had reasonable access to the information which reflected discriminatory practices were in place through the violation of the *NVRA or 1993* and other means.

(5) The reason for the refusal to lodge any of these credible challenges to the systemic exclusion of those who are handicapped, minorities, and/or reliant upon public assistance is the systemic-ineffectiveness set in place by the design and operation of the Indigent Defender System..

(6) The Indigent Defender Board(s) is/are working in collusion with the District Attorney's Office to allow the clients of the IDB office to be subjected to unconstitutionally tainted and discriminately composed Grand and Petit Jury pools during the Indictment and trial process.

At the outset of this argument and for the sake of clarity, unlike *Delock*, this petitioner did/does not speak the English language, and was given an interpreter for all proceedings. This fact goes to the truth of petitioner having been completely reliant upon the expertise and guiding hand of counsel. AT any rate, the State of Louisiana has introduced evidence into the record which effectively carried petitioner's burden of proving his case. The petitioner alleged and the State of Louisiana submitted verified/verifiable evidence that the State of Louisiana was the defendant in a bench trial conducted from October 15, 2012 - October 17, 2012, wherein the State of Louisiana was convicted of violating the *NVRA of 1993*.

In advancing procedural bars, the state chose several lines of defense. The procedural bar of counsel's failure to file a "Pre-trial Motion to Quash", or "failure to raise a contemporaneous objection" are extinguishable. However, the procedural bars invoked by the state are not immune from defeat. To overcome procedural default, petitioner need only establish "cause" for the procedural default. Also, because procedural bars are only applicable when the state/defendant/respondent proves that the applicability of the procedural bar did not derive from a corrupted process or internal-scheme specifically designed or structured to deprive a party litigant of a protected right (right to effective counsel and/or conflict-free counsel) by fraud, silence, and or misrepresentation.

Although the state argues that counsel's failure to file a pre-trial motion to quash waived petitioner's equal protection claim against the State of Louisiana for "fixing" the composition of the criminal jury pools for the Grand and Petit jury through non-compliance with the mandates of the *NVRA of 1993*. Petitioner avers that the state is correct only to the extent that counsel failed in his obligation to file the requisite pre-trial motion. However, as a victim of counsel's failures, petitioner's assessment wholly contrasts that assessment with his own. What counsel failure to file the pre-trial motion does do is, it establishes that counsel was not acting as counsel envisioned by the

*Sixth Amendment.* The state's contention is thus self-defeated in assailing against petitioner. The state's argument only goes to support petitioner's claim of counsel's ineffective assistance deriving from counsel's conflicting-interest.

The instant petitioner directs this Honorable Court's attention to the "cause" of his procedural default. Counsel did not file a motion to quash the grand jury nor the trial jury because, she/he, as a member of the Jefferson Parish Indigent Defender Board suffered from a conflict-of-interest. This constitutes an external factor which injected "cause" for the procedural default to be embedded in the defense camp without petitioner's knowledge nor disclosure from counsel.

Petitioner avers that both his trial and appellate counsel suffered from inter-related conflicts-of-interest.

(1) Trial counsel had an interest in not filing systemic ineffectiveness against his office nor an objection to his own failure to file proper and timely pre-trial motions to quash the Grand and Petit Jury's impaneled for violating of the *NVRA of 1993*. Therefore, counsel prejudiced his client by not preserving the issue for review on direct appeal where petitioner still had a right-to-counsel.

(2) Because the direct appeal is a stage where petitioner still has the right to counsel, Appellate counsel is a part of a system which "systemically" provides ineffective-assistance of counsel at the appellate level. Appellate counsel had a coveted interest in not pointing out to the appellate court, trial counsel's ineffective-assistance for the failure to file pre-trial motions to quash. This is so because, (appellate counsel) too had been ineffective in countless cases for never having pointed out the ineffective-assistance of trial counsel(s) for not filing pre-trial motions to quash indictments on the grounds of intentional violations of the *NVRA of 1993*, thereby tainting the jury pools for the Grand and Petit juries (juries which should have been quashed due to the taint).

(3) Further, because appellate counsel is an integral part of the systemic by-passing of these "structural error" claims and ineffective assistance at the appellate level, appellate counsel had an interest in not pointing out that, as individuals and as a collective body, the Attorney's of the Louisiana Appellate Project had been by-passing legitimate ineffective-assistance of counsel claims against Indigent Defender Board Attorneys as individuals and as a collective (in thousands of cases). The Indigent Defender Board has "never filed pre-motions to quash the grand or petit juries despite all the elements and evidence to prove these as viable claim since the public discovery of the systemic excluding of a distinctive class of people from becoming registered voters to be included in the state jury pools because of their, disability, race, economic or social status, and other identifiers set out in the *NVRA of 1993.*"

## CAUSE AND THE EQUITABLE TOLLING ISSUE

The State of Louisiana, in its desire to preserve the unconstitutional practice of depriving the poor, handicapped and un-educated from becoming members of the jury pools throughout the State of Louisiana seeks to prevent the adjudication of petitioner's claims. This practice has prevented otherwise qualified persons from becoming registered voters. Petitioner avers that the following will

show the self-exterminating nature of the procedural defaults raised by the State of Louisiana.

1.) Who is responsible for supplying the *Sixth Amendment*'s standard of effective assistance of counsel for the poor 40+ years after *Gideon*, when a person is charged with a crime inside the boarders of Jefferson Parish? *Answer: The State of Louisiana.*

2.) Does this State have obligation to comply with the *National Voter's Rights Act of 1993? Answer: Yes.*

3.) Is it true that the IDB Office of Jefferson Parish has never questioned the unconstitutional practices deriving from the State's Violation of the *NVRA of 1993? Answer: Yes.*

4.) Was the State of Louisiana, found (after a bench trial) by the U.S. District court, Eastern District of Louisiana, to have violated its obligation to comply with the *National Voter's Rights Act of 1993? Answer: Yes.*

Considering the honest answers to these questions, the statute of limitations to filing a "Pre-trial Motion to Quash the Grand and Petit Juries is not a "jurisdictional bar" and as such, it is subject to equitable tolling. "The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable." The doctrine applies principally where the plaintiff is actively misled by the defendant (in this case his attorney) about the cause of action or is prevented in some extraordinary way from asserting the rights. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). The ineffectiveness and hidden conflicts of counsel sealed his lips on these crucial matters, thereby, depriving petitioner of his only opportunity to timely challenge these unconstitutional practices.

Here these considerations are paramount because the arguments advanced herein have never been properly advanced in the prior cases which ended in adverse decisions. Petitioner's litigation does not suffer from the error of those litigants. Consequently, this case must be construed from it's own factual circumstances and the court is free from limitation of prior decisions wherein the same issue was advanced, but, advanced without any effort to meet the "cause" and "prejudice" requirement of *Francis*. Petitioner herein suffered the extra-ordinary preventive measures of his own defense counsel from urging these claims in a timely manner. Petitioner, a Non-English speaking alien, was completely subjected to the inclinations and whims of his defense counsel who was appointed and paid by the IDB office for the Parish of Jefferson.

## THE STANDING AGREEMENT JEFFERSON PARISH DISTRICT ATTORNEY'S OFFICE AND THE JEFFERSON PARISH IDB SYSTEM WHICH ULTIMATELY BEGETS SYSTEMIC-CONFLICTS-OF-INTEREST

Petitioner avers through the art of deduction, the following is both true and evident. There exists and unwritten and unspoken of agreement which includes but is not limited to:

A.) No IDB Counsel will file pre-trial Motions to Quash the Grand or Petit Juries will be filed with respect to the State's Violation of the *NVRA of 1993*.

B.) No IDB Counsel will file any pleadings against himself/herself nor the Jefferson Parish IDB Office for promoting and/or preserving the systemic-unconstitutional Ineffective-Assistance of Counsel as set forth in, but not limited to, "An Assessment of Trial-Level Defense Services in Louisiana 40 years after Gideon," as published in 2004, nor which has become reality to the date of this filing in 2013.

Standing alone, these two agreements are depriving citizens of the honest and constitutionally required services of the Jefferson Parish IDB Office. These hidden agreements make the preservation of the *6th Amendment* and the compliance therewith impossible. Petitioner bears the burden of proving or disproving, through the actions or inactions of the Jefferson Parish IDB Office that this understood contract exists. In proving this strategically arranged and systemic ineffective assistance of counsel so as to warrant the finding of "cause" for the procedural default, the following facts are offered.

A.) Since the State of Louisiana's deliberate and systemic violation of the *NVRA of 1993*, was exposed in *Ferrand v. Schedler*, the Jefferson Parish IDB Office has not made any pre-trial motions to quash the Grand Jury and/or Petit Jury on the grounds of the jury pools being "fixed" by the state's refusal to comply with the *NVRA of 1993*, despite the issue being a viable and sustainable one.

B.) The Jefferson Parish IDB Office has not filed a single claim of systemic-ineffective assistance of counsel against the IDB as a whole. They are prevented from filing the claim because it is a conflict-of-interest to do so. It would be politically incorrect, socially deplorable, economically devastating and/or would likely cost their employment with the Jefferson Parish IDB. So, it is through the silence of the Jefferson Parish IBD, the Jefferson Parish District Attorney's Office is given a decisive advantage over any person in that parish as a part of a systemic reality and the extreme budgetary constraints of the Jefferson Parish IDB Office. Ultimately and realistically, this serves to deprive those charged with a crime in this parish of the *Sixth Amendment* Right to Counsel and *Fourteenth Amendment* Right, to Due Process and Equal Protection of the Law.

Given these truths, the only reasonable conclusion is evident, petitioner has been deprived of his *Sixth Amendment* right to counsel, his right to conflict-free counsel, and his right to a Grand and Petit Jury free from systemic-exclusion of handicapped, minorities and, those dependant upon public assistance.

## HARM DONE AND DEPRIVATION OF CONSTITUTIONAL RIGHT NOT HARMLESS AS THE IS NO GUARANTEE THAT A NEW "LEGALLY CONSTITUTED GRAND JURY" WOULD HAVE RE-INDICTED OR EITHER RE-INDICTED FOR THE SOME GRADE OF OFFENSE (STRUCTURAL ERROR)

In the instant case, the state may try to argue "harmless error" because a new grand jury would have simply re-indicted petitioner. As a starting point, systemic and unconstitutional exclusion of minorities or readily identifiable group is "structural error" requiring automatic reversal and not amenable to "harmless error" analysis. See *Arizona v. Fulminate* and *Vasquez v. Hillery*,

154

Now, the magnitude and the scope of the jury-pool-fixing scheme set in place by non-compliance with the *National Voter Registration Act*, was sufficient to bring a halt to any efforts to immediately re-indict petitioner. How is that so? The State of Louisiana would have been obligated to bring the State of Louisiana into conformity with the *NVRA of 1993*, until then, any subsequent Grand Jury Pool would have suffered the same unconstitutional taint. The repair of the unconstitutional Jury Pool System could not have been achieved right away, because the Secretary of State Tom Schedler was asked to remedy the matter, and when he refused, actions were taken and presently both he and the State of Louisiana are being sued in two (2) civil suits. So, quick reparation of the system could have been quite time consuming. The aforementioned suits are what brought this constitutional rights deprivation to petition's attention. At present those civil cases are *Ferrand v. Schedler* and *U.S. v. Louisiana* as set out in the PCR Application and Memorandum in Support.

With respect to the time period that it may have or perhaps would take to compose a constitutionally acceptable trial and petit jury, the petitioner speedy trial rights would have been implicated and this too could have been a consideration used by IDB counsel in any effort to use the possible of securing a deal on behalf of his client or as was the case in *Winters v. Cooks*, 439 F.2d 174 (C.A. 5 (Miss.) 1973).

As a settled issue, a *Batson* violation is structural error for which prejudice is generally presumed. As the Court explained in *Powers v. Ohio*, 499 U.S. 400, 11 S.Ct. 1364, 113 L.Ed. L.Ed.2d 411 (1991):

> The jury acts as vital check against the wrongful exercise of power by the State and its prosecutors. The intrusion of racial discrimination into the jury selection process damages bot the fact and the perception of this guarantee. Jury selection is the primary means by which the court may enforce a defendant's rights to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendants culpability. Active discrimination by a prosecutor during this process condones violation of the United States Constitution within the very institution entrusted with its enforcement, and so invites cynicism respecting the jury's neutrality and its obligation to adhere to the law. The cynicism may be aggravated if race is implicated in the trial ...

> The purpose of the jury system is to impress upon the criminal defendant and the community as a whole that a verdict of conviction or acquittal is given in accordance with law by persons who are fair. The verdict will not be accepted or understood in those terms if the jury is chosen by unlawful means at the outset. *Id.* at 411-13, 111 S.Ct. 1364 (citation and in internal quotation marks omitted)

Overall, there is a reasonable probability that had counsel objected and filed a motion to quash both the Grand and Petit juries, Funes would have succeeded in proving that the prosecutor was benefitting from the jury-pool-fixing-scheme executed through the State's Non-compliance with the

*NVRA of 1993.* This is sufficient to undermine confidence in the outcome of the trial because Grand

and trial Jury discrimination is structural error. See *Arizona v. Fulminante,* 499 U.S. 279, 309, 111

S.Ct. 1246, 113 L.Ed.2d 302 (1991)(noting the structural defects in the constitution of the trial

mechanism "defy analysis by 'harmless-error' standards").

## PROPOSITION TO THE DISTRICT ATTORNEY'S OFFICE

As a result of the procedural objections urged by the Jefferson Parish District Attorney's

Office, the following questions are posed to them:

1.) When did the District Attorney's Office not the statistical under-representation of black and other minorities in their jury pools for the Grand and Petit Jury?

2.) When did the Jefferson Parish realize that their Jury Pools were unconstitutionally composed for the state's Non-compliance with the *NVRA of 1993?*

3.) Where any other methods in place which aided the Jefferson Parish District Attorney's office in facilitating the under-representation of minorities, handicapped and the impoverished?

4.) How many indictments where secured while any of the above practices were in place?

5.) How many criminal trials proceeded to verdict with the above practices where in effect?

6.) Is the District Attorney's Office for the Parish bound by *Art. X, § 30, of the Louisiana Constitution of 1974,* which provides for the taking of an Oath of Office to uphold the *Constitution of the United States,* the *Louisiana Constitution of 1974,* and the laws of the State of Louisiana?

7.) Is this Oath of Office violated when the District Attorney's Office knowingly uses unconstitutionally constituted grand juries in order to secure illegal indictments?

8.) Is this Oath of Office violated when the District Attorney's Office knowingly uses illegally unconstitutionally constituted petit juries in order to secure illegal convictions?

## WHAT HAS THE JEFFERSON PARISH DISTRICT ATTORNEY'S OFFICE CONCEDED TO IN THIS LITIGATION?

Though the State argues that claim #1 fails to state a claim upon which relief can be granted,

this contention is refuted in the state's own pleading. The State has not only found but also cited

cases where this exact same issue was brought forth, if this was not an issue wherein relief could be

granted, the state could not cite *Francis* nor *Davis.*

Petitioner avers that, if the State of Louisiana wishes to maintain its procedural default defense

against petitioner's claim(s) of "the fixing of the Grand and Petit Jury so as to exclude those who were

handicapped, minorities and/or dependant upon public assistance," then it likewise certifies this claim

to be re-raised before the federal judiciary in habeas proceedings under-it's sub-title of and inclusive

argument that, this(the procedural defaults) occurred as a result of counsel's systemic ineffectiveness for not filing the pre-trial motion to quash.

The price of maintaining the state' assertion of procedural default is the following admission:

> Defendant's counsel from the Jefferson Parish IDB Office had an available and known opportunity to quash the instant indictment for the State's violation of the NVRA of 1993, likewise the Petit Jury could have been quashed for the same reason. The IDB Office knew or reasonably should have known these jury pools to be tainted by the discriminatory jury-pool-fixing-scheme, yet, by-passed urging the challenge in every case they have handled.

In urging procedural default against petitioner's claims, the State of Louisiana effectively advances petitioner's argument that counsel was ineffective and this ineffectiveness constitutes the "cause" for petitioner's subsequent default. Because of the conflict-of-interest, the IDB counsel rendered aid to petitioner's adversary and provided them a better opportunity to indict and convict. Through the "understood" and "unspoken agreement" between the Jefferson Parish District Attorney's Office and the Jefferson Parish IDB to: *Never file challenges to the unconstitutional jury pool composition nor selection processes,* petitioner could only receive systemic-ineffective-assistance.

## EFFECT OF THE STATES REFUSAL TO WITHDRAW THE PROCEDURAL DEFAULT RAISED AGAINST PETITIONER'S CLAIMS.

Should the State of Louisiana elect not to withdraw its procedural objections to the claims raised in petitioner's application for post-conviction relief and the Memorandum in Support, petitioner re-invokes his request for an evidentiary hearing and an opportunity to depose under oath, the entire staff of the IDB Office. Petitioner furthers that, he wishes to lodge public records request for the IDB Office and archived records of the Jefferson Parish IDB Office covering the expanse from 1994 to 2013, with respect to all clients who have been subject to either a Grand Jury Indictments and/or Petit Jury Trials. Further, petitioner aims to fully effectuate and prosecute his request for all the persons he listed as material-witnesses to this cause to come forth and testify under oath as to the reality of and the effects of the State of Louisiana violating the *National Voter's Rights Act of 1993.* These witnesses will specifically address how the State of Louisiana's non-compliance with the *NVRA of 1993* has negated the legality of the jury pool compositions in Jefferson Parish and through out the State of Louisiana. Also, the State should be mindful that the cases of *Delock, Francis,* and *Davis* are not interchangeable with this case, as not one of those litigants raised the claim(s) of ineffective-assistance of counsel nor conflict-of-interest against the counsel representing them at the time of the procedural default. Here these claims are raised as independent substantive claims and they are also

raised as inter-related claims.

As a matter of systemic reality, the Louisiana System of providing legal representation for indigents in the Parish of Jefferson is unconstitutional before the *6th Amendment* of the United States Constitution.

## RELEVANT ATTACHMENTS WHICH TO PRIOR PLEADING WHICH WEIGH ON THIS COURT'S DECISION

In error, the trial court functioned under the false belief that Admissions of fact cannot be used in these proceedings, however, the post-conviction provisions specifically provide for these discovery, admissions of fact, authentication of documents, and conducting an evidentiary hearing to further develop the record.

(1.)  Request for Post-Conviction Application-related "Admissions of Fact"

(2.)  Request for Post-Conviction Application-related "Discovery"

(3.)  Request Post-Conviction Application-related "Authentication of Documents request" for all documents acquired through discovery.

(4.)  Request for subpoena of out-of-state witnesses

(5.)  Request that the Jefferson Parish Public Defenders involved in this case submit to the subpoena powers of this Honorable Court to give testimony on the following issues which bear upon the court's decision:

   (a)  When did they become aware of the existence of the *NVRA of 1993*?

   (b)  In how many cases have they filed a motion to quash, and/or sought relief based upon the State of Louisiana's violation of the *NVRA of 1993*?

   (c)  In how many cases have the Jefferson Parish IBD filed pleadings alleging systemic ineffective assistance of counsel by their office as a result under-funding and but not limited to the findings set out in the <u>An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 years after Gideon</u>?

Given that, as a matter of "routine" and "standard" operation, the Jefferson Parish IDB System effectively renders aid to the Jefferson Parish District Attorney's Office in their efforts to convict those charged with crimes in this parish, by effectively by-passing opportunities to file sustainable challenges (via Motion to Quash) against the Jefferson Parish practice of "fixing" the eligible pools of Grand and Petit Jurors, this conflict of-interest overcomes any/ all procedural bars proffered.

Petitioner aims to call expert witnesses who are Defense Attorneys, the Authors of "An Assessment of Trial-Level Indigent Defender Services in Louisiana 40 Years after Gideon," members of the Louisiana Appellate Project; and members of the Spangenberg Group who made the

first study of the Louisiana Indigent Defender System (proposal presented to Sam Sailon, James Boren, and Nina Maples, September 11, 1990), and its subsequent results. Petitioner further invokes his right to call/summons/subpoena out-of-state witnesses for the purposes of fully developing the record relative to the claims raised through these pleadings.

## PETITIONER MAINTAINS THAT PRO SE PLEADINGS ARE TO BE HELD TO LESS STRINGENT STANDARDS THAN FORMAL PLEADINGS DRAFTED BY LAWYERS

The law, as it is presently exists, does not hold a pro se prisoner to the high standards in which attorneys are held to. Further, the pro se prisoner is to be given the benefit of any favorable doubts regarding his pleading, because he may suffer from an inability to articulate what is really wrong in his case. Most importantly, this is how the United States Supreme Court addressed the issue in *Haines v Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972):

> "A pro se complaint, "however inartfully **pleaded,**" must be held to **"less stringent standards** than formal pleadings drafted by lawyers" and **can only be dismissed for failure to state a claim if it appears "'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"** Id., at 520-52, 92 S.Ct. at 596, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957).

Petitioner thus avers that pursuant the decision in *Haines v. Kerner*, the Court is confounded from accepting and applying the procedural bar of failure to state a claim, because the claim is a cognizable one before both State and Federal Courts.

Under this settled principle of law, this Honorable Court is duty-bound to permit the development of the underlying facts of this case. Petitioner, hereby invokes his right to be held to a less stringent standard which provides that his pleading "can only be dismissed for failure to state a claim if it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'." Plaintiff contends that precedent of the United States Supreme Court regard pro se pleadings is binding.

## "PREJUDICE COMPONENT" FOR TRIAL COUNSEL'S FAILURE TO SUBMIT A CHALLENGE TO THE UNCONSTITUTIONAL GRAND AN PETIT JURY "FIXING" PROCEDURE IN PLACE AT THE TIME OF PETITIONER'S INDICTMENT AND TRIAL

The petitioner has established the "cause" requirement of *Francis v. Henderson*, 425 U.S. 536 (1976), and *Davis*, in the arguments presented above, hereinafter, the petitioner quotes the legal authority for the purposes of showing that he meets the "prejudice requirement" as a result of IDB Counsel's failure to challenge the jury-pool-fixing-scheme.

In the case of *Winters v. Cook*, 489 F.2d 174 (C.A.5 (Miss.) 1973), the U.S. Fifth Circuit

addressed the issue of waiver by counsel:

> "Waiver by counsel-- As the court below found on clear record evidence, Winters
> attorney fully considered the possibility of raising constitutional objections to the
> racial composition of the grand jury , but rejected that course of action in favor of a
> plea of guilty. By such plea his client was assured of receiving the prosecution's
> recommendation of a life sentence with parole after serving ten years), thus avoiding
> what counsel reasonably considered was the distinct possibility of the death sentence.
> Counsel testified that the threat of his urging these constitutional objections to the jury
> selection procedures was the 'pry pole' that he used in getting the state to allow the
> defendant to enter a guilty plea. In his opinion as an experienced criminal attorney this
> procedure utilized the unlawful condition in the most effective way. Even the most
> skillful trial tactician should be hard pressed to fault counsel's considered and
> conscientious strategy to waive this option in return for practical assurance that his
> client would not be executed. Where as here, a competent attorney who is well-versed
> in the defense of murder charges deliberately refrains from making a known
> constitutional objection to the composition of a grand or petit jury for strategic
> purposes, there has been a deliberate bypass and waiver under *Fay v. Noia*, 372
> U.S. 3912, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)." (This Footnote is very important¹)

The prejudice suffered by petitioner Funes is summed up intelligently by the excerpt from the

aforementioned court opinion. The attorney in that case used the 'threat of his urging these

constitutional objections to the jury selection procedures' as the 'pry pole' "that he used in getting

the state to allow the defendant to enter a guilty plea." This ( a constitutional attack against the

unconstitutional composition of the Grand and petit jury pool, along with other necessitated verbal

objections) is what IBD counsel in this case never considered, nor used despite the fact that this

tactic has been available since 1973, and all the evidence to prove the claim was clearly ascertainable

by counsel and available to counsel pre-trial. Even the State of Louisiana through the Parish of

Jefferson, District Attorney, specified this fact in its procedural objection when they wrote:

> "....and the petitioner in this case was as capable of learning these facts as was
> petitioner in that case." Id. at page -5 of 8- (state's procedural objections)²

Simply put, the state avers that the non-English speaking petitioner should have either known

---

¹ The same rationale set forth in Winters v. Cook, applies to all the state's claims, and in
order to avoid redundancy, petitioner applies his contention of ineffective assistance of counsel
coupled with the conflicting-interests maintained by counsel during all proceeding are what caused
the lapses which the state now urges as lapses warranting the application of procedural default.
Petitioner contends the District attorney enjoins him in proving the prejudice proof of
ineffectiveness as counsel's failure are still rendering aid to the prosecution at this late hour.
Counsel's pre-trial and trial ineffectiveness is the state's sole basis for launching a procedural
default assault against petitioner's claim of suffering constitutional deprivations.

² True enough, the Deloch case and this case is similar as to the primary claim raised, but
Sidney Deloch, did not raise the independent substantive claims(s) of ineffective assistance of
counsel nor conflict-of-interest. And for that reason, his claim failure, he (Deloch) never sought,
beyond *930.8(A)(1)* to establish the cause and prejudice components required by *Francis v.
Henderson* nor *Davis v. United States*. And for the sake of clarity, *La.C.Cr.P. Art. 930.8(A)(1)*
was not nor truly could it be a consideration here as petitioner's application for post-conviction
relief is both timely and his very first.

of this violation or should have learned this violation from a source other than counsel. If this is true of petitioner, how much more is this true of IDB counsel? When confronted with a similar question in *Hollis v. Davis*, 941 F.2d 1471 (C.A. 11 (Ala.) 1991), the court wrote extensively upon the premise which is likewise applicable here. In *Hollis* the Court wrote:

> "But Mr. Hollis challenge involves the systematic exclusion of blacks from the pool from which grand and petit juries were chosen. This right could hardly have been better established by 1959, and any competent attorney practicing criminal defense in Alabama at the time should have known of it." Id. at 1477-78

> "If Mr. Jinks did not assert this right because he was unaware of it, his representation was not "within the range of competence demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). A Justice of the Alabama Supreme Court noted in 1963 that "it is beyond the realm of speculation that any active lawyer, practicing law and residing in Montgomery, could fail to know that the question of the exclusion of Negroes from the juries in Montgomery County has been raised in recent years.... [I]t is inconceivable that any qualified and active local attorney would not know of the raising of the question...." *Ex Parte Aaron*, 275 Ala. 377, 379 155 So.2d 334, cert. Denied, 375 U.S. 989, 84 S.Ct. 177, 11 L.Ed.2d 126 (1963) (Merrill, J., concurring ). Bullock County borders Montgomery County to the southeast. This ineffective assistance establishes cause for the procedural default."

In the rationale above we see the same principles at work in that case are also present and at work in this case. Likewise, it is: [beyond the realm of speculation that any active lawyer, practicing law and residing in Louisiana, could fail to know that the question of the exclusion of Negroes from the juries as a historical and present fact has been raised in recent years.... [I]t is inconceivable that any qualified and active local attorney would not know of the raising of the question.] Because of recent challenges aiming at the unconstitutionality of the Louisiana Grand Jury System and Petit Jury System, it should be common knowledge to the Jefferson Parish IBD Office to at least file a motion to quash, thereby, preserving the claim for later review if necessary and preventing future prejudice to the client's by having frustrated their ability to raise the challenge at a later date because counsel failed to file the requisite pre-trial motion to quash.

In recent years there has been *State v. Kenneth Dilosa*, 848 So.2d 546 (2003), *Campbell v. Louisiana*, 118 S.Ct. 1419 (1998), *State v. Rick Langley*, 711 So.2d 651 (1998), and *Deloch v. Whitley*, 684 So.2d 349 (1996), therefore, IDB counsel could not argue that he was unaware of his obligations with respect to this issue. Historically, cases like *Eubanks v. Louisiana* (1958), *Pierre v. Louisiana* (1939) are just two (2) cases that counsel should have at least been casually acquainted with. Further, there have been cases where litigants have argued, albeit improperly, that they were entitled to the presumption of prejudice when their trial counsel failed to file the required Pre-trial

Motion to Quash. *Francis v. Henderson* required that the cause and prejudice provision be met as done herein.

## DEPRIVATION OF ACCESS TO RELEVANT TRANSCRIPTS
## LAW AND ARGUMENT

Petitioner, Rigoberto Funes, has been constructively, actively and continuously denied his right to adequate and meaningful appeal review by way of "STATE CREATED IMPEDIMENT," resulting from the appointment of ineffective and conflict-laden defense counsel from the Jefferson Parish IDB. This is of no fault of Funes as he has utilized due diligence to no avail. Funes urges that all portions of the record are of "extreme importance" and his ability to review the complete record will enable him to have meaningful appeals prepared on his behalf, should more appeals be needed. Constitutional Violation contained in the missing or un-transcribed portions of the transcript, pose an impediment to have a thorough appellate review.     The continued failure to produce the complete and entire transcript will preclude Funes from enjoying equal protection of the law, if other indigent appellants are freely given their complete record, than Funes is entitled to the same treatment as a anyone else before the Courts of law.

In the instant case, Funes' direct appeal was meaningless and amounted to sham litigation that only served to cause further injury to Funes. From inception, Funes was systemically denied the basic and fundamental right to counsel, whereas counsels failure to object to preserve critical portions of the transcript for review is simply another ancillary problem deriving from the systemic ineffectiveness.

With less than the complete record, appeal counsel could be nothing short of ineffective, as failure to designate all constitutional violations/errors contained in the complete transcript precludes the raising of those violations later in the proceedings, and this is highly prejudicial to the accused.

The *Louisiana Constitution of 1974, Article 1, Section 19* provides that "the review under an appeal of right from a felony conviction [accorded by *Art 5, § 5 (D) (2)* ] shall be based upon a complete record of all evidence upon which a judgement is based." *State V. Robinson*, 387 So.2d 1143 (La. 1980).

The United States Supreme Court has also recognized the right to a complete transcript of the trial proceedings, particularly when (as here) counsel on appeal was not counsel at trial. *Hardy v. United States*, supra, while the outer limits of that principle are not clear, there can be no doubt that the state must provide an indigent defendant with a transcript of prior proceeding when that transcript

162.

violated and denied an opportunity to point to the specific instances where rights were compromised by his counsel. Also, with the complete record, petitioner can specify all errors that appellate counsel should have briefed had been effective.

## CONCLUSION

Wherefore, for the "cause" and "prejudice" shown as to all the lapses in counsel's representation deriving from systemic ineffectiveness and conflict-of-interest laden representation, petitioner prays that the State of Louisiana, all Procedural objections perfected through the Jefferson Parish District Attorney's Office, to claims 1, 4, 5, 6a, 10, 11, and 12 be dismissed.

Respectfully Submitted By:

X Rigoberto Funes
Rigoberto Funes # 571875
MAIN PRISON, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LOUISIANA 70712

## CERTIFICATE OF SERVICE

I, Rigoberto Funes, hereby certify that I have forwarded a copy of the above Traversal to the State's Procedural Objections to the Clerk of Court and District Attorney's Office for the Parish of Jefferson 200 Derbingy Street, Gretna, La. 70053, on this _4_ day of _November_ 2013.

X Rigoberto Funes
Rigoberto Funes

## AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that to the best of his limited knowledge and understanding of the law, the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on this _____ day of _November_, 2013.

Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

Raphael Augustine                24851

Ex-Officio Notary
Dept. of Public Safety & Corrections/LSP

147.

# Appendix #11

Re-Urged Motions for Appointment of Counsel; Evidentiary Hearing, Discovery, and Authentication of documents secured through Discovery filed. Unanswered (to date) Requests for Admissions filed 9/3/13. Petition for Writ of Habeas Corpus Ad Testificandum. State Court judge erroneously concluded multiple claims were not cognizable, yet, those claims (i.e. conflict of interest and ineffective assistance) had been recognized in both state and federal law.

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes                    DOCKET NO.  08-5641
        Petitioner

VERSUS                                           FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                           _____
        Respondent                           Deputy Clerk

### RE-URGED MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING ALSO PETITIONER REQUESTS DISCOVERY AND AUTHENTICATION OF DOCUMENTS SECURED THROUGH DISCOVERY

MAY IT PLEASE THE COURT:

NOW INTO COURT comes, Rigoberto Funes, in proper person, who moves this Honorable Court to appoint counsel to represent petitioner's meritorious post-conviction relief application and grant an evidentiary hearing where he is entitled to relief requested.

Currently, petitioner is presently incarcerated and unable to retain counsel and motions the Court, out of the abundance of caution and in the interest of justice, to appoint counsel pursuant to *La. C.Cr.P. art. 930.7(A)(B)(C).* and *Martinez v. Ryan*, supra. and *Treveino v. Thaler*

Petitioner submits that the court will not be able to resolve and determine the factual and legal issues presented based solely on the answer by the State and the supporting documents of exhibits submitted and should order an evidentiary hearing under the provisions of *La. C.Cr.P. arts. 928, 929* and *930.7(B)*

                           SUBMITTED BY:

                           X_Rigoberto Funes___
                           Rigoberto Funes # 571875
                           Main Prison, Spruce-4
                           LA. STATE PENITENTIARY
                           ANGOLA, LA 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes          DOCKET NO. 08-5641
    Petitioner

VERSUS                                 FILED_____

BURL CAIN, WARDEN
L.A. STATE PENITENTIARY                Deputy Clerk
    Respondent

## ORDER

CONSIDERING THE FOREGOING POST-CONVICTION RELIEF APPLICATION AND
MOTION FOR APPOINTMENT OF COUNSEL AND EVIDENTIARY HEARING:

  IT IS HEREBY ORDERED that attorney_____, enroll as

counsel of record to represent petitioner, Rigoberto Funes., before this Court pursuant to

*Martinez v. Ryan, Trevino v. Thaler* and *La.C.Cr.P. art. 930.7(B)* at an evidentiary hearing

to be held on this ____ day of _____, 2013.

  Thus done this_____day of_____2013.


          _____
             DISTRICT COURT JUDGE


Please Serve:

Rigoberto Funes # 571875
Main Prison, Spruce-4
La. State Penitentiary
Angola, LA 70712

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes         DOCKET NO. 08-5641
                Petitioner

VERSUS                       FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY         Deputy Clerk
                Respondent

## *REQUEST FOR ADMISSIONS RELATIVE TO PLAINTIFF'S REQUEST*
## *FOR PCR RELIEF*

Plaintiff requests that defendant admit the truth of the following facts within fifteen (15) days

after receipt of the request. Please write/type true or false in the blank provided next to each statement:

### LIST OF ADMISSIONS

1. _____    Trial counsel never raised the claim of systemic-ineffective assistance of counsel against the IDB office for the Parish of Jefferson at any time since .

2. _____    appellate counsel did not raise ineffective assistance of trial counsel for failure to file the requisite motions to quash the grand and petit juries nor any other claim of ineffective assistance raised in petitioner's application for post conviction relief and memorandum of law in support.

3. _____    appellate counsel did not raise ineffective assistance against himself/herself for failure to raise the claim of ineffective assistance of counsel against trial counsel.

4. _____    When the state of Louisiana files procedural objections, the post-conviction professor Cheney Joseph wrote: "Due to the obvious importance of the discovery procedures in determining the appropriateness of summary dismissal, the petitioner is entitled to the assistance of counsel if such methods are utilized." 41 La.L.Rev. 637 1980-1981.

5. _____    Petitioner has requested a hearing with the assistance of counsel for the purpose of further developing the record in these proceedings.

6. _____    Though Rigoberto Funes, was required to answer procedural objections without the assistance of counsel to aid him in the crafting nor presentation of his replies to the procedural objections raised by the 24th Judicial District Attorney's Office.

7. _____    Petitioner has offered the State of Louisiana an opportunity to withdraw its procedural objection or risk admitting the counsel was fully aware of the underlying claims and their meritorious nature and merely by-passed them to the detriment of his client.

8._____ Petitioner has asserted that the entire Jefferson Parish IDB Office has a conflict-of-interest in this matter and is remaining silent and concealing systemic-ineffective assistance by that office.

9._____ If the IDB Office for the Parish of Jefferson has a conflict-of-interest in this case, they cannot be appointed to represent this cause.

10._____ Petitioner Funes has requested the issuance subpoenas for experts chosen by counsel to be appointed to him and made a request for out-of-state subpoenas for critical witnesses who will testify under oath to their factual knowledge and findings as they relate directly to the claims raised in this case.

11._____ The "cause" and "prejudice" standard of *Francis v. Henderson*, the case upon which the state has relied upon in its arguments against petitioner has been addressed in Rigoberto Funes' traversal to the the state's procedural objections..

12._____ As it applies to the case of *State of Louisiana v. Rigoberto Funes*, which has its origins as the case of 24th JDC, #08-5641, Div. "E", Mr. Rigoberto Funes has alleged that the underlying facts substantiating the claim of negative impact upon his trial and petit juries by the state's non-compliance with the Voter's Registration Act, was based upon the discovery of the 2011 civil suit filed as *Ferrand v. Schedler*, Case 2:11-cv-00926 (4/19/11) U.S. Eastern District of Louisiana.

13._____ Although *Martinez v. Ryan* addressed the narrow issue of whether an Arizona petitioner could establish cause for a procedural default in federal court. It also addresses whether there is an exception to there being no right to counsel when a state defers an ineffective assistance of counsel claim to post conviction

14._____ An equitable ruling, by contrast, permits a variety of systems for appointing counsel in initial review collateral proceedings. And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal habeas proceedings.

15._____ The State of Louisiana, through the Parish of Jefferson District Attorney's (Courts) barred Rigoberto Funes from having the merits of his ineffective assistance of trial counsel claim adjudicated; the conflict-of-interest claim; the violation of the *NVRA of 1993* claim, the jury sequestration issue showing counsel's ineffectiveness; erroneous jury instruction and credibility vouching issue due to counsel's failure to timely object; and ineffective counsel's failure to correct or object to perjured testimony.

16._____ A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-52, 92 S.Ct. At 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed2d 80 (1957)

12._____ At this present time, the *State of Louisiana is being sued by the Federal Government in the Middle District of Louisiana* for non-compliance with the National Voter's Rights Act of 1993. U.S. v. Louisiana, U.S. Middle District of Louisiana. 3:11-cv-00470-JJB-RLB

The foregoing admissions of fact are hereby propounded for the adequate and expedient resolution of both the procedural issue(s) and the merits of the underlying claims in *State of Louisiana v. Rigoberto Funes*, which has its origins as the case of 24th JDC, #08-5641, Div. "E", Parish of Jefferson, State of Louisiana.

RESPECTFULLY SUBMITTED:

*Rigoberto Funes*
Rigoberto Funes # 571825
Main Prison, Spruce-4
LA. STATE PENITENTIARY
ANGOLA, LA 70712

### AFFIDAVIT

Wherefore after being duly question and making stipulations to the satisfaction on the undersigned, one, Rigoberto Funes, did appear before me and swear that he served a copy of the above pleading upon the District Attorney for the Parish of Jefferson and the above address, and he also notified the of the deadline for the admissions thereon. Mr. Funes executed this document , with assistance, to the best of his limited knowledge and understanding of the law, he attests that the facts and allegations contained herein are true to the best of his knowledge and belief. Thereafter, this document was tendered to the hands of a Prison Official on the _____ day of August, 2013.

_____
Notary of Other Person duly Commissioned to
Accept a legal and Binding Oath

9-3-13

*Rachal Augustine 24851*
Ex-Officio Notary
Dept. of Public Safety & Corrections/LSP

IN THE
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

STATE EX REL. Rigoberto Funes                    DOCKET NO. 08-5641
          Petitioner

VERSUS                                           FILED _____

BURL CAIN, WARDEN
LA. STATE PENITENTIARY                           _____
          Respondent                    Deputy Clerk

## ORDER

IT IS ORDERED that the Honorable _____, District Attorney for the 24TH

Judicial District Court, Parish of Jefferson, State of Louisiana, file an answer or present any

argument in opposition to the foregoing "Request for Admissions" relative to petitioner's

Application for Post-Conviction Relief, within fifteen (15) days of receipt of the document.

Thus said and done and signed this day of _____ 2013.


_____
DISTRICT COURT JUDGE


Please Serve:
Rigoberto Funes # 571825
Main Prison, Spruce-4
La. State Penitentiary
Angola, LA 70712