# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RIGOBERTO FUNES**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 14-1342**

**BURL CAIN, WARDEN**                                   **SECTION "A"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.   Factual and Procedural Background

The petitioner, Rigoberto Funes ("Funes"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 26, 2009, Funes and four co-defendants, Jose Cornejo-Garcia, Renil D. Escobar-Rivera, Mario A. Funes, and Pedro A. Navarrete-Duran, were indicted by a Jefferson Parish Grand Jury on four counts of second degree murder for the deaths of Wallace Gomez, Beauford Gomez, Wayne Hebert and Jeffrey Carmadelle.[3]  Funes entered a plea of not guilty to the charges on March 6, 2009.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 11.

[3]St. Rec. Vol. 3 of 14, Indictment, 2/26/09; Grand Jury Return, 2/26/09.

[4]St. Rec. Vol. 3 of 14, Minute Entry, 3/6/09.

The record reflects that Stanley Gomez, who was 82 years old at the time, arrived at the bar he owned in Jefferson Parish at around 9:00 a.m on October 30, 2008.[5]  Stanley's father had opened Gomez's Bar at that location in 1941, and they always kept cash on hand to cash checks for the employees at Johns-Manville, which was located across the street from the bar.  Stanley also had two brothers, Wallace and Beauford Gomez, who were at the bar with him that day.

At around 2:00 p.m., five Hispanic men entered the bar and ordered drinks.  The men then walked over to the pool table, picked up some pool sticks, and then bunched together to talk.  The men suddenly broke away from each other and pulled out guns.  At least three of the men, if not all, had guns.  The men approached each of the patrons and took their wallets at gunpoint.  One of the men put a gun to Wallace Gomez's head and forced him through the kitchen to the back room where the safe was located.  Stanley tried to get to the storeroom behind the bar, and one of the robbers, later identified as Mario Funes, followed him and told him to come out.

Later, the robber who brought Wallace to the safe came running out with a sack, yelling something in Spanish.  The men headed out of the door except for Mario Funes.  Mario instead went behind the bar, and pulled a gun on John, the bartender, to get him to open the register.  When the register drawer opened, it fell out onto the floor.  Mario grabbed the money he could and stuffed it into his pocket.

In the meantime, Wallace came out of the kitchen area carrying a pistol in his hand.  At that time, someone yelled to him, "There's one of them right by the bar there."  Wallace called out to Mario, and when Mario turned towards him, the two men began firing at each other at close range.  Wallace and his brother Beauford soon both fell to the ground during the exchange of fire.

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal.  *State v. Funes*, 88 So.3d 490, 493-504 (La. App. 5th Cir. 2010); St. Rec. Vol. 11 of 14, 5th Cir. Opinion, 11-KA-120, pp. 2-23, 12/28/11.

Unfortunately, the eyewitness and forensic evidence later would show that one of Wallace's bullets passed through Mario and struck and killed Beauford.

After the shooting paused, Stanley ran behind the other end of the bar to call 911. While he was on the phone, two of the robbers walked back inside and began firing. Before ducking behind the bar, Stanley observed that the robber on the right had a weapon that jammed, and he threw it on the floor. The other robber on the left continued to fire his weapon. Two patrons of the bar, Wayne Hebert and Jeffrey Carmadelle, were shot and killed during this time. The two robbers soon picked up Mario and dragged him outside.

A Jefferson Parish Sheriff's Deputy soon drove up and three of the robbers, the injured Mario, Rigoberto Funes, and Jose Cornejo-Garcia, were apprehended nearby. The other two assailants, Renil D. Escobar-Rivera and Pedro A. Navarrete-Duran, were later arrested in Texas.

At a pretrial motion hearing held on March 22, 2010, the Trial Court granted Funes motion to sever his trial and to quash the second count, which improperly charged him and his co-defendants with second degree murder of Beauford Gomez under the felony-murder doctrine.[6] Funes later was separately tried before a jury on July 27-29, 2010, and was found guilty as charged on the three remaining counts.[7] At a hearing held on August 5, 2010, the Trial Court sentenced Funes to serve life in prison on each count, to run consecutively and without benefit of parole,

---

[6]St. Rec. Vol. 3 of 14, Hearing Minutes, 3/22/10; St. Rec. Vol. 8 of 14, Hearing Transcript, 3/22/10.

[7]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10; Trial Minutes, 7/28/10; Trial Minutes, 7/29/10; St. Rec. Vol. 8 of 14, Trial Transcript, 5/27/10; St. Rec. Vol. 9 of 14, Trial Transcript (continued), 5/27/10; Trial Transcript, 5/28/10; St. Rec. Vol. 10 of 14, Trial Transcript (continued), 5/28/10; Trial Transcript, 5/29/10.

probation, or suspension of sentence.[8]  The Trial Court denied Funes's motion to reconsider the sentences on September 9, 2010.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Funes's appointed counsel asserted three errors:[10] (1) the Trial Court erred by denying the motions to suppress the defendant's statements; (2) the Trial Court imposed an excessive sentence; and (3) the Trial Court erred by charging the jury that a less than unanimous verdict was sufficient to convict the defendant on an offense punishable at hard labor and the non-unanimous verdict is unconstitutional.  Funes was granted leave to file a *pro se* supplemental brief which was never filed.[11]

On December 28, 2011, the Louisiana Fifth Circuit affirmed Funes's convictions and sentences finding no merit in the claims raised.[12]  The Louisiana Supreme Court denied Funes's subsequent writ application without stated reasons on May 25, 2012.[13]

Funes's conviction and sentence became final ninety (90) days later on August 24, 2012, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[8]St. Rec. Vol. 3 of 14, Sentencing Minutes, 8/5/10; St. Rec. Vol. 10 of 14, Sentencing Transcript, 8/5/10.

[9]St. Rec. Vol. 3 of 14, Hearing Minutes, 9/9/10; Motion to Reconsider Sentence, 8/5/10; St. Rec. Vol. 10 of 14, Hearing Transcript, 9/9/10.

[10]St. Rec. Vol. 11 of 14, Appeal Brief, 11-KA-0120, 3/14/11.

[11]St. Rec. Vol. 11 of 14, 5th Cir. Order, 11-KA-120, 3/23/11.

[12]*Funes*, 88 So.3d at 490; St. Rec. Vol. 11 of 14, 5th Cir. Opinion, 11-KA-120, 12/28/11.

[13]*State v. Funes*, 88 So.3d 490 (La. 2012); St. Rec. Vol. 12 of 14, La. S. Ct. Order, 2012-KO-0290, 5/25/12; La. S. Ct. Writ Application, 12-KO-0290, 1/27/12 (postal metered 1/26/12, dated "January __, 2012").

On June 3, 2013, Funes's signed and submitted an application for post-conviction relief to the Trial Court which, under a broad reading, asserted the following eleven misnumbered grounds for relief, along with a request for transcript copies:[14] (1) the improper practices of voter registration had a discriminatory impact on his trial/petit jury selection and the claim should not be procedurally barred because the facts surrounding the claim were not known to him at an earlier time, citing an exception to La. Code Crim. P. art. 930.4; (2) he received ineffective assistance of trial counsel, and the deferral of review of the ineffective assistance of counsel claim mandates appointment of counsel in accordance with *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012); (3) his right to a fair trial was violated during jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986), and his counsel rendered ineffective assistance on appeal when counsel failed to raise this issue; (4) the Trial Court denied him due process and a fair trial when it failed to instruct or sequester the jurors when they retired during recesses and breaks in the trial; (5) the Trial Court judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts; (6)(a) prosecutorial misconduct occurred when the prosecutor vouched for the credibility of the State's witnesses and (b) failed to correct perjured testimony; (7) [skipped by Funes][15]; (8) counsel provided ineffective assistance when he failed to move to quash the indictment based on discriminatory practices underlying the grand jury selection process; (9) counsel provided ineffective assistance when he failed to secure an expert on rebuttal; (10) Louisiana's voter registration laws and practices created grand jury and trial jury discrimination based on new facts not known to the petitioner, which meets an exception to La. Code Cirm. P. arts. 930.4 and 930.8; (11) the Trial Court denied him due process

---

[14]St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief, 4/10/13.

[15]Funes misnumbered the issues raised in his state application and had no claim number seven.  For clarity and consistency, the Court will follow the numbering recognized by the state trial court.

and a fair trial when it failed to instruct or sequester the jurors when they retired during recesses and breaks in the trial; and (12)[misnumbered by Funes][16] the Jefferson Parish Indigent Defender Board had a conflict of interest when they covered up the fact that there was systematic ineffective assistance being provided due to undue political influence.

After receiving additional briefing from the State and Funes, the Trial Court denied the application in part and denied the request for appointment of counsel on September 13, 2013.[17]  The Trial Court determined that claim 2 (as a request for post-conviction counsel) did not assert a cognizable claim and claims 1, 10 and 12, were procedurally barred from review as not cognizable on post-conviction review under La. Code Crim. P. art. 930.3.  The Trial Court further found that claims 4, 5, 6(a), and 11, also were barred from post-conviction review pursuant to La. Code Crim. P. art. 930.4(B), (C) for his failure to raise the claims in prior proceedings.  The Trial Court also ordered the State to file a response to the merits of the remaining claims 3, 6(b), 8, and 9 (and claim 7 though no such claim was enumerated or argued).

After review of the State's reply and Funes response thereto, on January 16, 2014, the Trial Court denied relief finding no merit in the remaining claims.[18]  Funes thereafter filed a notice of his

---

[16]Funes delineated two claims as number eleven.  The state trial court considered this, the second one, to be claim number twelve.

[17]St. Rec. Vol. 1 of 14, Trial Court Order, 9/13/13.  *See also*, Trial Court Order, 7/22/13; State's Response, 8/12/13; Traversal, 9/10/13.

[18]St. Rec. Vol. 1 of 14, Trial Court Order, 1/16/14; State's Reply, 10/11/13; Traversal, 11/8/13.

intent to file for review of the Trial Court's ruling on January 16, 2014, only addressing the merits of claims 3, 6(b), 8 and 9.[19]  The Trial Court granted him until March 31, 2014, to do so.[20]

Funes timely submitted his writ application to the Louisiana Fifth Circuit on February 14, 2014.[21]  However, Funes again urged each of his original post-conviction claims and sought review of the denial of relief both on the procedural grounds and the merits.

In its reasoned decision issued March 25, 2014, the Louisiana Fifth Circuit denied the writ application finding no error in the Trial Court's ruling on the merits of claims 3, 6(b), 8, and 9, including claim 7 which was not enumerated or argued.[22]  The Circuit Court, however, found that Funes challenge to the Trial Court's September 13, 2013, ruling denying relief on procedural grounds on claims 1, 2, 4, 5, 6(a), 10, 11, and 12 (along with other motions for discovery, counsel and an evidentiary hearing) was untimely pursuant to La. App. R. 4-3.  The Circuit Court noted that Funes did not file a notice of intent to seek review of that ruling and such an intent was not indicated in his notice to seek review of the Trial Court's January 16, 2014, ruling.  The Circuit Court also found no merit under state law in Funes's claim that he had a right to transcript copies. Consideration of Funes's application for rehearing was refused by the appellate court on April 28, 2014, because no rehearing was allowed under La. App. R. 2-18.7.[23]

---

[19]St. Rec. Vol. 1 of 14, Notice of Intent, 2/12/14.

[20]St. Rec. Vol. 1 of 14, Trial Court Order, 3/12/14.

[21]St. Rec. Vol. 13 of 14, 5th Cir. Writ Application, 14-KH-124, 2/21/14 (dated 2/14/14).

[22]St. Rec. Vol. 1 of 14, 5th Cir. Order, 14-KH-124, 3/25/14.

[23]St. Rec. Vol. 14 of 14, 5th Cir. Order, 14-KH-124, 4/28/14; St. Rec. Vol. 13 of 14, Rehearing Application, 4/14/14 (dated 4/4/14).

Funes submitted a writ application to the Louisiana Supreme Court on May 9, 2014, re-urging each of his post-conviction claims and arguing that the Louisiana Fifth Circuit erred when it failed to consider his challenge to the Trial Court's September 13, 2013, order and the denial of his request for transcripts.[24]  The Louisiana Supreme Court denied his subsequent writ application without stated reasons on March 27, 2015.[25]

## II.   <u>Federal Petition</u>

On June 5, 2014, the Clerk of Court filed Funes federal petition for habeas corpus relief in which he asserted, under a broad reading, the following fourteen (14) grounds for relief:[26] (1) the improper practices of voter registration had a discriminatory impact on his trial/petit jury selection and the claim should not be procedurally barred because the facts surrounding the claim were not known to him at an earlier time, citing an exception to La. Code Crim. P. art. 930.4; (2) he received ineffective assistance of trial counsel, and the deferral of review of the ineffective assistance of counsel claim mandates appointment of counsel in accordance with *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012); (3) his right to a fair trial was violated during jury selection under *Batson v. Kentucky*, 476 U.S. 79 (1986), and his counsel rendered ineffective assistance on appeal when counsel failed to raise this issue; (4) the Trial Court denied him due process and a fair trial when it failed to instruct or sequester the jurors when they retired during recesses and breaks in the trial; (5) the Trial Court judge committed reversible error when he made erroneous and misleading comments on the responsive verdicts; (6)(a) prosecutorial misconduct occurred when the prosecutor vouched

---

[24]St. Rec. Vol. 14 of 14, La. S. Ct. Writ Application, 14-KH-1027, 5/16/14 (dated 5/9/14); St. Rec. Vol. 1 of 14, La. S. Ct. Letter, 2014-KH-1027, 5/19/14.

[25]*State ex rel. Funes v. State*, 161 So.3d 651 (La. 2015); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2014-KH-1027, 3/27/15.

[26]Rec. Doc. No. 11, pp. 6-8, 10, 17-20, 115, 123.

for the credibility of the State's witnesses and (b) failed to correct perjured testimony; (7) counsel provided ineffective assistance when he failed to move to quash the indictment based on discriminatory practices underlying the grand jury selection process; (8) counsel provided ineffective assistance when he failed to secure an expert on rebuttal; (9) Louisiana's voter registration laws and practices created grand jury and trial jury discrimination based on new facts not known to the petitioner, which meets an exception to La. Code Crim. P. arts. 930.4 and 930.8; (10) the Trial Court denied him due process and a fair trial when it failed to instruct or sequester the jurors when they retired during recesses and breaks in the trial; (11) the Jefferson Parish Indigent Defender Board had a conflict of interest when they covered up the fact that there was systematic ineffective assistance being provided due to undue political influence; (12) the state courts erred in depriving him of copies of his transcripts to search for errors; (13) the Trial Court erred by denying the motions to suppress the petitioner's statements; and (14) the Trial Court erred by charging the jury that a less than an unanimous verdict was sufficient to convict the defendant on an offense punishable at hard labor and the non-unanimous verdict is unconstitutional.

On motion of the petitioner, and in light of his then-pending Louisiana Supreme Court writ application, this Court granted a stay in this case on July 31, 2014, to allow Funes to complete state court review.[27] Upon granting of Funes's request to lift the stay on April 20, 2015, the State was ordered to respond to Funes's petition.[28]

The State filed a response in opposition to Funes's petition referencing record document number one, Funes's original <u>deficient</u> petition which was <u>not</u> served on the State and instead was

---

[27] Rec. Doc. Nos. 9, 13, 14.

[28] Rec. Doc. No. 16.

re-docketed as document number eleven when Funes corrected other record deficiencies and pauper status was granted.[29]  The latter document, number eleven, is the petition to be addressed by this Court and is the only version of the petition that was served by the Clerk of Court upon the State. Nevertheless, because the original submission (Rec. Doc. No. 1) and the properly filed petition (Rec. Doc. No. 11) are identical, the State's response is sufficient.[30]  In that regard, after a close reading of the State's opposition memorandum, it appears that the State argues that Funes has not properly exhausted state court remedies as to the first eleven claims, many of the unexhausted claims also are in procedural default, and the remaining exhausted claims are without merit.[31]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court by Funes under the federal mailbox rule on June 4, 2014.[33]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[29]*See* Rec. Doc. Nos. 2, 3, 4.

[30]Rec. Doc. No. 11.

[31]Rec. Doc. No. 18.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of Court filed Knight's federal habeas petition on April 29, 2015, when it was received.  Knight dated his signature on the form petition on April 25, 2015. Rec. Doc. No. 1, p. 7.  This is the earliest date appearing in the record on which Knight could have presented his pleadings to prison officials for mailing to the Court.

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Funes federal petition was timely filed. As indicated above, however, the State argues that Funes did not properly exhaust many of his claims and many of the claims are in procedural default. For the following reasons, the record confirms that Funes did not properly exhaust state court remedies as to the first twelve claims (as numbered in the federal petition), otherwise, if considered to be exhausted, eight of those claims or arguments are in procedural default, and the remaining claims are not cognizable on federal review or are without merit. Because the record confirms that Funes has not properly exhausted state court review of all of his claims, the Court will address the State's exhaustion defense as dispositive of Funes's petition without need at this time to consider procedural default or the substantive defenses to the other claims.

## IV.   **Exhaustion Doctrine**

As the State argues, Funes has not exhausted available state court remedies in a procedurally proper manner with respect to the first twelve claims listed in his federal petition, each of which originated in his state post-conviction process. To be clear, the State concedes and the record confirms that Funes properly exhausted state court review through the direct appeal process related to the last two (supplemental) claims numbers 13 and 14 in which he argues that the Trial Court erred by denying the motions to suppress the petitioner's statements and the Trial Court erred by charging the jury that a less than unanimous verdict was sufficient to convict the defendant on an offense punishable at hard labor and the non-unanimous verdict is unconstitutional. However, as

to the remaining claims, numbers 1 through 12, his exhaustion efforts were not procedurally proper under Louisiana law.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). When ineffective assistance of counsel is raised, the claim is not exhausted if the petitioner did not raise or mention the same basis or legal theory in the state court proceedings that is asserted in a federal petition. *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory

than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (finding that the factual bases for ineffective assistance claim were not exhausted as "significantly different" from those raised in state court).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.* at 32.

To briefly reiterate the procedural history of this case, Funes raised the twelve claims at issue to the state trial court in his application for post-conviction review. The Trial Court denied the request for transcripts out right (claim number 12 in this federal petition). The Trial Court also denied claims 1, 2, 4, 5, 6(a), 9, 10, and 11 (as numbered in this federal petition) on procedural grounds citing La. Code Crim. P. art. 930.3 and/or art. 930.4(B) & (C). The Trial Court later disposed of claim numbers 3, 6(b), 7 and 8 (as numbered in this federal petition) as meritless.

In its opinion issued March 25, 2014, the Louisiana Fifth Circuit imposed its own procedural reasons for not considering claims 1, 2, 4, 5, 6(a), 9, 10, and 11, because Funes's writ application did not timely seek review of the trial court's ruling on those claims. The Circuit Court, however, confirmed the trial court's disposition of claims 3, 6(b), 7, and 8, as meritless.

As noted previously, under La. S. Ct. Rule X, §5, Funes had thirty (30) days following the March 25, 2014, issuance of the Louisiana Fifth Circuit's opinion to sign and submit a writ application to the Louisiana Supreme Court. Contrary to Funes's insistence, his request for

rehearing filed with the appellate court was not allowed under state law, and therefore was not a procedurally proper proceeding that would have extended his time limits for filing for review in the Louisiana Supreme Court.

La. S. Ct. Rule X, §5 is a procedural requirement under Louisiana law, one without statutory exception under state law. *See Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same); *see also*, *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding that "time limits, no matter their form, are 'filing' conditions" and therefore, an untimely petition is not "properly filed" for purposes of statutory tolling, as it cannot even be initiated or considered). Funes's failure to comply with that requirement rendered his writ application procedurally <u>improper</u> and ultimately denied the Louisiana Supreme Court the opportunity to properly consider the merits of his state post-conviction claims. *Accord*, *Broussard v. Cain*, No. 14-CV-0433, 2015 WL 1021274, at * 1, *2 (W.D. La. Mar. 5, 2015). This failure meant that his twelve claims raised here were not fully and properly exhausted in the Louisiana state courts. In light of the State's invocation of procedural dispositions of his claims, comity and justice would dictate that Funes be allowed to at least pursue full and proper review of his claims before the procedural bars and defaults are considered or imposed by this Court.

For these reasons, Funes has presented this Court with a "mixed petition," which includes both exhausted and unexhausted claims, and it is subject to dismissal for that reason. *See Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420). The record discloses no good cause for Funes's failure to properly and fully exhaust his claims in the state courts, and the Court can find

14

none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Having found no good cause for his failure to exhaust, this mixed petition should be dismissed without prejudice to allow Funes to exhaust any remaining state court remedies on all claims, unless he amends the petition to dismiss or exclude the twelve unexhausted claims and proceed with only the two fully exhausted claims (numbers 13 and 14 as numbered in this federal petition).[34] *See Rhines*, 544 U.S. at 277-78 (dismissal is proper where no good cause is shown for the failure to exhaust); *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510).

## V.      Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Funes's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[35]

New Orleans, Louisiana, this 21st day of July, 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]A second stay of these proceedings, should one be requested, would not be proper where there has been no showing of good cause to provide such extraordinary relief. *Rhines*, 544 U.S. at 277-78; *see also Pliler v. Ford*, 542 U.S. 225, 233 (2004).

[35]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.