## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RIGOBERTO FUNES**                                          **CIVIL ACTION**

**VERSUS**                                                    **NO. 14-1342**
                                                              **c/w 19-9795**

**BURL CAIN, WARDEN**                                         **SECTION "A"(2)**

## REPORT AND RECOMMENDATION

These consolidated were referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the records, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the petitions for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

The petitioner, Rigoberto Funes, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 26, 2009, Funes and

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]C.A. No. 14-1342, Rec. Doc. No. 1; C.A. No. 19-9795, Rec. Doc. No. 1.

four co-defendants, Jose Cornejo-Garcia, Renil D. Escobar-Rivera, Mario A. Funes and

Pedro A. Navarrete-Duran, were indicted by a Jefferson Parish grand jury on four counts

of second degree murder for the shooting deaths of Wallace Gomez, Beauford Gomez,

Wayne Hebert and Jeffrey Carmadelle.[3]  Funes entered a plea of not guilty to the charges

on March 6, 2009.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts

established at trial in relevant part as follows:

> Deputy Rhonda Goff of the Jefferson Parish Sheriff's Office, Third
> District Patrol Division, testified that on October 30, 2008, at approximately 2:00
> p.m., she was driving to the Third District, on Walkertown Way, to attend roll
> call.  As she approached the intersection of Fourth and Eiseman Streets, in
> Marrero, she observed three Hispanic males, with a large amount of blood on
> them, standing outside of the door to Gomez's Bar, 6109 Fourth Street.  One of
> the suspects was being carried by the other two suspects.  As she was driving up,
> the three men were walking towards her; however, they cut across a field next to
> the bar and began traveling down Eiseman Street away from the deputy.
> Goff turned her lights on and gave her location and observation to the
> dispatcher.  She observed two of the suspects, one who was later identified as
> defendant, carrying the third injured male suspect in between them.  She pulled
> behind the three men, exited her car, and asked them what was wrong, while
> pointing to the male being carried.  The men started speaking Spanish so Goff
> assumed that they did not speak English.  Goff then said: "Put him down."
> "When they put him down," his shirt raised, and Deputy Goff observed a round
> hole in his side that she believed to be a gunshot wound.
> Goff then notified the radio dispatcher that there was a shooting and
> requested an ambulance.  At that time, some white males approached Goff
> warning her to "[w]atch out" because "[t]hey just shot four people in the bar."
> Goff immediately forced the two males, who were not shot, on the hood of her car
> and handcuffed both of them as quickly as possible.  After the two males were

___

[3]St. Rec. Vol. 3 of 14, Indictment, 2/26/09; Grand Jury Return, 2/26/09.  The court has before
it the original 14 volume state court record submitted by the State in Funes's first federal habeas case,
C.A. No. 14-1342 "A"(4).  Per the court's prior order, the State supplemented that record with five
additional volumes to bring the record current.  See Rec. Doc. Nos. 5, 6.

[4]St. Rec. Vol. 3 of 14, Minute Entry, 3/6/09.

handcuffed, she performed a weapons search, attempting to locate firearms. While checking the waistband area for firearms, Goff retrieved approximately six men's wallets, which were collected as evidence. She threw one of the wallets on the hood of her unit and it opened revealing the driver's license of an older white male that did not resemble any of the suspects. Goff also performed a pat down search of the wounded suspect and recovered "a bunch" of wallets in his pockets. There were no firearms retrieved from the suspects. She then called for immediate backup and four ambulances.

After two additional officers arrived on the scene, they took custody of the three suspects, and Goff immediately went inside Gomez's Bar to attempt to assist the people inside. When she opened the door, she "spooked one of the older guys," later identified as Stanley Gomez, hereinafter Stanley, and he picked up a revolver and pointed it at her. She told him to put the gun down and he informed her that his brothers were dead. Goff again commanded Stanley to put the gun down and exit the bar and he complied; however, he placed the gun on the top of the pool table rather than back on the ground from where he retrieved it.

Goff proceeded to go inside of the bar where she observed "blood and money and bodies everywhere." She described the scene as "something out of Hollywood." Two victims were face up, one was "obviously dead," and the other was not moving. Another victim was face down and he was not moving either. There was one male, later identified as Carmadelle, lying near the pool table moving, so Goff went to him and started talking to him in an attempt to comfort him and to see if he could identify the perpetrators. While in the bar, Goff came upon approximately five or six older men, who were either hiding behind the bar or in the back of the building. She told them to leave and tried to keep them from stepping through the crime scene.

Once backup arrived, including Sergeant Rene Lacombe, who took control of the scene, Deputy Goff began securing the scene and the witnesses. Once EMS arrived, Goff took the witnesses with her to obtain their names and contact information. At that time, one of the witnesses gave her a napkin with a license plate number on it. Goff then transmitted the license plate information to the dispatcher.

[. . .]

Stanley Gomez, who was 84 at the time of trial, testified that Wallace and Beauford Gomez were his brothers. He testified that his father opened Gomez's Bar at its current location in 1941 and shortly thereafter he began cashing checks for the employees at Johns Manville, which was located across the street from the bar.

On the day of the incident, Stanley arrived at the bar at approximately 9:00 a.m. At 2:00 p.m. "five Mexicans," came into the bar. They ordered "beer and Cokes," and walked over to the pool table and picked up some pool sticks. They were talking and "kind of bunched up." Next, they broke away and pulled out

guns.  Stanley admitted to seeing three men with guns; however, he declared that "as far as he could see, they all had guns."  They went to the patrons and took their wallets at gunpoint.  "One of them" took his brother, Wallace, put a gun to his head and brought him to the back where the safe was located.  Stanley went to the storeroom, located on the left behind the bar, and one of the robbers, later identified as Mario, came in with a gun and told him to come out.  At some point during the robbery, Stanley's wallet was also taken, but it was later returned by the Jefferson Parish Police Office.

Later, the robber who brought Wallace to the back came out running with a sack, yelling something in "Mexican [sic]."  Stanley was not sure what he was saying but he thought he was saying "I got [sic] the money.  Let's go."  The perpetrator ran out and the other perpetrators followed, except for Mario.  Mario went behind the bar, and pulled a gun on John, the bartender, who opened the register.  When the register opened, it "jumped out," and fell on the floor.  Mario took the money out of the register and stuffed it into his pocket.

Wallace came from the kitchen, carrying a pistol in his hands.  At that time, someone yelled: "There's one of them right by the bar there."  Wallace then said: "Hey, you one of them guys?"  Mario turned around with a pistol in his hand and he and Wallace started firing.  Stanley did not know who fired first because they were too close together.

Wallace looked like "he was firing his gun automatically like, like he didn't know what he was doing."  Stanley observed Wallace and Beauford fall.  When Wallace was falling, he was still shooting.

Stanley immediately went behind the bar, closer to the back end, and called 911.  While he was on the phone, two of the robbers walked back inside and began firing.  Before ducking behind the bar, Stanley observed that the robber on the right had a weapon that jammed and he threw it on the floor by the pool table.  The robber on the left continued to fire, and they both picked up Mario and "dragged" him outside.

When the firing stopped, Stanley checked for a pulse on his brothers, Wallace and Beauford, but he could not feel one on either of his brothers.  At that time a Jefferson Parish deputy drove by the bar and stopped.  After being forced to exit the building, Stanley was later informed that Carmadelle and Hebert had also been shot.  Contrary to Goff's testimony, Stanley testified that he never picked up a gun and placed it on a pool table at the direction of a Sheriff's deputy.

State v. Funes, 88 So.3d 490, 493-504 (La. App. 5th Cir. 2011); State Record Volume 11 of 14, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-120, pages 2-23, December 28, 2011.

4

On March 22, 2010, the state trial court granted Funes's motion to sever his trial and quash the second count, which was found to have charged him and his co-defendants improperly with second degree murder of Beauford Gomez under the felony-murder doctrine.[5]  Funes was tried separately before a jury on July 27 through 29, 2010, and found guilty as charged on the remaining three second degree murder counts.[6]

On August 5, 2010, the state trial court sentenced Funes on each count to consecutive sentences of life in prison without benefit of parole, probation, or suspension of sentence.[7]  On September 9, 2010, the court denied Funes's motion to reconsider the sentences.[8]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Funes's appointed counsel asserted three errors:[9] (1) The state trial court erred when it denied the motions to suppress the defendant's statements. (2) The state trial court imposed excessive sentences. (3) The state trial court erred when it instructed the jury that a less than

---

[5]St. Rec. Vol. 3 of 14, Hearing Minutes, 3/22/10; St. Rec. Vol. 8 of 14, Hearing Transcript, 3/22/10.

[6]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10; Trial Minutes, 7/28/10; Trial Minutes, 7/29/10; St. Rec. Vol. 8 of 14, Trial Transcript, 5/27/10; St. Rec. Vol. 9 of 14, Trial Transcript (continued), 5/27/10; Trial Transcript, 5/28/10; St. Rec. Vol. 10 of 14, Trial Transcript (continued), 5/28/10; Trial Transcript, 5/29/10.

[7]St. Rec. Vol. 3 of 14, Sentencing Minutes, 8/5/10; St. Rec. Vol. 10 of 14, Sentencing Transcript, 8/5/10.

[8]St. Rec. Vol. 3 of 14, Hearing Minutes, 9/9/10; Motion to Reconsider Sentence, 8/5/10; St. Rec. Vol. 10 of 14, Hearing Transcript, 9/9/10.

[9]St. Rec. Vol. 11 of 14, Appeal Brief, 11-KA-0120, 3/14/11.

unanimous verdict was sufficient to convict the defendant on an offense punishable at hard labor, rendering his non-unanimous verdict unconstitutional.  Funes was granted leave to file a pro se supplemental brief which he did not do.[10]

On December 28, 2011, the Louisiana Fifth Circuit affirmed Funes's convictions and sentences finding the claims meritless.[11]  The Louisiana Supreme Court denied Funes's subsequent writ application without stated reasons on May 25, 2012.[12]

Funes's convictions and sentences became final ninety (90) days later on August 23, 2012, because he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On June 3, 2013, Funes signed and submitted to the state trial court an application for post-conviction relief which, when broadly construed, asserted the following eleven misnumbered and repetitive grounds for relief and a request for transcript copies:[13] (1) Improper voter registration practices had a discriminatory impact on the petit jury

---

[10]St. Rec. Vol. 11 of 14, 5th Cir. Order, 11-KA-120, 3/23/11.

[11]Funes, 88 So.3d at 490; St. Rec. Vol. 11 of 14, 5th Cir. Opinion, 11-KA-120, 12/28/11.

[12]State v. Funes, 88 So.3d 490 (La. 2012); St. Rec. Vol. 12 of 14, La. S. Ct. Order, 2012-KO-0290, 5/25/12; La. S. Ct. Writ Application, 12-KO-0290, 1/27/12 (postal metered 1/26/12).

[13]St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief, 4/10/13.  Funes did not include a seventh claim and had two claims listed as number eleven.  I have corrected the numbered order of the claims and will rely on these numbers to complete the procedural history.

selection, and the claim should not be procedurally barred under La. Code Crim. P. art. 930.4 because the facts surrounding the claim were not known at an earlier time. (2) He received ineffective assistance of trial counsel and the holding in Martinez v. Ryan, 566 U.S. 1 (2012), mandates appointment of counsel on post-conviction review. (3)(a) His right to a fair trial was violated during jury selection under Batson v. Kentucky, 476 U.S. 79 (1986), and (b) he received ineffective assistance when trial counsel failed to object to and appellate counsel failed to assert the violations. (4) The state trial court denied him due process and a fair trial when it failed to instruct or sequester the jurors when they retired during trial recesses and breaks. (5) The state trial judge committed reversible error through erroneous and misleading comments about the responsive verdicts. (6) Prosecutorial misconduct occurred when the prosecutor (a) vouched for the credibility of the State's witnesses and (b) failed to correct perjured testimony. (7)[Funes did not have a seventh claim in his state court pleading]. (8) He received ineffective assistance when trial counsel failed to move to quash the indictment based on discriminatory practices underlying the grand jury selection process. (9) He received ineffective assistance when trial counsel failed to secure a defense expert on rebuttal. (10) Violation of federal voter registration laws and Louisiana's practices caused discrimination in grand and trial jury selection, and the claim is based on new facts not previously known, which meets exceptions to the procedural bars under La. Code Crim. P. arts. 930.4 and 930.8. (11) The state trial court denied him due process and a fair trial when it failed to

7

instruct or sequester the jurors when they retired during recesses and breaks in the trial. (12) The Jefferson Parish Indigent Defender Board had a conflict of interest when it covered up systemic ineffective assistance caused by undue political influence.[14]

On September 13, 2013, after receiving additional briefing, the state trial court denied the application in part.[15]  The court found that Funes's request for appointment of post-conviction counsel in Claim 2 did not assert a cognizable claim for post-conviction review.  The court also held that Claims 1, 10 and 12 were procedurally barred and not cognizable on post-conviction review pursuant to La. Code Crim. P. art. 930.3.  The court further held that Claims 4, 5, 6(a), and 11 were barred from post-conviction review by La. Code Crim. P. art. 930.4(B), (C), because Funes failed to assert the claims in prior proceedings.  The court also ordered the State to file a response to the merits of Claims 3, 6(b), 8, and 9.[16]

On January 16, 2014, after review of the State's reply and Funes's traverse, the state trial court denied relief finding no merit in the remaining claims.[17]  Funes thereafter

---

[14]Funes numbered two claims as "(11)."  The state courts considered the second to be claim 12.

[15]St. Rec. Vol. 1 of 14, Trial Court Order, 9/13/13; see also Trial Court Order, 7/22/13; State's Response, 8/12/13; Traversal, 9/10/13.

[16]The state trial court also ordered the State to respond to the non-existent claim seven.

[17]St. Rec. Vol. 1 of 14, Trial Court Order, 1/16/14; State's Reply, 10/11/13; Traversal, 11/8/13.

filed a notice of intent to seek review of the state trial court's January 16, 2014, ruling.[18]
The court granted him leave to do so.[19]

On February 14, 2014, Funes submitted a writ application to the Louisiana Fifth
Circuit challenging both of the trial court's orders denying relief on procedural grounds
and the merits.[20]  In its reasoned decision issued March 25, 2014, the Louisiana Fifth
Circuit denied the writ application finding no error in the state trial court's January 16,
2014 order denying relief on the merits of Claims 3, 6(b), 8 and 9.[21]  The court also held
that Funes's challenge to the state trial court's September 13, 2013, ruling denying relief
on procedural grounds on Claims 1, 2, 4, 5, 6(a), 10, 11 and 12 was untimely under La.
App. R. 4-3.  The court noted that Funes did not file a notice of intent to seek review of
the 2013 order or include it in the notice of intent related to the 2014 order.  The court
also found his request for transcript and document copies meritless.  On April 28, 2014,
the court refused to consider Funes's application for rehearing citing La. App. R. 2-18.7,
which provides the grounds on which rehearing will be considered.[22]

---

[18]St. Rec. Vol. 1 of 14, Notice of Intent, 2/12/14 (dated 2/7/14).

[19]St. Rec. Vol. 1 of 14, Trial Court Order, 3/12/14.

[20]St. Rec. Vol. 13 of 14, 5th Cir. Writ Application, 14-KH-124, 2/21/14 (dated 2/14/14); St. Rec.
Vol. 1 of 14, Notice of Intent, 2/12/14; St. Rec. Vol. 1 of 14, Trial Court Order, 3/12/14.

[21]St. Rec. Vol. 1 of 14, 5th Cir. Order, 14-KH-124, 3/25/14.

[22]St. Rec. Vol. 14 of 14, 5th Cir. Order, 14-KH-124, 4/28/14; St. Rec. Vol. 13 of 14, Rehearing
Application, 4/14/14 (dated 4/4/14).

On May 9, 2014, Funes untimely[23] submitted a writ application to the Louisiana Supreme Court reasserting each of his eleven post-conviction claims and arguing that the Louisiana Fifth Circuit erred when it failed to consider his challenge to the state trial court's September 13, 2013, order.[24]  On March 27, 2015, the Louisiana Supreme Court denied the writ application without stated reasons.[25]

On December 4, 2015, Funes submitted a motion for judicial review in which he asserted nine claims:[26] (1) The state trial court erred when it refused to address the post-conviction claim of grand and trial jury selection discrimination. (2) The state trial court erred when it failed to consider his post-conviction claims of ineffective assistance of trial counsel for failing to move to quash the grand jury indictment based on selection discrimination. (3) The Jefferson Parish Indigent Defender Board had a conflict of interest when it covered up the systemic ineffective assistance caused by undue political influence. (4) The grand and trial jury selection discrimination claim was based on newly discovered facts which met an exception to La. Code Crim. P. arts. 930.4 and 930.8. (5)

---

[23]La. S. Ct. Rule X§5 allows a petitioner thirty (30) days to seek review of an appellate court's ruling.  Because the rehearing was not properly filed, he had 30 days from the appellate court's March 25, 2014 order, or until April 24, 2014, to seek review in the Louisiana Supreme Court, which he did not do.

[24]St. Rec. Vol. 14 of 14, La. S. Ct. Writ Application, 14-KH-1027, 5/16/14 (dated 5/9/14); St. Rec. Vol. 1 of 14, La. S. Ct. Letter, 2014-KH-1027, 5/19/14.

[25]State ex rel. Funes v. State, 161 So.3d 651 (La. 2015); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2014-KH-1027, 3/27/15.

[26]St. Rec. Supp. Vol. 1 of 5, Motion for Judicial Review, 12/8/15 (dated 12/4/15).

The state trial court erred during the systemic discriminatory selection of the grand and petit juries. (6) The state trial court erred when it failed to instruct or sequester the jury during trial breaks and recesses. (7) The state trial court erred when it made erroneous and misleading comments about the responsive verdicts. (8) The state trial court erred in permitting prosecutorial misconduct when the prosecutor (a) improperly vouched for the credibility of state witnesses and (b) failed to correct known perjured testimony. (9) Trial counsel was ineffective for failing to secure rebuttal experts.

On December 29, 2015, the state trial court construed the motion as an application for post-conviction relief and denied relief, finding the application untimely under La. Code Crim. P. art. 930.8 and impermissibly successive and repetitive under La. Code Crim. P. arts. 930.4(D), (E).[27]

On March 3, 2016, the Louisiana Fifth Circuit denied Funes's related writ application finding no error in the trial court's denial as untimely, repetitive and successive.[28]    On August 4, 2017, the Louisiana Supreme Court denied Funes's subsequent writ application finding his underlying post-conviction application untimely

---

[27]St. Rec. Supp. Vol. 2 of 5, Trial Court Order, 12/29/15.

[28]St. Rec. Supp. Vol. 2 of 5, 5th Cir. Order, 16-KH-81, 3/3/16; St. Rec. Supp. Vol. 3 of 5, 5th Cir. Writ Application, 16-KH-81, 2/11/16 (dated 2/2/16); see also, St. Rec. Vol. 2 of 5, Notice of Intent, 1/22/16 (dated 1/19/16); Trial Court Order, 1/25/16 (granted to March 8, 2016 to file for review).

under La. Code Crim. P. art. 930.8 and <u>State ex rel. Glover v. State</u>, 660 So.2d 1189 (La. 1995).[29]

## II.    FUNES'S FIRST FEDERAL HABEAS PETITION

On June 5, 2014, Funes filed a federal petition for habeas corpus relief in C.A. No. 14-1342"A"(4) in which he asserted fourteen (14) grounds for relief:[30] (1) Violation of federal voter registration laws had a discriminatory impact on his trial/petit jury selection and the claim should not be procedurally barred because the facts surrounding the claim were not known to him at an earlier time, citing an exception to La. Code Crim. P. art. 930.4. (2) He received ineffective assistance of trial counsel, and deferral of review of the ineffective assistance of counsel claim mandates appointment of counsel in accordance with <u>Martinez</u>, 566 U.S. at 1. (3)(a) His right to a fair trial was violated during jury selection under <u>Batson</u>, 476 U.S. at 79, and (b) he received ineffective assistance when trial counsel failed to object and appellate counsel failed to assert the violations on direct appeal. (4) The state trial court denied him due process and a fair trial when it failed to instruct or sequester the jurors before recesses and breaks in the trial. (5) The state trial court committed reversible error through erroneous and misleading

---

[29]<u>State ex rel. Funes v. State</u>, 222 So.3d 1244 (La. 2017); St. Rec. Supp. Vol. 5 of 5, La. S. Ct. Order, 2016-KH-0640, 8/4/17; La. S. Ct. Writ Application, 16-KH-640, 4/6/16 (dated 3/30/16).

[30]C.A. No. 14-1342, Rec. Doc. No. 11, pp. 6-8, 10, 17-20, 115, 123. Considering the applicable mailbox rule, the official stamp reflects that Funes delivered the petition to the prison's legal programs department on June 5, 2014, for electronic mailing to a federal court. C.A. 14-1342, Rec. Doc. No. 1, p. 1 and Rec. Doc. No. 11, p.1.

comments about the responsive verdicts. (6) Prosecutorial misconduct occurred when the prosecutor (a) vouched for the credibility of the State's witnesses and (b) failed to correct perjured testimony. (7) Trial counsel rendered ineffective assistance when he failed to move to quash the indictment based on discriminatory practices underlying the grand jury selection process. (8) Trial counsel rendered ineffective assistance when he failed to secure experts on rebuttal. (9) Louisiana's practice of violating voter registration laws caused grand and trial jury discrimination and the claim is based on new facts not known to petitioner, which meets an exception to La. Code Crim. P. arts. 930.4 and 930.8. (10) The state trial court denied him due process and a fair trial when it failed to instruct or sequester the jurors when they retired during recesses and breaks in the trial. (11) The Jefferson Parish Indigent Defender Board had a conflict of interest when it covered up the fact that there was systemic ineffective assistance because of undue political influence. (12) The state trial court erred when it denied motions to suppress the petitioner's inculpatory statements. (13) The state trial court erred by charging the jury that a less than unanimous verdict was sufficient to convict the defendant on an offense punishable at hard labor and Louisiana's non-unanimous verdict law is unconstitutional.

In its opposition response, the State asserted that a number of Funes's claims are in procedural default, several unexhausted claims are in procedural default, and four of

his exhausted claims lack merit.[31]  Specifically, the State asserted that state court review of federal Claims 1 through 11 were not properly exhausted, although the state trial court procedurally barred Claims 1, 2, 4, 5, 6(a), 9, 10 and 11 for failure to state a cognizable claim under La. Code Crim. P. art. 930.3 or as repetitive or successive under La. Code Crim. P. art. 930.4(B) and (C).  In addition, the State asserted that Claims 12 and 13 are meritless.

In his reply to the State's opposition, Funes argued that procedural bar to review of his claims should be overlooked because the state appellate court erred in applying Louisiana law to find his writ application untimely filed.[32]

On August 28, 2015, this court dismissed the petition without prejudice for failure to exhaust state court review of all of the claims.[33]  However, on September 16, 2015, after judgment was issued, Funes moved the district judge to grant a stay to allow him to return to the state courts to exhaust review of his claims.[34]  On October 14, 2015, the district court construed the motion as one for relief from judgment under Fed. R. Civ. P.

---

[31]C.A. No. 14-1342, Rec. Doc. No. 18.

[32]C.A. No. 14-1342, Rec. Doc. No. 21.

[33]C.A. No. 14-1342, Rec. Doc. Nos. 22, 27, 28.

[34]C.A. No. 14-1342, Rec. Doc. No. 30.

14

60(b), vacated the judgment and granted the stay "pending receipt of a motion to reopen once exhaustion is complete."[35]

## III.   FUNES'S SECOND FEDERAL HABEAS PETITION

On April 22, 2019, the clerk of this court filed Funes's second petition for federal habeas corpus relief in which he asserts the following grounds for relief in his form petition:[36] (1) Louisiana's procedures in violation of federal voter registration laws cause discriminatory grand and trial jury selection; (2) violation of Batson and Strickland v. Washington, 466 U.S. 668 (1984), during petit jury selection; and (3) failure to properly sequester jurors.

Funes included 11 other claims, some repetitive, in his supporting memorandum which I broadly construe and include here in sequential order: (4) The facts supporting the jury selection discrimination claim were not known previously and meet an exception to the state court imposed procedural bar, and he should be provided appointed counsel to supplement the claim. (5) The state courts' deferral of the ineffective assistance of counsel claims from direct appeal to post-conviction review entitle him to appointed counsel to assert the claims. (6) Batson and Strickland violations occurred during the jury selection when the prosecutor excluded blacks for non-neutral reasons, and trial counsel failed to object and appellate counsel failed to assert the claims on appeal. (7) The state

---

[35]C.A. No. 14-1342, Rec. Doc. No. 31.

[36]C.A. No. 19-9795, Rec. Doc. No. 3.

trial court erred when it failed to instruct or sequester the jury before recesses and breaks. (8) The state trial court made erroneous and misleading comments about the responsive verdicts. (9) Prosecutorial misconduct occurred when the prosecutor (a) vouched for the credibility of the State's witnesses and (b) failed to correct perjured testimony. (10) Counsel provided ineffective assistance when he did not quash the grand jury indictment based on violation of federal voter registration laws. (11) Trial counsel was ineffective for failing to secure rebuttal experts for the defense. (12) The independent claim of grand and trial jury discrimination asserts new facts previously unknown and fits an exception to the La. Code Crim. P. arts. 930.4 and 930.8(A)(1) procedural bars. (13) The state trial court erred when it failed to instruct or sequester the jury before recesses and breaks. (14) The Jefferson Parish Indigent Defender Board had a conflict of interest through systemic ineffective assistance to political influence.

On July 30, 2019, the State filed a response in opposition suggesting that the court construe Funes's petition as a motion to re-open the prior stayed federal petition, which would have been the proper course for Funes to have taken.[37]  The State also asserts that Funes's previously unexhausted claims are procedurally defaulted, having been denied by the Louisiana Supreme Court as untimely pursuant to La. Code Crim. P. art. 930.8 and by inference as successive under La. Code Crim. P. art. 930.4.  The State also refers the

---

[37]Rec. Doc. No. 16.

court to its original opposition response filed in C.A. No. 14-1342"A" regarding the procedural default and/or merits of other claims asserted in both petitions.

Funes did not file a reply to the State's response. The 2019 and 2014 petitions have been consolidated for review.[38]

## IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[39] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to both of Funes's petitions, which, for reasons discussed below, are deemed filed on June 5, 2014 and April 22, 2019, respectively.[40] The threshold questions in habeas

---

[38]C.A. No. 14-1342, Rec. Doc. No. 32; C.A. 19-9795, Rec. Doc. No. 17.

[39]The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[40]The United States Fifth Circuit Court of Appeals has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court received and filed Funes's first deficient petition on June 5, 2014, and the case was opened on June 13, 2014, when pauper status was granted after correction of certain deficiencies. The clerk of court received and filed Funes's second petition on April 22, 2019, when it was received. The case was opened on May 24, 2019 when Funes paid the filing fee after denial of pauper status. The prison's official stamp indicates that Funes's presented his first petition to the legal programs department on June

review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Following Funes's second filing, the State does not challenge timeliness of the petition or exhaustion of state court review.  The State asserts that a number of Funes's claims are in procedural default and should be dismissed for that reason, while the remaining claims are without merit.  For the following reasons, I find that 18 of Funes's 30 claims asserted in his consolidated petitions are in procedural default and the remaining 12 claims do not entitle him to relied under the AEDPA.

To the extent any questions as to whether Funes has properly exhausted state court review remain, the court need not resolve the matter to dispose of Funes's meritless claims and those procedurally barred from review.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

_____

5, 2014, for electronic mailing to a federal court.  C.A. No. 14-1342, Rec. Doc. Nos. 1, 11.  The prison's official stamp indicates that Fune's presented his second petition to the prison legal programs department on April 22, 2019, for electronic mailing to federal court.  C.A. No. 19-9795, Rec. Doc. No. 1, p. 7.  Payment of the filing fee in the second case did not alter the application of the federal mailbox rule. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

## V.  PROCEDURAL DEFAULT (C.A. NO. 14-1342 CLAIM NOS. 1, 2, 4, 5, 6(A), 9, 10, 11; C.A. NO. 19-9795 CLAIM NOS. 1, 3, 4, 5, 7, 8, 12, 13, 9(A), 14)

On state court post-conviction review, Funes claimed discriminatory grand and petit jury selections processes, entitlement to  appointment of post-conviction counsel and political influence on and conflict of interest of the indigent defender board.[41]  The state trial court denied these claims as procedurally improper and not cognizable under La. Code Crim. P. art. 930.3, which sets forth the grounds available for post-conviction review.  Citing La. App. R. 4-3, the Louisiana Fifth Circuit declined to review the trial court's judgment finding Funes's writ application untimely.  The Louisiana Supreme Court denied subsequent relief with no stated reasons.

Funes also asserted claims on state court post-conviction review challenging the state trial court's failure properly to instruct and sequester the jury during breaks, the state trial court's improper comments on responsive verdicts and prosecutorial misconduct in that the prosecution vouched for witness credibility.[42]  The state trial court procedurally barred review of these claims under La. Code Crim. P. art. 930.4(B) and (C) because the claims were not asserted in prior proceedings or on appeal and could have been.  As indicated above, the Louisiana Fifth Circuit declined to consider Funes's

---

[41]These claims are before this court in C.A. No. 14-1342 as Claim Nos. 1, 2, 9 and 11 and in C.A. No. 19-9795 as Claim Nos. 1, 4, 5, 12 and 14.

[42]These claims are before this court in C.A. No. 14-1342 as Claim Nos. 4, 5, 6(a) and 10 and in C.A. No. 19-9795 as Claim Nos. 3, 7, 8, 9(a) and 13.

untimely challenge under La. App. R. 4-3, and the Louisiana Supreme Court denied subsequent relief with no stated reasons.

Because Funes failed properly to exhaust state court review, he returned to the state court with a second application for post-conviction relief which included his claims challenging the allegedly discriminatory grand and petit jury selection processes, the state trial court's sequestration instructions and alleged improper comments on responsive verdicts and the indigent defender board's alleged conflict.  The state trial court denied relief on these claims under La. Code Crim. P. art. 930.4(D) and (E) as repetitive and successive of the first state court application and for seeking untimely post-conviction review under La. Code Crim. P. art. 930.8.  The Louisiana Fifth Circuit found no error in these procedural bars.  The Louisiana Supreme Court also relied on La. Code Crim. P. art. 930.8 to bar its review of Funes's post-conviction application.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Cone v. Bell, 556 U.S. 499, 465 (2009) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)); Ramirez v. Stevens, 641 F. App'x 312, 319 (5th Cir. 2016).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Lee v. Kemna, 534 U.S. 362, 375 (2002).

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  Rhoades v. Davis, 914 F.3d 357, 372 (5th Cir. 2019) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)).  Procedural bars prevail over any alternative discussion of the merits of the claim by a state court.  Id. at 372; Robinson v. Louisiana, 606 F. App'x 199, 204 (5th Cir. 2015) (citing Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010)).

On federal habeas review, the court looks to the last reasoned opinion of the state courts to determine whether denial of relief was on the merits or based on state law procedural grounds.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.")  Funes's claims were denied on state law procedural grounds in both rounds of state court post-conviction review with the state trial court providing the last reasoned opinion on the claims asserted.

On review of Funes's first state application, the state trial court's reasoned opinion barred review of these claims under La. Code Crim. P. art. 930.3 and art. 930.4(B) and (C).  The higher state courts did not disturb these findings.  On the second round of review, the Louisiana Supreme Court issued the final reasoned opinion barring review

21

of Funes's claims for seeking untimely review under La. Code Crim. P. art. 930.8.  For the following reasons, these state law procedural grounds are independent and adequate to bar federal review of Funes's listed claims.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  Rhoades, 914 F.3d at 372; Rogers v. Mississippi, 555 F. App'x 407, 408 (5th Cir. 2014).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Walker v. Martin, 562 U.S. 307, 316 (2011); Rogers, 555 F. App'x at 408.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 558 U.S. 53, 60-61 (2009) (citation omitted).  The question of the adequacy of a state procedural bar is itself a federal question.  Id. at 60 (citing Lee, 534 U.S. at 375).

Funes's initial state post-conviction review of the listed claims was procedurally barred pursuant to La. Code Crim. P. art. 930.3 and art. 930.4(B) and (C) for seeking improper or dilatory post-conviction relief.  Under the circumstances of this case, the provisions of La. Code Crim. P. art. 930.3 and 930.4(B) and (C) are independent and

adequate to bar federal review of Funes's claims. <u>Hull v. Stalder</u>, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw) (recognizing Article 930.3 to be independent and adequate state grounds); <u>Bennett v. Whitley</u>, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is an independent and adequate state procedural rule); <u>Williams v. Vannoy</u>, No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (Feldman, J.) (order adopting report) (Art. 930.3 is independent and adequate state procedural bar); <u>Johnson v. Cain</u>, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.4(C) is independent and adequate state bar); <u>Perez v. Cain</u>, No. 12-1331, 2012 WL 4815611, at *1 (E.D. La. Oct. 10, 2012) (Barbier, J.) (same); <u>Thomas v. Cain</u>, No. 11-2103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012) (Lemelle, J.) (same re Article 930.4(B)); <u>Lee v. Cain</u>, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (Art. 930.3 independent and adequate to bar ineffective assistance of counsel claim).

When Funes made a second attempt at state court post-conviction review of the same claims, the Louisiana Supreme Court imposed the procedural bar to review under La. Code Crim. P. art. 930.8. It is well settled in the United States Fifth Circuit that denial of relief premised on untimeliness of a claim under La. Code Crim. P. art. 930.8 is sufficient to fulfill the independence requirement of the procedural default doctrine. The United States Fifth Circuit has also squarely held that, because La. Code Crim. P. art. 930.8 is an adequate rule and regularly followed by the state courts to bar review of

untimely claims.  <u>Williams v. Department of Corrections</u>, 444 F. App'x 833, 834 (5th Cir. 2011) (citing <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997)); <u>Morris v. Cain</u>, No. 06-30916, 2008 WL 3876479, at *1 (5th Cir. 2008); <u>Pineyro v. Cain</u>, 73 F. App'x 10, 11 (5th Cir. 2003).  To the extent Funes's claims were not barred from review after his first application, the Article 930.8 bar clearly placed his claims in default.

The state courts' rulings clearly were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for post-conviction review.  See <u>Rogers</u>, 555 F. App'x at 408 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state courts' reasons for dismissal of Funes's claims were independent of federal law and adequate to bar review of his claims in this federal habeas court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural bar rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Gonzales v. Davis</u>, 924 F.3d 236, 241-42 (5th Cir. 2019) (citing <u>Coleman</u>, 501 U.S. at 750 and <u>Harris</u>, 489 U.S. at 262).  Funes has not met his burden of proving an exception to the bars imposed by the state courts in his case.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the

24

state's procedural rule.  Maples v. Thomas, 565 U.S. 266, 280 (2012) ("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule."); Gonzales, 924 F.3d at 242 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  Murray, 477 U.S. at 486.

Funes has offered no cause for his default that would excuse the procedural bar imposed by the Louisiana courts.  In his reply to the State's opposition in C.A. No. 14-1342, Funes discussed his concerns with respect to the Louisiana Fifth Circuit's decision not to consider his untimely writ application under La. App. R. 4-3.  That rule, however, is not relied upon here to bar review of Funes's claims.

Funes addressed the application of the bars to review of his discriminatory grand jury selection process claim under La. Code Crim. P. art. 930.4, the bar the State relies on in its first opposition.  Funes asserts that he meets an exception to Article 930.4(B) and (C) because he "newly discovered" the basis for the claim after his direct appeal.  However, according to his pleadings, Funes was made aware of the facts underlying his claim in "late 2011,"[43] which was well before finality of his state court conviction.

---

[43]C.A. No. 14-1342, Rec. Doc. No. 11, p. 49; C.A. No. 19-9795, Rec. Doc. No. 1-2, p. 40.

Therefore, he has failed to present a valid exception to the bar imposed by the state courts.

In his second federal petition, Funes does not discuss the Article 930.8 bar imposed by the Louisiana Supreme Court to review of his second state court application for post-conviction review. The record does not support a finding that any factor external to the defense prevented Funes from asserting these claims in a procedurally proper manner. The record reflects no action or inaction by the State that prevented Funes from properly and timely asserting these claims in the state courts.

The narrow exception created by the United States Supreme Court in Martinez, 566 U.S. at 1, does not provide cause to overcome the bar to review of Funes's claims that he should have been appointed counsel to assist with his state post-conviction review (state post-conviction Claim 2 and federal C.A. No. 14-1342, Claim 2 and C.A. No. 19-9795, Claim 5) and that the indigent defender board generally operates under political conflict. In Martinez, the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" (emphasis added) Trevino v. Thaler, 569 U.S. 413, 417 (2013) (quoting Martinez, 566 U.S. at 13). In Trevino, the Court emphasized that the Martinez exception also applies when a state's procedures

26

make unlikely a meaningful review of an ineffective assistance of trial counsel claim on direct appeal and defers that review to collateral proceedings. Trevino, 569 U.S. at 417.

Unlike the claims addressed in Martinez and Trevino, the Louisiana courts did not bar Funes from asserting his specific, substantive ineffective assistance of trial counsel claims. Those claims were addressed on the merits in the state courts (and again in this report below) under Strickland. The state courts only declined to consider Funes's generalized claims that he should have been provided counsel to assist with his post-conviction application and that the indigent defender board generally is improperly administered. Unlike in Martinez, the latter two claims do not express or reference a specific claim of ineffective assistance related to Funes's trial counsel and instead broadly addresses administrative matters of the indigent defender board.

In addition, Martinez does not require state courts to appoint counsel to provide further development of a petitioner's post-conviction claims. Martinez instead reiterated the long-standing holding in Coleman, 501 U.S. at 752, that state defendants have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse procedural default. Martinez continues to mandate that a petitioner demonstrate a substantial claim of ineffective assistance of trial counsel under Strickland, which Funes has not done. The narrow exception in Martinez does not apply in Funes's case or excuse the Articles 930.3 or 930.4 bars to consideration of his claims.

27

Funes has not shown cause for default of some of his claims based on his contentions that his trial counsel failed to file a motion to quash or assert objections during voir dire.  As discussed later in this report, Funes's counsel were not deficient and did not prejudice the defense, and Funes has not shown that his counsel caused his default.

"If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." Matchett v. Dretke, 380 F.3d 844, 848-49 (5th Cir. 2004) (quoting Rodriguez v. Johnson, 104 F.3d 694, 697 (5th Cir.1997)).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Meanes v. Johnson, 138 F.3d 1007, 1011 (5th Cir. 1998) (citing Engle v. Isaac, 456 U.S. 107, 134, n.43 (1982)).

C.   FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Gonzales, 924 F.3d at 241-42.  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Murray v. Quarterman, 243 F. App'x 51, 55 (5th Cir. 2007).  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Id. (citing Bagwell v. Dretke, 372 F.3d 748, 756 (5th Cir. 2004)); see

28

Nobles, 127 F.3d at 423 n.33 (actual innocence requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Woodfox, 609 F.3d at 793.

Funes presents no argument and the record contains nothing to suggest his actual innocence on the underlying convictions.  He has failed to overcome the procedural bars, and his claims asserting discriminatory grand and petit jury selections processes, his entitlement to appointment of post-conviction counsel, political influence on and conflict of interest of the indigent defender board, the state trial court's failure to properly instruct and sequester the jury during breaks, the state trial court's improper comments on responsive verdicts and prosecutorial misconduct alleging that the prosecution vouched for witness credibility must be dismissed with prejudice as procedurally barred.[44]

VI.    STANDARDS OF A MERITS REVIEW OF REMAINING CLAIMS

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.   Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).  Determinations of questions of fact by the state court are "presumed to be correct . . . and

---

[44]The procedurally barred claims are Claim Nos. 1, 2, 4, 5, 6(a), 9, 10 and 11 in C.A. No. 14-1342 and Claim Nos. 1, 3, 4, 5, 7, 8, 9(a), 12, 13 and 14 in C.A. No. 19-9795.

we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (citations omitted; brackets in original).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

31

unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25);

<u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

VII.    BATSON VIOLATION AND BIASED JURY (C.A. NO. 14-1342 CLAIM NO.
        3(A) AND C.A. NO. 19-9795 CLAIM NOS. 2 AND 6)

Funes alleges that his right to a fair trial was violated during jury selection because

the prosecution used its peremptory strikes to exclude black jurors without a non-race

based reason in violation of <u>Batson</u>, 476 U.S. at 79.  He alleges that the State used all of

its peremptory strikes to exclude black potential jurors.  He also claims that if he had a

copy of the voir dire transcript, he could search for more errors, including the possibility

that the State used more peremptory strikes than allowed by law.  Funes also claims that

several jurors were seated on the jury after expressing a "pre-determined notion of his

guilt" and the state trial court failed to remove the jurors for cause or attempt to

rehabilitate them.

Funes asserted these arguments in his first state court application for post-

conviction relief.  The state trial court denied the claims as unsupported by the record and

meritless.  The Louisiana Fifth Circuit found no error in the lower court's ruling and the

Louisiana Supreme Court denied Funes's writ application without stated reasons.

A.      BATSON CLAIM

In <u>Batson</u>, the Supreme Court held that the Equal Protection Clause forbids a

prosecutor from using peremptory challenges to strike potential jurors based solely on

race.  Batson, 476 U.S. at 88; see Moody v. Quarterman, 476 F.3d 260, 266-67 (5th Cir.

2007).  The Court later extended its Batson ruling to prohibit gender discrimination in

the exercise of peremptory challenges.  J.E.B. v. Alabama, 511 U.S. 127, 137 (1994).  In

a subsequent decision, the Supreme Court outlined the appropriate analysis for

addressing a Batson challenge as to race, and the analysis is equally applicable to gender:

> A defendant's Batson challenge to a peremptory strike requires a three-step
> inquiry.  First, the trial court must determine whether the defendant has
> made a prima facie showing that the prosecutor exercised a peremptory
> challenge on the basis of race.  476 U.S., at 96-97, 106 S.Ct. 1712.  Second,
> if the showing is made, the burden shifts to the prosecutor to present a
> race-neutral explanation for striking the juror in question. Id., at 97-98, 106
> S.Ct. 1712.   Although the prosecutor must present a comprehensible
> reason, "[t]he second step of this process does not demand an explanation
> that is persuasive, or even plausible"; so long as the reason is not inherently
> discriminatory, it suffices.  Purkett v. Elem, 514 U.S. 765, 767-768, 115
> S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam).  Third, the court must
> then determine whether the defendant has carried his burden of proving
> purposeful discrimination.  Batson, supra, at 98, 106 S.Ct. 1712.  This final
> step involves evaluating "the persuasiveness of the justification" proffered
> by the prosecutor, but "the ultimate burden of persuasion regarding racial
> motivation rests with, and never shifts from, the opponent of the strike."
> Purkett, supra, at 768, 115 S.Ct. 1769.

Rice v. Collins, 546 U.S. 333, 338 (2006); Miller-E1 v. Dretke, 545 U.S. 231, 251-52

(2005); accord Stevens v. Epps, 618 F.3d 489, 492 (5th Cir. 2010).

Once a reviewing court reaches the third step of determining whether purposeful

discrimination occurred, "the defendant may rely on all relevant circumstances to raise

an inference of purposeful discrimination."  Fields v. Thaler, 588 F.3d 270, 274 (5th Cir.

2009) (quoting Miller-El, 545 U.S. at 240 (internal quotations omitted)).  Batson noted

that circumstances to be considered when ultimately deciding purposeful discrimination include a "pattern" of strikes against jurors and the nature of the questions and statements by the prosecutor during voir dire. Batson, 476 U.S. at 96-97. Considerations enumerated by other federal courts include (1) the percentage of similar panelists challenged by the prosecutor with a peremptory strike, (2) comparison of stricken panelists to white panelists allowed to serve, (3) the prosecutor's use of procedural mechanisms to move particular jurors to the back of the panel, where they are less likely to be selected, (4) evidence of contrast between questions posed to black and non-black panelists indicating intent to load questions to make a case to exclude the black panelists, and (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors. United States v. Nelson, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing Miller-El, 545 U.S. at 231). However, statistics alone are insufficient to prove discrimination in the striking of prospective jurors. United States v. Branch, 989 F.2d 752, 755 (5th Cir. 1993).

The first step in a Batson analysis presents a mixed question of law and fact. Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir. 2003); see Williams v. Cain, 359 F. App'x 462, 465 n.2 (5th Cir. Dec. 29, 2009). This court must determine whether the state courts' decisions were contrary to or an unreasonable application of Supreme Court precedent.

34

The neutrality issue under the second step of <u>Batson</u> and the ultimate question of discriminatory intent under the third step are questions of fact. <u>Hernandez v. New York</u>, 500 U.S. 352, 364, 369 (1991); <u>accord Rice</u>, 546 U.S. at 338-342; <u>Moody</u>, 476 F.3d at 267 (citing <u>Purkett</u>, 514 U.S. at 768); <u>Chester v. Vannoy</u>, No. 16-17754, 2018 WL 2970912, at *12 (E.D. La. Jun. 11, 2018). Pursuant to Section 2254(e), state court factual findings must be presumed correct, unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003). If convincing evidence establishes that a factual determination was unreasonable, the federal habeas court's focus must be on the third step of the <u>Batson</u> test. <u>Rice</u>, 546 U.S. at 342; <u>Moody</u>, 476 F.3d at 266. At that step, "we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)." <u>Miller-El</u>, 545 U.S. at 240; <u>Moody</u>, 476 F.3d at 267.

In the instant case, the defense did not make a <u>Batson</u> challenge at trial. The issue was not raised by Funes until state court post-conviction review, where his arguments were, as they are here, without any factual support or information on which such a claim could be supported. He presents no basis on which the state courts might have ruled differently. His claim is entirely conclusory, speculative and not otherwise supported by fact.

The record discloses nothing to indicate the State purposefully excluded blacks from Funes's jury.  The record reflects that 37 potential jurors were present during voir dire, five of whom were not used or reached before the jury was seated.[45]  The state trial court excused eight people for cause.  The <u>defense</u> used 12 peremptory exceptions to exclude six men and six women of unspecified races.[46]  On the other hand, as determined by the state courts and reflected in the trial minutes, the State only used <u>one</u> of its peremptory challenges, and it was used to exclude a white woman.[47]

Funes has presented nothing to establish a prima facie case that the State exercised its peremptory challenges purposely to exclude blacks from the jury.  <u>See</u> <u>Johnson v. California</u>, 545 U.S. 162, 168 (2005) (To establish a prima facie case of discriminatory striking, a defendant must produce evidence sufficient to "give rise to an inference of discriminatory purpose.")  Having reviewed the venire list and the use of strikes by both sides, and weighing the factors set out above, <u>Miller-El</u>, 545 U.S. at 231, I find no systematic exclusion of blacks by the State.

Funes has not established that the denial of relief on his <u>Batson</u> claim by the state courts was contrary to or involved an unreasonable application of clearly established

---

[45]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10.

[46]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10; St. Rec. Vol. 1 of 14, Trial Court Order, 1/16/14; State's Reply, 10/11/13, pp. 4-5 and Exhibit 1.  The state trial court excused five women and three men for cause.

[47]<u>Id.</u>

federal law.  He also has not demonstrated unreasonable determination of the facts in light of the evidence and record.

B.    BIASED JURORS

Funes briefly mentions that the state trial court failed to exclude jurors who indicated they could not be impartial or had a preconceived notion of his guilt.  This claim is also unsupported.

The Due Process Clause guarantees an accused the Sixth Amendment right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous information.  Morgan v. Illinois, 504 U.S. 719, 726-27 (1992); Patton v. Yount, 467 U.S. 1025, 1037 & n. 12 (1984).

While determination of a jury's impartiality as a whole is a mixed question of law and fact, Irvin v. Dowd, 366 U.S. 717, 723 (1961), a trial court's finding of non-bias and impartiality of a single juror is a question of fact that is accorded the "presumption of correctness" under 28 U.S.C. § 2254(d).  See Virgil v. Dretke, 446 F.3d 598, 610 n.52 (5th Cir. 2006); Williams v. Cockrell, 46 F. App'x 227, 2002 WL 1940099, at *7 (5th Cir. Jul. 25, 2002) (citing Jones v. Butler, 864 F.2d 348, 362 (5th Cir.1988) (quoting pre-AEDPA 28 U.S.C. § 2254(d)(8)); Oliver v. Quarterman, 541 F.3d 329, 342 (5th Cir.2008); see also, Patton, 467 U.S. at 1036-37 & n. 12 (under pre-AEDPA law, the state trial court's finding of juror impartiality is entitled to a presumption of correctness).

The state courts' "finding of impartiality is therefore 'presumed correct' unless it is 'not fairly supported' by the record viewed 'as a whole.'" Jones, 864 F.2d at 362 (quoting pre-AEDPA Section 2254(d)(8)).  The habeas petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Funes has not met this burden.

Funes offers no facts or specific information to support this conclusory and speculative claim.  The state courts correctly denied the claim as meritless and unsupported by the record.  In Funes's case, the state trial court excused eight potential jurors for cause.[48] Although the specific reasons are not indicated in the record, the state trial court clearly took seriously whatever cause conflicts were presented by these persons, including any that may have been bias based.

To the extent Funes suggests that his counsel was forced to use peremptory challenges differently because potentially biased jurors were not dismissed for cause, his claim also fails.  The Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." Ross v. Oklahoma, 487 U.S. 81, 88 (1988).  Instead, after the denial of a challenge for cause, when the challenged juror is removed by use of a peremptory challenge, the petitioner is entitled to federal habeas corpus relief only if he demonstrates that the jury

---

[48]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10.

ultimately selected to try the case was not impartial.  Id. 85-86, 88-89; Rivera v. Illinois, 556 U.S. 148, 158-59 (2009); Soria v. Johnson, 207 F.3d 232, 241 (5th Cir. 2000); Williams, 2002 WL 1940099, at *5-6.  "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  Ross, 487 U.S. at 88 (citations omitted).  Funes has not established that he was tried by a biased jury.

Instead, Funes complains that the state trial court failed to excuse potentially biased jurors compelling his counsel to use peremptory strikes.  Even assuming this to be true, "refusal to grant a challenge for cause is within the discretion of the trial court, and it does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial."  Sudds v. Maggio, 696 F.2d 415, 416 (5th Cir. 1983) (citation omitted); Soria, 207 F.3d at 241-42; Dorsey v. Quarterman, 494 F.3d 527, 533 (5th Cir. 2007); Lagrone v. Cockrell, No. 02-10976, 2003 WL 22327519, at *12 (5th Cir. Sep. 2, 2003).

"The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  Soria, 207 F.3d at 242 (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)).  Implicit in a state court's denial of a challenge for cause is a finding that the juror was not biased.  Jones, 864 F.2d at 362; Miniel v. Cockrell, 339 F.3d 331, 338-39 (5th Cir. 2003);

Montoya v. Scott, 65 F.3d 405, 419 n.29 (5th Cir. 1995); see also Fuller v. Johnson, 114 F.3d 491, 500-01 (5th Cir. 1997). A juror is considered biased if he unequivocally states during voir dire that he cannot be fair and impartial. Virgil, 446 F.3d at 613. A trial judge should normally undertake an assessment of any bias by questioning the juror directly, with the participation and input of counsel. See Smith v. Phillips, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."); Hatten v. Quarterman, 570 F.3d 595, 600 (5th Cir. 2009).

Even if a potential bias is exposed, "[a] potential juror may be rehabilitated by counsel or the court; if it becomes apparent that the juror could follow the law in accordance with his oath and the court's instructions, denial of a challenge for cause would be proper, and the challenged venireman could serve on the jury." Chappell v. Cockrell, 37 F. App'x 88, 2002 WL 971530, at *11 (5th Cir. Apr. 29, 2002). In such a case, "deference must be paid to the trial judge who sees and hears the juror." Wainwright, 469 U.S. at 426.

There is no indication in the record and Funes fails to demonstrate that any juror serving at his trial held "such fixed opinions that [he] could not judge impartially the guilt of the defendant." Patton, 467 U.S. at 1035; Chavez v. Cockrell, 310 F.3d 805, 811 (5th Cir. 2002). The state courts' decision to release or maintain any juror on the panel

is entitled to deference based on Funes's unsupported and conclusory claim. The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent. Funes's is not entitled to federal habeas relief on this claim.

C.   TRANSCRIPT COPY

In connection with his general challenges to jury selection in his case, Funes requested in his state court post-conviction application and subsequent review proceedings that the state courts provide him with a copy of the voir dire transcript so he could search for errors. The state courts denied his requests citing the longstanding federal and state law doctrine that in post-conviction proceedings, a defendant has no right to transcript copies "to comb the record for errors" and instead must demonstrate a "particularized need."[49]

There is no general due process right of access to state court records on collateral review of a criminal proceeding. See, e.g., United States v. MacCollom, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); Deem v. Devasto, 140 F. App'x 574, 575 (5th Cir. 2005); Cook v. Cain, No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015). Even an

---

[49]St. Rec. Vol. 1 of 14, Trial Court Order, 7/22/13; 5th Cir Order, 14-KH-124, 3/25/14.

indigent defendant does not have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings. See Yates v. Collins, 988 F.2d 1210, 1993 WL 82111 (5th Cir. 1993) (Table, Text in Westlaw) (indigent defendant not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim).

Instead, federal courts have long-recognized that no state court is "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." Jackson v. Estelle, 672 F.2d 505, 506 (5th Cir. 1982); Kunkle v. Dretke, 352 F.3d 980, 985-86 (5th Cir. 2003).  In addition, a petitioner's conclusory allegations that a claim may exist or may be supported does not state a "particularized need" for a transcript.  See Thomas v. United States, 597 F.2d 656, 657 (8th Cir. 1979) (a "[particularized need] involves more than a 'fishing expedition' based on a generalized hope that some defect . . . will be discovered").  Similarly, unsubstantiated or vague and conclusory claims fail to establish a particularized need for a transcript, especially on collateral review.  See Hernandez v. Cain, No. 14-1763, 2015 WL 1810822, 10 (E.D. La. Apr. 20, 2015) (denying petitioner's habeas claim challenging failure to provide transcripts copies for state collateral review because "the unsubstantiated nature of the ineffective assistance of counsel claims, . . . all of which are meritless, vague, and conclusory," failed to meet the petitioner's "burden of showing

particularized need"); <u>Parks v. Cain</u>, No. 12-297, 2014 WL 505329, at *17 (E.D. La. Feb. 6, 2014) (finding petitioner "failed to satisfy his burden of proof regarding his alleged need for a transcript"); <u>see also</u>, <u>Landry v. Cain</u>, No. , 2018 WL 1442900, at *6-7 (M.D. La. Feb. 28, 2018) (affirming state court ruling that there is no right to transcript on collateral review to conduct "'fishing expedition' based upon vague and conclusory allegations.")

As the state courts noted, Funes's claims were not based on credible factual allegations and failed to demonstrate a particularized need for transcripts on collateral review of his conviction. This conclusion is supported by the record and the denial of relief was not contrary to or an unreasonable application of federal law. Funes is not entitled to a transcript or habeas relief on this claim.

## VIII. PROSECUTORIAL MISCONDUCT (C.A. NO. 14-1342 CLAIM NO. 6(B) AND C.A. NO. 19-9795 CLAIM NO. 9(B))

Funes alleges that prosecutorial misconduct occurred when the prosecutor failed to correct and relied upon perjured testimony to obtain his conviction. Funes claims that the State's ballistics expert "was not being honest" and that his testimony was based on a flawed scientific process of linking bullets to a particular gun. He further argues that the prosecutor knew the testimony was false and failed to correct it, allowing the testimony to influence the jury's verdict. The state courts denied relief finding that

Funes's claim was speculative and he failed to prove prosecutorial misconduct or that any of the expert's testimony was false.

A State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). To prove misconduct, petitioner must show that (1) the testimony was actually false, (2) the prosecutor knew the testimony was false and (3) the testimony was material. Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is a reasonable likelihood that it affected the jury's verdict. Duncan, 70 F. App'x at 744 (citing Nobles, 127 F.3d at 415). On habeas review, a Giglio/Napue claim should be dismissed if petitioner does not establish that the testimony was actually false. See Canales v. Stephens, 765 F.3d 551, 573 (5th Cir. 2014).

A claim of prosecutorial misconduct, including use of perjured testimony, is a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4, n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997) and United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)); Thompson v. Cain, 161 F.3d 802, 808 (5th Cir.

1998). Thus, Funes must show that the state courts' denial of relief was contrary to or an unreasonable application of federal law.

At a June 26, 2010, hearing, the state trial court held a hearing pursuant to <u>Daubert v. Dow Pharmaceuticals,</u> 509 U.S. 579 (1993), to assess the scientific reliability of firearms examination methods used by Colonel Timothy Scanlan, the State's expert in firearms examination and crime scene reconstruction.[50] <u>Daubert</u> established the following factors for assessing the admissibility and reliability of scientific expert testimony: (1) whether the theory or technique underlying the expert's testimony has been tested; (2) whether it has been subjected to the rigors of peer review and publication; (3) whether it has any known rate of error and standards for controlling such error; and (4) whether the theory or technique has attained "general acceptance" within the relevant expert community. <u>Daubert,</u> 509 U.S. at 593-94. "<u>Daubert</u> makes clear that the factors it mentions do <u>not</u> constitute a 'definitive checklist or test.' [...] <u>Daubert</u> adds that the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" <u>Kumho Tire Co., Ltd. v. Carmichael,</u> 526 U.S. 137, 150 (1999) (citations omitted) (emphasis in original). Part of a court's gatekeeping function requires it to "ensure that scientific testimony is not only relevant, but reliable." <u>Id.</u> at 141.

---

[50]St. Rec. Vol. 8 of 14, Hearing Transcript, 7/26/10; St. Rec. Vol. 3 of 14, Hearing Minutes, 7/26/10.

After detailed questioning by the prosecutor and defense counsel, the state trial court found Colonel Scanlan's testimony met <u>Daubert</u> criteria: "I do in fact find that all of those factors have been satisfied, that the evidence with regard to firearms examination and crime scene reconstruction will be admitted in this case as being reliable and is more probative then prejudicial and will assist the trier of fact throughout the case."[51]

At trial, the parties stipulated that Colonel Scanlan was an expert in firearms and toolmarks examination and crime scene reconstruction.[52]  As in the <u>Daubert</u> hearing, Colonel Scanlan explained the science and methodology of firearms and ballistic testing and comparison.  He also testified regarding his testing of the weapons and bullet casings in Funes's case, which established the following:[53] (1) The .38 caliber revolver recovered at the scene held five spent casings and it was fired at the murder scene.[54] (2) The .380 semi-automatic weapon, similar to a Colt 1911 military design, jammed at the scene and one projectile from that weapon was recovered at the scene.[55] (3) A .22 caliber semi-automatic weapon was also fired multiple times at the murder scene, based on casings and projectiles recovered (including a casing found under Wallace Gomez's body), but

---

[51]St. Rec. Vol. 8 of 14, Hearing Transcript, p. 48, 7/26/10.

[52]St. Rec. Vol. 10 of 14, Trial Transcript, p. 48, 7/29/10.

[53]<u>Id.</u> at 48-58.

[54]<u>Id.</u> at 59.

[55]<u>Id.</u> at 60-63.

the weapon was not recovered.[56] (4) Projectiles or fragments were recovered from victims

Beauford Gomez and Hebert, but the expert could not determine the caliber.[57] (5) Victims

Carmadelle and Hebert were killed by a .22 caliber weapon.[58]

Defense counsel cross-examined Colonel Scanlan on his testing methods and the

actual testing done to reach his conclusions.  During that questioning and at the Daubert

hearing, there was no indication that the court or counsel had reason to doubt the veracity

of Colonel Scanlan's explanations, methods and conclusions.

Even now, Funes has failed to identify any particular statement by Scanlan that

was in fact false or that the State knowingly relied on false testimony.  Without such

evidence, Funes cannot establish prosecutorial misconduct.  See Clark v. Johnson, 202

F.3d 760, 767 (5th Cir. 2000) (disagreement over the validity of a State expert's

conclusions is insufficient to refute a state court's factual determination that the expert's

trial testimony was neither false nor misleading).  His claims fall far short of establishing

that Colonel Scanlan's expert testimony was false or that the State engaged in

prosecutorial misconduct to deny him a fair trial.  Funes has not shown that the denial of

relief on this issue was not contrary to or an unreasonable application of Supreme Court

law.  He is not entitled to relief on this issue.

---

[56]Id. at 65-69.

[57]Id. at 74-75.

[58]Id. at 97.

IX.    MOTION TO SUPPRESS STATEMENT (C.A. NO. 14-1342 CLAIM NO. 12)

Funes alleges that the state trial court erred when it denied the motion to suppress his inculpatory statements because there was no knowing and intelligent waiver of his rights.  He claims that the recorded statement does not include a proper waiver and the unrecorded waivers were likewise inadequate.  He also complains that the recorded statement demonstrates that, although she claimed to be fluent in Spanish, Officer Maggie Pernia was unable effectively to communicate the Miranda warnings to him in Spanish.

Funes argues that when Officer Pernia attempted to remind him of his rights in the recorded statement, she failed to reiterate all of his Miranda warnings.  He also claims that the transcript will show that Pernia was not bilingual or a certified interpreter and struggled to communicate as evidenced by the "broken English" transcription of their conversations.  He argues that, because of this, the State cannot prove that he gave a knowing and intelligent waiver of his rights under Miranda.

Funes's appointed counsel asserted this claim on direct appeal to the Louisiana Fifth Circuit.  The court denied relief finding that, while the translated transcriptions of their conversations contain some grammatical errors, there was no doubt that Funes understood Officer Pernia and was responsive to her questions.[59]  The court also noted

---

[59]Funes, 88 So.3d at 504; St. Rec. Vol. 11 of 14, 5th Cir. Opinion, 11-KA-120, pp. 23, 12/28/11.

that, contrary to Funes's allegations, Pernia had previously been qualified in both Orleans Parish Criminal District Court and the Jefferson Parish trial court as a Spanish translator. The court also held that Louisiana law did not require a written waiver of rights. The court concluded that the motion to suppress was properly denied because the record and circumstances established a voluntary waiver of Funes's rights before the statements. This was the last reasoned opinion on the issue. See Wilson, 138 S. Ct. at 1192 ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

The fact that the state courts denied Funes's motion to suppress is not itself reviewable by this federal habeas court. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). Errors made under state law do not warrant federal habeas review. Swarthout v. Cooke, 562 U.S. 216, 219 (2011); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Hogue, 131 F.3d at 506 (a disagreement as to state law is not cognizable on federal habeas review). Instead, this court must determine whether a violation of Funes's constitutional rights occurred when his statement was introduced at trial.

49

The voluntariness and admissibility of a confession is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007) (citing Miller, 474 U.S. at 112).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); Barnes v. Johnson, 160 F.3d 218, 222 (5th Cir. 1998). The state court's related credibility and factual determinations are presumed to be correct and may be overturned only if they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); Barnes, 160 F.3d at 222; see also Miller, 474 U.S. at 117; see also Pemberton v. Collins, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing Sumner v. Mata, 455 U.S. 591, 597 (1982)).

Under Miranda, a statement made by a person in custody is admissible when the person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him.  Miranda, 384 U.S. at 444-45.  A person may waive these rights so long as the waiver is knowing and voluntary.  Moran v. Burbine, 475 U.S. 412, 421 (1986).

The United States Supreme Court recognizes two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination.  Moran, 475 U.S. at 421; Soffar v. Cockrell, 300 F.3d 588, 592 (5th

50

Cir. 2002).  First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception.  Id. at 421.  Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived.  Id.  In making these inquiries, the court must consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973).

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that admission of an involuntary confession is a trial error subject to harmless error analysis.  Arizona v. Fulminante, 499 U.S. 279, 310 (1991).  Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Therefore, even if a Fifth Amendment violation occurred, the court must also consider whether use of the confession at trial was harmless in determining the verdict.  Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir. 2003).

The Louisiana Fifth Circuit found no error in the denial of Funes's motion to suppress or the admissibility of his inculpatory statements.  The court reviewed in detail the testimony during the hearing on the motion to suppress and similar testimony given at trial.  The court concluded that Funes was advised of his Miranda warnings in Spanish before his first statement and was reminded of his rights before his next two statements. The court also noted that the recorded statements demonstrated that Funes was not forced

51

to speak and gave his statements voluntarily. The court summarily dismissed Funes's arguments about grammatical errors in the English transcript finding that any errors did not relate to communication of his <u>Miranda</u> rights and did not lead to misunderstanding or miscommunication between them. Instead, the transcript confirmed that Funes understood all of Pernia's communications. The court concluded that, under the totality of the circumstances, Funes knowingly and intelligently waived his rights and voluntary gave the statements.

On federal habeas review, this court must presume that the factual determinations of the state courts supporting this legal conclusion were correct, including that Funes was read his <u>Miranda</u> warnings and knowingly waived his rights before voluntarily giving his inculpatory statements. To overcome the presumption of correctness as to the state court's factual findings, Funes must rebut them by clear and convincing evidence, which he has not done. Instead, the record confirms the factual findings of the state courts on this issue.

Consistent with <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), the state trial court conducted an evidentiary hearing on September 12, 2009, to consider Funes's motion to

suppress his recorded, inculpatory statements taken October 30 and 31, 2008.[60]  The motion ultimately was denied after the court heard the following testimony.[61]

Captain Maggie Pernia testified that she orally advised Funes in Spanish of his Miranda rights before the pre-interview and formal, recorded statements.[62]  She testified that she was born in Cuba and her first language was Spanish.[63]  She also had previously been qualified as an interpreter in the Jefferson Parish court and Orleans Criminal District Court.[64]  Captain Pernia testified that, although Funes did not execute a written waiver, he orally indicated his understanding of his rights and waived his rights indicating his desire to talk with Captain Pernia.[65]  She also testified that, before his second statement, she reminded Funes of his rights to remain silent and to counsel, and he indicated his understanding and again waived his rights.[66]

---

[60]St. Rec. Vol. 3 of 14, Minute Entry, 9/2/09; St. Rec. Vol. 7 of 14, Hearing Transcript, 9/2/09.

[61]St. Rec. Vol. 3 of 14, Minute Entry, 9/2/09; St. Rec. Vol. 7 of 14, Hearing Transcript, p. 75, 9/2/09.  After the court's ruling, the transcript continues at length with testimony related to unrelated motions filed by Funes's co-defendants.

[62]St. Rec. Vol. 7 of 14, Hearing Transcript, pp.16-17, 9/2/09.

[63]Id. at p. 20.

[64]Id. at 30.

[65]Id. at pp. 17, 24.

[66]Id. at p. 17.

Pernia also conducted a pre-interview conversation with Funes in Spanish before the first formal, recorded statements.[67]  For both formal statements, the recorded questions and answers were in Spanish and later transcribed into English.[68]  To demonstrate fluency, Pernia accurately read aloud in Spanish a portion of the English transcription of Funes's statement.[69]

Sergeant Kevin Decker also testified at the suppression hearing.[70]  Sergeant Decker, assisted by Deputy Jimmy Mendez as a Spanish translator, conducted a third recorded interview in Spanish with Funes on October 31, 2008.[71]  Funes was again reminded of his rights previously read to him, and he again indicated his desire to speak to the officers.[72]  During this statement, Funes identified a co-defendant in a photographic lineup.[73]

---

[67]Id.

[68]Id. at pp. 19-20.

[69]Id. at p. 35.

[70]Id. at p. 37.

[71]Id. at p. 38.

[72]Id. at p. 39.

[73]Id. at p. 42.

Deputy Mendez also testified that Funes appeared to have understood his rights and voluntarily proceeded to give his statement.[74] He testified about his Spanish fluency indicating that his mother was from Cuba and his father from Spain.[75] He also testified that he had previously served as a Spanish interpreter for the Sheriff's Office in about ten cases.

By the time of Funes's trial, Captain Pernia had been promoted to Major, and she testified consistently with her testimony at the suppression hearing.[76] Major Pernia testified that she spoke to Funes in Spanish, advised him in the pre-interview of his Miranda rights and confirmed that he understood his rights before answering her questions.[77] She reiterated that she reminded Funes in Spanish of his constitutional rights to remain silent and to counsel before proceeding with the recorded statements.[78]

Major Pernia testified that the Spanish recordings were transcribed into English, and she reviewed the English transcripts to assure their substantive accuracy, although

---

[74]Id. at p. 58.

[75]Id. at p. 58.

[76]St. Rec. Vol. 9 of 14, Trial Transcript, 7/28/10.

[77]Id. at pp. 169-70, 172.

[78]Id. at p. 173.

there were some insignificant grammatical errors.[79]  At trial, the jury was allowed to follow the English transcripts as the recorded Spanish interview was played in court.[80]

Based on the testimony at the hearing and trial, the state court's factual findings are fully supported by the record.  This court on habeas corpus review must accept as conclusive the state court's factual determination that Funes received his Miranda warnings and voluntarily waived his rights.  The state courts' legal conclusion that Funes's statement was knowing, voluntarily and admissible is reasonably based upon these facts.  Because Funes's statements were voluntary as a matter of fact and law, harmless error analysis is unnecessary.

I also note that Funes has not demonstrated that he has any right to a certified translator rather than relying on the officers (whom the courts found capable) to translate the interrogations.  The United States Supreme Court has not recognized a constitutional right to a court-appointed interpreter even at trial.  Nguyen v. Booker, 496 F. App'x 502, 506 (6th Cir. 2012); United States v. Johnson, 248 F.3d 655, 663-64 (7th Cir. 2001) (noting lack of any direct Supreme Court precedent on this issue); see Perovich v. United States, 205 U.S. 86, 91 (1907) (whether to appoint an interpreter is largely a matter of trial court discretion).  The need for an interpreter is derived from the need to assure that the defendant understands his other constitutional rights after arrest once the criminal

---

[79]Id. at pp. 173-175, 179-81.

[80]Id. at pp. 176-78; 181.

56

process formally has begun.  See Lopez Jaime v. California, No. 18-3804, 2019 WL

8017732, at *6 (C.D. Cal. Oct. 25, 2019); see also, Arum v. Miller, 331 F. Supp.2d 99,

111 (E.D.N.Y. 2004) (". . . no federally protected right provides for the provision of an

interpreter" at the time of arrest).

In this case, Funes was provided Spanish language assistance when he was read

his Miranda warnings and questioned by sheriff's deputies.  The record and factual

findings of the state courts establish that the deputies accurately translated the Miranda

warnings to Funes in Spanish, and Funes acknowledged his understanding.  That is all

that was required by the Constitution.  "The translation of a suspect's Miranda rights

need not be a perfect one, so long as the defendant understands that he does not need to

speak to the police and that any statement he makes may be used against him." United

States v. Hernandez, 913 F.2d 1506, 1510 (10th Cir. 1990).  The use of law enforcement

officers to accomplish the Miranda translation does not diminish its validity.  United

States v. Rodriguez, No. 14-304, 2015 WL 431632, at *8 (W.D. Okl. Feb. 2, 2015)

(citing United States v. Silva-Arzeta, 602 F.3d 1208, 1216 (10th Cir. 2010)).  "[W]hile

the use of a certified interpreter might be preferred, it is not required for there to be an

effective waiver." Id. at *8; see Silva-Arzeta, 602 F.3d at 1217 (while use of a certified

interpreter during interrogation might improve the accuracy of evidence, a certified

interpreter was not constitutionally required).

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent. Funes is not entitled to relief on this claim.

X.    NON-UNANIMOUS VERDICT (C.A. NO. 14-1342 CLAIM NO. 13)

Funes alleges that the state trial court erred when it instructed the jury that a non-unanimous verdict was sufficient to convict him because a non-unanimous verdict is unconstitutional despite Louisiana and federal case law to the contrary. Funes's appointed counsel asserted this claim on direct appeal. The Louisiana Fifth Circuit reviewed both federal and state law on the issue and concluded that well-settled Louisiana Supreme Court law upholding the constitutionality of the non-unanimous verdict mandated denial of relief.

It is not the province of this federal habeas court to determine whether the state trial court erred when it followed Louisiana law to instruct the jury on non-unanimous jury verdicts. Swarthout, 562 U.S. at 219; Hogue, 131 F.3d at 506. Instead, the court must evaluate the validity of the instruction under federal constitutional law.

Funes recognizes that the state trial court followed prevailing law on the issue. However, he asserts the claim hoping that the courts will rectify the alleged error of law. Because Funes's challenge implicates the constitutionality of Louisiana law on non-unanimous verdicts, his claim presents a pure question of law. Ortiz v. Quarterman, 504 F.3d 492, 496 (5th Cir. 2007). Thus, federal habeas corpus relief is available only if the

state courts' decision was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent.

The decades-old and clearly established United States Supreme Court precedent applicable to this claim is directly contrary to Funes's argument.  In Apodaca v. Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws - including Louisiana's - that permitted criminal defendants to be convicted by less than unanimous votes.  While the Supreme Court itself has described the Apodaca/Johnson holding as "the result of an unusual division among the Justices," it also made clear, in the same breath, that Apodaca/Johnson remains the law of the land: "The [Supreme] Court has held that, although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials." (citations omitted, emphasis added); McDonald v. City of Chicago, 561 U.S. 742 (2010).

In the habeas corpus context, the United States Fifth Circuit has recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury must be rejected under Apodaca/Johnson: "We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court 'has not held that the Constitution imposes a jury unanimity requirement.'"  Hoover v. Johnson, 193 F.3d 366, 369 (5th Cir. 1999)

(quoting <u>Richardson v. United States</u>, 526 U.S. 813, 821 (1999) and citing <u>Johnson</u>, 406 U.S. at 366) (emphasis added).

Funes effectively concedes that the clearly established precedent in <u>Apodaca</u> and <u>Johnson</u> is contrary to his position. He seeks change in the law, but does not demonstrate contrary or unreasonable application of clearly established Supreme Court precedent in his case. Simply stated, Funes asks this court to reconsider the Supreme Court's holdings in <u>Apodaca</u> and <u>Johnson</u>. On federal habeas corpus review, however, it is not the function of this court under the AEDPA to reassess the law pronounced by the Supreme Court. <u>White</u>, 572 U.S. at 426-27. Instead, the applicable standard is whether the Funes's conviction based on a non-unanimous jury verdict was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Under <u>Apodaca</u>, <u>Johnson</u> and its progeny, including the decisions cited above, the state courts' decisions in this regard were wholly consistent with Supreme Court precedent.

I recognize that the United States Supreme Court recently granted a petition for writ of certiorari in <u>Ramos v. Louisiana</u>, 139 S. Ct. 1318 (2019), and is again considering the constitutionality of the non-unanimous jury verdict standard. Oral argument was held on October 7, 2019, and the issue is under advisement in the Supreme Court. That fact does not alter the application in this case of currently existing United States Supreme Court precedent. <u>United State v. Lopez-Velasquez</u>, 526 F.3d 804, 808 (5th Cir. 2008) ("Absent an intervening Supreme Court case overruling prior precedent, we remain

bound to follow our precedent even when the Supreme Court grants certiorari on an issue."); United States v. Short, 181 F.3d 620, 624 (5th Cir. 1999); Ellis v. Collins, 956 F.2d 76, 79 (5th Cir. 1992). Even if the Ramos Court grants relief, the retroactive effect of any such decision is entirely uncertain.

I further recognize that in 2018, Louisiana voters approved an amendment to Article I, Section 17(A) of the state constitution, to require unanimous jury verdicts in cases like this one. However, the state constitutional amendment is expressly limited to offenses "committed on or after January 1, 2019," so that it does not apply retroactively to Funes's case.

For all of the foregoing reasons, based upon the law as it currently exists, the state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. Funes is not entitled to federal habeas corpus relief on this claim.

XII.    EFFECTIVE ASSISTANCE OF COUNSEL (C.A. NO. 14-1342 CLAIM NOS. 3(B), 7, 8 AND C.A. NO. 19-9795 CLAIM NOS. 2, 6, 10, 11)

Funes alleges that he received ineffective assistance when his trial counsel failed to assert a Batson challenge to the State's use of peremptory challenges to exclude blacks, file a motion to quash the grand jury indictment based on discriminatory jury selection processes and procure rebuttal experts. He also alleges that his appellate counsel provided ineffective assistance when he failed to assert a Batson challenge on direct appeal. Funes asserted these claims on state court post-conviction review. In the

last reasoned opinion, the state trial court found the claims factually unsupported by the record and meritless under Strickland.

In Strickland, 466 U.S. at 697, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington court observed that "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one." Id. The court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence." Harrington, 562 U.S. at 105. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing

Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    TRIAL COUNSEL

1.    BATSON CHALLENGE/BIASED JURORS

Funes claims that his trial counsel provided ineffective assistance when he failed under Batson to challenge the State's discriminatory use of its peremptory challenges to exclude blacks from the jury and to move the state trial court to exclude unidentified biased jurors for cause.

As discussed previously, Funes's Batson claim is factually unsupported and lacks merit under Supreme Court precedent.  Funes has failed to establish any basis for his counsel to have objected under Batson to the State's use of one peremptory challenge to exclude a white female.  "[C]ounsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless."  See Soliz v. Davis, 750 F. App'x 282, 293 (5th Cir. 2018) (quoting Turner v. Quarterman, 481 F.3d 292, 298 (5th Cir. 2007)); Ries v. Quarterman, 522 F.3d 517, 530 (5th Cir. 2008) (for counsel to be deficient for failing to object, the objection must have merit).  Funes has not established that his counsel's performance was deficient or otherwise prejudicial to the defense.

As discussed above, Funes failed to establish that the sate trial court did not remove biased jurors for cause or that his counsel should have objected to that alleged

failure.  The record reflects that the state trial court excused eight potential jurors for cause, although the specific cause bases are not specified in the minutes.[81]  Without some reason for his counsel to have objected further, Funes has not shown that his counsel's performance was unreasonable or deficient or that his actions somehow prejudiced the defense.  His conclusory and speculative claims are insufficient to support a Strickland claim.  Conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  Miller, 200 F.3d at 282.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland.  Funes is not entitled to relief on this claim.

## 2.    MOTION TO QUASH INDICTMENT

Funes claims that his trial counsel provided ineffective assistance when he failed to move to quash the indictment based on alleged discriminatory practices underlying the grand jury selection process in Louisiana due to violations of federal voter registration laws.  Although Funes frames his claim this way, most of his arguments address counsel's failure to assure that biased jurors were removed for cause, a claim which I have already addressed.

---

[81]St. Rec. Vol. 3 of 14, Trial Minutes, 7/27/10.

65

In denying his ineffective assistance of counsel claim, the state trial court found that Funes's conclusory claim failed to establish discrimination or equal protection violation in the grand jury selection process and failed to establish deficient performance or prejudice in light of the overwhelming evidence of his guilt.[82]  As the state court properly concluded, Funes's <u>Strickland</u> claim fails because he cannot establish prejudice.

Under the circumstances of his case and considering the strength of evidence against him, including his inculpatory statements of guilt, a successful motion to quash the indictment would have simply delayed the inevitable filing of another indictment.[83] See <u>Merridith v. Cain</u>, No. 04-1227, 2006 WL 2054446, at *7 (W.D. La. Jun. 29, 2006), <u>report adopted by</u>, 2006 WL 6358372 (W.D. La. Jul. 21, 2006).  Even if his trial counsel had successfully moved to quash the indictment, the State would have subjected him to re-indictment by a properly convened grand jury, and there is no showing that the result of that proceeding would have been any different.  See <u>Pickney v. Cain</u>, 337 F.3d 542, 545 (5th Cir. 2003) ("[W]e have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment"); <u>Pea v. Cain</u>, No. 14-0083, 2017 WL 1197872, at *13 (M.D. La.

---

[82]St. Rec. Vol. 1 of 14, Trial Court Order, 1/16/14.  The state courts otherwise did not address Funes's underlying post-conviction challenge to the grand jury selection process because it was procedurally barred.

[83]It is unlikely that a motion to quash based on Funes's arguments would have been successful in state court or if given further review under federal habeas law.  See <u>Kennedy v. Cain</u>, 624 F. App'x 886 (5th Cir. 2015).

66

Feb. 28, 2017), report adopted by, 2017 WL 1199740 (M.D. La. Mar. 30, 2017). Accordingly, Funes's ineffective assistance claim is without merit.

The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court law. Funes is not entitled to relief on this issue.

3.    REBUTTAL EXPERTS

Funes alleges that he was denied effective assistance when his trial counsel failed to secure a rebuttal expert to challenge the State's "junk science evidence about matching bullets to guns" and to challenge "the disparity in the minority population allowed to participate in the Grand and Trial jury process."[84]  The state trial court denied relief on this claim finding it vague, speculative and conclusory because Funes failed to establish that experts were available to testify or the details of their testimony.

A petitioner's claim regarding failure of his attorney to retain and call an expert as a witness at trial is addressed in the same manner as a claim regarding any uncalled lay witness. Woodfox, 609 F.3d at 808; Day, 566 F.3d 527, 538 (5th Cir. 2009) (citing Evans v. Cockrell, 285 F.3d 370, 377-78 (5th Cir. 2002)).  Under this standard, federal courts recognize that such claims are largely speculative and disfavored on habeas review. Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003).

---

[84]C.A. No. 14-1342, Rec. Doc. No. 11, p. 71; C.A. No. 19-9795, Rec. Doc. No. 1-3, p. 42.

Regarding experts, a petitioner must identify a particular expert who was available to testify in a manner favorable to a particular defense.  Id.  This showing is "part of the burden of proving that trial counsel could have found and presented a favorable expert." (citation omitted) Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010).

The state trial court was correct in finding that Funes has identified no particular expert nor provided proposed expert testimony to support this claim.  He merely speculates that experts existed to present the challenges he proposes.  Funes has presented no proof that such an opinion was possible or that a specific expert was available and willing to testify in accordance with his suppositions.  Earhart v. Johnson, 132 F.3d 1062, 1067-68 (5th Cir. 1998) ("the district court properly concluded that [the petitioner] was not entitled to relief . . . because . . . he still had failed to show or even allege that an expert could be found whose testimony would have altered the outcome of the state court trial.").  Without more than mere speculation, conjecture and second-guessing of trial strategy, Funes has failed to establish that his trial counsel was ineffective for failing to hire or call defense experts.

Even "assuming defense counsel was deficient in failing to request an expert, [the petitioner] has not established that this failure prejudiced his defense or otherwise rendered the outcome of his trial unreliable." Earhart, 132 F.3d at 1068.  The record contains substantial evidence of Funes's guilt, including his voluntary inculpatory statements and other witness testimony about his role in the murders.  Even if his counsel

had located an expert to opine about the weapons testing and grand jury selection process, there is no showing that the opinion testimony would have created reasonable doubt about Funes's guilt in the face of the overwhelming evidence that he participated in the murders.

Funes has failed to establish any deficient or prejudicial action by his trial counsel in this regard.  In light of his failure and the doubly deferential applicable standard, he has not shown that the state courts' denial of relief was contrary to or an unreasonable application of Strickland.  He is not entitled to relief on this claim.

B.    APPELLATE COUNSEL

Funes alleges that he received ineffective assistance when his appointed appellate counsel failed to assert Batson violation on appeal and failed to assert ineffective assistance of trial counsel for his failure "to object to numerous constitutional violations which occurred and/or he caused."[85]  The state trial court reasoned that these claims were speculative and conclusory and did not establish deficient performance or prejudice under Strickland.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel.

---

[85]C.A. No. 14-1342, Rec. Doc. No. 11, p. 70; C.A. No. 19-9795, Rec. Doc. No. 1-3, p. 41-42.

Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1997). To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285-86.

As discussed above, Funes has failed to establish a legal or factual basis for a Batson challenge to have been made during voir dire or for any legitimate challenge to the State's expert testimony by argument or through a defense expert. Because these arguments were meritless, Funes has failed to establish that appellate counsel did not assert meritorious claims related to these arguments. For the reasons provided throughout this report, Funes has failed to establish that his trial counsel was ineffective or acted in any way to prejudice the defense. Appellate counsel had no meritorious claim of ineffective assistance to assert on appeal and was not ineffective under either prong of Strickland.

Furthermore, as Funes recognizes, Louisiana law prefers that ineffective assistance of trial counsel claims be asserted on post-conviction review rather than on direct appeal. "The appropriate avenue for asserting a claim for ineffective assistance of counsel is through postconviction relief, not by direct appeal." State v. Truitt, 500 So.2d 355, 359

(La. 1987); <u>Coleman v. Goodwin</u>, 833 F.3d 537 (5th Cir. 2016) (recognizing this as common procedure while discussing the <u>Martinez</u>/<u>Trevino</u> doctrine as applied to Louisiana cases).  However, when "the record discloses evidence needed to decide the issue," an appellate court may decide the issue of ineffective assistance at trial.  <u>State v. Peart</u>, 621 So.2d 780, 787 (La. 1993).

However, under federal law, "the applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was 'clearly stronger' than the issues actually presented on appeal."  <u>Matthews v. Cain</u>, 337 F. Supp.3d 687, 712 (E.D. La. Aug. 29, 2018) (order adopting report) (citing <u>Diaz v. Quarterman</u>, 228 F. App'x 417, 427 (5th Cir. 2007) and <u>Smith</u>, 528 U.S. at 288).  In Funes's case, the ineffective assistance of trial counsel claims he proposes are neither meritorious nor "stronger" than the claims asserted on direct appeal.

Funes has failed to establish that the state courts' denial of relief was contrary to or an unreasonable application of federal law.  Under the doubly deferential applicable standards, he is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Rigoberto Funes's petitioner for habeas corpus relief under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[86]

New Orleans, Louisiana, this _____11th_____ day of March, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[86]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.